**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Vascular Access Centers, L.P., | : | Case No. 19-17117 (AMC) |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING IT TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING IT TO ENTER INTO THE DEBTOR-IN-POSSESSION CREDIT AGREEMENT, AND (III) GRANTING ADMINISTRATIVE PRIORITY CLAIMS TO DIP LENDER PURSUANT TO SECTION 364 OF BANKRUPTCY CODE AND MODIFYING THE AUTOMATIC STAY TO IMPLEMENT THE TERMS OF THE DIP ORDER**

Vascular Access Center, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"), by undersigned proposed counsel, respectfully represents:

**Bankruptcy Rule 4001 and Local Rule 4001-1 Concise Statement**

1. By this motion (this "Motion"), the Debtor requests (a) entry of an interim order (the "Interim Order") and final order (the "Final Order" and together with the Interim Order, the "DIP Orders") authorizing the Debtor to, among other things: (i) obtain loans and advances and such other financial accommodations in an aggregate principal amount not to exceed $1,000,000 (the "DIP Facility" or "DIP Loan"), pursuant to sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) enter into the Debtor-In-Possession Credit Agreement and the agreements and instruments contemplated thereby (the "DIP Credit Agreement") and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, and (iii) grant administrative priority claims to Philadelphia Vascular Institute, LLC (the "DIP Lender") in accordance with the DIP Credit Agreement documents and the DIP Orders to secure any and all of the DIP Obligations (as hereinafter defined); (b) modification of the

121255361_1

automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of the DIP Order; (c) requesting that this Court (the "Bankruptcy Court") schedule the Final Hearing for the entry of a Final Order on the Motion to be held within twenty-eight (28) days after the entry of the Interim Order; and (d) requesting, pursuant to Rule 4001 of the Bankruptcy Rules, that an emergency interim hearing on the Motion (the "Interim Hearing") be held for the Court to consider entry of the Interim Order, which authorizes the Debtor to borrow funds under the DIP Credit Agreement, on an interim basis, up to an aggregate principal amount not to exceed $500,000 (the "Interim Amount"). A copy of the proposed Interim Order is attached hereto as **Exhibit A**. A copy of the DIP Credit Agreement is attached hereto as **Exhibit B**.

2. Material provisions of the DIP Credit Agreement are set forth in the following sections of the DIP Credit Agreement and/or the DIP Order.

   a. ***Borrower***: Vascular Access Centers, L.P. [DIP Credit Agreement, page 3].

   b. ***DIP Lender***: Philadelphia Vascular Institute, LLC [DIP Credit Agreement, page 3]. The DIP Lender is a petitioning creditor and insider.

   c. ***DIP Facility Amount***: Total Commitment of $1,000,000, which may be drawn by Borrower in two or more advances (each, an "**Advance**"), provided that each such Advance shall be in the amount of $50,000 or any multiple thereof, and provided further that the first such advance shall not exceed $500,000. [DIP Credit Agreement, [Section 2.1]. Amounts and Terms of Commitments and Loans (pages 10, 11)].

   d. ***Interest Rates***: Each advance under the Loan shall bear interest on the unpaid principal amount thereof from the date such advance is made until repaid at the rate of Wall Street Journal prime plus one percent per annum, fixed as of the date of approval by the Bankruptcy Court. [DIP Credit Agreement, [Section 2.2(a),] Interest on the Loan (page 10)].

   e. ***Payment of Interest***: Interest on each Loan shall be payable in arrears, in immediately available funds, (i) on each Interest Payment Date applicable to the Loan; and (ii) upon any prepayment of the Loan, whether voluntary or mandatory, to the extent accrued on the amount being paid. [DIP Credit Agreement, Section [2.2(b)], Interest on the Loan (pages 11].

  f. ***Voluntary Prepayments of the Loan*:** The Debtor may prepay the Loan in whole or in part in an aggregate minimum amount of $50,000 and integral multiples of $50,000. Any such voluntary prepayment shall be applied to reduce the outstanding principal balance of the Loan. [DIP Credit Agreement, Section [2.3(a)(i)], Repayments of Loans (page 11)].

  g. ***Mandatory Prepayments*:** The Debtor shall from time to time repay the Loan to the extent necessary so that the outstanding principal Obligations shall not exceed the amount contemplated by the DIP Credit Agreement. [DIP Credit Agreement, Section [2.3(a)(ii)], Repayments of Loans (page 11)].

