**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Involuntary Chapter 11 |
| | : | |
| Vascular Access Centers, L.P., | : | Case No. 19-17117 (AMC) |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION TO APPROVE DEBTOR'S INSURANCE PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING AND FOR RELATED RELIEF AND REQUEST FOR EXPEDITED HEARING**

The above-captioned debtor (the "Debtor") hereby moves the Court for permission (the "Motion") to enter into a commercial insurance premium finance agreement (the "Finance Agreement") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("FIRST Insurance") in order to obtain funding to pay its insurance premiums for its various Insurance Policies (defined below). A true and correct copy of the Finance Agreement is attached hereto as **Exhibit A**.

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested are 11 U.S.C. §§ 327 and 328, Federal Rule of Bankruptcy Procedure 2014 and Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania 2014-1.

**Background**

121278536_3

4.  On November 12, 2019 (the "Petition Date"), an involuntary petition was filed against the Debtor under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On November 13, 2019, the Debtor consented to the relief sought under Chapter 11. On November 25, 2019, the Court entered an order for relief.

5.  As of the date of the filing of this Motion, no official committee of unsecured creditors, trustee, or examiner has been appointed or designated in this case.

6.  The Debtor was founded by Dr. James McGuckin ("McGuckin") as a Pennsylvania limited partnership in 2005. Non-debtor Vascular Access Center, LLC ("VAC-LLC") is the Debtor's general partner. Dr. McGuckin is the Debtor's CEO and the sole member and manager of VAC-LLC.

7.  The Debtor operates its business through limited liability company subsidiaries, 10 of which have minority equity positions held by investors – generally referring physicians or practices. Those investors represent approximately 22% of the aggregate outstanding equity of the subsidiaries.

8.  The subsidiaries operate/manage various outpatient vascular access centers ("Centers"), whereby physician interventionalists perform dialysis access procedures and certain other vascular access procedures on patients with end-stage renal disease ("ESRD") and other vascular conditions or diseases. Physician interventionalists are physicians trained in interventional radiology, interventional nephrology, or vascular surgery with further training in using sophisticated imaging technology.

9.  Dr. McGuckin founded the Debtor with a mission of providing clinical excellence and unparalleled service in a convenient outpatient setting. Today, the Debtor has its corporate offices in Philadelphia, PA and owns 15 Joint Commission certified Centers in eight states, has a

fully integrated electronic medical records (EMR) system, employs approximately 100 full and part-time associates (non-physician) and services nearly 10,000 patient visits annually.

10. The Debtor was originally founded primarily to serve patients suffering with ESRD. There was a demand for expedient care for these hemodialysis ("HD") patients that the Company believed hospitals were simply not meeting in an efficient manner. Outpatient centers were then generally considered unconventional, making the competition minimal. Over time, however, improvements in technology and increases in medical reimbursement for various minimally invasive procedures made outpatient centers increasingly popular. In tandem, this also allowed for the expansion of the Company's service line offerings. In 2009, Peripheral Arterial Disease ("PAD") was officially launched as a companywide service line offering, with other minimally invasive therapies to follow. PAD remains the Company's highest revenue-yielding procedural line therapy on a per-treatment basis. The Company also offers other service lines, such as deep and superficial venous therapies, uterine artery embolization and kyphoplasty/vertebroplasty, as part of its diversification efforts.

11. Approximately 70% of the Debtor's revenues come from and are expected to continue to be derived from Medicare payments.

12. Approximately 20% of the Debtor's revenues come from and are expected to continue to be generated by patients who have private payors as the primary payor. The majority of such patients have insurance policies that reimburse the Company on terms and at rates higher than Medicare rates.

13. The Debtor operates Centers in the following locations: Prince George's County, Maryland; Pittsburgh, Pennsylvania; West Orange, New Jersey; Mays Landing, New Jersey;

Memphis, Tennessee, Bolivar, Mississippi; New Orleans, Louisiana; North Shore, Louisiana; Piscataway, New Jersey; and Brandywine, Maryland.

