UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Vascular Access Centers, L.P., | : Case No. 19-17117 (AMC) |
| | : |
| Debtor. | : |
| | : |

INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING PURSUANT TO SECTIONS 363 AND 364 OF THE
BANKRUPTCY CODE, (II) GRANTING ADMINISTRATIVE PRIORITY CLAIMS
TO DIP LENDER PURSUANT TO SECTION 364 OF BANKRUPTCY
CODE, AND (III) SCHEDULING FINAL HEARING

Upon the motion (the "*Motion*") of Vascular Access Centers, L.P. (the "*Debtor*" or "*Borrower*"), as debtor and debtor-in-possession (a) for the entry of this Interim Order (the "*Interim Order*") and the Final Order (the "*Final Order*") authorizing the Debtor to (i) obtain loans and advances and other financial accommodations in an aggregate principal amount not to exceed $1,000,000 (the "*DIP Facility*" or "*DIP Loans*") pursuant to sections 363 and 364 of title 11 of the United States Code (the "*Bankruptcy Code*") by entering into a debtor in possession credit agreement (the "*DIP Credit Agreement*"), substantially in the form annexed to the Motion as **Exhibit B**, among the Debtor and Philadelphia Vascular Institute, LLC (the "*DIP Lender*"), (ii) execute and enter into the DIP Credit Agreement and the agreements and instruments contemplated thereby and to perform such other and further acts as may be required in connection with the DIP Credit Agreement, (iii) grant administrative priority claims to the DIP Lender in accordance with the DIP Credit Agreement, this Interim Order, and the Final Order to secure any and all of the DIP Obligations (as defined herein), and (iv) pending a final hearing on the Motion (the "*Final Hearing*"), obtain emergency funding under the DIP Credit Agreement to and including the date on which the Final Order is entered (the "*Interim Facility*"), (b) requesting modification of the

WM01/

121255669_1

automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the DIP Lender to implement the terms of this Interim Order and the Final Order, (c) in accordance with Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), requesting that this Court (the "***Bankruptcy Court***") schedule the final hearing (the "***Final Hearing***") for the entry of a Final Order on the Motion to be held within twenty-eight (28) days after the entry of this order (the "***Interim Order***"), and (d) requesting, pursuant to Rule 4001 of the Bankruptcy Rules, that an emergency interim hearing on the Motion (the "***Interim Hearing***") be held for the Court to consider entry of this Interim Order, which authorizes the Debtor to borrow funds under the DIP Credit Agreement, on an interim basis, up to an aggregate principal amount not to exceed $500,000 (the "***Interim Amount***"); and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Credit Agreement; and the Interim Hearing having been held and concluded on _____, 20__; and upon all of the pleadings filed with the Court, all evidence presented in support of this Interim Order, and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY PROVISIONALLY FINDS, FOR PURPOSES OF THIS INTERIM ORDER ONLY AND SUBJECT TO ADDITIONAL PROOFS AS MAY BE REQUIRED AT THE FINAL HEARING IN RESPONSE TO ANY OBJECTION RAISED PRIOR TO OR AT THE FINAL HEARING:**

A. On November 12, 2019 (the "***Petition Date***"), an involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed to commence this case. On November 25, 2019, an Order for relief was entered.

B. The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Notice of the relief sought by the Motion and the Interim Hearing was delivered via facsimile, electronic mail, and/or overnight delivery to the following: (i) the Office of the United States Trustee for the Eastern District of Pennsylvania; (ii) counsel for the Debtor's prepetition secured lender; (iii) the twenty (20) largest unsecured creditors; and (iv) counsel to the DIP Lender; and (v) all parties who have requested notice in this case. Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rules 2002 and 4001 in all respects for purposes of entering this Interim Order.

E. An immediate and critical need exists for the Debtor to obtain funds to continue the operation of its business.

F. The Debtor is unable to obtain the required funds on terms more favorable than those offered by the DIP Lender under the DIP Credit Agreement, this Interim Order, the Final Order and all other agreements, documents, notes and instruments executed and delivered pursuant hereto or thereto or in connection herewith or therewith (collectively with the DIP Credit Agreement, this Interim Order and the Final Order, the "***Postpetition Financing Documents***").

G. The Debtor has requested that, pursuant to the terms of the Postpetition Financing Documents, the DIP Lender make loans and advances and provide other financial accommodations

to the Debtor to be used by the Debtor solely in accordance with the terms of the Postpetition Financing Documents. The ability of the Debtor to continue its business and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such financing. The Debtor will suffer immediate and irreparable harm if the requested postpetition financing is not available on an interim basis.

