IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: <br><br> VASCULAR ACCESS CENTERS, L.P., <br><br> Debtor. | Chapter 11 <br><br> Case No. 19-17117-AMC |

**MOTION FOR AN ORDER ENFORCING THE AUTOMATIC STAY AS TO ACTIONS AGAINST THE DEBTOR'S NON-DEBTOR SUBSIDIARY LIMITED LIABILITY COMPANIES AND PHILADELPHIA VASCULAR INSTITUTE PURSUANT TO 11 U.S.C. §§ 362(a) AND 105(a) OR, ALTERNATIVELY, EXTENDING THE STAY PURSUANT TO 11 U.S.C. § 105(a)**

Stephen V. Falanga, in his capacity as Chapter 11 Trustee (the "Trustee") for the estate of Vascular Access Centers, L.P. (the "Debtor" or "VAC"), by and through his counsel, Walsh Pizzi O'Reilly Falanga LLP, hereby moves (the "Motion") pursuant to Sections 362 and 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 9014 of the Federal Rules of Bankruptcy Procedure and Rule 9014-3 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Pennsylvania for the entry of an Order enforcing the automatic stay imposed by Section 362 of the Bankruptcy Code as to actions against the Debtor's non-debtor subsidiary limited liability companies and Philadelphia Vascular Institute, LLC, and respectfully represents the following:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

4. On November 12, 2019 (the "Petition Date"), an involuntary petition was filed

1

against the Debtor for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). The Debtor consented to the relief, and an Order for relief was entered on November 25, 2019.

5. On motion for an Order dismissing the Bankruptcy Case or, alternatively, appointing a chapter 11 trustee [Dkt. No. 52], the Court entered an Order approving the Trustee's appointment as Chapter 11 Trustee on February 12, 2020 [Dkt. No. 245].

6. As this Court recognized in its February 7, 2020 Opinion, the Debtor conducts its business through several limited liability company subsidiaries throughout the United States (the "Centers" or "VAC Centers"), in which it employs, through Philadelphia Vascular Institute, LLC ("PVI"), more than 100 physicians and other employees to provide outpatient services to patients requiring vascular access procedures Dkt. No. 234 at 2.

7. The Debtor, which staffs its Centers in part through PVI which directly employs the physicians operating at the Centers as well as other healthcare personnel, generally operates as part of one unified whole together with the Centers and PVI. *See* Dkt. No. 234 at 2.

8. The Debtor holds the majority ownership stake in each of the Centers.[1]

9. In addition to its ownership interests in the Centers, the Debtor's business is structured such that the Debtor has historically been responsible for satisfying the Centers' financial obligations and, in that regard, directly pays creditors of the Centers for utility, rent, and other obligations incurred by the Centers during the course of their operations.

10. The viability of the Debtor and its estate, which includes its substantial ownership

---

[1] The Debtor's percentage ownership interest in each of the Centers is as follows: Vascular Access Center Atlantic County, LLC (85.36%); Vascular Access Center Central Jersey, LLC (100%); Vascular Access Center Bolivar County, LLC (78.72%); Vascular Access Center West Orange, LLC (100%); Vascular Access Center Pittsburgh, LLC (88.6%); Vascular Access Center North Shore, LLC (81.96%); Vascular Access Center New Orleans, LLC (64.48%); Vascular Access Center South Maryland, LLC (62.99%); and Vascular Access Center Memphis, LLC (78.73%).

interests in the non-debtor Centers, as well as the Debtor's ability to preserve its value as a going concern, depends on the performance and profitability of the Centers. This, in turn, depends on the Centers' ability to continue their day-to-day operations unimpeded by challenges and distractions that may detract from their business operations and jeopardize the Debtor's ability to reorganize or otherwise exit from bankruptcy.

11. Since the Trustee's appointment, and in furtherance of resolving the bankruptcy case, the Trustee has begun the process of pursuing a traditional restructuring of the Debtor which might include a sale of some under-utilized Centers to facilitate such a restructuring or the possible sale of all or most Centers to one or more interested buyers. In this regard, the Trustee has retained SSG Advisors, LLC ("SSG") as investment banker to assist with implementing a possible sale of some or all of the Debtor's Centers.

