# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>VASCULAR ACCESS CENTERS, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 19-17117 (AMC) |

### DR. SALIL JOSHI'S MOTION FOR DETERMINATION THAT THE AUTOMATIC STAY IS NOT APPLICABLE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

Salil Joshi, M.D. ("Dr. Joshi"), by and through his undersigned counsel, hereby submits this Motion for a Determination that the Automatic Stay is Not Applicable or, In the Alternative for Relief from the Automatic Stay (the "Motion"), and respectfully submits the following:

### PRELIMINARY STATEMENT

1. Dr. Joshi files this Motion in the alternative and in the event that the Court grants the Trustee's Motion, which seeks an order extending an automatic stay to the non-debtor subsidiary limited liability companies and Philadelphia Vascular Institute, LLC (collectively the "Non-Debtors"). *See* Trustee's Motion [D.I. 385]; Dr. Joshi's Objection to the Trustee's Motion [D.I. 425]. As an employee of non-debtor Philadelphia Vascular Institute, LLC and co-owner of non-debtor limited liability companies, Dr. Joshi moves this Court for an order permitting Joshi relief from stay so that he may file claims against the Non-Debtors.

2. Dr. Joshi will be suffer significant, irreparable hardship if this Motion is not granted and he is not permitted to file claims against the Non-Debtors because (i) he would be denied the right to enforce his valid legal claims arising from the Non-Debtors' breaches of contract and tortious conduct; (ii) his medical career and professional reputation may be severely and

1

irreparably harmed; and (iii) he may be potentially forced into continued employment with the PVI and the Centers, despite his stated intention to terminate his employment.

3. For all of the reasons set forth below, Dr. Joshi respectfully requests that this Court grant the Motion.

## STATEMENT OF FACTS

4. Dr. Joshi is a physician licensed to practice medicine in the State of Tennessee and the State of Mississippi. *See* Exhibit "A" attached hereto, Certification of Dr. Joshi in Support of this Opposition to the Motion ("Joshi Cert."), at ¶2.

5. He maintains a board Certification in Interventional Radiology by the American Board of Radiology. *See* Joshi Cert., at ¶3

6. Dr. Joshi is currently an employee of non-debtor Philadelphia Vascular Institute, LLC ("PVI"). *See* Joshi Cert., at ¶4.

7. On or about August 18, 2015, Dr. Joshi executed an Employment Agreement with PVI (the "Agreement"). A true and correct copy of the unexecuted version of the Agreement is attached hereto as Exhibit "1." *See* Joshi Cert., at ¶5.

8. On or about March 2, 2018, Dr. Joshi executed a First Amendment to Employment Agreement, which was effective as of October 1, 2017 (the "Amendment"). A true and correct copy of the unexecuted version of the Amendment is attached hereto as Exhibit "2." *See* Joshi Cert., at ¶6.

9. The Agreement and the Amendment set forth the terms of Dr. Joshi's employment with PVI. *See* Joshi Cert., at ¶7.

10. Pursuant to the Agreement, Dr. Joshi is to perform medical services at the Vascular Access Center of Bolivar County ("Bolivar Location") and the Vascular Access Center of

Memphis, and the Vascular Access Center of East Memphis (collectively, the "Centers"). *See* Joshi Cert., at ¶8; Ex. 1, Agreement, at p. 1.

11. Paragraph 7 of the Agreement contains fiduciary covenants and protective provisions whereby Dr. Joshi agreed to terms mandating non-competition and non-solicitation. *See* Joshi Cert., at ¶9; Ex. 1, Agreement, at pp. 12-13, ¶7.

12. In consideration for Dr. Joshi's performance of medical services and fiduciary covenants, PVI is to pay him base compensation pursuant to paragraphs 3(a)(i) and 3(a)(ii) of the Agreement. *See* Joshi Cert., at ¶10; Ex. A, Agreement at pp. 6-7, ¶3.

13. In addition, paragraph 3(c) of the Agreement, provided that PVI was to pay Dr. Joshi a:

> productivity incentive payment of ten per-cent (10%) of actual annual revenues collective (the 'Productivity Incentive') above the applicable bonus threshold for the VAC locations where Physician worked during the previous calendar year (the 'Bonus Threshold'). For the Memphis Location, the Bonus Threshold shall be Three Million Dollars ($3,000,000.00). For the Bolivar Locations, the Bonus Threshold shall be One and a Half Million Dollars ($1,500,000.00).

