IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: <br><br> VASCULAR ACCESS CENTERS, L.P., <br><br> Debtor. | Chapter 11 <br><br> Case No. 19-17117-AMC |

**EXPEDITED MOTION FOR ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE, ON BEHALF OF THE DEBTOR, TO ENTER INTO A FIFTH POST-PETITION CREDIT AGREEMENT WITH WILLIAM WHITFIELD GARDNER, OBTAIN POST-PETITION FINANCING, GRANT LIENS AND SECURITY INTERESTS AND GRANTING OTHER RELIEF; AND (II) GRANTING REQUEST FOR EXPEDITED HEARING**

Stephen V. Falanga, in his capacity as Chapter 11 Trustee (the "Trustee") for the estate of Vascular Access Centers, L.P. (the "Debtor" or "VAC"), by and through his counsel, Walsh Pizzi O'Reilly Falanga LLP, hereby moves (the "Motion") pursuant to Sections 363 and 364 of the Bankruptcy Code, Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-1, for the entry of an interim Order ("Interim Order") authorizing the Trustee to enter into a fifth post-petition credit agreement on the terms and conditions set forth in the Binding Term Sheet attached as Exhibit "A" to the Declaration of the Trustee in support of this Motion (the "Post-Petition Credit Agreement") with William Whitfield Gardner ("Lender"), to obtain post-petition financing and granting liens and security interests to Lender, scheduling a final hearing to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis, and for other relief, and respectfully represents the following:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

4. On November 12, 2019 (the "Petition Date"), an involuntary petition was filed against the Debtor for relief under chapter 11 of title 11 of the United States Bankruptcy Code [DE 1] (the "Bankruptcy Case"). The Debtor consented to the relief [DE 3] and an Order for relief was entered on November 25, 2019 [DE 46].

5. On November 22, 2019, a motion was filed seeking an Order dismissing the bankruptcy case or, in the alternative, seeking the appointment of a chapter 11 trustee [DE 52]. On February 12, 2020, an Order was entered approving the Trustee's appointment as Chapter 11 Trustee in this case [DE 245].

6. Upon application by the Trustee, on March 18, 2020 and April 20, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a certain post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE 300 & 357 (collectively, the "First Order Authorizing Financing").

7. Pursuant to the First Order Authorizing Financing, the Trustee was authorized to borrow from Lender the amount of $350,000.00 (the "Initial Loan"), a substantial portion of which was used by the Trustee to fund the required down payment and first installment of the Debtor's renewed malpractice insurance policy premium, which was necessary for the Debtor to continue operating. *See generally* First Order Authorizing Financing.

8. Given the Debtor's continued need for funding, upon application by the Trustee, on June 17, 2020 and July 31, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a second post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE

407 & 461 (collectively, the "Second Order Authorizing Financing").

9. Pursuant to the Second Order Authorizing Financing, the Trustee was authorized to borrow from Lender an additional $500,000.00 (the "Second Loan"), which was used by the Trustee to fund the Debtor's continued post-petition business operations and to satisfy the July 2020 settlement payment due to the Department of Justice in the amount of $201,250.00.

10. On August 17, 2020 and September 28, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a third post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE 488 & 523 (collectively, the "Third Order Authorizing Financing").

11. Pursuant to the Third Order Authorizing Financing, the Trustee was authorized to borrow from Lender up to an additional $650,000.00 (the "Third Loan"), $580,000.00 of which has been disbursed to date, which was used by the Trustee to fund the Debtor's continued post-petition business operations and costs of administration.[1]

12. The Trustee advised Lender that the Third Loan would be sufficient to help fund the Debtor's post-petition operations for approximately thirty (30) to sixty (60) days, and that additional funding would likely be required thereafter for working capital unless the Debtor's revenue significantly improved. *See* Declaration of Stephen V. Falanga in Support of Motion, submitted herewith ("Falanga Decl.") at ¶11.

13. As the Trustee previously advised the Court, the Debtor had been able to continue operations by employing the financing from Lender along with certain stimulus funds from the Centers for Medicare & Medicaid Services ("CMS") (the "Stimulus Funds") to offset lost revenues

---

[1] Pursuant to the Post-Petition Credit Agreement for the Third Loan, $150,000 in funding available under the Third Loan was reserved for the hiring by the estate of one or more individuals on terms acceptable to Lender. To date, $80,000.00 of this $150,000 available under the Third Loan has been disbursed to the Debtor.

