IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: <br><br> VASCULAR ACCESS CENTERS, L.P., <br><br> Debtor. | Chapter 11 <br><br> Case No. 19-17117-AMC |

**DECLARATION OF STEPHEN V. FALANGA, CHAPTER 11 TRUSTEE, IN SUPPORT OF MOTION FOR AN ORDER (I) AUTHORIZING THE TRUSTEE, ON BEHALF OF THE DEBTOR, TO ENTER INTO FIFTH POST-PETITION CREDIT AGREEMENT WITH WILLIAM WHITFIELD GARDNER, OBTAIN POST-PETITION FINANCING, GRANT LIENS AND SECURITY INTERESTS AND GRANTING OTHER RELIEF; AND (II) GRANTING REQUEST FOR EXPEDITED HEARING**

I, Stephen V. Falanga, of full age, being duly sworn according to law, hereby declare as follows:

1. I am the Chapter 11 Trustee (the "Trustee") for the bankruptcy estate of the above-captioned debtor, Vascular Access Centers, L.P. (the "Debtor" or "VAC").

2. I make this Certification in support of the motion for the entry of an Order authorizing the Trustee to enter into a fifth Post-Petition Credit Agreement ("Post-Petition Credit Agreement") with William Whitfield Gardner ("Lender") pursuant to Sections 363 and 364 of the Bankruptcy Code, Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules 4001-1, to obtain post-petition financing (the "Post-Petition Financing"), grant liens and security interests to Lender and for other relief, and in support of the accompanying request for an expedited hearing.

3. On November 12, 2019 (the "Petition Date"), an involuntary petition was filed against the Debtor for relief under chapter 11 of title 11 of the United States Bankruptcy Code [DE 1] (the "Bankruptcy Case"). The Debtor consented to the relief [DE 3] and an Order for relief was entered

on November 25, 2019 [DE 46].

4. On November 22, 2019, a motion was filed seeking an Order dismissing the bankruptcy case or, in the alternative, seeking the appointment of a chapter 11 trustee [DE 52]. On February 12, 2020, an Order was entered approving my appointment as Chapter 11 Trustee [DE 245].

5. On March 18, 2020 and April 20, 2020, respectively, the Court entered interim and final Orders authorizing me, in my capacity as Trustee on behalf of the Debtor, to enter into a certain post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE 300 & 357 (collectively, the "First Order Authorizing Financing").

6. Pursuant to the First Order Authorizing Financing, I was authorized to borrow from Lender the amount of $350,000.00 (the "Initial Loan"), a substantial portion of which was used to fund the required down payment and first installment of the Debtor's renewed malpractice insurance policy premium, which was necessary for the Debtor to continue operating.

7. On June 17, 2020 and July 31, 2020, respectively, the Court entered interim and final Orders authorizing me, in my capacity as Trustee on behalf of the Debtor, to enter into a second post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE 407 & 461 (collectively, the "Second Order Authorizing Financing").

8. Pursuant to the Second Order Authorizing Financing, I was authorized to borrow from Lender an additional $500,000.00 (the "Second Loan"), which was used to fund the Debtor's continued post-petition business operations and to satisfy the July 2020 settlement payment due to the Department of Justice in the amount of $201,250.00.

9. On August 17, 2020 and September 28, 2020, respectively, the Court entered interim

and final Orders authorizing me, on behalf of the Debtor, to enter into a third post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE 488 & 523 (collectively, the "Third Order Authorizing Financing").

10. Pursuant to the Third Order Authorizing Financing, I was authorized to borrow from Lender up to an additional $650,000.00 (the "Third Loan"), $580,000.00 of which has been disbursed to date, which I used to fund the Debtor's continued post-petition business operations and costs of administration.

11. I advised Lender that the Third Loan would be sufficient to help fund the Debtor's post-petition operations for approximately thirty (30) to sixty (60) days, and that additional funding would likely be required thereafter for working capital unless the Debtor's revenue significantly improved.

