## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| VASCULAR ACCESS CENTERS, L.P., | Case No. 19-17117-AMC |
| Debtor. | |

**INTERIM ORDER AUTHORIZING CHAPTER 11 TRUSTEE, ON BEHALF OF THE DEBTOR, TO ENTER INTO FIFTH POST-PETITION CREDIT AGREEMENT WITH WILLIAM WHITFIELD GARDNER AND TO OBTAIN POST-PETITION FINANCING, AND GRANTING LIENS, SECURITY INTERESTS AND OTHER RELIEF**

This matter having been opened to the Court upon the motion (the "Motion") of Stephen V. Falanga, in his capacity as chapter 11 trustee (the "Trustee") for the estate of Vascular Access Center, L.P. (the "Debtor"), pursuant to sections 363 and 364 of the Bankruptcy Code, for the entry of an interim order (the "Interim Order") authorizing the Trustee to enter into a fifth post-petition credit agreement on the terms and conditions set forth in the Binding Term Sheet attached hereto as **Exhibit "A"** (the "Post-Petition Credit Agreement") with William Whitfield Gardner ("Lender"), to obtain post-petition financing and granting liens and security interests to Lender, scheduling a final hearing to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis, and for other relief; and the Court having considered the papers submitted in support of, and in opposition to, the Motion; and sufficient notice of the Motion having been given on an interim basis pursuant to Rule 4001(c)(2); and the Court having conducted an interim hearing with respect to the Motion on November 25, 2020 at 12:30 p.m.; and the Court having duly considered the arguments of counsel at said hearing; and good and sufficient cause having been shown; for the reasons set forth on the record at the hearing;

The Court hereby finds the following:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 363 and 364 of the Bankruptcy Code, Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules 4001-1.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      An immediate need exists for the Debtor to obtain financing to help fund the Debtor's essential operating and administrative costs over the next ninety (90) to one hundred twenty (120) days.  Without such financing, the Debtor may not be able to fund its operating expenses or obtain goods and services needed to carry on its business in a manner that will avoid irreparable harm to the Debtor's estate.  The ability of the Debtor to finance its operations and the availability of working capital and liquidity through the incurrence of new indebtedness is necessary to the preservation and maintenance of the going concern value of the Debtor's estate.

3.      The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code. The Debtor is unable to obtain financing from any lender on substantially similar terms or terms more favorable than those provided by the Lender in the Post-Petition Credit Agreement and within the time required to avoid the potential for immediate and irreparable harm to the Debtor.

4.      Lender has indicated a willingness to provide the Post-Petition Financing[1] contemplated herein pursuant to sections 364(c)(1)-(3) and 364(d), subject to (i) the terms and conditions of the Binding Term Sheet, (ii) the entry of this Interim Order and the Final Order; and (ii) findings by this Court that such financing is essential the Debtor's estate, that the Lender is a good

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Declaration of Stephen V. Falanga, Chapter 11 Trustee in support of the Motion.

faith financier, and that the Lender's claims, superpriority claims, security interests, and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the Post-Petition Credit Agreement will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

5.      As a further condition of any obligation of the Lender to make credit extensions pursuant to the Post-Petition Credit Agreement, subject to entry of the Final Order approving this provision, the Debtor, its estate, and any of its affiliates, shall be deemed to have waived any claim to surcharge the Collateral under section 506(c) of the Bankruptcy Code.

6.      The Trustee has provided due and adequate notice of the interim hearing and the relief requested in the Motion and has provided an opportunity to object to and participate in the hearing on this Order to: (i) the United States Trustee; (ii) all creditors and interested parties filing notices of appearance in the case, and (iii) counsel to the Lender.   Under the circumstances, such notice constitutes sufficient notice under Bankruptcy Rule 4001.

