**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br>VASCULAR ACCESS CENTERS, L.P.,<br>    Debtor. | 19-17117 (AMC)<br>Chapter 11 |

**OBJECTION TO MOTION TO APPROVE SALE OF ASSETS
BY UNITED STATES TRUSTEE**

Andrew R. Vara, United States trustee for Region 3 and 9 ("U.S.T."), by and through the undersigned counsel, hereby submits this Objection to the Motion of the chapter 11 trustee, Stephen V, Falanga, to Approve the Sale of Certain of Debtor's Assets (and for related relief) to William Whitfield Gardner, and avers the following:

1.   On March 26, 2021, the Chapter 11 trustee, Steven V. Falanga, ("Falanga"), filed a Motion seeking approval of the sale of certain assets of the Debtor as more particularly described therein, together with related relief, (the "Motion"), to William Whitfield Gardner, ("Gardner").

2.   Gardner is the Debtor's majority limited partner, and hence an "*insider.*" Gardner has provided post-petition financing to the Debtor totaling the sum of $3,500,000.00 in order to fund Debtor's operations while in bankruptcy.

*Undetermined Actual Purchase Price*

3.   The purchase price purports to be the sum of $1,100,000.00 consisting of:

a.  Payment by Gardner to the DOJ of the sum of $402,500.00 to clear DOJ's adequate

protection lien and release the CMS freeze of Debtor's receivables, and prevent further set-off against the purchased assets;

      b.   Payment by Gardner to the DOJ of the sum of $400,000.00 in satisfaction of Debtor's obligations under a certain Settlement Agreement with the DOJ relating the purchased assets; and

      c.  A $298,000.00 credit bid against Gardener's first priority financing claim.

(Paragraph 52a of the Motion)

      4.      However, the net purchase price is indeterminant in that Gardner will receive the benefit of all security deposits, accounts receivable and cash (bank accounts) of the purchased assets as of the date of sale closing, which amounts are not anywhere set forth nor determined. Essentially these funds serve as a recovery of a portion of the purchase price by an unknown amount.

(See Paragraph 52b of the Motion)

*No Benefit to the Estate*

      5.      Prior to the bankruptcy filing, the Debtor entered into an agreement with the DOJ in order to resolve and address payment of Debtor's pre-petition violation the False Claims Act.

      6.      Post-petition, this Court authorized the Debtor to enter into a Stipulation and Consent Order with DOJ which authorized the Debtor to honor and perform under the DOJ Settlement and make payments going forward thereunder.

      7.      Prior to the filing of the Motion, the Debtor defaulted in two payments due under the DOJ Settlement and as a result the DOJ issued a notice of default and exercised its right of

set off against Debtor's receivables, thereby freezing the greater portion of Debtor's accounts receivable.

8.      Under the proposed terms of sale, Debtor's estate will not receive any cash, since all cash totaling $802,500,00 is being paid to the DOJ, and the balance of the purchase is being credited against Gardner's post-petition super priority financing claims.  Further, the Debtor will suffer an indeterminable loss of whatever cash, security deposits and receivables which might otherwise exist in the purchased assets at the time of the sale closing. This will actually leave the Debtor in a deficit position, as it will suffer additional administration expenses, including but not limited to the incurrence of a brokerage fee, which the Debtor will not have the ability to pay. Hence, the purchaser and insider is the party that benefits from this transaction.

9.      Moreover, throughout this chapter 11 proceeding, the Debtor has operated at a deficit and at this juncture is administratively insolvent.  Debtor cannot reorganize with or without the consummation of the proposed sale, and for all intents and purposes is and has been a liquidating chapter 11.  Gardner has agreed to extend the post-petition financing in order to enable the continuity of Debtor's operations which enhances the value of his purchase, while getting a credit of his purchase price which ameliorates his latest post-petition financing advance. If and when the proposed sale is closed, Debtor will cease to operate, and will formally move from reorganizational proceeding to a liquidating chapter 11.   *In re New Boston Cake Corp.,* 299 B.R. 432 (E.D. Mich. 2003) the court held that "Where Chapter 11 debtor was administratively insolvent and did not benefit from reduction in its liability for environmental cleanup costs, sale of contaminated property produced no benefit for estate..."  Hence, as Falanga is effectively a liquidating chapter 11 trustee he should not conduct a sale of property which does not benefit the estate.

*The Overbid is Excessive and Chilling*

10. The Motion provides for a minimum overbid of $1,500,000.00 which is at least $400,000.00 more than the purchase price, (plus payment of an unknown amount attributable to Gardner's expenses related to the sale). Such a significant overbid only chills bidding and protects Gardner.

11. Further, to the extent that Gardner is to be reimbursed his expenses in an unknown amount in the event that he is outbid, such should be an expense borne by the estate, as to do otherwise not only increases the amount of the overbid but leaves a competitive bidder in the dark as to gross purchase price, thus further chilling the bidding.

*The Release Provisions are Excessive and Overbroad*

12. Paragraph 37 (at page 29) of the proposed Order contains certain general release provisions by third parties to the benefit of the Debtor, as well in favor Buyer or Gardner, their affiliates, successors or assigns. While these provisions may be appropriate as to claims, liens and encumbrances running against the assets being purchased so as to effectuate a free and clear sale, and as to claims relating to the purchase transaction so as to insulate the parties from their participation in the transaction or from the undoing of the transaction, these provisions are overbroad and excessive as any claims and liabilities that do not run with purchased assets or relate to the sale transaction but are independent thereof, and should not be obliterated by the sale.

## CONCLUSION

**WHEREFORE**, the United States trustee asserts that the Court should deny approval of the sale as proposed and grant such other relief as is just under the circumstances.

Respectfully submitted,
**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**For Regions 3 and 9**

Dated: April 5, 2021

**BY:** */s/ George M. Conway*
George M. Conway
Trial Attorney
200 Chestnut Street,
Suite 502, U S Customs House
Philadelphia, PA 19106
Phone: (215) 597-8418
Email: george.m.conway@usdoj.gov