IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>VASCULAR ACCESS CENTERS, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-17117-AMC |

**EXPEDITED MOTION FOR ORDER (I) AUTHORIZING CHAPTER 11 TRUSTEE, ON BEHALF OF THE DEBTOR, TO ENTER INTO A TRANSITION POST-PETITION CREDIT AGREEMENT WITH WILLIAM WHITFIELD GARDNER, OBTAIN POST-PETITION FINANCING, GRANT LIENS AND SECURITY INTERESTS AND GRANTING OTHER RELIEF; AND (II) GRANTING REQUEST FOR EXPEDITED HEARING**

Stephen V. Falanga, in his capacity as Chapter 11 Trustee (the "Trustee") for the estate of Vascular Access Centers, L.P. (the "Debtor" or "VAC"), by and through his counsel, Walsh Pizzi O'Reilly Falanga LLP, hereby moves (the "Motion") pursuant to Sections 363 and 364 of the Bankruptcy Code, Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-1, for the entry of an interim Order ("Interim Order") authorizing the Trustee to enter into a transition post-petition credit agreement in connection with the Sale Motion (as discussed herein) on the terms and conditions set forth in the Binding Term Sheet attached as Exhibit "A" to the Declaration of the Trustee in support of this Motion (the "Post-Petition Credit Agreement") with William Whitfield Gardner ("Lender"), to obtain post-petition financing (the "Post-Petition Financing") and granting liens and security interests to Lender, scheduling a final hearing to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis, and for other relief, and respectfully represents the following:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On November 12, 2019 (the "Petition Date"), an involuntary petition was filed against the Debtor for relief under chapter 11 of title 11 of the United States Bankruptcy Code [DE 1] (the "Bankruptcy Case"). The Debtor consented to the relief [DE 3] and an Order for relief was entered on November 25, 2019 [DE 46].

5. On November 22, 2019, a motion was filed seeking an Order dismissing the bankruptcy case or, in the alternative, seeking the appointment of a chapter 11 trustee [DE 52]. On February 12, 2020, an Order was entered approving the Trustee's appointment as Chapter 11 Trustee in this case [DE 245].

6. On March 26, 2021, the Trustee filed a motion (the "Sale Motion") [DE 701], returnable on April 6, 2021, to sell (the "Sale") the Debtor's interests in four (4) of its remaining operating subsidiaries (VAC of New Orleans, LLC, VAC of North Shore Louisiana LLC, VAC of Southern Maryland, LLC and VAC of Bolivar County, LLC) and certain related assets, as well as substantially all of the assets of two (2) of the Debtor's non-operating subsidiaries (VAC of Atlantic County, LLC and VAC of Prince George's County, LLC) (collectively, the "Purchased Centers") to Endovascular Health Services, LLC ("Buyer"), an entity wholly owned by Lender.

7. The Sale contemplates a period of time following entry of an order by the Bankruptcy Court approving the Sale ("Approval Order") and the closing of the Sale (such period, the "Gap Period"), during which the Trustee intends to continue to operate the Purchased Centers on behalf of the Debtor. (*See* Falanga Decl.,[1] Exhibit A.) During the Gap Period, the Debtor and Lender shall

---

[1] "Falanga Decl." refers to the Declaration of Stephen V. Falanga submitted in support of the Motion.

have entered into a certain Transition Services Agreement, pursuant to which the Lender or his affiliates will provide certain management and related services to the Debtor in support of the Purchased Centers.  (*See id.*)

8.There is an immediate need for additional financing in order to continue the Debtor's operations of the Purchased Centers pending the closing of the Sale as revenue has been impacted by, among other things, a freeze initiated by the United States Department of Justice ("DOJ") on accounts receivable owed to the Purchased Centers by the Centers for Medicare and Medicaid Services ("CMS Freeze").  (*See* Falanga Decl., ¶6.)  While the terms of the sale include payment of $402,500 by Lender to the DOJ for a release of the CMS Freeze, there may be some delay between the end of the CMS Freeze and the Purchased Centers' receipt of the receivables currently being held as a result of the CMS Freeze.  (*See id.*)

9.To preserve the value of the Debtor's interest in the Purchased Centers during the Gap Period, Lender has agreed to provide short-term (90 days or less) loans of up to $1,000,000 to fund the Debtor's operations of the Purchased Centers (the "Transition Loan"), subject to and conditioned upon the terms set forth below.  (*See* Falanga Decl., Exhibit A.)