  h. ***Repayment of Loan*:** The Debtor agrees to repay in full all outstanding principal amounts of the Loan, and the Commitment shall automatically terminate and be permanently reduced to zero, on the Termination Date, which is earliest of the following: (a) December 31, 2020; (b) if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (i) the effective date of such plan of reorganization or (ii) the sixtieth (60th) day after the date of entry of the confirmation order; (c) acceleration by Lender of the Obligations due to the occurrence of an Event of Default; (d) the indefeasible payment in full of all Obligations owing under the DIP Facility; (e) upon the sale of all or substantially all of the collateral securing the Pre-Petition Loan, subject to Court approval of distribution of the proceeds of any such sale; or (f) upon conversion or dismissal of the Case. [DIP Credit Agreement, [Section 2.3(b)], Repayments of Loans (page 11)].

  i. ***Carve-Outs*:** The administrative priority claims granted hereunder to the DIP Lender, and any post-petition claims or interests ranking *pari passu* with or junior in priority to such claims of the DIP Lender shall be subject to payment of the Carve-Outs. As used herein, "Carve-Outs" shall mean (a) the payment of Allowed Professional Fees that were incurred prior to an Event of Default or the Termination Date (whether approved and paid before or after such Event of Default or the Termination Date); (b) the payment of Allowed Professional Fees that were incurred after an Event of Default or the Termination Date in an amount not to exceed $100,000, minus any retainers still being held and available for application to such outstanding professional fees and expenses, provided that nothing herein shall be deemed a waiver of the rights of DIP Lender to object to any requests for allowance of any such fees or expenses; and (c) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and to the Clerk of the Bankruptcy Court; provided, that nothing herein shall be deemed as a waiver of the rights of Lender to object to any requests for allowance of any fees or expenses.

  j. ***Allowed Professional Fees*:** All fees of and expenses incurred by the professionals retained pursuant to Sections 327, 363, or 1103(a) of the Bankruptcy Code, by the Debtor and any Committee (as defined, any official committee of unsecured creditors appointed pursuant to Section 1102 of the Bankruptcy Code) in the Case provided for in the budgets (including, without limitation, a claims and notice agent) during the administration of the Case, in each case, as approved by the Bankruptcy Court. For the avoidance of doubt, the

3

121255361_1

        term "Allowed Professional Fees" does not include the fees and costs of professionals engaged by or for the benefit of Lender.

k.    **_Use of Proceeds_**: The proceeds of the Loan shall be used solely (i) in accordance with the DIP Orders, (ii) to fund working capital requirements, operating expenses and capital expenditures of the Debtor in the ordinary course of the Debtor's business, including Allowed Professional Fees during administration of the bankruptcy case, (iii) to fund the payment of interest accrued on the Loan, and (iv) to pay the fees and expenses of DIP Lender relating to the DIP Facility and the case, including, without limitation, its diligence and administrative fees and costs, and reasonable attorneys', appraisers' and other professional advisors' and consultants' fees and costs. The proceeds of the Loan must be used within the terms of the budget to be approved as part of the Financing Orders. [DIP Credit Agreement, Section 2.4, Use of Proceeds (page 12)].

l.    **_Conditions Precedent_**: After giving effect to the Loan: (a) there exists no Default or Event of Default; and (b) the Financing Order shall have been entered and no stay thereof issued. [DIP Credit Agreement, Section 3.1(c), Conditions to Loan/Effectiveness (page 13)].

m.    **_Events of Default_**: Customary events of default including, failure to make payments when due; breach of certain covenants; breach of warranty; other defaults under Loan Documents; dissolution or cessation of business; dismissal of the bankruptcy case or conversion to a chapter 7 case; appointment of a chapter 11 trustee; appointment of an examiner with enlarged powers relating to the operation of the business of the Debtor; Financing Order reversed, stayed or rescinded or amended or supplemented by the Court without written consent of the DIP Lender; attempts by the Debtor to obtain an order of the Bankruptcy Court or other judgment, which would invalidate, reduce or otherwise impair DIP Lender's claims or claim priority status; filing of pleadings by the Debtor affecting the priority claim status of DIP Lender's claims, invalidation or subordination of the priority claim status, the confirmation of a plan which does not contain a provision for payment in full in cash of all obligations of the Debtor to DIP Lender; filing of a motion by the Debtor requesting, or entry of an order granting, any super-priority claim which is senior to the DIP Lender's claims, except as expressly provided in the Agreement. [DIP Credit Agreement, Section 7 (pages 17-18)].