## Relief Requested

14. By this Motion, Debtor seeks entry of an order, pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code, authorizing Debtor to enter into the Finance Agreement to obtain funding to pay its premiums for its Insurance Policies.

15. The Debtor also requests authority to enter into additional agreements (the "Additional Agreements") with FIRST Insurance under substantially the same terms as the Finance Agreement in the future, without being required to file additional motions.

## The Need for Premium Financing

16. In connection with the operation of the Debtor's business and the management of its operations, the Debtor maintains numerous insurance policies, providing coverage for, among other things, professional liability, director and officer liability, crime, cyber liability, umbrella, general liability and property insurance (collectively, the "Insurance Policies"). The Debtor maintains the Insurance Policies through several different carriers and finances its premiums through FIRST Insurance.

17. The Debtor is required to maintain insurance coverage throughout the Chapter 11 proceedings in order to preserve the value of its business, property, and assets. The Insurance Policies are critical to the Debtor's day-to-day operations, as they protect the value of the Debtor's estate, provide coverage for fiduciaries, directors, and officers, and provide coverage for the Debtor to the extent of any liabilities incident to its operations.

18. To that end, the Debtor sought and received Court approval to continue its Insurance Policies uninterrupted and pay any pre-petition or other amounts related to such Policies. *See* D.I. 12, 54.

19. The Debtor has historically financed the premiums on their Insurance Policies with financing from FIRST Insurance. The Debtor's most recent agreement with FIRST Insurance ran from December 1, 2018 through November 30, 2019. The Debtor is now seeking to enter a new agreement with FIRST Insurance to cover its insurance premiums retroactive to December 1, 2019. The Debtor cannot pay the premiums on the Insurance Policies unless the Debtor receives financing and the Debtor only became aware of the terms upon which FIRST Insurance would provide the financing in late December 2019. Accordingly, to pay its insurance premium payments on its Insurance Policies in a timely fashion, and to avoid any risk to the continuation of its Insurance Policies, the Debtor is seeking an expedited hearing on this Motion.

20. Pursuant to the Finance Agreement, FIRST Insurance will provide financing to Debtor for the premiums on the Insurance Policies which are essential for the operation of Debtor's business. Under the Finance Agreement, the total premium amount is $251,817.50 and the total amount to be financed is $181,490.18. Under the Finance Agreement, Debtor will become obligated to pay FIRST Insurance the sum of $186,709.50 in addition to a down payment in the amount of $70,327.32 and the balance in nine monthly installments of $20,745.50 each. The installment payments are due on the first day of each month commencing on January 1, 2020; however, FIRST Insurance has agreed to finance the Debtor's premiums and accept the initial installment immediately upon approval of this expedited motion.

21. Debtor and FIRST Insurance have reached an agreement, subject to approval of this Court, that FIRST Insurance will receive adequate protection as follows:

    A.    Debtor will timely make all payments due under the Finance Agreement and FIRST Insurance is authorized to receive and apply such payments to the Indebtedness owed by Debtor to FIRST Insurance as provided in the Finance Agreement.

    B.    If Debtor does not make any of the payments due under the Finance Agreement as they become due, FIRST Insurance must provide the Debtor with notice of the default and provide the Debtor ten (10) days' written notice of such default. If the default is not cured within the ten (10) day period, FIRST Insurance can move the Court for relief from the automatic stay.

22.    As collateral to secure the repayment of the total of payments, any late charges, attorney's fees and costs under the Finance Agreement (the "Indebtedness"), the Debtor is seeking to grant FIRST Insurance a security interest in, among other things, the unearned premiums of the Insurance Policies. Debtor has been unable to find unsecured premium insurance financing.

23.    Pursuant to the terms of the Finance Agreement, the Debtor has agreed to appoint FIRST Insurance as its attorney-in-fact with the irrevocable power to cancel the policies and collect the unearned premium in the event that Debtor is in default of its obligations under the Finance Agreement and has not cured its default as provided herein.