H.      The DIP Lender is willing to extend the DIP Facility on an administrative priority claim basis, as more particularly described herein, pursuant to the terms and conditions of the Postpetition Financing Documents. The Debtor's entry into the Postpetition Financing Documents is fair and reasonable and is a sound, prudent exercise of its business judgment consistent with its fiduciary duties. Although the DIP Lender is or may be an insider of the Debtor, the Postpetition Financing Documents were negotiated in good faith between the Debtor and the DIP Lender, and the loans and extensions of credit provided for in the Postpetition Financing Documents constitute reasonably equivalent value and fair consideration. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's businesses, the management and preservation of its assets and properties, and the avoidance of irreparable harm to the Debtor, the operation of its business and the Debtor's estate, and is in the best interests of the Debtor, its estate and creditors.

I.      The DIP Credit Agreement provides for various customary Events of Default (as defined therein), including, failure to make payments when due; breach of certain covenants; breach of warranty; other defaults under Loan Documents; dissolution or cessation of business; dismissal of the bankruptcy case or conversion to a chapter 7 case; appointment of a chapter 11 trustee; appointment of an examiner with enlarged powers relating to the operation of the business of the Debtor; Financing Order reversed, stayed or rescinded or amended or supplemented by the

Court without written consent of the DIP Lender; attempts by the Debtor to obtain an order of the Bankruptcy Court or other judgment, which would invalidate, reduce or otherwise impair DIP Lender's claims or claim priority status; filing of pleadings by the Debtor affecting the priority claim status of DIP Lender's claims, invalidation or subordination of the priority claim status, the confirmation of a plan which does not contain a provision for payment in full in cash of all obligations of the Debtor to DIP Lender; filing of a motion by the Debtor requesting, or entry of an order granting, any priority claim which is senior to the DIP Lender's claims. Each of the Event of Default provisions in the DIP Credit Agreement are expressly approved on an interim basis upon entry of this Interim Order, pending entry of the Final Order.

J. The DIP Credit Agreement provides that the final maturity date (the "*Termination Date*") shall be the earliest of the following: (a) December 31, 2020; (b) if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (i) the effective date of such plan of reorganization or (ii) the sixtieth (60th) day after the date of entry of the confirmation order; (c) acceleration by Lender of the Obligations due to the occurrence of an Event of Default; (d) the indefeasible payment in full of all Obligations owing under the DIP Facility; or (e) upon conversion or dismissal of the Case. No funds will be advanced subsequent to the Termination Date.

K. Based on the record before the Court, the terms of the Postpetition Financing Documents, pursuant to which the DIP Loans, advances and other credit and financial accommodations will be made or provided to the Debtor by the DIP Lender, in each case have been negotiated in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, its estate and creditors. The DIP Lender is extending the

DIP Facility to the Debtor in good faith, and the DIP Lender is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

L. It is in the best interests of the Debtor's estate that it be allowed to finance its operations under the terms and conditions set forth herein and in the Postpetition Financing Documents. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order.

M. PVI, which asserts that it holds a prepetition secured claim, is prepared to consent to the granting of unsecured administrative priority claims on the terms and conditions set forth in the DIP Credit Agreement and this Interim Order.

N. Good cause has been shown for the immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c). In particular, the permission granted herein for the Debtor to execute the Postpetition Financing Documents and to obtain financing pending the Final Hearing is necessary to avoid immediate and irreparable harm to the Debtor and its estate. Entry of this Interim Order is in the best interest of the Debtor, its estate, and creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ON AN INTERIM BASIS ONLY PENDING ENTRY OF THE FINAL ORDER:**

1. **Motion Granted.** The Motion is granted on an interim basis on the terms and conditions set forth herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits or, to the extent applicable, deferred until the hearing on the Final Order. This Interim Order shall become effective immediately upon its entry. To the extent the terms of the other Postpetition Financing Documents differ from or are inconsistent with the terms of this Interim Order, this Interim Order shall control.

121255669_1

2. **DIP Credit Agreement.** The Debtor is hereby (i) authorized to enter into the DIP Credit Agreement, substantially in the form filed with the Court as Exhibit B to the Motion, and the other Postpetition Financing Documents, and (ii) authorized to borrow on an interim basis up to the aggregate principal amount of $500,000 in accordance with the terms and conditions of the Postpetition Financing Documents. All obligations owed to the DIP Lender under, or in connection with, the Postpetition Financing Documents, including, without limitation, all obligations loans, advances, letters of credit and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the Postpetition Financing Documents, and any and all other obligations at any time incurred by any of the Debtor to the DIP Lender, are defined and referred to herein as the "***DIP Obligations.***"

3. **Conditions Precedent.** The DIP Lender shall have no obligation to lend under the DIP Credit Agreement unless and until the conditions set forth in the DIP Credit Agreement have been satisfied or waived in accordance with the DIP Credit Agreement.