12. Given the interdependence among the Debtor, the VAC Centers, and PVI with respect to the operation of the Debtor's business, it is the Trustee's position that actions taken by creditors or other parties-in-interest against the VAC Centers and PVI at this critical stage would significantly impede the Trustee's ability to formulate and effectuate a plan in this case.

13. Accordingly, given the nature of the Debtor's relationship with the Centers and PVI, to the extent there is any ambiguity that the provisions of the automatic stay apply to actions taken by creditors or other parties-in-interest against the non-debtor VAC Centers or PVI, by this Motion, the Trustee seeks an Order enforcing the automatic stay as to actions against the Centers and PVI pursuant to Sections 362(a) and 105(a) of the Bankruptcy Code.

## LEGAL ARGUMENT

### A. THE AUTOMATIC STAY IMPOSED BY SECTION 362(a) SHOULD BE ENFORCED AS TO ACTIONS AGAINST THE VAC CENTERS AND PVI

14. Section 362(a)(1) of the Bankruptcy Code operates to stay all actions against the

3

debtor that were, or could have been, commenced prior to the bankruptcy case or to "recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

15. Similarly, Section 362(a)(3) of the Bankruptcy Code imposes a stay, "applicable to all entities, of…any act to obtain possession of property of the estate or of property from the estate or to exercise control of property of the estate[.]" 11 U.S.C. § 362(a)(3).

16. While the automatic stay typically applies to actions against the debtor in a bankruptcy case, courts have long recognized that, "where unusual circumstances exist, the § 362(a) automatic stay may be extended to non-debtor third parties." *In re Union Trust Philadelphia, LLC*, 460 B.R. 644, 657 (E.D. Pa. 2011) (citing *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1991)); *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

17. Circumstances justifying the imposition of the stay have been found where "there is such identity between the debtor and the third-party" such that the debtor is effectively the real party in interest such that a judgment against the third-party would essentially operate as a judgment against the debtor. *Stanford v. Foamex L.P.*, No. 07-4225, 2009 WL 1033607 at *1 (E.D. Pa. Apr. 15, 2009) (citing *McCartney*). Likewise, application of stay protection to non-debtor third parties may be warranted where it is "essential to the debtor's efforts of reorganization." *Id.*

18. Courts of other circuits have observed that actions "taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the automatic stay provision." *In re Nat. Century Financial Enterprises, Inc.*, 423 F.3d 567, 578 (6th Cir. 2005) (quoting *In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997)); *see also Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can apply to non-debtors,

4

but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are…actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant") (internal quotations and citations omitted).

19. In evaluating the propriety of affording automatic stay protection to non-debtor third parties, the court in *In re Union Trust* determined that the Bankruptcy Court had properly applied automatic stay protection to individual members of the debtor-limited liability company. There, the court concluded that the bankruptcy court made sufficient factual findings to demonstrate unusual circumstances warranting stay protection. Specifically, the court found that the non-debtor third-parties: (1) were substantially involved in the debtor's day-to-day operations; (2) were active participants in the debtor's reorganization efforts; (3) had executed personal guarantees on loan obligations in favor of the debtor in order to fund successful reorganization; and (4) made personal payments to the Internal Revenue Service on behalf of the debtor. 460 B.R. at 658.

20. Reaching the same conclusion, the court in *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) concluded that enforcement of the automatic stay as to state court actions against non-debtor third parties was appropriate "(1) because the Debtors owe potential contractual and common law duties to indemnify the Non-Debtors, the interest of the Debtors and Non-Debtors in the state action are identical, and (2) the diversion of resources caused by the state action against the Non-Debtors will impact the Debtors' ability to engage in timely and effective reorganization." *Id.* Similarly, in *In Re Linear Electric Company, Inc.*, 852 F.3d 313 (3d Cir. 2017), the Third Circuit affirmed the bankruptcy court's determination that a creditor violated the automatic stay where the creditor asserted post-petition liens against non-debtor

developers which impacted amounts due from such non-debtor developers to the debtor's bankruptcy estate. *See Cooper Electric Supply Co. v. Linear Electric Co., Inc.*, No. 15-06429 (SDW), 2016 WL 781770 at *4 (D.N.J. Feb. 29, 2016), *aff'd sub nom. In Re Linear Electric Company, Inc.*, 852 F.3d 313 (3d Cir. 2017); *see also Greate Bay Casino Corporation v. Greate Bay Hotel and Casino, Inc.*, No. 99-1499, 1999 WL 378758 at *5 (D.N.J. June 10, 1999) (affirming Bankruptcy Court's determination that the automatic stay applied to an agreement between non-debtor third parties where enforcement of the agreement would have a detrimental impact on property of the debtor's estate).