*See* Joshi Cert., at ¶11; Ex. 1, Agreement, at ¶3(c).

14. In early 2018, PVI advised that it would not be paying Dr. Joshi the productivity incentive he earned of approximately $300,000.00, in breach of the Agreement. *See* Joshi Cert., at ¶12.

15. So, PVI induced Dr. Joshi to execute the Amendment, whereby paragraph 3(c) of the Agreement, which addressed the calculation of the productivity incentive, was amended. *See* Joshi Cert., at ¶13.

16. The Amendment replaced Section 3(c) of the Agreement with the following new terms, in part:

> Productivity Incentive. In addition to base compensation, Physician shall be entitled to be paid five percent (5%) of the combined aggregate Net Profits of the

3

>Vascular Access Center of Memphis, Vascular Access Center of East Memphis, and Vascular Access Center of Bolivar County... ."

See Joshi Cert., at ¶14; Ex. 2, Amendment, at ¶2.

17. PVI has failed and/or refused to pay Dr. Joshi productive incentive bonuses pursuant to Paragraph 3(c) of the Agreement and the Amendment, since the third quarter of 2019. Presently, although Dr. Joshi continues to accrue damages, he is owed at a minimum $70,000 for the 4th quarter of 2019 and 1st quarter of 2020. However, because PVI has failed and/or refused to provide to Dr. Joshi with monthly (or quarterly) financial statements since September 2019, Dr. Joshi cannot ascertain the exact amount of money he is presently owed. See Joshi Cert., at ¶15.

18. In addition to being an employee of PVI, Dr. Joshi also owns each of the Centers, together with the Debtor and Dr. Jorge Salazar, pursuant to the terms of Operating Agreements that relate to each of the respective Centers. See Joshi Cert., at ¶16. Dr. Joshi invested $580,000 in the Centers, pursuant to the terms of the Operating Agreements. See Joshi Cert., at ¶17.

19. Well after Dr. Joshi entered into the Operating Agreements, the Agreement, and the Amendment, Dr. Joshi discovered that a *qui tam* complaint had been filed against the Debtor and PVI, and Dr. James McGuckin[1] (at the time the agreements and business transaction initially occurred) by a whistleblower who alleged that McGuckin instructed the whistleblower to perform unnecessary medical procedures in violation of federal law. See generally D.I. 234, Court's February 27, 2020 Opinion, at p. 5. Before Dr. Joshi invested in the Centers, neither the Debtor nor PVI ever disclosed to Dr. Joshi the existence of a civil investigative demand from the Civil Division of the United States Attorney's Office for the Southern District of New York ("DOJ") in connection with the *qui tam* complaint (the "DOJ Action"). See Joshi Cert., at ¶¶ 18, 19.

---

[1] Dr. McGuckin (and others) own PVI. See D.I. 324, Court Opinion dated February 7, 2020, at p. 5. The Debtor is not an owner of PVI. See id.

4

20. Dr. Joshi maintains that PVI and the Centers breached the Agreement and the Amendment and committed other tortious conduct by failing to disclose the existence of a DOJ Action in or around the time when PVI and the Centers insisted that the only way to financially support the Centers was to amend and restructure the productivity incentive — thereby inducing Dr. Joshi to execute the Amendment under fraudulent circumstances. It was based upon fraudulent misrepresentations that Dr. Joshi entered into the Amendment, thereby agreeing to forego more than $300,000 owed to him under the initial Agreement. *See* Joshi Cert., at ¶20.

21. Had Dr. Joshi known about the DOJ Action at the time he was contemplating entering into the Operating Agreements, Agreement, and/or the Amendment, he would never have completed the financial transactions and would never have gone into business with PVI and/or the Centers. *See* Joshi Cert., at ¶21.

22. On May 12, 2020, Dr. Joshi invoked Paragraph 8(b)(i) of the Agreement, which provides that: "Either Party may terminate this Agreement at any time by giving the other Party ninety (90) days written notice" ("Notice of Termination"). As such, Dr. Joshi advised PVI and the Centers that he intends to terminate his employment as of August 10, 2020. *See* Joshi Cert., at ¶22.