3

as a result of the Covid-19 pandemic. *Id.* at ¶12.[2]

14.  The Stimulus Funds have been exhausted and additional financing from Lender has been required to maintain continuity in the Debtor's business operations. *Id*. at ¶13.

15.  On October 5, 2020 and October 27, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a fourth post-petition credit agreement with Lender, and to obtain post-petition financing and granting liens, security interests, and other relief.  *See* DE 537 & 562 (collectively, the "Fourth Order Authorizing Financing").

16.  Pursuant to the Fourth Order Authorizing Financing, the Trustee was authorized to borrow from Lender up to an additional $500,000.00 (the "Fourth Loan"), all of which has been disbursed to date and used by the Trustee to fund the Debtor's continued post-petition business operations. *Id.* at ¶15.

17.  The Debtor now requires additional financing to fund its business operations and costs of administration over the next ninety (90) to one-hundred-twenty (120) days as the Trustee continues his efforts to reorganize or sell the Debtor. *Id.* at ¶16.

18.  Lender desires to support a reorganization of the Debtor and, as the majority owner of the Debtor, Lender has a substantial interest in the outcome of the Bankruptcy Case.  Lender has agreed to provide additional Post-Petition Financing to preserve the Debtor and the possibility of a reorganization in light of the Debtor's liquidity needs. *See* Falanga Decl., Exhibit A.

19.  Among other expenses, the Debtor is required to fund ongoing payroll obligations and other employee expenses, professional supplies for use at the Debtor's affiliated centers needed to perform the procedures that generate the Debtor's revenue, rent and equipment lease obligations, and

---

[2] As the Trustee has previously advised, the Debtor received the Stimulus Funds by virtue of the Debtor's participation in the CMS program.

continuing malpractice insurance premiums, all of which are essential to the Debtor's ability to continue operating. *Id.* at ¶17. These expenses are in addition to the costs associated with the administration of this bankruptcy case including payment of professional fees and expenses.

20. Since the Covid-19 pandemic in particular, the Debtor's daily and weekly cash collections have decreased substantially and absent a further infusion of liquidity the Debtor's current revenue will be insufficient to timely satisfy the Debtor's obligations. *Id.* at ¶18.

21. As such, the additional Post-Petition Financing[3] is required for the Trustee to address immediate operational and financial needs while he continues to pursue strategic alternatives to maximize value for the Debtor's creditors and stakeholders. *Id.* at ¶19. Currently, however, the Debtor is without an adequate source of working capital to fund its operations and costs of administration while in bankruptcy over the next ninety (90) to one-hundred-twenty (120) days. *Id.*

22. By this Motion, the Trustee seeks authorization to immediately borrow and deploy, on behalf of the Debtor, up to an additional $1,500,000.00 from the Lender on the terms and conditions set forth in the Binding Term Sheet. The salient terms are as follows:

| | |
|---|---|
| **Amount:** | Up to $1,500,000.00, to be loaned at Lender's sole and absolute discretion |
| **Term:** | Earlier of 90 days after Closing, or the entry of a final, non-appealable Order confirming a plan |
| **Interest:** | Prime Rate (as published in the Wall Street Journal on the Closing Date) plus one percent (1%) per annum |
| **Closing Fee:** | $0 |
| **Annual Fee:** | N/A |
| **Security:** | 1st/superpriority lien on all Collateral[4] |

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Falanga Declaration.
[4] The "Collateral" is set forth at length in the Binding Term Sheet attached as <u>Exhibit A</u> to the Falanga Declaration.

## LEGAL ARGUMENT

### A. THE POST-PETITION FINANCING SHOULD BE APPROVED UNDER SECTIONS 364(c) AND (d) OF THE BANKRUPTCY CODE

23.     Section 364 of the Bankruptcy Code authorizes the "obtaining of credit or the incurring of debt – (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien."  11 U.S.C. § 364(c).

24.     The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and a hearing, that the trustee is "unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(c).