12. As I previously advised the Court, the Debtor had been able to continue operations by employing the financing from Lender along with certain stimulus funds from the Centers for Medicare & Medicaid Services ("CMS") (the "Stimulus Funds") to offset lost revenues as a result of the Covid-19 pandemic.

13. The Stimulus Funds have been exhausted and additional financing from Lender has been required to maintain continuity in the Debtor's business operations.

14. On October 5, 2020 and October 27, 2020, respectively, the Court entered interim and final Orders authorizing me, on behalf of the Debtor, to enter into a fourth post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief.  *See* DE 537 & 562 (collectively, the "Fourth Order Authorizing Financing").

15. Pursuant to the Fourth Order Authorizing Financing, I was authorized to borrow from Lender up to an additional $500,000.00 (the "Fourth Loan"), all of which has been disbursed to date

and used to fund the Debtor's continued post-petition business operations.

16. The Debtor now requires additional financing to fund its business operations and costs of administration over the next ninety (90) to one-hundred-twenty (120) days as I continue my efforts to reorganize or sell the Debtor.

17. Among other expenses, the Debtor is required to fund ongoing payroll obligations and other employee expenses, professional supplies for use at the Debtor's affiliated centers needed to perform the procedures that generate the Debtor's revenue, rent and equipment lease obligations, and continuing malpractice insurance premiums, all of which are essential to the Debtor's ability to continue operating. These expenses are in addition to the costs associated with the administration of this bankruptcy case including payment of professional fees and expenses.

18. Since the Covid-19 pandemic in particular, the Debtor's daily and weekly cash collections have decreased substantially and absent a further infusion of liquidity the Debtor's current revenue will be insufficient to timely satisfy the Debtor's obligations.

19. The additional Post-Petition Financing is required to address immediate operational and financial needs while I pursue strategic alternatives to maximize value for the Debtor's creditors and stakeholders. Currently, however, the Debtor is without an adequate source of working capital to fund its operations and costs of administration while in bankruptcy over the next ninety (90) to one-hundred-twenty (120) days.

20. I am seeking authorization to borrow and immediately employ, on behalf of the Debtor, up to an additional $1,500,000.00 from the Lender on the terms and conditions set forth in the Binding Term Sheet, a true and correct copy of which is attached hereto as <u>Exhibit A</u>. The salient terms are as follows:

| **Amount:** | Up to $1,500,000.00, to be loaned at Lender's sole and absolute discretion |

| | |
|---|---|
| **Term:** | Earlier of 90 days after Closing, or the entry of a final, non-appealable Order confirming a plan |
| **Interest:** | Prime Rate (as published in the Wall Street Journal on the Closing Date) plus one percent (1%) per annum |
| **Closing Fee:** | $0 |
| **Annual Fee:** | N/A |
| **Security:** | 1st /superpriority lien on all Collateral (as defined in the Binding Term Sheet (**Exhibit A**)) |

21. Lender is the majority limited partner of the Debtor and is the party that moved to appoint a Chapter 11 Trustee in this case.

22. My negotiations with Lender have been arms-length and conducted on a good faith basis.

23. Lender has advised me that the Post-Petition Financing will be available upon entry of the requested Interim Order and the satisfaction of certain conditions precedent.

24. Given the need for funding, I am seeking interim approval of the Post-Petition Financing on an expedited basis.

25. I was unable to obtain unsecured credit allowable under Sections 503(b)(1) of the Bankruptcy Code as an administrative expense or to obtain from another lender the necessary post-petition financing on terms more favorable than those provided in the Post-Petition Credit Agreement by Lender.

26. Given the time constraints and the Debtor's financial condition and existing and ongoing obligations, I do not believe it is feasible to obtain the necessary financing on an unsecured basis or on terms more favorable than those Lender has extended.

27. Subject to the Professional Fee Carve-Out set forth in the Binding Term Sheet, Lender has required a first, superpriority lien and security interest in all of the Debtor's Collateral, as that term is defined in the Binding Term Sheet, attached hereto as **Exhibit A**.