7.      The terms and conditions of the Post-Petition Credit Agreement and the Binding Term Sheet, and the fees to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and consideration.  The Trustee chose the Lender as postpetition lender in good faith, without collusion, and after obtaining the advice of experienced counsel.  The Trustee and the Lender proposed and negotiated the terms of the Post-Petition Credit Agreement in good faith, at arm's length and without collusion.  The Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and, absent a stay pending appeal, the Lender's claims, superpriority status, security interests and liens and other protections

arising from or granted pursuant to this Order and the Post-Petition Credit Agreement will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

8.      The Trustee has the authority, on behalf of the Debtor, to enter into this Post Petition Credit Agreement, obtain the Post-Petition Financing, and incur the obligations pursuant thereto (collectively, the "Post-Petition Obligations").

9.      Lender has acted in good faith in all respects in connection with the transaction contemplated herein.

10.     The Trustee has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).  The permission granted herein to enter into the Post-Petition Credit Agreement and to obtain funds thereunder is necessary to avoid the risk of immediate and irreparable harm to the Debtor. This Court concludes that entry of this Order is in the best interest of the Debtor and its estate and creditors as its implementation will, among other things, allow the Debtor to facilitate its Chapter 11 goals and maximize the value of its assets and estate.

11.     Based upon the foregoing, and upon the record made before this Court at the hearing, and good and sufficient cause appearing therefor,

It is hereby ORDERED:

1.      The findings contained in all of the foregoing paragraphs of this Order are incorporated herein as if set forth at length and are "So Ordered" by the Court.

2.      The Motion is granted. All objections to the entry of this Interim Order to the extent not withdrawn or resolved, are hereby overruled.

3.      The Trustee, on behalf of the Debtor, be, and is hereby authorized to enter into the Post-Petition Credit Agreement by executing the Binding Term Sheet and all other agreements,

documents and instruments delivered pursuant hereto or thereto or in connection herewith or therewith (collectively, the "Post-Petition Credit Documents") and the Trustee, on behalf of the Debtor, is authorized to borrow and Lender is authorized to lend money to the Debtor and to the estate, up to the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) (the "Post-Petition Financing"),  and to perform his obligations hereunder and thereunder, on behalf of the Debtor, in accordance with, and subject to, the terms of this Order and any other post-petition financing documents.

4.    The Post-Petition Credit Documents include, but are not limited to, the following terms: (a) on the "Closing Date," which, subject to satisfaction of certain conditions precedent (the "Conditions Precedent") shall occur immediately upon entry of this Order, the Trustee shall be authorized to borrow and immediately employ, on behalf of the Debtor, and the Lender shall be authorized to immediately disburse, all proceeds of the Post-Petition Financing; (b) all obligations under the Post-Petition Credit Agreement, accrued or otherwise, will be due and payable on the date that is the earlier of ninety (90) days after Closing, or the date a final, non-appealable Order is entered confirming a plan in this bankruptcy case (the "Maturity Date"); (c) the rate of interest for the Post-Petition Obligations will be equal to the Prime Rate (as published in the Wall Street Journal on the Closing Date) plus one percent (1%) per annum until the Maturity Date; and (d) a "Professional Fee Carve Out" shall be paid from the Collateral (as hereinafter defined) for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court; (ii) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); (iii) the Trustee's commission and expenses as allowed by order of the Court; and (iv) all fees, costs and expenses incurred by professionals retained by the Trustee pursuant to a retention application filed by the Trustee (the "Case Professionals") in an amount not to exceed $150,000.00 to the extent allowed at any time,

which fees, disbursements, costs and expenses will be paid to Case Professionals as permitted by the Bankruptcy Court and the Local Bankruptcy Rules.

5.      As security for the Post-Petition Financing and upon entry of this Order, Lender is hereby granted a valid, binding, enforceable and perfected first-priority lien and security interest in all Collateral as set forth in the Binding Term Sheet subject only to valid, enforceable, non-avoidable liens disclosed to Lender and acceptable to Lender (the "Post-Petition Lien"); provided, however, that the Post-Petition Lien shall only attach to the Collateral to the extent Post-Petition Financing proceeds are actually disbursed to Borrower pursuant to the Post-Petition Credit Documents.