10.Among other expenses, the Debtor is required to fund ongoing payroll obligations and other employee expenses, professional supplies for use at the Centers needed to perform the procedures that generate the Debtor's revenue, rent, and continuing malpractice insurance premiums, all of which are essential to the Debtor's ability to continue operating and operating the Centers.  (*See id.* at ¶7.)  These expenses are in addition to the costs associated with the administration of this bankruptcy case including payment of professional fees and expenses, which will not be funded from this Post-Petition Financing.  (*See id.*)

11.On five (5) prior occasions, the Trustee, on behalf of the Debtor, has been granted the

authority by the Court to enter into post-petition financing agreements with Lender on similar terms.

12. Upon application by the Trustee, on March 18, 2020 and April 20, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a certain post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. (*See* DE 300 & 357 (collectively, the "First Order Authorizing Financing").)

13. Pursuant to the First Order Authorizing Financing, the Trustee was authorized to borrow from Lender the amount of $350,000.00 (the "Initial Loan"), a substantial portion of which was used by the Trustee to fund the required down payment and first installment of the Debtor's renewed malpractice insurance policy premium, which was necessary for the Debtor to continue operating.

14. Given the Debtor's continued need for funding, upon application by the Trustee, on June 17, 2020 and July 31, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a second post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security interests and other relief. *See* DE 407 & 461 (collectively, the "Second Order Authorizing Financing").

15. Pursuant to the Second Order Authorizing Financing, the Trustee was authorized to borrow from Lender an additional $500,000.00 (the "Second Loan"), which was used by the Trustee to fund the Debtor's continued post-petition business operations and to satisfy the July 2020 settlement payment due to the Department of Justice in the amount of $201,250.00.

16. On August 17, 2020 and September 28, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a third post-petition credit agreement with Lender, and to obtain post-petition financing, and granting liens, security

interests and other relief.  (*See* DE 488 & 523 (collectively, the "Third Order Authorizing Financing").)

17.     Pursuant to the Third Order Authorizing Financing, the Trustee was authorized to borrow from Lender up to an additional $650,000.00 (the "Third Loan"), All of which has been disbursed to date, which was used by the Trustee to fund the Debtor's continued post-petition business operations and costs of administration.

18.     The Trustee advised Lender that the Third Loan would be sufficient to help fund the Debtor's post-petition operations for approximately thirty (30) to sixty (60) days, and that additional funding would likely be required thereafter for working capital unless the Debtor's revenue significantly improved.  (*See* Falanga Decl., ¶15.)

19.     As the Trustee previously advised the Court, the Debtor had been able to continue operations by employing the financing from Lender along with certain stimulus funds from the Centers for Medicare & Medicaid Services ("CMS") (the "Stimulus Funds") to offset lost revenues as a result of the Covid-19 pandemic.  (*Id.* at ¶16.)[2]

20.     The Stimulus Funds have been exhausted and additional financing from Lender has been required to maintain continuity in the Debtor's business operations.  (*Id*. at ¶17.)

21.     On October 5, 2020 and October 27, 2020, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a fourth post-petition credit agreement with Lender, and to obtain post-petition financing and granting liens, security interests, and other relief.  (*See* DE 537 & 562 (collectively, the "Fourth Order Authorizing Financing").)

22.     Pursuant to the Fourth Order Authorizing Financing, the Trustee was authorized to

---

[2] As the Trustee has previously advised, the Debtor received the Stimulus Funds by virtue of the Debtor's participation in the CMS program.

borrow from Lender up to an additional $500,000.00 (the "Fourth Loan"), all of which has been disbursed to date and used by the Trustee to fund the Debtor's continued post-petition business operations. (*See* Falanga Decl. at ¶19.)

23. Thereafter, the Debtor required additional financing to fund its business operations and costs of administration over the next ninety (90) to one-hundred-twenty (120) days as the Trustee continued his efforts to reorganize or sell the Debtor. (*See id.* at ¶20.)