n.    **_Grant of Security Interest_**: None.

o.    **_Roll-up of Pre-petition Debt:_** None.

p.    **_No Discharge; Survival of Claims_**: The Debtor agrees that to the extent its Obligations under the DIP Credit Agreement are not satisfied in full, (a) its Obligations shall not be discharged by the entry of a confirmation order (and the Debtor, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge) and (b) the administrative priority claim granted to DIP Lender pursuant to the Final DIP Order shall not be affected in any manner by the

4

entry of a confirmation order. ***Priority***: The DIP Credit Agreement shall constitute allowed administrative expenses in the Bankruptcy Case, pursuant to section 364(b) and 503(b)(1) of the Bankruptcy Code, and subject only to the prior payment of Agreed Administrative Expense Priorities, as and to the extent set forth in the Final DIP Order or any subsequent order of the Bankruptcy Court.***Remedies***: Upon the occurrence of an Event of Default, the DIP Lender shall have customary remedies. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies under the DIP Documentation and the Final DIP Order.

### Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Local Rules").

### Background

6. On November 12, 2019 (the "Petition Date"), an involuntary petition was filed against the Debtor for relief under Chapter 11 of title 11 of the Bankruptcy Code. The Debtor consented to the relief and an order for relief was entered on November 25, 2019. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. As of the date of the filing of this Motion, no official committee of unsecured creditors, trustee, or examiner has been appointed or designated in this case.

*The Debtor's Operations*

8. The Debtor was founded by Dr. James McGuckin as a Pennsylvania limited

5

partnership in 2005. Non-debtor Vascular Access Center, LLC ("VAC-LLC") is the Debtor's general partner. Dr. McGuckin is the Debtor's CEO and the sole member and manager of VAC-LLC.

9. The Debtor operates its business through limited liability company subsidiaries, 10 of which have minority equity positions held by investors. Those investors represent approximately 22% of the aggregate outstanding equity of the subsidiaries.

10. The subsidiaries operate/manage various outpatient vascular access centers ("Centers"), whereby physician interventionalists perform dialysis access procedures and certain other vascular access procedures on patients with end-stage renal disease ("ESRD") and other vascular conditions or diseases. Physician interventionalists are physicians trained in interventional radiology, interventional nephrology, or vascular surgery with further training in using sophisticated imaging technology.

11. Dr. McGuckin founded the Debtor with a mission of providing clinical excellence and unparalleled service in a convenient outpatient setting. Today, the Debtor has its corporate offices in Philadelphia, PA and owns 15 Joint Commission certified Centers in eight states, has a fully integrated electronic medical records (EMR) system, employs approximately 100 full and part-time associates (non-physician) and services nearly 10,000 patient visits annually.

12. Philadelphia Vascular Institute LLC ("PVI"), of which Dr. McGuckin is the sole member and manager, is a secured creditor of the Debtor. PVI is the DIP Lender.

13. Pursuant to certain advances issued on various dates beginning in 2007 and continuing through October 2019, PVI has loaned funds to the Debtor.

14. As of the Petition Date, PVI had made advances in the amount of approximately $1.2 million. The Debtor has reached no conclusion regarding a security interest or additional indebtedness to PVI.

121255361_1

Case 19-17117-amc    Doc 114    Filed 12/23/19    Entered 12/23/19 17:37:22    Desc Main
Document    Page 7 of 11

**Relief Requested**

15. The Debtor requests that the Court authorize it to obtain unsecured, administrative priority postpetition financing in the aggregate not to exceed $1,000,000 pursuant to the terms of this Motion, the DIP Credit Agreement and the DIP Orders. The proposed financing will be provided by the DIP Lender.

16. Specifically, the Debtor requests that the Court authorize it to: (i) obtain loans and advances and such other financial accommodations in an aggregate principal amount not to exceed $1,000,000; (ii) enter into the DIP Credit Agreement and the agreements and instruments contemplated thereby and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, and (iii) grant administrative priority claims to the DIP Lender in accordance with the DIP Credit Agreement documents and the DIP Orders to secure any and all of the DIP Obligations; and modify the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of the DIP Order.

**The DIP Proposal**

17. In the absence of post-petition funding, the Debtor lacks sufficient cash to continue its operations uninterrupted and preserve going concern value.

18. To facilitate operations during the bankruptcy case the DIP Lender has offered to provide the Debtor with a DIP Facility requiring administrative priority claims as referenced in the DIP Credit Agreement.