24.    FIRST Insurance is extending financing under the Finance Agreement in good faith within the meaning of 11 U.S.C. §364(e).

25.    Debtor believes that the terms of the Finance Agreement are commercially fair and reasonable including the granting of a lien on the unearned premiums of the Insurance

Policies to FIRST Insurance. Debtor is required to maintain adequate insurance coverage and without it, would be forced to cease operations.

26. The Finance Agreement and the liens and security interests in the unearned premiums shall continue in full force and effect and Indebtedness due under the Finance Agreement shall remain due and owing notwithstanding: (i) the dismissal or closure of this case, (ii) the discharge of Debtor, or (iii) the confirmation of a plan of reorganization.

27. The Debtor also seeks authority to enter into additional agreements (the "Additional Agreements") with FIRST Insurance as may be necessary in the future.

28. The Additional Agreement would be under substantially the same terms as those set forth in the present Finance Agreement.

29. The relief requested by this Motion is warranted and appropriate under the circumstances. Debtor submits that authorization of the Finance Agreement will ensure that Debtor can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including Debtor's secured creditors.

**Basis for Relief**

30. Section 363(b)(1) of the Bankruptcy Code provides, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

31. Debtor submits that payment of premiums to maintain or obtain insurance coverage is necessary and appropriate and that the Court has already authorized the Debtor to maintain its Insurance Policies. *See* D.I. 54.

32. Moreover, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured post-petition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See, e.g., In re Ames Dep't Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); *see also In re Simasko Prod. Co.*, 47 B.R. 444, 448-49 (D. Colo. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate). Debtor's business judgment is that the post-petition entry into its insurance premium financing is in the best interests of its estate. Debtor is not aware of any insurance premium finance company that will provide insurance premium financing to Debtor on an unsecured basis.

33. In light of the importance of maintaining insurance coverage with respect to business activities and the preserving of Debtor's cash flow and estate by financing the insurance premiums, Debtor believes that it would be in the best interests of Debtor's estate and creditors to approve the Finance Agreement.

## Request for Expedited Motion

34. The Debtor has historically financed the premiums on their Insurance Policies with financing from FIRST Insurance. The Debtor's most recent agreement with FIRST Insurance ran from December 1, 2018 through November 30, 2019. The Debtor is now seeking to enter a new agreement with FIRST Insurance to cover its insurance premiums retroactive to December 1, 2019. The Debtor cannot pay the premiums on the Insurance Policies unless the

Debtor receives financing and the Debtor only became aware of the terms upon which FIRST Insurance would provide the financing in late December 2019. Accordingly, to pay its insurance premium payments on its Insurance Policies in a timely fashion, and to avoid any risk to the continuation of its Insurance Policies, the Debtor is seeking an expedited hearing on this Motion.

35. Accordingly, Dilworth requests that a hearing on the Motion be scheduled for January 13, 2020 at 9:30 a.m., on which date the Court already has scheduling a Hearing in this case.

## Notice

36. In accordance with Local Rule 5070-1 the Debtor has consulted with, and provided copies of the Motion to the (a) Office of the United States Trustee for the Eastern District of Pennsylvania; and (b) FIRST Insurance, neither of which have objected to having the matter heard on an expedited basis.

37. The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) the Debtor's insurers; and (e) FIRST Insurance. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

## No Prior Request

38. No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order,

substantially in the form attached hereto as **Exhibit B**, approving the Debtor's request for an expedited hearing, and for an order, substantially in the form attached hereto as **Exhibit C**, approving the Finance Agreement on the terms set forth herein.

Dated: January 3, 2020

BY: /s/ Lawrence G. McMichael
Lawrence G. McMichael
Anne M. Aaronson
Jesse N. Silverman
DILWORTH PAXSON LLP
1500 Market Street, 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile:   (215) 575-7200

*Proposed Counsel for the Debtor and Debtor-in-Possession*