4. **Interim Borrowing.** The Debtor is authorized to borrow up to the Interim Amount in accordance with the budget attached hereto as Exhibit 1 (the "***Budget***"), on an interim basis through and including the date of the Final Order.

5. **Binding Effect.** Upon execution and delivery of the Postpetition Financing Documents, the Postpetition Financing Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms; *provided, however*, that notwithstanding any other provision of this Interim Order or of the other Postpetition Financing Documents, the Debtor shall not incur DIP Obligations in the principal amount of more than the Interim Amount. No obligation, payment, or transfer under this Interim Order or the other Postpetition Financing Documents shall be stayed, restrained, voided or recovered under the

121255669_1

Bankruptcy Code or any applicable nonbankruptcy law, or subjected to any defense, reduction, setoff, recoupment or counterclaim.

6. **Use of Lender Funds.** The Debtor may use the loans or advances made under, or in connection with, the Postpetition Financing Documents solely as provided in this Interim Order and in accordance with the Budget. From and after the Petition Date, amounts loaned and advanced under, or in connection with, the Postpetition Financing Documents shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except (a) to fund working capital requirements and capital expenditures in accordance with the terms of the Budget, including the allowed fees and expenses of attorneys and financial advisors or other consultants of the Debtor and any Committee duly retained pursuant to sections 327 and 1103 of the Bankruptcy Code (including, without limitation, a claims and noticing agent), which have been allowed by the Court, but only to the extent such fees and expenses are provided in the Budget during the administration of the Chapter 11 Case (the "***Professional Fees***"); (b) to fund the payment of interest accrued on the DIP Loans; and (c) to pay the Lender's Fees and Expenses (as defined in the DIP Credit Agreement) in an amount not to exceed $5,000.00 ("***DIP Lender Fees***"); *provided, however*, that the foregoing shall not be construed as consent to the allowance of any of the Professional Fees referred to above and shall not affect the right of any party in interest to object to the allowance and payment of any such fees and expenses of professionals.

7. **Interest.** Interest on the DIP Obligations shall accrue at the rates (including any default rates) and be paid in accordance with the terms and provisions of the Postpetition Financing Documents.

121255669_1

8. **Fees.** The DIP Lender Fees are hereby authorized and shall be paid in accordance with the terms and provisions of this Interim Order and, to the extent not inconsistent with this Interim Order, the Postpetition Financing Documents.

9. **Priority of DIP Obligations.** All DIP Obligations (subject to the Carve-Out (as defined herein)) hereby constitute, under sections 364(b) and 503(b)(1) of the Bankruptcy Code, allowed administrative expense claims (the "*Priority Claims*") against the Debtor, subject to the Carve-Out.

10. **Survival.** The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization of the Chapter 11 Case (and pursuant to section 1141(d) of the Bankruptcy Code, the Debtor hereby waives such discharge); (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any successor case; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Case or any successor case, provided however that the Priority Claims shall survive only to the extent permitted by applicable law. The terms and provisions of this Interim Order, including the claims and other protections granted to the DIP Lender pursuant to this Interim Order and/or the Postpetition Financing Documents, notwithstanding the entry of any such order, shall continue in the Chapter 11 Case, in any successor case, or following dismissal of the Chapter 11 Case or any successor case, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility are terminated.

11. **Carve-Out.** The claims granted hereunder to the DIP Lender shall be subordinate to payment of the Carve-Out. As used in this Interim Order, "*Carve-Out*" means (a) the payment

of Allowed Professional Fees that were incurred prior to an Event of Default or the Termination Date (whether approved and paid before or after such Event of Default or the Termination Date); (b) the payment of Allowed Professional Fees that were incurred after an Event of Default or the Termination Date in an amount not to exceed $100,000, minus any retainers still being held and available for application to such outstanding professional fees and expenses, provided that nothing herein shall be deemed a waiver of the rights of DIP Lender to object to any requests for allowance of any such fees or expenses; and (c) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and to the Clerk of the Bankruptcy Court; provided, that nothing herein shall be deemed as a waiver of the rights of Lender to object to any requests for allowance of any fees or expenses.

12. **Limitation on Use of Carve-Out.** No Lender Funds or the Carve-Out may be used to challenge the amount, validity, priority or enforceability of, or assert any defense, counterclaim or offset to, the DIP Credit Agreement or the claims and interests of the DIP Lender with respect thereto or otherwise to assert any claim, cause of action, objection, or litigate (including, without limitation, commencing adversary proceedings, motions, contested matters, arbitrations, mediations, or other similar proceedings), against the DIP Lender or to challenge any payment of transfer to the DIP Lender.