21. An Order enforcing the automatic stay with respect to actions against the VAC Centers and PVI is warranted in this case to preserve the Debtor's going concern value and ability to emerge from bankruptcy.

22. The Debtor derives nearly one hundred percent (100%) of its revenue from payments for services rendered to patients at the VAC Centers. The Debtor has historically been responsible for satisfying the Centers' financial obligations and continues to directly pay creditors of the VAC Centers for rent, utilities, and other expenses. *See* Dkt. No. 17, ¶ 19. As the Debtor stated in its Cash Collateral Motion early in these bankruptcy proceedings:

> All government and private insurance payments for services are deposited into the checking account of the [Center] that performed the service. The Debtor then periodically sweeps the [Centers'] checking accounts to fund operating expenses for itself and the [Centers], which are paid through the Debtor's master checking account.

*Id.*; *See also* Transcript of Hearing on Motion to Dismiss the Involuntary Chapter 11 Case With Prejudice before The Honorable Ashely M. Chan, Testimony of Mark Tucci, February 6, 2020, at 268:10-18 [hereinafter, "Hr. Tr."] ("the way the money flow works, there's a master checking account where all funds from each of the individual subsidiaries are swept in order that we can pay

for the services provided to those subsidiaries in terms of staff, physicians, rent, equipment, et cetera").

23. Absent an Order enforcing the automatic stay as to actions against the VAC Centers and PVI, the Debtor could face significant harm to its ability to generate and collect the revenue needed to survive in bankruptcy. Moreover, litigation or other action against the VAC Centers would invariably require the time, effort and expense of the Debtor, the Trustee and his professionals given the Debtor's substantial and, in certain cases, complete ownership interest and control of the VAC Centers resulting in additional burden to the detriment of estate assets during a critical time in the Debtor's bankruptcy, depriving the Debtor of the benefit of the "breathing spell" to which it is entitled and of which it is in great need.

24. These events would serve only to impede the Trustee's efforts to effectively manage the Debtor's affairs and obstruct the Debtor's ability to successfully reorganize or otherwise emerge from Chapter 11 in an already difficult environment.

25. PVI, currently, is likewise critical to Debtor's business as the Court and parties-in-interest recognized at the time of the Trustee's appointment. The Trustee understands that PVI was formed as the vehicle to employ the physicians performing services at the VAC Centers to comply with applicable law governing the employment of physicians and the practice of medicine in certain states in which the Debtor operates.[2] Without PVI, or an entity to replace PVI, at least certain of the VAC Centers could not operate. *See* Hr. Tr. at 269:23-270:5. While the Trustee has been investigating a suitable alternative to the use of PVI in connection with the Debtor's

---

[2] *See* Hr. Tr. at 269:23-270:5 ("PVI or Philadelphia Vascular Institute is the entity which employs our physicians…this relationship arrangement has been in place since the inception of the business for a couple reasons. One, is that the doctors need a practice to work for. Doctors cannot work for Vascular Access Centers LP or for the LLCs directly, because it would violate corporate practice in medicine statutes").

7

operations, until such time as that is achieved, the Trustee believes the enforcing the stay with respect to actions against PVI that impact the Debtor or its Centers is appropriate and necessary.

26. As such, until it is substituted or replaced, PVI is essential to preserving the Debtor's value as a going concern and to ensure the VAC Centers are properly staffed and able to provide the services necessary to generate revenue. Actions against PVI would therefore directly, and irreparably, damage the Debtor's ability to restructure or sell its assets and exit bankruptcy.