23. However, Dr. Joshi understands that PVI and the Centers have taken the position that Dr. Joshi cannot terminate his employment with PVI and leave the Centers. Upon information and belief, by way of email from their counsel, PVI and/or the Centers have challenged Dr. Joshi's Notice of Termination, claiming that the Debtor's bankruptcy action bars precludes any claims against PVI and prevents Dr. Joshi from terminating his employment on the grounds that PVI and/or the Centers have breached the Agreement and Amendment. To date, PVI and/or the Centers

have failed to provide Dr. Joshi with any definitive plan as to if and how his employment may be impacted by the Debtor's bankruptcy action. *See* Joshi Cert., at ¶23.

24.　Dr. Joshi has significant concerns that if PVI and/or the Centers are subject to an automatic stay and PVI ceases to operate, but attempts to improperly invoke the non-solicitation and non-competition provisions in the Agreement (which do not apply and should not be invoked), that he may be unreasonably denied the ability to practice medicine with another entity — thereby potentially damaging his medical career and professional reputation. *See* Joshi Cert., at ¶24.

25.　Dr. Joshi should not be barred from asserting legal claims against the PVI, and/or the Centers for breaches of contract, negligent misrepresentation, fraudulent misrepresentation, fraudulent inducement, fraud, breaches of implied covenants of good faith and fair dealing, statutory violations, and/or other tortious conduct.

26.　Dr. Joshi files this Motion because he will be severely prejudiced and suffer significant, irreparable hardship if the automatic stay is extended to include the Non-Debtors PVI and the Centers. This is particularly true if PVI and/or the Centers take the position that any automatic stay prevents Dr. Joshi from terminating his employment on the basis of the Debtor's and PVI's breaches of contract. If that is the case, an automatic stay essentially would bind Dr. Joshi to indentured servitude and force him to work for an employer against his will — such a result cannot possibly be just or reasonable. *See* Joshi Cert., at ¶25.

27.　If the Court extends the automatic stay to PVI and the Center, Dr. Joshi will be severely prejudiced and suffer significant, irreparable hardship if the Court fails to grant relief from the automatic stay to allow Dr. Joshi to pursue his legal claims against the Non-Debtors.

**RELIEF REQUESTED**

28. Dr. Joshi requests confirmation through a Court Order that the automatic stay is not applicable as to PVI and the Centers, or in the alternative, relief from the automatic stay imposed by section 362 of title 11 of the United States Code (the "Bankruptcy Code") so that he may pursue legal claims against PVI and the Centers, in the event that the Court grants the Trustee's Motion.

**LEGAL ARGUMENT**

29. Section 362 of the Bankruptcy Code provides that, upon filing a petition under Section 301, 302, or 303 of the Bankruptcy Code, a debtor's creditors are generally barred from commencing or continuing any action against the debtor to recover on or enforce a pre-petition debt. *See* 11 U.S.C. § 362.

30. Pursuant to Section 362 of the Bankruptcy Code, a Court shall grant relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

31. "Whether cause exists is determined by a case-by-case basis based on the totality of the circumstances." *In re Chandler*, 441 B.R. 452, 463 (Bankr. E.D. Pa. 2010).

32. "The determination is by its very nature an equitable determination that requires [a] [c]ourt to engage in a fact-sensitive inquiry as to whether the balance of hardships favors the [m]ovant." *Id.* (citing *In Re American Classic Voyages*, 298 B.R. 222, 225 (D. Del. 2003) ("To establish cause, the party seeking reliance from the stay must show that the balance of hardships from not obtaining relief tips significantly in its favor.").

33. Should the Court grant this Motion and allow relief from the automatic stay, Dr. Joshi intends to file claims against PVI and the Centers.

34. With respect to each these legal potential claims, a balancing of the hardships tips in Dr. Joshi's favor.

35. In the event that the Court grants the Trustee's Motion and extends the automatic stay to the Non-Debtors, Dr. Joshi should be permitted to pursue claims against PVI (and the Centers) for on-going failures to pay Dr. Joshi productivity bonuses. Dr. Joshi continues to be prejudiced by PVI and the Centers' failures to pay Dr. Joshi a productivity bonus for more than nine (9) months, resulting in damages totaling more than $70,000 (which continue to accrue).

36. Dr. Joshi should not be barred from pursuing his claims against PVI (and the Centers), in the event that the Court grants the Trustee's Motion. Given that PVI and the Centers are non-debtors, they will not sustain any hardship if the Motion is granted. Rather, the only result will be that the Non-Debtors will be subject to the same legal claims that would have been filed in another court if this matter was not pending in this Bankruptcy Court. Conversely, if the Court grants the Trustee's Motion and Dr. Joshi is not granted relief from the automatic stay to pursue claims against PVI and the Centers, Dr. Joshi will continue to be denied productivity bonus payments that continue to accrue, and he likely will be denied an opportunity to recover the full amount of his claims, which arose well before the Debtor (not PVI nor the Centers) filed a Petition.