25.     Similarly, Section 364(d) authorizes the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if (a) the trustee is unable to obtain such credit otherwise; and (b) there is adequate protection of the interest of the holder of the existing lien on the property of the estate. *See* 11 U.S.C. § 364(d).[5]

26.     In these circumstances, the "statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Assn.*

---

[5] In connection with the Trustee's Motion to approve the Initial Loan, three (3) parties asserted that they held one or more claims against the Debtor secured by existing liens on certain of the Debtor's property: Philadelphia Vascular Institute, LLC ("PVI"), Philips Medical Capital, LLC ("Philips") and TIAA Commercial Finance, Inc. ("TIAA"). The Court overruled PVI's limited objection at the interim hearing based on its prior determination that PVI had not extended credit to the Debtor. *See* DE 300 at 4. PVI did not object to entry of the final Order approving the Initial Loan. The limited objections of Philips and TIAA were consensually resolved with the Lender agreeing that his Post-Petition Lien would be subordinate to any valid, properly perfected liens held by TIAA or Philips subject to a reservation of rights, as more fully set forth in the Interim and Final Orders approving the Initial, Second and Third Loans. *See* DE 300 at 8-9; DE 357 at 9-10; DE 407, 461, 488 & 523. The provisions addressing the alleged liens of Philips and TIAA have been incorporated into the proposed Interim Order approving the Post-Petition Financing at issue in this Motion. As such, the Trustee is not aware of any valid, properly perfected liens that would be "primed" by this Motion other than that securing the Initial, Second, Third and Fourth Loans from Lender.

*(In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). A debtor need only demonstrate "a good faith effort that credit was not available without" the protections of Section 364(c) and 364(d). *See, e.g., In re Snowshoe Co.*, 789 F.2d at 1088. When there are few lenders likely, able, or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

27. The Trustee was unable to obtain unsecured credit allowable under Sections 503(b)(1) of the Bankruptcy Code as an administrative expense or to obtain from another lender the necessary post-petition financing on terms more favorable than those provided by the Lender in the Post-Petition Credit Agreement. *Id.* at ¶25. Given the time constraints and the Debtor's financial condition and existing and ongoing obligations, the Trustee does not believe it is feasible to obtain the necessary financing on an unsecured basis or on terms more favorable than those Lender has extended. *Id.* at ¶26.

28. Approval of the Post-Petition Financing is needed to help fund the Debtor's essential operating and administrative costs over approximately the next ninety (90) to one-hundred-twenty (120) days. *Id.* at ¶28. Uninterrupted access to working capital is necessary to, among other things, maintain the employee workforce and infrastructure, the servicing of patients and generation of revenue, and the preservation of estate assets. *Id.*

29. Financing on a post-petition basis is not otherwise available without the Debtor granting a superpriority lien on the Debtor's assets pursuant to Sections 364(c) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon

the property described in the Post-Petition Credit Agreement pursuant to Sections 364(c) and (d) of the Bankruptcy Code. *Id*. at ¶25.

30. The Trustee's negotiations with Lender have been arms-length and conducted on a good faith basis. The Lender is only willing to extend post-petition financing on the terms outlined above and set forth in detail in the Post-Petition Credit Agreement.

31. The Trustee respectfully submits that the Post-Petition Financing is the best and only readily available financing option available to the Debtor at this time under the circumstances of this case.

32. The terms of the Post-Petition Financing are substantially the same as those the Court previously approved in connection with the Initial Loan, Second Loan, Third Loan and Fourth Loan (collectively, the "<u>Prior Loans</u>"). As with the Prior Loans, the Trustee respectfully submits that the terms of the Post-Petition Financing are fair, reasonable, and adequate in that the terms do not prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, and they do not abridge the rights of other parties in interest. As contemplated by the policies underlying the Bankruptcy Code, the purpose of the Post-Petition Financing is to afford the Trustee the opportunity to maintain the value of the Debtor's estate while pursuing available strategic alternatives to maximize value for the Debtor's creditors and stakeholders. *See generally, In re First S. Sav. Assn.*, 820 F.2d 700, 710-15 (5th Cir. 1987).