28.     The Post-Petition Financing is needed to help fund the Debtor's essential operating and administrative costs over approximately the next ninety (90) to one-hundred-twenty (120) days. Uninterrupted access to working capital is necessary to, among other things, maintain the employee workforce and infrastructure, the servicing of patients and generation of revenue, and the preservation of estate assets.

29.     Accordingly, I am seeking interim approval of the Post-Petition Financing on an expedited basis so that I can immediately fund necessary operating expenses of the Debtor.

[signature on following page]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: November 24, 2020            Stephen V. Falanga

# **EXHIBIT A**

**BINDING TERM SHEET AND SUMMARY OF TERMS AND CONDITIONS**
**VASCULAR ACCESS CENTERS, L.P.**
**(Case No. 19-17117-AMC)**
**UP TO $1,500,000**
**POSTPETITION CREDIT FACILITY**
**Dated: November 24, 2020**

**William Whitfield Gardner** ("**Lender**") and **Vascular Access Centers, L.P.**, ("**Borrower**") are hereby entering into the following binding term sheet ("**Term Sheet**") pursuant to which Lender will provide one or more short-term bridge loans of up to a total amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) to the Borrower, subject to and conditioned on the terms set forth below.

| | |
|---|---|
| **Borrower** | Vascular Access Centers, L.P. as Debtor under the control of Stephen V. Falanga, in his capacity as Chapter 11 Trustee ("**Trustee**"). |
| **Lender** | William Whitfield Gardner, or his designee ("**Lender**"). |
| **Background** | The Borrower is currently a chapter 11 debtor in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("**Bankruptcy Court**"), Case No. 19-17117 (AMC) ("**Bankruptcy Case**"). |
| | The Bankruptcy Case was initiated on November 12, 2019 when an involuntary bankruptcy petition was filed against the Borrower. Lender filed a motion on November 22, 2019 seeking dismissal of the Bankruptcy Case or, alternatively, for the appointment of a chapter 11 trustee ("**Lender Motion**"). |
| | The Bankruptcy Court granted the Lender Motion on February 7, 2020, and entered an order directing the appointment of a chapter 11 trustee. On February 12, 2020, the Bankruptcy Court approved the appointment of Stephen V. Falanga as chapter 11 Trustee of the Borrower. |
| | Lender desires to support a reorganization of the Borrower and, as the majority owner of the Borrower, Lender has a substantial interest in the outcome of the Bankruptcy Case. |
| | The Trustee has informed Lender that Borrower is at risk of immediate and irreparable harm unless Borrower receives additional financing. |
| | To preserve the Borrower in the face of its apparent cash flow crisis, Lender has agreed to provide short-term (90 days or less) loans of up to $1,500,000 to fund the Borrower's operations (the "**Bridge Loan**"), subject to and conditioned upon the terms set forth below. |
| **Acknowledgements** | The Trustee and Lender acknowledge and agree that (1) the Bridge Loan is a short-term solution to address the Borrower's immediate liquidity crisis, (2) Lender is providing the funding to further his desire to |