6.      The "Collateral" consists of all existing and after acquired real and personal, tangible and intangible, assets of the Debtor, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, licensing agreements, securities (whether or not marketable), equipment, fixtures, proceeds of leasehold interests (but not the leaseholds themselves), real property interests, franchise rights, patents, trademarks, tradenames, copyrights, intellectual property, general intangibles, investment property, commercial tort claims, and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but shall not include recoveries on avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or applicable state law. The Collateral includes the proceeds of recoveries obtained through the prosecution of the claims described in *Gardner v. Vascular Access Centers, LLC, et al.*, Case No. 16-cv-000367.

7.      The Post-Petition Lien shall be deemed perfected and no further action will be required to effect such perfection. The Post-Petition Lien, lien priority, and administrative priorities granted to the Lender pursuant to the Post-Petition Credit Agreement, this Interim Order and the other Post-Petition Credit Documents (specifically including, but not limited to, the existence,

perfection and priority of the Liens and security interests provided herein and therein, and the

administrative priority and liens provided for herein and therein) shall not be modified, altered or

impaired in any manner by any other financing or extension of credit or incurrence of indebtedness

by the Debtor (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by any dismissal

or conversion of the chapter 11 case, or by any other act or omission whatsoever.  Without

limitation, notwithstanding any such order, financing, extension, incurrence, dismissal,

conversion, act or omission:

> (a)     except for the Professional Fee Carve-Out, no costs or expenses of administration which have been or may be incurred in the chapter 11 case or any conversion of the same or in any other proceedings related thereto, and no priority claims, are or will be prior to or on a parity with any claim of the Lender against the Debtor in respect of any Post-Petition Obligation;

> (b)     the Post-Petition Liens in favor of the Lender set forth in the Post-Petition Credit Agreement hereof shall constitute valid and perfected first priority Liens and shall be prior to all other Liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other person whatsoever; and

> (c)     the Post-Petition Liens in favor of the Lender set forth herein and in the other Post-Petition Credit Documents shall continue to be valid and perfected without the necessity that the Lender file or record financing statements, mortgages or otherwise perfect its Post-Petition Lien under applicable non-bankruptcy law.

8.     This Interim Order shall be sufficient and conclusive evidence of the validity,

perfection and priorities of the Post-Petition Lien upon the Collateral, without the necessity of filing

or recording any financing statement, assignment, mortgage, deed of trust, trademark security

agreement, copyright security agreement, patent security agreement or other instrument or document

which may otherwise be required under the law of any jurisdiction or the taking of any other action

to validate or perfect the Post-Petition Lien or to entitle the Lender to the priorities granted herein and

in the Post-Petition Credit Agreement; provided, however, that the Trustee on behalf of the Debtor

shall, promptly following the request of the Lender, execute such instruments, assignments,

mortgages, deeds of trust, trademark security agreements, copyright security agreements, patent

security agreements or other documents as are necessary to perfect the Lender's liens upon any of the Collateral and shall take such other action as may be required to perfect or to continue the perfection of the Lender's Liens upon the Collateral. The Treasurer of the Commonwealth of Pennsylvania, each county clerk and each other state or local official responsible for the filing of any such agreement, financing statement, mortgage or other document is hereby directed to accept and record the same upon presentation thereof by the Trustee or Lender.

9.     The Post-Petition Obligations are claims to be afforded priority as administrative expenses pursuant to section 364 of the Bankruptcy Code, as provided herein and in the Post-Petition Credit Agreement and secured by liens pursuant to section 364 of the Bankruptcy Code as provided herein. Subject to the Professional Fee Carve-Out, the Post-Petition Obligations shall constitute, in accordance with Section 364(b) of the Bankruptcy Code, a priority administrative expense claim having priority over any and all unsecured claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever.  To the extent the Post-Petition Obligations have not been satisfied in full as a result of any sale or disposition of Collateral, the Lender shall have a superpriority administrative expense claim against the estate pursuant to section 364(c)(1) of the Bankruptcy Code for the Post-Petition Obligations and all related costs and expenses as set forth in the Binding Term Sheet having priority over any and all administrative expenses of and unsecured claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code, subject only to the Professional Fee Carve Out.