24. On November 25, 2020 and January 5, 2021, respectively, the Court entered interim and final Orders authorizing the Trustee, on behalf of the Debtor, to enter into a fifth post-petition credit agreement with Lender, and to obtain post-petition financing and granting liens, security interests, and other relief. (*See* DE 598 & 639 (collectively, the "Fifth Order Authorizing Financing").)

25. Pursuant to the Fifth Order Authorizing Financing, the Trustee was authorized to borrow from Lender up to an additional $1,500,000.00 (the "Fifth Loan"), all of which has been disbursed to date and used by the Trustee to fund the Debtor's continued post-petition business operations. (*See* Falanga Decl. at ¶22.)

26. By this Motion, the Trustee seeks authorization to immediately borrow and deploy, on behalf of the Debtor, up to an additional $1,000,000.00 from the Lender on the terms and conditions set forth in the Binding Term Sheet. The salient terms are as follows:

| **Amount:** | Up to $1,000,000.00, to be loaned at Lender's sole and absolute discretion |
|---|---|
| **Term:** | Earlier of: (a) the date the Debtor and Lender agree the Sale will not close, (b) the date the closing of the Sale does not occur because of a failure of a Closing Condition (as defined in the Sale Motion), (c) the date that is ninety (90) days after entry of the Approval Order, or (d) the date a final, non-appealable Order is entered confirming a plan in the Bankruptcy Case, dismissing the Bankruptcy Case, or converting the |

6

|  | Bankruptcy Case to a chapter 7 liquidation |
|---|---|
| **Interest:** | Prime Rate (as published in the Wall Street Journal on the Closing Date[3]) plus one percent (1%) per annum |
| **Closing Fee:** | $10,000 |
| **Annual Fee:** | N/A |
| **Security:** | 1st/superpriority lien on all Collateral[4] only if the Sale does not close. If the Sale closes, Lender shall assume the Transition Loan Obligations.[5] |

## LEGAL ARGUMENT

### A. THE POST-PETITION FINANCING SHOULD BE APPROVED UNDER SECTIONS 364(c) AND (d) OF THE BANKRUPTCY CODE

27. Section 364 of the Bankruptcy Code authorizes the "obtaining of credit or the incurring of debt – (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

28. The statutory requirement for obtaining post-petition credit under Section 364(c) is a finding, made after notice and a hearing, that the trustee is "unable to obtain unsecured credit

---

[3] Capitalized terms not otherwise defined herein having the meaning ascribed to them in the Binding Term Sheet attached as <u>Exhibit A</u> to the Falanga Declaration.

[4] The "<u>Collateral</u>" is set forth at length in the Binding Term Sheet attached as <u>Exhibit A</u> to the Falanga Declaration.

[5] The Binding Term Sheet provides that if the Debtor consummates a sale of any of the Purchased Centers with a buyer other than Buyer, and Buyer is not in breach of the Sale Agreement, then the Debtor will immediately satisfy the Transition Loan Obligations incurred under the Binding Term Sheet by payment in full to Lender from the cash proceeds of such alternate sale and further, if closing of the sale does not occur for any other reason, then the Transition Loan Obligations incurred under the Binding Term Sheet shall become part of the Bridge Loan Obligations owed to the Lender as provided in prior orders of the Bankruptcy Court approving post-petition financing by Lender to the Debtor, and subject to the Professional Fee Carve Out (as defined in such prior orders and as modified by the Approval Order) to the same force and effect as the Bridge Loan Obligations.

allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(c).

29. Similarly, Section 364(d) authorizes the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if (a) the trustee is unable to obtain such credit otherwise; and (b) there is adequate protection of the interest of the holder of the existing lien on the property of the estate. *See* 11 U.S.C. § 364(d).[6]

30. In these circumstances, the "statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). A debtor need only demonstrate "a good faith effort that credit was not available without" the protections of Section 364(c) and 364(d). *See, e.g., In re Snowshoe Co.*, 789 F.2d at 1088. When there are few lenders likely, able, or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