19. The Debtor has reasonably determined that the DIP Facility offered by the DIP Lender provides terms most favorable to the Debtor and its estate.

20. The Debtor has inquired of other lenders who are not insiders of the Debtor, including commercial lenders, and none are willing to lend funds to the Debtor on terms more
7
121255361_1

favorable. There is little or no interest by commercial lenders in providing DIP financing on an unsecured basis and little or no interest by commercial lenders in providing DIP financing in an amount as low as $1 million.

21. In the sound exercise of its business judgment and fiduciary duties, the Debtor has determined to proceed under the DIP Facility offered by the DIP Lender.

### The DIP Facility Should Be Authorized

22. Approval of the DIP Facility will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including post-petition wages, salaries, and vendor costs. Unless these expenses are paid, the Debtor will be forced to cease operations, which would likely result in irreparable harm to its business and jeopardize the Debtor's ability to reorganize and maximize value for all interested parties.

23. The credit provided under the DIP Credit Agreement will enable the Debtor to continue to satisfy its vendors, service its customers, pay its employees and operate its network in the ordinary course to preserve the value of the estate while the Debtor pursues a reorganization. The availability of credit under the DIP Credit Agreement will provide confidence to the Debtor's creditors that will enable and encourage them to continue their relationships with the Debtor. Accordingly, the timely approval of the relief requested herein is imperative.

24. Section 364(b) of the Bankruptcy Code provides that the court, after notice and a hearing, may authorize the debtor to obtain unsecured credit or unsecured incur debt allowable under section 503(b)(1) as an administrative expense of the estate. 11 U.S.C. § 364(b). The Debtor proposes to obtain the financing set forth in the DIP Credit Agreement by providing unsecured administrative priority claims pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code.

25. The Debtor's liquidity needs can be satisfied only if the Debtor is authorized to borrow under the DIP Facility and to use such proceeds to fund its operations. The DIP Lender is willing to provide the DIP Facility in exchange for the grant of an administrative priority expense claim pursuant to section 364(b).

26. The Debtor believes it would not be able to obtain postpetition financing or other financial accommodations from any alternative DIP Lender or on more favorable terms and conditions than those for which approval is sought herein.

27. Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

28. The Debtor submits that the circumstances of this case require the Debtor to obtain financing pursuant to section 364(b) and, accordingly, the DIP Credit Agreement reflects the exercise of its sound business judgment.

29. The terms and conditions of the DIP Credit Agreement are fair and reasonable and were negotiated in good faith. Accordingly, the DIP Lender and all obligations incurred under the DIP Credit Agreement should be accorded the benefits of section 364(e) of the Bankruptcy Code.

121255361_1

### The Automatic Stay Should Be Modified on a Limited Basis

30. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the administrative priority claims described above with respect to the DIP Lender and to perform such acts as may be requested to assure such priority status; and (ii) implement the terms of the proposed DIP Order.

31. Stay modifications of this kind are ordinary features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### Interim Approval Should Be Granted

32. Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

33. Pursuant to Bankruptcy Rule 4001(c), the Debtor requests that the Court conduct an expedited preliminary hearing on this Motion and (a) authorize the Debtor to borrow under the DIP Facility on an interim basis, pending entry of a final order, in order to (i) maintain and finance the ongoing operations of the Debtor and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

### Notice

34. This Motion has been served upon (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) PVI; (c) the Internal Revenue Service; (d) the twenty (20) largest unsecured creditors (unless a committee is formed in the interim); and (e) the DIP

121255361_1

Lender. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**; and grant such other and further relief as is just and proper.

Dated: December 23, 2019　　　　　　　　　　　　/s/ Lawrence G. McMichael
　　　　　　　　　　　　　　　　　　　　　　**DILWORTH PAXSON LLP**
　　　　　　　　　　　　　　　　　　　　　　Lawrence G. McMichael
　　　　　　　　　　　　　　　　　　　　　　Anne M. Aaronson
　　　　　　　　　　　　　　　　　　　　　　Jesse N. Silverman
　　　　　　　　　　　　　　　　　　　　　　1500 Market St., Suite 3500E
　　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19102
　　　　　　　　　　　　　　　　　　　　　　Telephone: (215) 575-7000
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (215) 575-7200

　　　　　　　　　　　　　　　　　　　　　　*Proposed Counsel for the Debtor*
　　　　　　　　　　　　　　　　　　　　　　 *and Debtor-in-Possession*

121255361_1