13. **DIP Lender Rights.** The entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of the DIP Lender under the Bankruptcy Code or under any non-bankruptcy law to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers), or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a

chapter 11 plan or plans, or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

14. **Termination.** Notwithstanding any provision of this Order or in any of the Postpetition Financing Documents, on the Termination Date (as defined in the DIP Credit Agreement), (i) the Debtor shall no longer be authorized to borrow funds or incur indebtedness under the Postpetition Financing Documents or this Interim Order or to use any of the DIP Loans already received, and (ii) any obligations of the DIP Lender to make loans or advances or issue letters of credit hereunder or under the other Postpetition Financing Documents automatically shall be terminated.

15. **Survival After Termination.** Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits and protections provided to the DIP Lender under this Interim Order and the Postpetition Financing Documents shall survive such Termination Date. Upon such Termination Date, the principal of and all accrued interest and fees and all other DIP Obligations shall be immediately due and payable and the DIP Lenders shall have all other rights and remedies provided in this Interim Order, the other Postpetition Financing Documents, and applicable law.

16. **Automatic Stay Modification.** The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Lender (i) to file any documents appropriate in its discretion, (ii) assess, charge, collect, advance, deduct and receive payments, including all interest, fees, costs, and expenses permitted under the Post-Petition Financing Documents, and (iii) upon the occurrence and during the continuation of any Event of Default, and upon notice as provided for herein, without further order of or

application to this Court, to exercise all rights and remedies provided for in the Postpetition Financing Documents or under applicable law.

17. **No Waiver of Remedies.** The failure or delay by the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order or any other Postpetition Financing Documents shall not constitute a waiver of any of its rights.

18. **Successor and Assigns.** The provisions of this Interim Order shall be binding upon and inure to the benefit of each of the DIP Lender and the Debtor and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of any of the Debtor, its estate, or with respect to the property of any of its estate) whether in the Chapter 11 Case, in any successor case, or upon dismissal of any such chapter 11 or chapter 7 case.

19. **Additional Assurances.** The Debtor is authorized and directed to do and perform all acts to make, execute and deliver all instruments and documents, and shall pay fees and expenses that may be required or necessary for the Debtor's performance under the Postpetition Financing Documents, including, without limitation, (i) the execution of the Postpetition Financing Documents and (ii) the payment of any fees or other expenses described or provided in the Postpetition Financing Documents as such become due.

20. **Limits on Lender Liability.** Nothing in this Interim Order or in any of the Postpetition Financing Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from any and all activities by the Debtor in the operation of its business in connection with the Debtor's post-petition restructuring efforts.

21. **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification of Stay of this Interim Order.** The DIP Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances made hereunder, or any claim or priority authorized or created hereby. Any claims or priorities granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

22. **Debtor's Waivers.** At all times during this Case, and whether or not an Event of Default has occurred, absent consent of the DIP Lender, the Debtor waives any right that it may have to seek authority to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Post-Petition Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Agreement, provided however, that the DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Lender.

121255669_1

23. **No Third Party Rights.** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

24. **Reporting.** The Debtor shall keep its books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtor's business. The Debtor shall provide to the DIP Lender the reports of operations required to be provided by the DIP Credit Agreement.

25. **No Effect on Other DIP Lender Claim(s).** Notwithstanding anything in this Interim Order or any other Postpetition Financing Document, nothing in this Interim Order or any other Postpetition Financing Document affects the validity, enforceability, or security (or lack thereof) of any debt owed by the Debtor to the DIP Lender, or any claim asserted by the DIP Lender against the Debtor on account of such debt, other than the DIP Obligations, including without limitation, the validity, enforceability, and security (or lack thereof) of any alleged loans made by the DIP Lender to the Debtor before November 12, 2019.

26. **Notice of Final Hearing.** The Debtor shall promptly serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order and a notice of the Final Hearing (the "*Final Hearing Notice*") to be held on [ __Feb. 10__, 2020] at [__11:00__ _a.m.__] to consider entry of the Final Order on the following: (a) the U.S. Trustee; (b) PVI; (c) the twenty (20) largest unsecured creditors; and (d) all parties who have requested notice in this bankruptcy case.

27. Copies of the Motion, this Interim Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid promptly following the receipt of such request. The Final

-14-

Hearing Notice shall state that any party in interest objecting to the entry of the Final Order shall file written objections with the Court no later than 4:00 p.m. on [ __Feb. 3__, 2020], which objections shall be served so that the same are received on or before such date and time by: (a) counsel for the Debtor, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, PA, 19102, Attn: Lawrence G. McMichael; (b) the Office of the U.S. Trustee; and (c) the DIP Lender.

28. **Waiver of Any Applicable Stay.** Any applicable stay is hereby waived and shall not apply to this Interim Order.

29. **Finding of Fact and Conclusion of Law.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules and shall take effect and be fully enforceable immediately upon execution hereof.

30. **Jurisdiction.** The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _____, 2020

_____
ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

121255669_1