27. Accordingly, while the protections afforded by the Bankruptcy Code are effective automatically and by operation of law, the Trustee submits that the relief requested herein is necessary to ensure the compliance of creditors, contract counterparties, and other interested parties by precluding actions which might, on their face, appear unrelated to the Debtor and its estate at this important stage of the Debtor's Chapter 11 case.

28. For the foregoing reasons, the Trustee, in an exercise of his fiduciary duties and business judgment, respectfully submits that an Order enforcing the automatic stay as to actions against the VAC Centers and PVI pursuant to 11 U.S.C. §§ 362(a), (c) and 105(a) is necessary and appropriate in this case.

    **B.**    **ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER SECTION 105(a) TO EXTEND AUTOMATIC STAY PROTECTIONS TO THE VAC CENTERS AND PVI**

29. To the extent the Court is not inclined to enforce the automatic stay as to the VAC Centers and PVI under Section 362(a), the Trustee respectfully submits that the Court should issue an order extending the stay to actions against the VAC Centers and PVI pursuant its authority under 11 U.S.C. § 105(a).

30. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

31. Section 105(a) provides an independent basis to apply the automatic stay as to actions against the VAC Centers and PVI to the extent the Court determines the automatic stay does not apply pursuant to Section 362(a) alone. *See In re LTV Steel Co., Inc.*, 264 B.R. 455, 462 (Bankr. N.D. Ohio 2001) ("Although Debtors' request is couched as a motion for an injunction, its thrust is to enforce the automatic stay. A motion is an appropriate method of bringing the issue before the Court"); *see also In re Nat. Century Financial Enterprises, Inc.*, 423 F.3d 567, 579 (6th Cir. 2005) ("Normally, a debtor initiates an adversary proceeding in order to request a § 105(a) preliminary injunction. On the other hand, a debtor is not required to initiate an adversary proceeding in order to move the bankruptcy court to enforce the automatic stay") (internal quotations and citations omitted).

32. Here, the factors considered in adjudicating a request to extend the automatic stay to non-debtor third parties under Section 105(a) militate in favor of extending the stay protections to the VAC Centers and PVI.

       i.     *Jurisdiction*

33. A threshold determination must be made as to whether the bankruptcy court has jurisdiction to extend the automatic stay to non-debtor third parties. Such jurisdiction exists where the action to be enjoined is "related to" the bankruptcy case which, as the Third Circuit has explained, means that the action "must affect the bankruptcy without the intervention of yet another lawsuit." *In re W.R. Grace & Co.*, 591 F.3d 164, 173 (3d Cir. 2009). In *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), the Third Circuit held "related to" jurisdiction applies to a proceeding where "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."

34. Here, any action or claim that could conceivably be brought against the VAC

Centers or PVI would unquestionably be "related to" the Bankruptcy Case. As set forth above, given the interrelationship among the Debtor, the VAC Centers, and PVI, any litigation involving the VAC Centers and PVI would inevitably require the time and expense of the Debtor, the Trustee and his professionals thus distracting them from the task of restructuring or otherwise successfully exiting the Debtor from this Chapter 11 case and depleting estate assets. Any such actions would also jeopardize the Debtor's ability to realize the revenue upon which it relies to sustain its operations, and adversely impact the Debtor's prospects of emerging from bankruptcy.

35. Once jurisdiction has been established, courts consider the following four factors: (1) whether there is a reasonable likelihood of a successful plan of reorganization; (2) whether irreparable harm would result absent the relief requested; (3) the balance of the harm to other parties; and (4) the public interest. *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616-617 (E.D. Pa. 2009). Each of these factors weighs in favor of extending the automatic stay to actions against the VAC Centers and PVI. None of the factors militates against extending the stay.

    ii.    *Likelihood of Successful Reorganization*

36. Since the Trustee's appointment, the Debtor has been able to secure much needed post-petition financing, remain current under its obligations, and continue operating as it moves toward emerging from bankruptcy via a restructuring or sale of all or some of its assets.

37. While cash flow is tight, the Trustee is pursuing both a restructuring and sale on a dual-track and believes there is a reasonable likelihood of confirming a successful plan allowing the Debtor to exit bankruptcy within a reasonable time. Accordingly, the Trustee respectfully submits this factor supports extending the stay to afford the Debtor the breathing spell to which it is entitled so the Trustee can focus his efforts on a strategy for emerging the Debtor from bankruptcy.