37. In the event that the Court grants the Trustee's Motion and extends the automatic stay to the Non-Debtors, Dr. Joshi also seeks to lift the automatic stay to pursue claims against PVI (and the Centers) arising from their inducing Dr. Joshi to execute the Amendment and forfeit his right to a $300,000 bonus. Specifically, PVI and the Centers fraudulently and/or negligently misrepresented to Dr. Joshi the reason why the Amendment allegedly had to be signed and the reason why there were insufficient funds to pay Dr. Joshi his productivity bonus. Dr. Joshi reasonably relied upon those misrepresentations and was induced to sign the Amendment,

purportedly agreeing to forgo more than $300,000 and reduce his future bonuses. Neither PVI nor the Centers ever disclosed to Dr. Joshi that the DOJ Action was the reason why the productivity bonus was not paid and why the Amendment was purportedly necessary. Had Dr. Joshi known about the existence of the DOJ Action when he was presented with the Amendment, he would never have signed the document and he would have taken legal action sooner to protect his legal rights and his medical career. Dr. Joshi should be allowed to pursue PVI and the Centers for claims arising from their fraudulent and/or negligent misrepresentations and bad faith breaches of the Agreement and Amendment.

38. Given PVI and the Centers' fraudulent and bad faith conduct, the Court should grant relief from the automatic stay (in the event that the Court grants the Trustee's Motion). Dr. Joshi will be severely prejudiced if he is denied an opportunity to seek full recovery of more than $300,000. Conversely, PVI and the Centers (as non-debtors) will not sustain any hardship if the Court grants this Motion.

39. Dr. Joshi seeks relief from the automatic stay (in the event the Court grants the Trustee's Motion) so that he can enforce his termination rights under the Agreement and he can leave PVI's employment to work at any another practice. Dr. Joshi has reasonable, justifiable concern that PVI and/or the Centers may improperly attempt to stop him from leaving the practice and try to unreasonably invoke non-solicitation and/or non-compete provisions contained in the Agreement (even though the provisions do not apply). Dr. Joshi has provided notice that he intends to stop working at the Centers on or by August 10, 2020. Upon information and belief, by way of email from their counsel, PVI and/or the Centers have challenged Dr. Joshi's Notice of Termination, on the grounds that the Debtor's bankruptcy action bars precludes any claims against PVI and prevents Dr. Joshi from leaving the Centers on the grounds that PVI and/or the Centers

have breached the Agreement and Amendment. If Dr. Joshi is unable to leave the Centers and practice elsewhere, he will suffer significant hardship and substantial harm to his professional career and reputation. Conversely, PVI and/or the Centers will not incur hardship if the Court grants relief from an automatic stay. Accordingly, the Court should grant the Motion and afford Dr. Joshi a judicial forum wherein he can challenge any improper attempt to preclude him from practicing medicine at another provider or otherwise harm his medical career and/or professional reputation.

40. For all of the reasons set forth herein, the Court should find that PVI and the Centers are not subject to an automatic stay or, in the alternative, that Dr. Joshi is granted relief from the Bankruptcy Code's automatic stay with respect to his claims against the Non-Debtors, in the event that the Court grants the Trustee's Motion.

WHEREFORE, Creditor Salil Joshi respectfully requests that this Court enter an Order: (i) finding the automatic stay imposed by section 362 of the United States Bankruptcy Code does not apply to non-debtors, or (ii) in the alternative, granting relief from the automatic stay should the Court grant the Trustee's Motion [D.I. 385], and (iii) granting such additional relief as this Court deems necessary and proper.

Respectfully Submitted,

**BIELLI & KLAUDER, LLC**

Date: July 7, 2020

*/s/ Thomas D. Bielli*
Thomas D. Bielli, Esquire (No. 202100)
Kathleen J. Seligman, Esquire (No. 94272)
1500 Market Street, Suite 900
Philadelphia, PA 19102
Phone: (215) 642-8271
Fax: (215) 754-4177
tbielli@bk-legal.com
kseligman@bk-legal.com
*Counsel to Creditor Salil Joshi*