33. Bankruptcy courts routinely defer to the estate representative's business judgment on most business decisions, including the decision to borrow money. *See, e.g., In re Curlew Valley Assocs.*, 14 B.R. 506, 511-14 (Bankr. D. Utah 1981) (holding that, in general, a bankruptcy court should defer to the estate representative's business judgment); *In re The Great Atlantic & Pac. Tea Co., Inc.*, 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016) ("The court should focus on the business judgment

of the trustee or debtor in possession, not on its own business judgment." (internal quotations omitted)); *In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla 2011) ("It is true that courts give deference to the decision of the trustee and will generally only deny approval unless the court finds that the trustee's decision is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice." (internal quotation marks omitted)); *In re Genesys Research Inst., Inc.*, No. 15-12794-JNF, 2016 Bankr. LEXIS 2376, at *62 (Bankr. D. Mass. June 24, 2016) (recognizing that the business judgment rule applies to any estate representative, including the Chapter 11 Trustee). Courts generally will not second-guess the estate representative's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley*, 14 B.R. at 513-14 (footnotes omitted).

34. The Trustee submits that he has exercised his sound and prudent business judgment in determining the necessity of the Post-Petition Financing and has further satisfied the legal prerequisites for incurring post-petition debt under the Bankruptcy Code. The Trustee submits that the terms of the Post-Petition Financing are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Trustee respectfully requests an Interim Order authorizing the Post-Petition Financing on the terms and conditions set forth in the Post-Petition Credit Agreement pursuant to Sections 364(c) and (d) of the Bankruptcy Code.

**B. THE DEBTOR'S REQUEST FOR INTERIM RELIEF IS APPROPRIATE**

35. As set forth above, the Trustee has determined that an immediate and critical need exists for the Debtor to obtain financing for working capital purposes in order to continue the operation of its business. The financing is necessary to ensure the Debtor has an adequate source of working capital to fund its operations and administrative costs while in bankruptcy over the next

ninety (90) to one-hundred-twenty (120) days.  Among other expenses, the Debtor is required to fund payroll obligations and rent payments at the end of November and early December, and each month thereafter.

36. Bankruptcy Rule 4001(c)(2) permits a court to approve a request to incur post-petition financing during the 14-day period following the filing of a motion requesting such authorization to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *Simasko*, 47 B.R. at 449.  After the 14-day period, a debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. *Simasko*, 47 B.R. at 449.  Under this standard, the Trustee respectfully submits that his request for entry of the Interim Order approving the Post-Petition Financing on an expedited timeframe and for the financing amounts requested herein, is appropriate and necessary.

## REQUEST FOR EXPEDITED HEARING

37. For the reasons stated herein, the Trustee is seeking to expedite the receipt of funding from the Post-Petition Financing and requests that a hearing on the Motion be scheduled on November 25, 2020, subject to the Court's schedule, or otherwise at the Court's earliest availability.

38. Pursuant to Rule 5070-1(g)(1), on November 23, 2020, the undersigned counsel for the Trustee sent an email to the following interested parties requesting their consent for the expedited consideration of this matter: (1) Office of the United States Trustee; (2) counsel for the Debtor; (3) counsel for Philadelphia Vascular Institute, LLC; (4) counsel for Lender; (5) counsel for Philips; (6) counsel for TIAA; and (7) counsel for PVI and Dr. McGuckin.  The email requested a response by 10 a.m. on November 24, 2020 if any party objected to an expedited hearing.  The Trustee has received no objections to an expedited hearing.

39. Prior to the filing, the Lender was provided a copy of the proposed form of Interim Order granting the Motion.

## **CONCLUSION**

40. For the foregoing reasons, the Trustee respectfully requests that the Court enter the proposed form of Interim Order submitted herewith on an expedited basis authorizing the Trustee to enter into the Post-Petition Credit Agreement to obtain the Post-Petition Financing from Lender pursuant to Sections 363 and 364 of the Bankruptcy Code and granting liens and security interests to Lender as set forth in the Post-Petition Credit Agreement, scheduling a final hearing and granting such other and further relief set forth herein and that the Court deems just and proper.

WALSH PIZZI O'REILLY FALANGA LLP  
Counsel to Chapter 11 Trustee  

By: _____  
Christopher M. Hemrick (*Pro Hac Vice*)  
Peter J. Pizzi  
Center Square, East Tower  
1500 Market Street, 12th Floor  
Ph: 973.757.1100 | F: 973.757.1090  
chemrick@walsh.law

Date: November 24, 2020