ACTIVE.125551764.03

|  |  |
|---|---|
|  | successfully reorganize Borrower, (3) the Trustee is not opposed to a restructuring and will reasonably cooperate with Lender as needed to facilitate a restructuring, (4) by providing the funding, Lender is not consenting to the sale of Borrower or any of its assets, and reserves all rights in such regard, (5) by accepting the funding, the Trustee is not committing to a restructuring or in any way limiting or impairing the Trustee's exercise of his business judgment or fiduciary duties to the Debtor's estate and creditors in his administration of the Debtor's estate, and (6) Lender is under no obligation to provide additional funding to the Borrower. |
| **Bridge Loan** | Lender, at his sole and absolute discretion, will provide Borrower with one or more loans of up to a total amount of $1,500,000 following entry of an interim order in form and substance acceptable to Lender approving this Term Sheet and the Bridge Loan ("**Interim Order**"), and following ongoing discussions with the Trustee and in light of the Borrower's financial condition and other factors. |
| **Purpose** | The proceeds of the Bridge Loan will be used to fund the Borrower's operations and pay professional fees. |
| **Grant of Security** | To secure all obligations of the Borrower described in this Term Sheet, including, without limitation, the Bridge Loan and Lender's fees and expenses as set forth herein (collectively, the "**Bridge Loan Obligations**"), Borrower hereby grants to Lender, pursuant to Section 364(d) of the Bankruptcy Code, a fully perfected first priority priming security interest subject only to valid, enforceable, non-avoidable liens disclosed to Lender and acceptable to Lender, in all of the existing and after acquired real and personal, tangible and intangible, assets of the Borrower, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, licensing agreements, securities (whether or not marketable), equipment, fixtures, proceeds of leasehold interests (but not the leaseholds themselves), real property interests, franchise rights, patents, trademarks, tradenames, copyrights, intellectual property, general intangibles, investment property, commercial tort claims, and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but shall not include recoveries on avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or applicable state law ("**Collateral**"). <br><br> The Collateral described above will include the proceeds of recoveries obtained through the prosecution of the claims described in *Gardner v. Vascular Access Centers, LLC et al.*, case no. 16-cv-000367 (the "**Derivative Litigation**"). |
| **Superpriority Claim** | Lender shall hold an allowed claim in the Bankruptcy Case for the Bridge Loan Obligations, which shall at all times be entitled to |

|  |  |
|---|---|
|  | superpriority claim status under Section 507(b) of the Bankruptcy Code and have priority over any and all administrative claims specified in the Bankruptcy Code, including claims pursuant to Sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1114, or otherwise, subject only to the Professional Fee Carve Out. |
| **Closing Date** | Subject to satisfaction of the Conditions Precedent set forth below, closing on the Bridge Loan shall occur following entry of an Interim Order and satisfaction of the conditions precedent (the "**Closing**"). |
| **Conditions Precedent** | The Closing on each of the funding of the Bridge Loan advances shall be conditioned upon satisfaction or waiver of the following conditions precedent: |

- All necessary consents and approvals to the financing shall have been obtained. The Trustee hereby represents and warrants that he has the authority on behalf of the Borrower to enter into this Term Sheet, obtain the Bridge Loan, and incur the Bridge Loan Obligations, subject only to approval by the Bankruptcy Court.

- Any other information (financial or otherwise) reasonably requested by the Lender shall have been received by the Lender and shall be in form and substance reasonably satisfactory to the Lender.

- Execution and delivery of such documentation satisfactory in form and substance to Lender and its counsel.

- All representations and warranties of Borrower contained herein are true and correct as of the Closing.

- The Interim Order has been entered and is not subject to any stay.

Without limiting in any way the Lender's sole and exclusive discretion, the Interim Order and any final order approving the Bridge Loan ("**Final Order**", and together with the Interim Order, the "**Bridge Loan Orders**") shall provide for the following, among other things:

- That adequate notice has been given to all necessary parties of the hearing(s) pursuant to which the Bankruptcy Court has entered the Bridge Loan Orders.

- That all indebtedness, liabilities and obligations of the Borrower to the Lender arising in connection with the Bridge Loan shall be secured by a first priority lien and security interest in all Collateral subject only to valid, enforceable, non-avoidable liens disclosed to Lender and acceptable to Lender.

- That all liens authorized and granted to Lender in connection with the Bridge Loan shall be deemed perfected and no further action will be required to effect such perfection.

ACTIVE.125551764.03                                                3

- That, subject to the entry of the Final Order, no costs, expenses, or other charges may be assessed or attributed to the Lender or the Collateral pursuant to Section 506(c) of the United States Bankruptcy Code or otherwise.