10.     Notwithstanding anything set forth in the Motion, the Post-Petition Credit Agreement, the Binding Term Sheet, the Post-Petition Credit Documents or herein to the contrary, Lender's Post-

Petition Lien is equally subject to, and subordinate to, that certain Adequate Protection Lien[2] granted

to the United States of America in the *Stipulation and Consent Order Pursuant to Sections 105(a),*

*361, 363, 507(b) and 553 of the Bankruptcy Code and Local Bankruptcy Rule 9013-3 Granting the*

*United States of America Adequate Protection with Respect to the Quarterly Settlement Payment Due*

*October 1, 2020* (D.E. 595) (the "DOJ Adequate Protection Order") in an amount equal to the unpaid

portion of the October 1st Settlement Payment (as defined in the DOJ Adequate Protection Order) as

the liens that secure Lender's Post Petition Loans (as defined in the DOJ Adequate Protection Order)

that exist as of the date hereof.

11.    Philips Medical Capital, LLC ("Philips") has previously asserted that it holds one

or more claims against the Debtor ("Philips Claims") secured by valid, perfected liens ("Philips

Liens") in certain equipment, software, maintenance and peripherals and items related thereto

provided by Philips (collectively, the "Systems"), together with all accessories thereto,

substitutions therefore and proceeds from the sale, lease or other disposition of the Systems

("Systems Collateral"). Notwithstanding anything set forth in the Motion, the Post-Petition Credit

Agreement, the Binding Term Sheet, the Post-Petition Credit Documents or herein to the contrary,

the Post-Petition Lien is subject to, and subordinate to any valid, properly perfected liens held by

Philips that existed as of the Petition Date.  For the avoidance of doubt, nothing in this order

impairs or affects the rights of the Debtor, the Trustee, the Lender, or any party in interest to (a)

challenge the existence, validity, perfection, or avoidabilty of any lien held or asserted by Philips,

including the Philips Liens, and/or (b) object to any Philips Claim.

12.    TIAA Commercial Finance, Inc. ("TIAA") has previously asserted that it holds one

or more claims against the Debtor ("TIAA Claims") secured by valid, perfected liens ("TIAA

---

[2] "Adequate Protection Lien" shall have the meaning ascribed to it in the DOJ Adequate Protection Order.

Liens") in certain equipment ("TIAA Equipment"). Notwithstanding anything set forth in the Motion, the Post-Petition Credit Agreement, the Binding Term Sheet, the Post-Petition Credit Documents or herein to the contrary, the Post-Petition Lien is subject to, and subordinate to any valid, properly perfected liens held by TIAA with regard to the TIAA Equipment that existed as of the Petition Date.  For the avoidance of doubt, nothing in this order impairs or affects the rights of the Debtor, the Trustee, the Lender, or any party in interest to (a) challenge the existence, validity, perfection, or avoidabilty of any lien held or asserted by TIAA, including the TIAA Liens, and/or (b) object to any TIAA Claim.

13.    Lender has incurred reasonable fees and expenses in connection with the Bridge Loan in the amount of $10,000.00 ("Lender Fee Amount").  The Borrower shall pay the Lender Fee Amount even if the proposed Bridge Loan does not close; provided, however, that Borrower shall not be responsible for the Lender Fee Amount in the event the Bridge Loan does not close due to the fault of the Lender.  In addition, Borrower shall pay the reasonable post-Closing costs and expenses incurred by Lender, in his capacity as post-petition lender, relating to the Bridge Loan until such time as the Bridge Loan Obligations are paid in full; provided, however, that Lender will make a good faith effort to limit post-Closing costs and expenses to those reasonably necessary to protect the Collateral and enforce the Bridge Loan Obligations including, without limitation, by appearing telephonically at relevant hearings where appropriate.

14.    Immediately upon the Maturity Date, (i) all Post-Petition Obligations shall be immediately due and payable and the aggregate unpaid principal balance of the Post-Petition Financing, together with unpaid interest on the principal amount hereunder remaining unpaid from time to time; (ii) all other fees provided for under the Post-Petition Credit Agreement shall be immediately due and payable; and (iii) the Lender's obligations under the Post-Petition Credit

Agreement shall cease.

15.     The Debtor acknowledges and agrees that the Post-Petition Obligations and the related liens, rights, priorities and protections granted to or in favor of the Lender, respectively, as set forth herein and in the Post-Petition Credit Agreement, shall constitute a proof of claim on behalf of the Lender in the chapter 11 case.  The Lender shall not be required to file proofs of claim in the chapter 11 case, however, the Lender is hereby authorized and entitled to file (and amend and/or supplement) proofs of claim in the chapter 11 case or any successor cases.

16.     Absent a stay pending appeal, if any provision of this Interim Order is hereafter modified, vacated, or stayed by subsequent order of this Court or any other court for any reason, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code.

17.     Upon entry of this Order, the Court hereby (i) grants, approves and authorizes the Post-Petition Financing by Lender to the Debtor, (ii) approves and authorizes the Post-Petition Financing for purposes of the Bankruptcy Code; and (iii) grants and approves the Post-Petition Liens.

18.     The Trustee is authorized to enter into such non-material modifications and amendments to the Post-Petition Credit Documents as may be agreed upon in writing by the Trustee and Lender, except for any modification of the amount or interest rate of the Post-Petition Financing, which shall be subject to Court approval.  Notice of all such modifications shall be filed with the Court and, other than those modifications and amendments that are ministerial or technical and do not adversely affect the Debtor or the estate, must be served upon counsel to any official committee appointed in this Chapter 11 case, all parties requesting notice and the Office of the United States Trustee for the Eastern District of Pennsylvania.  Upon execution and delivery of the Binding Term Sheet, the Binding Term Sheet shall constitute valid and binding obligations of the Debtor and Lender, enforceable against the Debtor and Lender, the Debtor's property and the estate in accordance with

its terms.

19.    From and after the date hereof and subject to the terms and conditions of this Order, the Trustee, on behalf of the Debtor, is hereby authorized to borrow and to use the Post-Petition Financing pursuant to the terms and provisions of the Binding Term Sheet.

20.    Pending the Final Hearing, the Trustee is authorized to borrow and use and Lender is authorized to lend money to the Trustee and the estate, on an interim basis, which amount shall be included in the Post-Petition Financing.

21.    Subject to entry of a Final Order approving this provision, the Debtor and its affiliates and the Debtor's bankruptcy estate hereby waive and shall cause each of its respective affiliates to waive, any claims to surcharge the Collateral under section 506(c) of the Bankruptcy Code.

22.    This Order shall: (a) be immediately enforceable pursuant to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (b) shall not be stayed absent (i) an application by a party in interest for such stay in conformance with the Bankruptcy Rules; and (ii) a hearing upon notice to the Trustee, Lender, the Office of the United States Trustee and any other party having filed a notice of appearance herein. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

23.    Except as otherwise provided herein, if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other court, including without limitation any order approving a plan of reorganization for the Debtor, such stay, modification or vacature shall not affect the validity of the liens, mortgages, security interests, releases, indemnifications and/or assignments granted pursuant to this Order.

24.    The Court shall retain jurisdiction to interpret and enforce this Order at all times and for all purposes hereinafter.

25.      To the extent the terms and conditions of the Post-Petition Credit Documents are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

26.      The Trustee shall serve a copy of this Order by email or regular mail within two (2) business days of the entry hereof upon (i) all parties who appeared or otherwise opposed the relief sought at the hearing held hereunder; (ii) the Office of the United States Trustee for the Eastern District of Pennsylvania; (iii) all creditors and interested parties filing notices of appearance in the case; (iv) all parties listed on Schedule D and all creditors who have asserted secured claims in this case; (v) the twenty (20) largest unsecured creditors; and (vi) counsel to Lender.

27.      Pursuant to Fed. R. Bankr. P. 4001(c), the Court shall hold the final hearing on the Motion for post-petition financing on _____ at _____ a.m./p.m. (the "Final Hearing").  Any and all objections to the Motion shall be filed with the Clerk of the Court and served on (i) the attorneys for the Trustee; (ii) the Office of the United States Trustee; (iii) all creditors and interested parties filing notices of appearance in the case; and (iv) counsel to Lender, Faegre Drinker Biddle & Reath LLP, One Logan Square, Suite 2000, Philadelphia PA 19103; (attn.: Joseph N. Argentina, Jr., Esq. (Joseph.Argentina@faegredrinker.com) and Richard Coe (Richard.Coe@faegredrinker.com) so as to be actually filed and received by said parties on or before _____.  Each party filing an objection to the Motion must appear at the Final Hearing in order to prosecute said objection, or the Court shall deem said objection withdrawn and such objection shall not be considered by the Court.

28.      This is an Interim Order subject to entry of a Final Order by the Court in connection with the Final Hearing on _____.

Dated: _____, 2020

_____
HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

## **<u>EXHIBIT A</u>**

## BINDING TERM SHEET AND SUMMARY OF TERMS AND CONDITIONS
## VASCULAR ACCESS CENTERS, L.P.
### (Case No. 19-17117-AMC)
### UP TO $1,500,000
### POSTPETITION CREDIT FACILITY
### Dated: November 24, 2020

**William Whitfield Gardner** ("**Lender**") and **Vascular Access Centers, L.P**., ("**Borrower**") are hereby entering into the following binding term sheet ("**Term Sheet**") pursuant to which Lender will provide one or more short-term bridge loans of up to a total amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) to the Borrower, subject to and conditioned on the terms set forth below.

| | |
|---|---|
| **Borrower** | Vascular Access Centers, L.P. as Debtor under the control of Stephen V. Falanga, in his capacity as Chapter 11 Trustee ("**Trustee**"). |
| **Lender** | William Whitfield Gardner, or his designee ("**Lender**"). |
| **Background** | The Borrower is currently a chapter 11 debtor in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("**Bankruptcy Court**"), Case No. 19-17117 (AMC) ("**Bankruptcy Case**"). |
| | The Bankruptcy Case was initiated on November 12, 2019 when an involuntary bankruptcy petition was filed against the Borrower. Lender filed a motion on November 22, 2019 seeking dismissal of the Bankruptcy Case or, alternatively, for the appointment of a chapter 11 trustee ("**Lender Motion**"). |
| | The Bankruptcy Court granted the Lender Motion on February 7, 2020, and entered an order directing the appointment of a chapter 11 trustee. On February 12, 2020, the Bankruptcy Court approved the appointment of Stephen V. Falanga as chapter 11 Trustee of the Borrower. |
| | Lender desires to support a reorganization of the Borrower and, as the majority owner of the Borrower, Lender has a substantial interest in the outcome of the Bankruptcy Case. |
| | The Trustee has informed Lender that Borrower is at risk of immediate and irreparable harm unless Borrower receives additional financing. |
| | To preserve the Borrower in the face of its apparent cash flow crisis, Lender has agreed to provide short-term (90 days or less) loans of up to $1,500,000 to fund the Borrower's operations (the "**Bridge Loan**"), subject to and conditioned upon the terms set forth below. |
| **Acknowledgements** | The Trustee and Lender acknowledge and agree that (1) the Bridge Loan is a short-term solution to address the Borrower's immediate liquidity crisis, (2) Lender is providing the funding to further his desire to |

successfully reorganize Borrower, (3) the Trustee is not opposed to a restructuring and will reasonably cooperate with Lender as needed to facilitate a restructuring, (4) by providing the funding, Lender is not consenting to the sale of Borrower or any of its assets, and reserves all rights in such regard, (5) by accepting the funding, the Trustee is not committing to a restructuring or in any way limiting or impairing the Trustee's exercise of his business judgment or fiduciary duties to the Debtor's estate and creditors in his administration of the Debtor's estate, and (6) Lender is under no obligation to provide additional funding to the Borrower.

**Bridge Loan**

Lender, at his sole and absolute discretion, will provide Borrower with one or more loans of up to a total amount of $1,500,000 following entry of an interim order in form and substance acceptable to Lender approving this Term Sheet and the Bridge Loan ("**Interim Order**"), and following ongoing discussions with the Trustee and in light of the Borrower's financial condition and other factors.

**Purpose**

The proceeds of the Bridge Loan will be used to fund the Borrower's operations and pay professional fees.

**Grant of Security**

To secure all obligations of the Borrower described in this Term Sheet, including, without limitation, the Bridge Loan and Lender's fees and expenses as set forth herein (collectively, the "**Bridge Loan Obligations**"), Borrower hereby grants to Lender, pursuant to Section 364(d) of the Bankruptcy Code, a fully perfected first priority priming security interest subject only to valid, enforceable, non-avoidable liens disclosed to Lender and acceptable to Lender, in all of the existing and after acquired real and personal, tangible and intangible, assets of the Borrower, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, licensing agreements, securities (whether or not marketable), equipment, fixtures, proceeds of leasehold interests (but not the leaseholds themselves), real property interests, franchise rights, patents, trademarks, tradenames, copyrights, intellectual property, general intangibles, investment property, commercial tort claims, and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but shall not include recoveries on avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or applicable state law ("**Collateral**").

The Collateral described above will include the proceeds of recoveries obtained through the prosecution of the claims described in *Gardner v. Vascular Access Centers, LLC et al.*, case no. 16-cv-000367 (the "**Derivative Litigation**").

**Superpriority Claim**

Lender shall hold an allowed claim in the Bankruptcy Case for the Bridge Loan Obligations, which shall at all times be entitled to

superpriority claim status under Section 507(b) of the Bankruptcy Code and have priority over any and all administrative claims specified in the Bankruptcy Code, including claims pursuant to Sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1114,  or otherwise, subject only to the Professional Fee Carve Out.

**Closing Date**     Subject to satisfaction of the Conditions Precedent set forth below, closing on the Bridge Loan shall occur following entry of an Interim Order and satisfaction of the conditions precedent (the "**Closing**").

**Conditions
Precedent**           The Closing on each of the funding of the Bridge Loan advances shall be conditioned upon satisfaction or waiver of the following conditions precedent:

- All necessary consents and approvals to the financing shall have been obtained. The Trustee hereby represents and warrants that he has the authority on behalf of the Borrower to enter into this Term Sheet, obtain the Bridge Loan, and incur the Bridge Loan Obligations, subject only to approval by the Bankruptcy Court.

- Any other information (financial or otherwise) reasonably requested by the Lender shall have been received by the Lender and shall be in form and substance reasonably satisfactory to the Lender.

- Execution and delivery of such documentation satisfactory in form and substance to Lender and its counsel.

- All representations and warranties of Borrower contained herein are true and correct as of the Closing.

- The Interim Order has been entered and is not subject to any stay.

Without limiting in any way the Lender's sole and exclusive discretion, the Interim Order and any final order approving the Bridge Loan ("**Final Order**", and together with the Interim Order, the "**Bridge Loan Orders**") shall provide for the following, among other things:

- That adequate notice has been given to all necessary parties of the hearing(s) pursuant to which the Bankruptcy Court has entered the Bridge Loan Orders.

- That all indebtedness, liabilities and obligations of the Borrower to the Lender arising in connection with the Bridge Loan shall be secured by a first priority lien and security interest in all Collateral subject only to valid, enforceable, non-avoidable liens disclosed to Lender and acceptable to Lender.

- That all liens authorized and granted to Lender in connection with the Bridge Loan shall be deemed perfected and no further action will be required to effect such perfection.

- That, subject to the entry of the Final Order, no costs, expenses, or other charges may be assessed or attributed to the Lender or the Collateral pursuant to Section 506(c) of the United States Bankruptcy Code or otherwise.

- A finding that the Lender has acted in good faith.

**Repayment and Termination Date**

All obligations under the Bridge Loan, accrued or otherwise, will be due and payable on the date that is the earlier of ninety (90) days after Closing, or the date a final, non-appealable Order is entered confirming a plan in this Bankruptcy Case ("**Maturity Date**").

**Interest Rate**

The rate of interest for all obligations under the Bridge Loan will be equal to the Prime Rate (as published in the Wall Street Journal on the Closing Date) plus one percent per annum until the Maturity Date.

**Professional Fee Carve Out**

The Professional Fee Carve Out shall mean a carve out to be paid from the Lender's Collateral for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court; (ii) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); (iii) the Trustee's commission; and (iv) all fees, costs and expenses incurred by professionals retained by the Trustee pursuant to a retention application filed by the Trustee (the "**Case Professionals**") in an amount not to exceed $150,000.00, to the extent allowed at any time, which fees, disbursements, costs and expenses will be paid to Case Professionals as permitted by the Bankruptcy Court and the Local Bankruptcy Rules. The Carve-Out shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals. For the avoidance of doubt, the term "Case Professionals" does not include Dilworth Paxson LLP.

**Lender Access**

Lender shall have reasonable access to the Borrower, its books and records, management, and professionals, so that Lender may evaluate his willingness to propose a chapter 11 plan and to develop the details of such plan. Lender's access does not and shall not obligate Lender to propose or support any plan in the Borrower's chapter 11 case.

**Consultation for Sales of Estate Assets**

If the Trustee receives an offer to purchase any asset of the Borrower outside of the ordinary course of business, the Trustee shall notify Lender of the terms of such offer and consult with Lender in good faith prior to accepting any such offer. Any discussions between the Trustee and the Lender with respect to any proposed sale of Borrower assets shall not be deemed a consent by the Lender to such sale or waiver by Lender of the right to object to any motion seeking Bankruptcy Court approval of such sale, unless such consent or waiver is reduced to a

writing and executed by Lender or on his behalf by his authorized representatives. Nothing in this Term Sheet shall be construed to (a) require the Lender's consent to the Trustee's sale of all or any assets of the Debtor or its estate; or (b) in any way impede, limit or restrict the Trustee's exercise of his business judgment or fiduciary duties to the Debtor's estate and creditors in his administration of the Debtor's estate. It is further understood that the Trustee shall at all times have the right, in his sole and absolute discretion, to pursue a sale of all or any assets of the Debtor or its estate.

|  |  |
|---|---|
| **Indemnification** | The Borrower agrees to indemnify and hold the Lender and his agents, representatives, attorneys, and affiliates harmless from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or cause of action, and costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party from and after the Closing by reason of or resulting from the Bridge Loan, except to the extent resulting from the gross negligence or willful misconduct of the indemnified party.  In all such litigation, or the preparation therefor, the indemnified parties shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Borrower agrees to pay promptly the reasonable fees and expenses of such counsel; provided, however, that Borrower's obligations under this indemnification provision shall not exceed $350,000.00 in the aggregate. |
| **Expenses** | The Borrower understands that the Lender has incurred reasonable fees and expenses in connection with the Bridge Loan in the amount of $10,000.00 ("**Lender Fee Amount**").  The Borrower agrees to pay the Lender Fee Amount, even if the proposed Bridge Loan does not close or is not approved by the Bankruptcy Court on terms and conditions acceptable to the Lender, in his sole and exclusive discretion; provided, however, that Borrower shall not be responsible for the Lender Fee Amount in the event the Bridge Loan does not close due to the fault of the Lender.  In addition, Borrower agrees to pay the reasonable post-Closing costs and expenses incurred by Lender, in his capacity as post-petition lender, relating to the Bridge Loan until such time as the Bridge Loan Obligations are paid in full; provided, however, that Lender will make a good faith effort to limit post-Closing costs and expenses to those reasonably necessary to protect the Collateral and enforce the Bridge Loan Obligations including, without limitation, by appearing telephonically at relevant hearings where appropriate. |

*[Signature page to follow]*

**BORROWER:**

**VASCULAR ACCESS CENTERS, L.P.**

By: _____

Name: Stephen V. Falanga

Title: Chapter 11 Trustee


**WILLIAM WHITFIELD GARDNER**

By: _____

Name: _____

Title: _____