31. The Trustee was unable to obtain unsecured credit allowable under Sections 503(b)(1)

---

[6] In connection with the Trustee's Motion to approve the Initial Loan, three (3) parties asserted that they held one or more claims against the Debtor secured by existing liens on certain of the Debtor's property: Philadelphia Vascular Institute, LLC ("PVI"), Philips Medical Capital, LLC ("Philips") and TIAA Commercial Finance, Inc. ("TIAA"). The Court overruled PVI's limited objection at the interim hearing based on its prior determination that PVI had not extended credit to the Debtor. *See* DE 300 at 4. PVI did not object to entry of the final Order approving the Initial Loan. The limited objections of Philips and TIAA were consensually resolved with the Lender agreeing that his Post-Petition Lien would be subordinate to any valid, properly perfected liens held by TIAA or Philips subject to a reservation of rights, as more fully set forth in the Interim and Final Orders approving the Initial, Second, Third, Fourth and Fifth Loans. *See* DE 300 at 8-9; DE 357 at 9-10; DE 407, 461, 488, 523, 537, 562, 598 & 639. The provisions addressing the alleged liens of Philips and TIAA have been incorporated into the proposed Interim Order approving the Post-Petition Financing at issue in this Motion. As such, the Trustee is not aware of any valid, properly perfected liens that would be "primed" by this Motion other than that securing the Initial, Second, Third, Fourth and Fifth Loans from Lender.

of the Bankruptcy Code as an administrative expense or to obtain from another lender the necessary post-petition financing on terms more favorable than those provided by the Lender in the Post-Petition Credit Agreement. (*See* Falanga Decl., ¶28.) Given the time constraints and the Debtor's financial condition and existing and ongoing obligations, it is unlikely the Debtor would be able to obtain the necessary financing on an unsecured basis or on terms more favorable than those Lender has extended. (*See id.* at ¶29.)

32. Approval of the Post-Petition Financing is needed to help fund the Debtor's essential operating and administrative costs related to the Centers during the Gap Period. (*See id.* at ¶31.) Uninterrupted access to working capital is necessary to, among other things, maintain the employee workforce and infrastructure, the servicing of patients and generation of revenue, and the preservation of estate assets. (*See id.*)

33. Financing on a post-petition basis is not otherwise available without the Debtor granting a superpriority lien on the Debtor's assets pursuant to Sections 364(c) of the Bankruptcy Code and securing such indebtedness and obligations with the security interests in and the liens upon the property described in the Post-Petition Credit Agreement pursuant to Sections 364(c) and (d) of the Bankruptcy Code.

34. The Trustee's negotiations with Lender have been arms-length and conducted on a good faith basis. The Lender is only willing to extend post-petition financing on the terms outlined above and set forth in detail in the Post-Petition Credit Agreement. (*See id.* at ¶25.)

35. The Trustee respectfully submits that the Post-Petition Financing is the best and only readily available financing option available to the Debtor at this time under the circumstances of this case.

36. The terms of the Post-Petition Financing are substantially the same as those the Court

previously approved in connection with the Initial Loan, Second Loan, Third Loan, Fourth Loan and Fifth Loan (collectively, the "Prior Loans"). As with the Prior Loans, the Trustee respectfully submits that the terms of the Post-Petition Financing are fair, reasonable, and adequate in that the terms do not prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, and they do not abridge the rights of other parties in interest. As contemplated by the policies underlying the Bankruptcy Code, the purpose of the Post-Petition Financing is to afford the Trustee the opportunity to maintain the value of the Debtor's estate to maximize value for the Debtor's creditors and stakeholders. *See generally, In re First S. Sav. Assn.*, 820 F.2d 700, 710-15 (5th Cir. 1987).

37. Bankruptcy courts routinely defer to the estate representative's business judgment on most business decisions, including the decision to borrow money. *See, e.g., In re Curlew Valley Assocs.*, 14 B.R. 506, 511-14 (Bankr. D. Utah 1981) (holding that, in general, a bankruptcy court should defer to the estate representative's business judgment); *In re The Great Atlantic & Pac. Tea Co., Inc.*, 544 B.R. 43, 49 (Bankr. S.D.N.Y. 2016) ("The court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment." (internal quotations omitted)); *In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla 2011) ("It is true that courts give deference to the decision of the trustee and will generally only deny approval unless the court finds that the trustee's decision is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice." (internal quotation marks omitted)); *In re Genesys Research Inst., Inc.*, No. 15-12794-JNF, 2016 Bankr. LEXIS 2376, at *62 (Bankr. D. Mass. June 24, 2016) (recognizing that the business judgment rule applies to any estate representative, including the Chapter 11 Trustee). Courts generally will not second-guess the estate representative's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley*,

14 B.R. at 513-14 (footnotes omitted).

38. The Trustee submits that he has exercised his sound and prudent business judgment in determining the necessity of the Post-Petition Financing and has further satisfied the legal prerequisites for incurring post-petition debt under the Bankruptcy Code. The Trustee submits that the terms of the Post-Petition Financing are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Trustee respectfully requests an Interim Order authorizing the Post-Petition Financing on the terms and conditions set forth in the Post-Petition Credit Agreement pursuant to Sections 364(c) and (d) of the Bankruptcy Code.

### B. THE DEBTOR'S REQUEST FOR INTERIM RELIEF IS APPROPRIATE

39. As set forth above, the Trustee has determined that an immediate and critical need exists for the Debtor to obtain financing for working capital purposes in order to continue the operation of its business and preserve the value of the Debtor and its assets. The financing is necessary to ensure the Debtor has an adequate source of working capital to fund its operations and administrative costs until the closing of the Sale to Buyer. Among other expenses, the Debtor is required to fund ongoing payroll obligations.

40. Bankruptcy Rule 4001(c)(2) permits a court to approve a request to incur post-petition financing during the 14-day period following the filing of a motion requesting such authorization to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *Simasko*, 47 B.R. at 449. After the 14-day period, a debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. *Simasko*, 47 B.R. at 449. Under this standard, the Trustee respectfully submits that his request for entry of the Interim Order approving the Post-Petition Financing on an expedited timeframe and for

the financing amounts requested herein, is appropriate and necessary.

## REQUEST FOR EXPEDITED HEARING

41. For the reasons stated herein, the Trustee is seeking to expedite the receipt of funding from the Post-Petition Financing and requests that a hearing on the Motion be scheduled on April 8, 2021, subject to the Court's schedule, or otherwise at the Court's earliest availability.

42. Pursuant to Rule 5070-1(g)(1), on April 5, 2021, the undersigned counsel for the Trustee sent an email to the following interested parties requesting their consent for the expedited consideration of this matter: (1) Office of the United States Trustee; (2) counsel for the Debtor; (3) counsel for Philadelphia Vascular Institute, LLC; (4) counsel for Lender; (5) counsel for Philips; (6) counsel for TIAA; (7) counsel for PVI and Dr. McGuckin; (8) the United States Attorney for the Eastern District of Pennsylvania; and (9) counsel for all parties who filed an appearances in the Bankruptcy Case. The email requested a response by 5 p.m. on April 5, 2021 if any party objected to an expedited hearing.

43. The Trustee received an objection from the Office of the United States Trustee to the expedited hearing but no basis was articulated other than a reference to an objection to the nature of the relief requested.

44. Prior to the filing, the Lender was provided a copy of the proposed form of Interim Order granting the Motion.

## CONCLUSION

45. For the foregoing reasons, the Trustee respectfully requests that the Court enter the proposed form of Interim Order submitted herewith on an expedited basis authorizing the Trustee to enter into the Post-Petition Credit Agreement to obtain the Post-Petition Financing from Lender pursuant to Sections 363 and 364 of the Bankruptcy Code and granting liens and security interests to

Lender as set forth in the Post-Petition Credit Agreement, scheduling a final hearing and granting such other and further relief set forth herein and that the Court deems just and proper.

          WALSH PIZZI O'REILLY FALANGA LLP
          Counsel to Chapter 11 Trustee

By: _____
    Sydney J. Darling (*Pro Hac Vice*)
    Christopher M. Hemrick (*Pro Hac Vice*)
    Peter J. Pizzi
    Center Square, East Tower
    1500 Market Street, 12th Floor
    Ph: 973.757.1100 | F: 973.757.1090
    chemrick@walsh.law

Date: April 7, 2021