### iii. Irreparable Harm Would Result Absent the Relief Requested

38. The second factor weighs squarely in favor of extending the automatic stay to the VAC Centers and PVI.

39. As set forth above, the Debtor's prospects of confirming a plan and emerging from Chapter 11 will depend, in large part, on its ability to sustain its operations as a going concern and realize revenues for services performed at the VAC Centers.

40. Absent an extension of the stay, there is a possibility of litigation and collection action against the VAC Centers and PVI in various fora across several jurisdictions. In the event of such litigation, and given the interrelationship and interdependence of the Debtor, the VAC Centers, and PVI, the Debtor would likely be constrained to dedicate already scarce resources defending such action, thereby depleting the estate's assets and risking the immediate conversion of this Chapter 11 case to a fire-sale liquidation under Chapter 7 resulting in the forfeiture of potentially significant going concern value and the Debtor's ability to emerge from bankruptcy as an operating enterprise.

41. Given the already present need for additional post-petition financing to continue operating, being forced to engage in protracted and costly litigation defending actions against the VAC Centers and PVI would likely result in severe harm to the Debtor with the very real possibility that the Debtor would not emerge from Chapter 11.

### iv. The Balance of the Harm to Other Parties Favors the Requested Relief

42. Creditors, contractual counterparties, and other parties-in-interest would not be harmed by the enforcement or extension of the automatic stay to the VAC Centers and PVI. No party will be deprived of an opportunity to present their claims, to the extent any exist. The requested relief would only prescribe that those claims be presented for adjudication before the

Bankruptcy Court, which facilitates the efficient and economical administration of the estate, or that such parties obtain relief from the stay to the extent cause exists after notice and an opportunity to be heard.

43. For the avoidance of doubt, all parties-in-interest will be served with notice of this Motion and will be afforded an opportunity to object to the relief requested herein. Any harm to interested parties that may result from the enforcement or extension of the automatic stay is far outweighed by the significant and irreparable injury to the Debtor likely to result if such relief is not granted, as discussed in section (B)(iii), *supra*.

> v. *The Public Interest Favors the Requested Relief*

44. The final factor considers whether the public interest is served by granting the relief requested.

45. The nature of the Debtor's business, and that of the VAC Centers and PVI, is to provide vascular healthcare services to patients in the several states and communities in which they operate.

46. Enforcement or extension of the automatic stay would alleviate the Debtor from the likelihood of a depletion of its assets and resources to a point at which it may need to take measures to immediately wind-down its operations. Such measures would necessarily include ceasing operations at all or certain VAC Centers, which would serve only to deprive patients, and the community at large, of critical access to healthcare services.

47. The public interest is undoubtedly best served by preserving access to their healthcare providers, particularly during an unprecedented time in which healthcare institutions and medical staff are, in many cases, already strained to their limits.

48. Accordingly, this final factor favors enforcement or extension of the automatic stay

to the VAC Centers and PVI.

## RESERVATION OF RIGHTS

49.     For the avoidance of doubt, neither the contents of this Motion nor any actions taken by the Trustee pursuant to any relief granted in the proposed order is intended or should be construed as: (a) an admission as to the amount of, or basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Trustee's right to dispute any particular claim or lien on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtor's rights, remedies, claims, or causes of action under the Bankruptcy Code or any other applicable law.

## CONCLUSION

50.     For the foregoing reasons, the Trustee respectfully requests that the Court enter an Order in substantially the form of the proposed order submitted herewith, enforcing or, alternatively, extending, the automatic stay to actions against the VAC Centers and PVI and granting such other and further relief that the Court deems just and proper.

WALSH PIZZI O'REILLY FALANGA LLP
*Counsel to Chapter 11 Trustee*

Dated: June 8, 2020        By: _____
Christopher M. Hemrick (*Pro Hac Vice*)
Center Square, East Tower
1500 Market Street, 12th Floor
Ph: 973.757.1100 | F: 973.757.1090
chemrick@walsh.law