- A finding that the Lender has acted in good faith.

| | |
|---|---|
| **Repayment and Termination Date** | All obligations under the Bridge Loan, accrued or otherwise, will be due and payable on the date that is the earlier of ninety (90) days after Closing, or the date a final, non-appealable Order is entered confirming a plan in this Bankruptcy Case ("**Maturity Date**"). |
| **Interest Rate** | The rate of interest for all obligations under the Bridge Loan will be equal to the Prime Rate (as published in the Wall Street Journal on the Closing Date) plus one percent per annum until the Maturity Date. |
| **Professional Fee Carve Out** | The Professional Fee Carve Out shall mean a carve out to be paid from the Lender's Collateral for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court; (ii) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); (iii) the Trustee's commission; and (iv) all fees, costs and expenses incurred by professionals retained by the Trustee pursuant to a retention application filed by the Trustee (the "**Case Professionals**") in an amount not to exceed $150,000.00, to the extent allowed at any time, which fees, disbursements, costs and expenses will be paid to Case Professionals as permitted by the Bankruptcy Court and the Local Bankruptcy Rules. The Carve-Out shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals. For the avoidance of doubt, the term "Case Professionals" does not include Dilworth Paxson LLP. |
| **Lender Access** | Lender shall have reasonable access to the Borrower, its books and records, management, and professionals, so that Lender may evaluate his willingness to propose a chapter 11 plan and to develop the details of such plan. Lender's access does not and shall not obligate Lender to propose or support any plan in the Borrower's chapter 11 case. |
| **Consultation for Sales of Estate Assets** | If the Trustee receives an offer to purchase any asset of the Borrower outside of the ordinary course of business, the Trustee shall notify Lender of the terms of such offer and consult with Lender in good faith prior to accepting any such offer. Any discussions between the Trustee and the Lender with respect to any proposed sale of Borrower assets shall not be deemed a consent by the Lender to such sale or waiver by Lender of the right to object to any motion seeking Bankruptcy Court approval of such sale, unless such consent or waiver is reduced to a |

ACTIVE.125551764.03                     4

|  |  |
|---|---|
|  | writing and executed by Lender or on his behalf by his authorized representatives. Nothing in this Term Sheet shall be construed to (a) require the Lender's consent to the Trustee's sale of all or any assets of the Debtor or its estate; or (b) in any way impede, limit or restrict the Trustee's exercise of his business judgment or fiduciary duties to the Debtor's estate and creditors in his administration of the Debtor's estate. It is further understood that the Trustee shall at all times have the right, in his sole and absolute discretion, to pursue a sale of all or any assets of the Debtor or its estate. |
| **Indemnification** | The Borrower agrees to indemnify and hold the Lender and his agents, representatives, attorneys, and affiliates harmless from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or cause of action, and costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party from and after the Closing by reason of or resulting from the Bridge Loan, except to the extent resulting from the gross negligence or willful misconduct of the indemnified party.  In all such litigation, or the preparation therefor, the indemnified parties shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Borrower agrees to pay promptly the reasonable fees and expenses of such counsel; provided, however, that Borrower's obligations under this indemnification provision shall not exceed $350,000.00 in the aggregate. |
| **Expenses** | The Borrower understands that the Lender has incurred reasonable fees and expenses in connection with the Bridge Loan in the amount of $10,000.00 ("**Lender Fee Amount**").  The Borrower agrees to pay the Lender Fee Amount, even if the proposed Bridge Loan does not close or is not approved by the Bankruptcy Court on terms and conditions acceptable to the Lender, in his sole and exclusive discretion; provided, however, that Borrower shall not be responsible for the Lender Fee Amount in the event the Bridge Loan does not close due to the fault of the Lender.  In addition, Borrower agrees to pay the reasonable post-Closing costs and expenses incurred by Lender, in his capacity as post-petition lender, relating to the Bridge Loan until such time as the Bridge Loan Obligations are paid in full; provided, however, that Lender will make a good faith effort to limit post-Closing costs and expenses to those reasonably necessary to protect the Collateral and enforce the Bridge Loan Obligations including, without limitation, by appearing telephonically at relevant hearings where appropriate. |

*[Signature page to follow]*

**BORROWER:**
**VASCULAR ACCESS CENTERS, L.P.**

By: _[signature]_____

Name: Stephen V. Falanga

Title: Chapter 11 Trustee

**WILLIAM WHITFIELD GARDNER**

By: _[signature]_____

Name: _William Whitfield Gardner_

Title: