## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| VASCULAR ACCESS CENTERS, L.P., | Case No. 19-17117-AMC |
| Debtor. | |

**ORDER (A) APPROVING EQUITY AND ASSET PURCHASE TERM SHEET AND RELATED PURCHASE AGREEMENT BY AND BETWEEN STEPHEN V. FALANGA, CHAPTER 11 TRUSTEE OF VASCULAR ACCESS CENTERS, L.P., ENDOVASCULAR HEALTH SERVICES, LLC, AND WILLIAM WHITFIELD GARDNER; (B) AUTHORIZING AND APPROVING THE SALE OF THE DEBTOR'S INTERESTS IN AND/OR THE ASSETS OF CERTAIN OF THE DEBTOR'S NON-DEBTOR SUBSIDIARIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (C) AUTHORIZING AND APPROVING THE ASSUMPTION AND/OR ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) WAIVING THE FOURTEEN DAY STAY; AND (E) GRANTING OTHER RELATED RELIEF**

This matter having been opened to the Court upon the motion of Stephen V. Falanga, in his capacity as chapter 11 trustee (the "Trustee") of the estate of Vascular Access Centers, L.P. (the "Debtor"), by and through his counsel, Walsh Pizzi O'Reilly Falanga LLP, pursuant to 11 U.S.C. §§ 105(a), 363, and 365, Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and Local Bankruptcy Rule 6006-1 for entry of an Order (a) approving the Asset and Equity Term Sheet and related Purchase Agreement (the "Purchase Agreement") by and between the Trustee, on behalf of the Debtor, Endovascular Health Services, LLC ("Buyer") and William Whitfield Gardner ("Gardner"); (b) authorizing and approving the sale of the Debtor's interests in (the "Acquired Equity Interests") Vascular Access Center of Bolivar County, LLC, Vascular Access Center of Southern Maryland, LLC, Vascular Access Center of New Orleans, LLC and Vascular Access Center of North Shore Louisiana, LLC, substantially all of the assets of Vascular Access Center of Atlantic County, LLC and Vascular Access Center of Prince George's County, LLC,

BE:11705027.1/COH361-278238

and certain assets of the Debtor required to operate the Purchased Centers (defined below) (the "Acquired Assets"), to Buyer free and clear of liens, claims, interests, and encumbrances (the "Transaction"); (c) authorizing and approving the assumption and/or assignment of certain related executory contracts and unexpired leases; (d) waiving the fourteen day stay; and (e) granting other related relief [DE 701] (the "Motion"); and having heard and considered the statements of counsel, any testimony or offer of proof as to any testimony on the record at the hearing on the Motion (the "Sale Hearing"); and it appearing that good and sufficient notice of the Motion having been provided to all creditors and other parties-in-interest as evidenced by the Certification of Service filed with the Court; and all objections to the Motion having been withdrawn, resolved, or overruled as provided in this Order; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor's estate, creditors, and all other parties-in-interest; and for good cause otherwise having been shown;

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  The relief requested in the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory predicates for the relief sought in the Motion are Sections 105(a), 107(b)(1), 363, 365, and 1146(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, 9014 and

2

9018, and Local Rule 6004-1.

D.     On November 12, 2019, an involuntary petition was filed against the Debtor for relief under chapter 11 of the Bankruptcy Code.  The Debtor consented to the relief, and an Order for relief was entered on November 25, 2019.

E.     On November 22, 2019, Gardner, the Debtor's majority limited partner, filed a *Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or in the Alternative, Appointing a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code* [Dkt. No. 52].

F.     The Court granted Gardner's motion and on February 12, 2020, entered an Order approving the appointment of Stephen V. Falanga as Chapter 11 Trustee [Dkt. No. 245].

G.     On May 7, 2020, the Court approved the Trustee's application to employ SSG Capital Advisors LLC ("SSG") as investment banker to the Trustee to assist the Trustee with his efforts on behalf of the Debtor to explore strategic alternatives, including a potential sale, of the Debtor's business and/or some or all of the Debtor's assets in furtherance of the Trustee's duties under the Bankruptcy Code [Dkt. No. 367].

H.     The Debtor conducts its business through several limited liability company subsidiaries throughout the United States (the "Centers"), including Vascular Access Center of Bolivar County, LLC, Vascular Access Center of Southern Maryland, LLC, Vascular Access Center of New Orleans, LLC and Vascular Access Center of North Shore Louisiana, LLC, Vascular Access Center of Atlantic County, LLC and Vascular Access Center of Prince George's County, LLC (the "Purchased Centers").

I.     Due to restrictions on the corporate practice of medicine in the State of New Jersey,

3

Vascular Access Center of Atlantic County, LLC (the "Atlantic County Center") operated under a State of New Jersey Surgical Practice Registration (the "SPR") issued to James F. McGuckin, MD of NJ, PA ("McGuckin NJ"), an entity controlled by Dr. James F. McGuckin ("McGuckin"), the former chief executive officer of the Debtor and manager of the Debtor's former general partner, Vascular Access Centers, LLC ("VAC LLC"), and, together with McGuckin NJ and any other entity owned or controlled by McGuckin with an interest in the SPR, the "McGuckin Entities"). McGuckin NJ held the SPR for the beneficial interest of the Debtor and the Atlantic County Center.

J.    To the extent McGuckin or the McGuckin Entities do not cooperate with the Trustee on behalf of the Debtor and the Atlantic County Center and the Buyer in effectuating the Transaction, the Trustee should be authorized to take all action necessary to effectuate the transfer of the SPR to the Buyer as contemplated by the Purchase Agreement.

K.    The Debtor holds a majority of the Class A membership interests in each of the Purchased Centers.

L.    As the holder of the majority of Class A membership interests in each of the Purchased Centers, and pursuant to their respective corporate governance documents, the Debtor is entitled to take such actions as may require affirmance by a majority of the voting interests. Accordingly, the Trustee, having assumed control of the Debtor's affairs, is entitled to vote the Debtor's interest in the Purchased Centers as may be required to consummate the Transaction on the terms set forth in the Purchase Agreement.

M.    In his capacity as chapter 11 trustee of the Debtor, the Trustee has the authority to sell the Acquired Equity Interests and the Acquired Assets on the terms set forth in the Purchase Agreement.

N.    Pursuant to those certain Stipulation and Consent Orders [Dkt. Nos. 596 & 657]

4

between the Debtor, Gardner and the United States Attorney's Office for the Southern District of

New York (the "<u>DOJ</u>"), granting the DOJ first priority, adequate protection liens (the "<u>Adequate

Protection Liens</u>") against the Debtor's assets to secure payment pursuant to the Stipulation and

Order of Settlement and Dismissal entered into by and among the Debtor, certain of the Debtor's

subsidiaries and the DOJ as of October 19, 2019 (the "<u>DOJ Settlement Agreement</u>") in the

aggregate amount of $402,500, the DOJ issued a notice of intent to exercise certain alleged offset

and other rights pursuant to the DOJ Settlement Agreement against receivables due the Centers.

As a result, the Centers' accounts receivables are being held by the Centers for Medicare and

Medicaid Services and not paid to the Centers (the "<u>CMS Freeze</u>").   In addition, the DOJ has also

applied to the United States District Court for the Southern District of New York to enter judgment

against the VAC Defendants for the up to maximum amount of $18,360,794 under the DOJ

Settlement ("<u>Consent Judgment</u>").

     O.    Notice of the Motion has been provided to: (i) the Debtor; (ii) the Office of the

United States Trustee; (iii) the United States Attorney for the Eastern District of Pennsylvania; (iv)

all secured creditors; (v) all known entities holding or asserting a security interest in or lien against

any of the Acquired Equity Interests and/or the Acquired Assets; (vi) the parties to the Debtor's

and the Purchased Centers' material executory contracts and unexpired leases that the Debtor

believes may be subject to assumption and/or assignment or rejection; (vii) all potential purchasers

identified by the Trustee, on behalf of the Debtor; (viii) the Debtor's 20 largest unsecured creditors;

(ix) all interest holders of the Debtor and the Purchased Centers; (x) the Internal Revenue Service;

(xi) counsel for Buyer and Gardner; (xii) counsel for McGuckin and the McGuckin Entities; and

(xiii) all other creditors and persons required to be served pursuant to Bankruptcy Rules 2002,

6004, and 6006, including all parties on the Clerk's Service List, and applicable local bankruptcy

BE:11705027.1/COH361-278238

rules; and (b) such notice was good, adequate and sufficient under the circumstances of this chapter 11 case and this proceeding complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; (c) a reasonable opportunity to object and be heard with respect to the Motion and the Purchase Agreement was afforded to all interested persons and entities; and (d) no other or further notice of the Motion or the Transaction set forth in the Purchase Agreement is or shall be required.

P.      On April 5, 2021, the Trustee received a competing offer from Dhankar, LLC to purchase the assets of the Purchased Centers for $1.8 million in cash (the "Competing Bid") which Competing Bid was considered by the Trustee and the Court at the Sale Hearing.  The Trustee considered the Competing Bid but concluded, in consultation with his professionals, that in his business judgment, Buyer's Transaction was the highest and best offer for the Purchased Assets. At the Court's invitation, Buyer agreed to increase the Purchase Price for the Transaction by $100,000.00, which additional consideration would not be subject to any liens or claims under Gardner's post-petition loans[1].

Q.      The Trustee, on behalf of the Debtor, has demonstrated (i) good, sufficient, and sound business purposes and justifications for, and (ii) compelling circumstances to consummate the Transaction as contemplated by the Purchase Agreement other than in the ordinary course of business under Section 363(b) of the Bankruptcy Code and before and outside a plan of reorganization, and such action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest. Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk of loss of the value of the Acquired Equity Interests and Acquired Assets if the Transaction is not

---

[1] In the event the Trustee and the DOJ cannot reach agreement upon the disposition of the $100,000.00 in additional consideration the Court will determine the use of the additional consideration by the Estate.

BE:11705027.1/COH361-278238

consummated quickly, which could result in significantly diminished creditor recoveries; (ii) the Transaction presents the best opportunity to maximize the value of the Acquired Equity Interests and Acquired Assets and avoid decline and devaluation of the same; (iii) the contemplated Transaction will satisfy the DOJ's Adequate Protection Liens, end the CMS Freeze with respect to the Purchased Centers, and avoid a potential, permanent offset by the DOJ of certain receivables due to the Purchased Centers; and (iv) the contemplated Transaction constitutes the highest or otherwise best offer received for the Acquired Equity Interests and Acquired Assets.

R.      Entry of an Order approving the Transaction is a necessary condition precedent to the consummation of the contemplated Transaction.

S.      Approval of the Motion and the Transaction on the terms set forth in the Purchase Agreement, and this Order, are in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest.  No alternative to the Transaction exists that would provide a greater value to the Debtor, its estate, creditors, stakeholders, or other parties-in-interest.

T.      The Trustee, on behalf of the Debtor and the Purchased Centers, and Buyer, intend to enter into the Transition Services Agreement ("TSA") attached to the Purchase Agreement [Dkt. No. 730], pursuant to which, among other things, the Buyer or its affiliates shall provide management services to the Purchased Centers between the entry of this Order and the Closing Date, including, human resources and payroll, accounting, financial controller functions, operations and IT functions, as set forth in the TSA.  The Purchase Agreement incorporates the TSA and its terms. References in this Order to the "Purchase Agreement" include the terms of the TSA. The services provided by the Buyer or its affiliates to the Debtor and the Purchased Centers under the TSA are actual and necessary expenses of the Debtor's bankruptcy estate and to the extent charges for such services are unpaid, Buyer or its affiliates that provided such services shall

7

hold an allowed administrative expense claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code. Effective as of and expressly conditioned upon Closing, Buyer shall have assumed the Debtor's obligations under the TSA.

U.      The consideration to be paid and provided by Buyer and Gardner constitutes reasonably equivalent value and fair consideration for the Acquired Equity Interests and the Acquired Assets, as the case may be under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, or possession thereof or the District of Columbia.  The Purchase Agreement was not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under the Bankruptcy Code, or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any other applicable law.  The Trustee, on behalf of the Debtor, Buyer, and Gardner did not enter into the Purchase Agreement with any fraudulent or otherwise improper purpose.  The Transaction represents a fair and reasonable offer to purchase the Acquired Equity Interests and the Acquired Assets under the circumstances of the Debtor's chapter 11 case and constitutes the highest and best offer for the same, and will provide a greater recovery for the Debtor, its estate, creditors, stakeholders, and other parties-in-interest than would be provided by any other available alternative. The Trustee's determination that the Transaction constitutes the highest and best offer for the Acquired Equity Interests and the Acquired Assets constitutes a valid and sound exercise of the Trustee's business judgment.

V.      Subject to the entry of this Order, the Trustee, on behalf of the Debtor, (i) has full power and authority to execute the Purchase Agreement and any ancillary agreements or other documents contemplated thereby; (ii) has all of the power and authority necessary to consummate

8

the contemplated Transaction; and (iii) has taken all action necessary to authorize and approve the Purchase Agreement, including the sale of the Acquired Equity Interests and the Acquired Assets. No consents or approvals, other than those expressly provided for in the Purchase Agreement or this Order are required for the Trustee, on behalf of the Debtor, to close the sale of the Acquired Equity Interests and the Acquired Assets and consummate the transactions contemplated thereby.

W.     The contemplated Transaction was negotiated, proposed, and entered into by and among the Trustee, on behalf of the Debtor, Buyer and Gardner without collusion or fraud, from arm's-length bargaining positions, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code. Buyer is a good faith purchaser within the meaning of Bankruptcy Code Section 363(m) and is therefore entitled to all of the protections afforded by Bankruptcy Code section 363(m). Buyer and Gardner have proceeded in good faith in all respects in connection with this proceeding in that: (a) Buyer and Gardner recognized that the Trustee, on behalf of the Debtor, was free to deal with any other party interested in acquiring the Acquired Equity Interests and/or the Acquired Assets; and (b) all payments to be made by Buyer and/or Gardner and other agreements or arrangements entered into in connection with the Transaction have been adequately disclosed. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction. No stay pending appeal of this Order has been requested, or, if requested, has been denied, and the stay contained in Bankruptcy Rule 6004(h) and 6006(d) has been and hereby is expressly and irrevocably waived as set forth below.

X.     Neither the Debtor or the Trustee nor Buyer, Gardner, or any of their respective affiliates, partners, principals, agents, members, or representatives, has engaged in any conduct that would cause or permit the Purchase Agreement or other documents and instruments related to

BE:11705027.1/COH361-278238

or connected with the Transaction and the consummation thereof or any of the transactions relating thereto to be avoided, or costs or damages to be imposed under Section 363(n) of the Bankruptcy Code.  Specifically, Buyer, and Gardner have not acted in a collusive manner with any person and the consideration was not controlled by any agreement among other interested parties.  The terms and conditions of the Purchase Agreement, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and the Transaction shall not be avoided under Section 363(n) of the Bankruptcy Code.

Y.    Buyer and Gardner would not have entered into the Purchase Agreement, and would not consummate the Transaction, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Acquired Equity Interests and the Acquired Assets was not free and clear of all Liens, Claims, Interests, and Encumbrances (each as defined below) pursuant to Section 363 of the Bankruptcy Code, or if Buyer or Gardner would, or in the future could, be liable for any of such Liens, Claims, Interests, or Encumbrances.  The total consideration to be provided reflects Buyer and Gardner's reliance on this Order to provide it, pursuant to Sections 105(A) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Equity Interests and the Acquired Assets free and clear of all Liens, Claims, Interests, and Encumbrances (including, without limitation, any potential derivative, vicarious, transferee, or successor liability claims).  A sale of the Acquired Equity Interests and the Acquired Assets other than one free and clear of all Liens, Claims, Interests, and Encumbrances would yield substantially less value for the Debtor's estate, with less certainty, than the Transaction and would adversely impact the Trustee's efforts, on behalf of the Debtor, to maximize the value of the Debtor's estate.  Therefore, the Transaction is in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest.

BE:11705027.1/COH361-278238

Z.      The Trustee, on behalf of the Debtor, may sell the Acquired Equity Interests and the Acquired Assets free and clear of all Liens, Claims, Interests and Encumbrances because, with respect to each creditor or interested party asserting a Lien, Claim, Interest or Encumbrance in any of the Acquired Equity Interests or the Acquired Assets, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims, Interests and Encumbrances who did not object or who withdrew their objections to the Transaction or the Motion are deemed to have consented to the Motion and the Transaction pursuant to Section 363(f)(2) of the Bankruptcy Code.  All holders of Liens, Claims, Interests and Encumbrances are adequately protected by having their Liens, Claims, Interests and Encumbrances attach to the proceeds of the Transaction ultimately attributable to the Acquired Equity Interests and the Acquired Assets against or in which such Liens, Claims, Interests and Encumbrances are asserted, or otherwise be satisfied in connection with the Closing, subject to the terms of such Liens, Claims, Interests and Encumbrances, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, Interests and Encumbrances now have against the Acquired Equity Interests or the Acquired Assets, or their proceeds, if any, subject to any rights, claims and defenses the Debtor may possess with respect thereto.

AA.     Neither Buyer nor Gardner are holding themselves out to the public as a continuation of the Debtor, the Atlantic County Center, or Vascular Access Center of Prince George's County, LLC (the "Prince George's Center").  The sale of the Acquired Equity Interests and the Acquired Assets and consummation of the Transaction contemplated by the Purchase Agreement is not, and does not amount to, a consolidation, merger or *de facto* merger, and there is not substantial continuity between Buyer or Gardner and the Debtor or the Debtor's estate, the Atlantic County Center, or the Prince George's Center.  There is no continuity of enterprise

11

between Buyer or Gardner and the Debtor or the Debtor's estate or with the Atlantic County Center or the Prince George's Center.  Neither Buyer nor Gardner are a mere continuation of the Debtor or the Debtor's estate, and neither is a successor to the Debtor or the Debtor's estate or the Atlantic County Center and the Prince George's Center.  Upon the Closing, Buyer shall be deemed to have assumed only the Assumed Liabilities[2] and shall not be liable in any manner whatsoever for the Excluded Liabilities.  The (i) transfer of the Acquired Equity Interests and Acquired Assets to Buyer, and (ii) the assumption and/or assignment to Buyer of any assumed and/or assigned contracts (the "Assigned Agreements"), do not and will not subject the Buyer or Gardner to any liability whatsoever with respect to the operation of the Debtor's business before the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.  Except for the Assumed Liabilities, Buyer's acquisition of the Acquired Equity Interests and Acquired Assets shall be free and clear of any and all Excluded Liabilities and any "successor liability" claims of any kind or nature whatsoever, whether known or unknown, and whether asserted or unasserted as of the Closing.  The Court finds that Buyer and Gardner would not have entered into the Purchase Agreement but for the foregoing protections against claims related to Liens, Claims, Interests, and Encumbrances, the Excluded Liabilities, and/or potential claims based upon successor liability theories.

BB.    The Trustee has demonstrated that it is an exercise of his sound business judgment to assume and assign the Assigned Agreements to Buyer in connection with the consummation of

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Purchase Agreement.

BE:11705027.1/COH361-278238

the Transaction, and the assumption, assignment, and sale of the Assigned Agreements to Buyer

is in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-

interest. The Assigned Agreements being assigned to Buyer are an integral part of the Acquired

Equity Interests and the Acquired Assets being purchased by Buyer, and the assignments are in

the best interests of the Debtor and its estate and represent the reasonable exercise of the Trustee's

sound business judgment. Specifically, the assumption and/or assignment of the Assigned

Agreements (i) is necessary to the sell the Acquired Equity Interests and Acquired Assets to Buyer;

(ii) limit the losses suffered by counterparties to the Assigned Agreements, and (iii) maximize the

recoveries to other creditors of the Debtor by limiting the amount of claims against the Debtor's

estate by avoiding the rejection of the Assigned Agreements.

CC.     As evidenced by the certificates of service filed with the Court, the Trustee, on

behalf of the Debtor, has served, prior to the Sale Hearing, notice (the "Cure Notice") of the intent

to assume and/or assign the Assigned Agreements and of the related proposed cure amount (the

"Cure Amount") upon each non-Debtor counterparty to the Assigned Agreements. The service of

the Cure Notice was good, sufficient, and appropriate under the circumstances and no further

notice need be given with respect to the Cure Amounts for the assumption and/or assignment of

the Assigned Agreements. All non-Debtor parties to the Assigned Agreements have had a

reasonable opportunity to object both to the Cure Amounts listed on the applicable Cure Notice

and to the assumption and/or assignment of the Assigned Agreements to Buyer.

DD.     Except as set otherwise set forth in the Purchase Agreement or this Order, all Cure

Amounts shall be determined and paid by the Trustee, on behalf of the Debtor, in accordance with

the terms thereof. Payment of the Cure Amounts shall be in full satisfaction and cure of any and

all defaults under the Assigned Agreements, whether monetary or non-monetary. Each non-

BE:11705027.1/COH361-278238

Debtor party to an Assigned Agreement is forever barred, estopped, and permanently enjoined from asserting against the Trustee, the Debtor, the Debtor's estate, any of the Purchased Centers, Buyer, Gardner, and their successor or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to the Sale Hearing. A Cure Objection may be resolved after the Closing, provided that the Trustee, on behalf of the Debtor, maintains the alleged Cure Amount in escrow pending resolution.

EE.     Upon the Debtor's assignment of the Assigned Agreements to Buyer under the provisions of this Order, no default shall exist under any Assigned Agreement, and no counterparty to any Assigned Agreement shall be permitted to declare a default by the Debtor, the Debtor's estate, the Purchased Centers, Buyer, or Gardner, or otherwise take action against the Debtor, the Debtor's estate, the Purchased Centers, Buyer, or Gardner as a result of the Debtor's or the Purchased Centers' financial condition, bankruptcy, or failure to perform any of the obligations under the relevant Assigned Agreement. Any provision in any Assigned Agreement that prohibits or conditions the assignment of such Assigned Agreement (including, without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect. The failure of the Debtor, the Purchased Centers, Buyer, or Gardner to enforce at any time one or more terms or conditions of any Assigned Agreement shall not be a waiver of such terms or conditions, or of the Debtor's, the Purchased Centers', and Gardner's rights to enforce every term and condition of the Assigned Agreement.

FF.     With respect to each of the Assigned Agreements, the Trustee, on behalf of the Debtor, has met all requirements of Section 365(b) of the Bankruptcy Code to the extent

14

applicable.  Further, based on the arguments and representations of counsel made, and the evidence proffered and adduced at the Sale Hearing, Buyer has provided adequate assurance of future performance under the Assigned Agreements in satisfaction of Sections 365(b) and 365(f) of the Bankruptcy Code to the extent applicable and to the extent that any such assurance is required and not waived by the counterparties to such Assigned Agreements.  Accordingly, the Assigned Agreements may be assumed and/or assigned by the Debtor to Buyer as provided for in the Purchase Agreement.

GG.    Each and every provision of the Assigned Agreements that purport to prohibit, restrict, or condition or could be construed as prohibiting, restricting, or conditioning assignment of any of the Assigned Agreements have been satisfied or are otherwise unenforceable under Section 365 of the Bankruptcy Code.

HH.    Upon consummation of the Transaction at Closing, the Assigned Agreements shall be deemed valid and binding, in full force and effect in accordance with their terms and subject to the provisions of this Order.

II.    Good and sufficient reasons for approval of the Purchase Agreement and the Transaction have been articulated to the Court in the Motion and on the record at the Sale Hearing, and the relief requested in the Motion and set forth in this Order is in the best interests of the Debtor, its estate, creditors, stakeholders, and other parties-in-interest.

JJ.    The transfer of the Acquired Equity Interests and Acquired Assets to Buyer at Closing will be a legal, valid, and effective transfer of the Acquired Equity Interests and Acquired Assets, and shall vest Buyer with all of the Debtor's right, title, and interest of, in, and to the Acquired Equity Interests and all of the Debtor's or the Purchased Centers' right, title, and interest of, in, and to the Acquired Assets, free and clear of (i) all Liens, Claims, Interests, and

15

Encumbrances of any kind or nature whatsoever (other than Assumed Liabilities), and (ii) all Excluded Liabilities.

KK.     The Transaction does not constitute a *sub rosa* chapter 11 plan.

LL.     Time is of the essence in consummating the Transaction.  In order to maximize the value of the Debtor's estate, it is essential that the Closing of the sale of the Acquired Equity Interests and Acquired Assets occur within the time constraints set forth in the Purchase Agreement.  Accordingly, there is cause to waive the stay as contemplated by Bankruptcy Rules 6004(h) and 6006(d).

**IT IS HEREBY ORDERED THAT:**

1.      The Motion and the relief requested therein is granted and approved as set forth herein.  All objections (except for objections to Cure Costs, if any, solely to the extent such objections relate to any asserted cure obligations pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code), if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits.

2.      Pursuant to Sections 105, 363, 365 and 1146(a) of the Bankruptcy Code and Bankruptcy Rules 6004, 6006, 9014, 9018, and Local Bankruptcy Rule 6004-1, the Purchase Agreement, and all of the terms and conditions therein, the sale of the Acquired Equity Interests and Acquired Assets and consummation of the Transaction are hereby approved and authorized.

3.      The Trustee has demonstrated sound business judgment and is authorized and empowered pursuant to Section 363 of the Bankruptcy Code to sell the Acquired Equity Interests and Acquired Assets to Buyer on the terms and conditions set forth in the Purchase Agreement.

4.      The Trustee, on behalf of the Debtor, is authorized to execute and deliver such

BE:11705027.1/COH361-278238

assignments, conveyances, and other documents and instruments of transfer that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be (a) reasonably requested by Buyer or Gardner for the purpose of assigning, transferring, granting, conveying and conferring to Buyer, or reducing to possession, the Acquired Equity Interests and Acquired Assets or (b) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, all without further order of the Court.

5.      Pursuant to Section 365 of the Bankruptcy Code and applicable non-bankruptcy law, notwithstanding any provision of any Assigned Agreements or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assigned Agreements to Buyer, the Trustee, on behalf of the Debtor, is authorized to assume and/or assign the Assigned Agreements to Buyer.

6.      Payment of the Cure Costs shall be in full satisfaction and cure of any and all defaults under the Assigned Agreements, whether monetary or non-monetary.  Each non-Debtor party to an Assigned Agreement is forever barred, estopped, and permanently enjoined from asserting against the Debtor, the Debtor's estate, the Purchased Centers, Buyer, Gardner, their successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.  A Cure Objection may be resolved after the Closing; provided that the Debtor maintains the alleged Cure Amount in escrow pending resolution.

7.      Upon the assignment of Assigned Agreements to Buyer under the provisions of this Order, no default shall exist under any Assigned Agreement.  Except as set forth herein with respect to assertion of a Claim for the Cure Amount, any and all counterparties to any Assigned Agreement shall be forever barred and estopped from asserting a Claim against the Debtor, the

BE:11705027.1/COH361-278238

Debtor's estate, the Purchased Centers, Buyer, or Gardner that any additional amounts are due or defaults exist under the Assigned Agreements that arose, accrued, relate to, or are attributable to the period before the Closing.

8.       No counterparty to any Assigned Agreement shall be permitted to declare a default by the Debtor, the Debtor's estate, the Purchased Centers, Buyer, or Gardner, or otherwise take action against the Debtor, the Debtor's estate, the Purchased Centers, Buyer, or Gardner as a result of the Debtor's or the Purchased Centers' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assigned Agreements.  Any provision in any Assigned Agreement that prohibits or conditions the assignment of such Assigned Agreement (including, without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect.  The failure of the Debtor, the Purchased Centers, Buyer, or Gardner to enforce at any time one or more terms or conditions of any Assigned Agreement shall not be a waiver of such terms or conditions, or of the Debtor's, the Purchased Centers', Buyer's, and Gardner's rights to enforce every term and condition of such Assigned Agreement.

9.       As of the Closing, subject to the provisions of this Order, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtor, the Atlantic County Center, and the Prince George's County Center under the Assigned Agreements and shall assume only those obligations of the Debtor, the Atlantic County Center, and/or the Prince George's County Center (as applicable) under the Assigned Agreements first arising and attributable to the time period occurring on or after the Closing.  Upon assumption of the Assigned Agreements and assignment to Buyer at Closing, the Assigned Agreements shall be deemed valid and binding, in

18

full force and effect in accordance with their terms, subject to the provisions of this Order.

10.    Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code and in accordance with the terms of the Purchase Agreement, the Trustee, on behalf of the Debtor, is authorized and directed to transfer the Acquired Equity Interests and the Acquired Assets to Buyer and, upon the Closing, such transfer shall: (a) be valid, legal, binding, and effective; (b) vest Buyer with all right, title, and interest of the Debtor in the Acquired Equity Interests and the Debtor, the Atlantic County Center, and the Prince George's County Center in the Acquired Assets; and (c) be free and clear of all liens, including, without limitation, any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of first refusal, hypothecation, encumbrance, easement, encroachment, right of way, restrictive covenant on real property, real property license, lease, or conditional sale arrangement, and claims, rights, causes of action, debts, liabilities and obligations of any kind or nature, whether arising prior to or subsequent to the commencement of the Debtor's chapter 11 case, whether known or unknown, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured, determined or undeterminable, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to McGuckin, the Debtor, and the Purchased Centers or their interests in the Acquired Equity Interests and the Acquired Assets, the operation of the Debtor's, McGuckin's, or the Atlantic County Center, and the Prince George's County Center's businesses before the Closing, or the transfer of the Debtor's interest in the Acquired Equity Interests and the Debtor's, the Atlantic County Center's, and the Prince George's County Center's interests in the Acquired Assets to the Buyer, including any tax or environmental liability (collectively, excluding the Assumed Liabilities, the "Claims, Interests, and

19

Encumbrances")[3], with all such Liens, Claims, Interests and Encumbrances to attach to the net proceeds of the Transaction, in the same amount and order of their priority, with the same validity, force, and effect which they have against the Acquired Equity Interests and the Acquired Assets, or otherwise be satisfied in connection with the Closing, and subject to any claims and defenses the Debtor, the Atlantic County Center, and the Prince George's County Center, and other parties-in-interest may possess with respect thereto in each case immediately before the Closing; and (d) except as otherwise expressly provided in the Purchase Agreement, all such Liens, Claims, Interests, and Encumbrances shall be and are hereby released, terminated, and discharged as to Buyer, Gardner, and the Acquired Equity Interests and the Acquired Assets.  As used in this Order, the term "Claims" shall be given its broadest possible meaning, with reference to the definition of claims in section 101(5) of the Bankruptcy Code, but not by way of limitation.

11.     To the extent necessary, McGuckin and the McGuckin Entities are hereby authorized to transfer the SPR to Buyer as contemplated by the Purchase Agreement and, upon the

---

[3] Without limiting the generality of the foregoing, the term "Claims, Interests, and Encumbrances" shall include, without limitation, claims or causes of action arising under, without limitation: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to the Debtor or any of Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtor's business operations or the cessation thereof; (d) any litigation involving the Debtor; and (e) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967  and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws or (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with the Debtor or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common law merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability.

BE:11705027.1/COH361-278238

Closing, such transfer shall: (a) be valid, legal, binding, and effective; (b) vest Buyer with all right, title, and interest of McGuckin, the McGuckin Entities, the Debtor, and the Purchased Centers in the SPR; and (c) be free and clear of all Liens, Claims, Interests and Encumbrances to attach to the net proceeds of the Transaction, in the same amount and order of their priority, with the same validity, force, and effect which they have against the SPR, or otherwise be satisfied in connection with the Closing, and subject to any claims and defenses McGuckin, the McGuckin entities, the Debtor, the Purchased Centers, and other parties-in-interest may possess with respect thereto in each case immediately before the Closing; and (d) all such Liens, Claims, Interests, and Encumbrances shall be and hereby are released, terminated and discharged as to Buyer, Gardner, and the Acquired Equity Interests and Acquired Assets.

12.    To the extent necessary or applicable, if McGuckin and/or the McGuckin Entities do not cooperate with the Trustee on behalf of the Debtor, the Purchased Centers, Buyer, and Gardner in effectuating the transactions contemplated by the Purchase Agreement, the Trustee and/or the Buyer are hereby authorized to take all action necessary to effectuate the transfer of the SPR to Buyer, and take all other action on behalf of McGuckin and/or the McGuckin Entities that may be required to consummate the Transaction, as contemplated by the Purchase Agreement.

13.    The Closing is without prejudice to the Debtor's right, at its option, to reject and/or terminate any executory contract or unexpired lease of the Debtor, the Atlantic County Center, and/or the Prince George's County Center (other than the Assigned Agreements) upon the filing and service of a notice of rejection upon the counterparty to any such rejected executory contract or unexpired lease.

14.    The Transaction is not and does not amount to a consolidation, merger, or de facto merger of the Buyer or Gardner and the Debtor, the Debtor's estate, or the Purchased Centers.

BE:11705027.1/COH361-278238

There is no continuity of enterprise between Buyer or Gardner and the Debtor, the Debtor's estate, or the Purchased Centers.  Buyer is not, and will not be, a mere continuation of the Debtor, the Debtor's estate, or the Purchased Centers, and neither Buyer nor Gardner constitute a successor to the Debtor, the Debtor's estate, or the Purchased Centers.

15.    Upon the Closing, Buyer shall be deemed to have assumed only the Assumed Liabilities and shall not be liable in any manner or under any legal or equitable theory whatsoever for the Excluded Liabilities.  Except for the Assumed Liabilities, Buyer's acquisition of the Acquired Equity Interests and Acquired Assets shall be free and clear of any and all Excluded Liabilities and any "successor liability" Claims of any kind or nature whatsoever, whether known or unknown, and whether asserted or unasserted as of the time of the Closing.  The (i) transfer of the Acquired Equity Interests and Acquired Assets to Buyer, and (ii) assumption and assignment to Buyer of the Assigned Agreements, do not and will not subject Buyer or Gardner to any liability whatsoever with respect to the operation of the Debtor's or the Purchased Centers' business before the Closing, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

16.    The Purchase Agreement, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement or any related agreements, documents, or other instruments.

17.    The Trustee, on behalf of the Debtor, is authorized to utilize the proceeds of the

BE:11705027.1/COH361-278238

sale of the Acquired Equity Interests and Acquired Assets to satisfy any liens that are required to be satisfied under Section 363(f) of the Bankruptcy Code.

18.    Upon the DOJ's receipt of $402,500 from or on behalf of the Debtor (the "<u>DOJ Adequate Protection Payment</u>"), (a) the Adequate Protection Liens will be deemed satisfied in full and released, (b) the DOJ is authorized and directed to take all action necessary to end the CMS Freeze with respect to the Purchased Centers, and (c) should Closing not occur as a result of the failure of a closing condition to be satisfied, Buyer shall hold a $402,500 allowed administrative claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

19.    Upon the DOJ's receipt of $400,000 at or as soon as reasonably practicable after Closing (the "<u>DOJ Purchase Price Payment</u>"), the Purchased Centers are hereby released from any liability under or related to the DOJ Settlement Agreement and the Consent Judgment, and the DOJ is hereby authorized and directed to take such actions as reasonably necessary to effect such release, including without limitation to obtain any necessary approval by the United States District Court for the Southern District of New York and/or to cause the Consent Judgment to be marked satisfied with respect to the Purchased Centers. For the avoidance of doubt, nothing in this order (a) affects the DOJ's rights under the DOJ Settlement Agreement, the CMS Freeze, or the Consent Judgement against any Center that is not a Purchased Center, or (b) imposes any obligation on the DOJ to take any action with respect to any Center that is not a Purchased Center.

20.    In the event that the DOJ does not receive an amount equal to the DOJ Purchase Price Payment upon the Closing of the Transaction or an alternative sale transaction substantially similar to this Transaction with an alternative buyer, the DOJ shall hold an allowed administrative claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code in an amount equal to the accounts receivable received by the Purchased Centers between March 22, 2021 and the earlier of (a) the

date the DOJ exercises its setoff rights with respect to the Purchased Centers, and (b) April 15, 2021.

21.    In the event that the Transaction does not Close and the Debtor closes an alternative sale transaction substantially similar to this Transaction with an alternative buyer, the Debtor shall reimburse to Gardner and Buyer, as applicable, (a) the DOJ Adequate Protection Payment, and (b) reasonable costs and expenses (including attorneys' fees) incurred in connection with the Transaction as approved by the Bankruptcy Court.

22.    Upon the Closing, and except as otherwise expressly provided in the Purchase Agreement, neither Buyer nor Gardner shall be liable for any Liens, Claims, Interests and Encumbrances against or relating to the Debtor or the Purchased Centers or their operations prior to Closing.

23.    Upon the Closing, the Professional Fee Carve Out (as defined in the Final Post-Petition Financing Orders)[4] shall be capped at an aggregate amount of $875,000, plus (i) all fees required to be paid to the Clerk of the Bankruptcy Court; and (ii) all statutory fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c) effective as of the Closing.

24.    The Trustee, Buyer, and Gardner, and their respective affiliates, members,

---

[4] "Final Post-Petition Financing Orders" means, collectively, the following Orders of the Bankruptcy Court: (i) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Dkt. No. 357]; (ii) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Second Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Dkt. No. 461]; (iii) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Third Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Dkt. No. 520]; (iv) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Fourth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Dkt. No. 562]; and (v) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Fifth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Dkt. No. 639].

BE:11705027.1/COH361-278238

principals, and their respective advisors have proceeded in good faith and without collusion in all respects. The Purchase Agreement, and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the Debtor, Buyer, and Gardner in good faith, without collusion and from arm's-length bargaining positions. The Buyer is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the benefits and protections afforded thereby. The reversal or modification on appeal of the authorization provided herein of the Transaction shall neither affect the validity of the Transaction nor the transfer of the Acquired Equity Interests and Acquired Assets to Buyer, free and clear of Liens, Claims, Interests, and Encumbrances, unless such authorization is duly stayed before the Closing pending such appeal.

25.    Pursuant to Sections 105 and 363 of the Bankruptcy Code, the Trustee, on behalf of the Debtor, Buyer, and Gardner are hereby authorized and directed to take any and all actions necessary or appropriate to (a) consummate the sale of the Acquired Equity Interests and Acquired Assets on the terms and subject to the conditions set forth in the Purchase Agreement and the other transactions contemplated thereby; (b) assume and assign the Assigned Agreements to Buyer; and (c) perform, consummate, implement, and fully close the transactions contemplated by the Purchase Agreement and execute and deliver any additional instruments and documents that reasonably may be necessary or desirable to implement the Purchase Agreement or any transactions relating thereto.

26.    Except as set forth in the Purchase Agreement, the terms and provisions of the Purchase Agreement and this Order shall be specifically enforceable and binding in all respects upon, or shall inure to the benefit of the Debtor, the Debtor's estate, the Purchased Centers, the Debtor's creditors, Buyer, Gardner, and their respective affiliates, successors and assigns, and any

affected third-parties, including all persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors, or any trustee, examiner, or receiver.

27.    Neither the provisions of any state's Uniform Commercial Code, nor any other bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the sale of the Acquired Equity Interests and/or Acquired Assets on the terms set forth in this Order and the Purchase Agreement.

28.    Upon the consummation of a Transaction and the payment by Gardner of the purchase price, SSG shall be entitled to a fee at and as a condition of closing of such Sale Transaction, equal to seven percent (7%) of the Total Consideration for the Transaction, less a discount of twenty-five percent (25%) pursuant to the terms of their engagement with the Debtor, which has previously been approved by the Court.  Other than SSG, no brokers were involved in consummation of the Transaction and no broker's commissions are due to any person or entity in connection with the sale of the Acquired Equity Interests and Acquired Assets to Buyer.

29.    The consideration provided by Buyer and Gardner for the Acquired Equity Interests and Acquired Assets under the Purchase Agreement shall be deemed for all purposes to constitute value and fair consideration under the Bankruptcy Code and any other applicable law, and the Transaction may not be avoided, or costs or damages imposed or awarded under Section 363(n) or any other provision of the Bankruptcy Code.

30.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the

26

Acquired Equity Interests and Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Equity Interests and Acquired Assets to Buyer on the Closing Date pursuant to the terms of the Purchase Agreement, free and clear of all Liens, Claims, Interests, and Encumbrances.

31.    This Order is and shall be binding upon and shall authorize and direct all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, and/or report or insure any title or state of title in or to the Acquired Equity Interests and Acquired Assets.  All such persons and entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens, Claims, Interests, and Encumbrances against the Acquired Equity Interests and Acquired Assets from their records, official and otherwise, and to accept and honor any documents or instruments relating to the Acquired Equity Interests and Acquired Assets as contemplated by the Purchase Agreement and this Order.

32.    If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or Interests in, the Acquired Equity Interests and/or Acquired Assets shall not have delivered to the Trustee, on behalf of the Debtor, before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purposes of documenting the release of all Liens that the person or entity has or may assert with respect to any of the Acquired Equity Interests and/or Acquired Assets, (a) the Trustee, on behalf of the Debtor,

27

Buyer, and Gardner are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Equity Interests and Acquired Assets, and (b) the Buyer and Gardner are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Interests, and Encumbrances against the Acquired Equity Interests and/or Acquired Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

33.    All counterparties to the Assigned Agreements shall cooperate and expeditiously execute and deliver, upon the reasonable requests of Buyer or Gardner, and shall not charge Buyer or Gardner for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transaction.

34.    Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized and directed to accept any and all instruments necessary and appropriate to consummate the Transaction and other transactions contemplated by the Purchase Agreement.

35.    Except only to the extent otherwise expressly agreed to by the Debtor, Buyer, and Gardner in the Purchase Agreement, no governmental unit or regulatory authority may revoke or suspend any right, license, trademark, or other permission relating to the use of the Acquired Equity Interests and/or Acquired Assets sold, transferred, or conveyed to Buyer on account of the filing or pendency of the chapter 11 case or the consummation of the Transaction.

36.    Except as otherwise provided in the Purchase Agreement, any and all Acquired

28

Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier, or employee of the Debtor, shall be transferred to Buyer free and clear of all Liens, Claims, Interests, and Encumbrances (other than the Assumed Liabilities) and shall be delivered at the time of the Closing to Buyer.  All persons that are currently in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to Buyer as of the Closing.

37.     Upon the Closing, all persons and entities, including but not limited to the Debtor's and the Purchased Centers' employees, former employees, all debt security holders, equity security holders, administrative agencies, governmental, tax, and regulatory authorities, secretaries of state, state and local officials, lenders, contract parties, lessors, trade creditors and all other creditors holding Liens, Claims, Interests or Encumbrances of any kind or nature whatsoever against the Purchased Centers, or any of their respective interests in the Acquired Equity Interests and/or Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Purchased Centers' business operations or the Acquired Equity Interests and/or Acquired Assets, or with respect to any Liens, Claims, Interests, and Encumbrances arising out of or related to the Transaction, shall be and hereby are permanently and forever barred, estopped, restrained, and enjoined from (a) commencing or continuing in any manner any actions or other proceeding in any way relating to the Transaction against Buyer or Gardner, their affiliates, successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order in any way relating to the Transaction against the Buyer or Gardner, their affiliates, successors, or assigns, assets or properties, (c) creating, perfecting or

BE:11705027.1/COH361-278238

enforcing any Claims in any way relating to the Transaction against Buyer or Gardner, their successors or assigns, assets, or properties; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind in any way relating to the Transaction against any obligation due the Buyer, Gardner, or their successors or assigns, or (e) commencing or continuing any action in any way relating to the Transaction in any manner or place that does not comply, or is inconsistent with, the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.

38.     Notwithstanding the Court's approval of the sale of the Acquired Equity Interests free and clear of all Liens, Claims, Interests, and Encumbrances (other than the Assumed Liabilities), this sale order shall not be interpreted as having barred, released, estopped, enjoined or otherwise stayed any direct claims that David Cohen, M.D. ("Dr. Cohen") may assert against non-debtors Vascular Access Center of Bolivar County, LLC and Vascular Access Center of Memphis, LLC including, without limitation, the unjust enrichment and *quantum meruit* claims asserted against Vascular Access Center of Bolivar County, LLC by Dr. Cohen in the matter of *David Cohen, M.D. v. Vascular Access Center, L.P., et. al.* (Adv. No. 21-00021-amc), any such claims held by Dr. Cohen against Vascular Access Center of Bolivar County, LLC and Vascular Access Center of Memphis, LLC are expressly preserved.

39.     Notwithstanding the Court's approval of the sale of the Acquired Equity Interests free and clear of all Liens, Claims, Interests, and Encumbrances (other than the Assumed Liabilities), this sale order shall not be interpreted as having barred, released, estopped, enjoined or otherwise stayed any direct claims that Jorge Salazar, M.D. ("Dr. Salazar") and/or or Salil Joshi, M.D. ("Dr. Joshi") may assert against non-debtors Vascular Access Center of Bolivar County, LLC and Vascular Access Center of Memphis, LLC, any such claims held by Dr. Salazar and/or

BE:11705027.1/COH361-278238

Dr. Joshi against Vascular Access Center of Bolivar County, LLC and Vascular Access Center of Memphis, LLC being expressly preserved.

40.    In effectuating the Closing and the transfer of assets and interest to Buyer, the Debtor and Buyer shall comply with all applicable, laws, rules and regulations, to the extent required.

41.    Notwithstanding anything else in this Order, except as set forth in paragraphs 18-20 of this Order and/or unless expressly agreed to in writing by the United States, (a) this Order shall not release, terminate, discharge, bar, estop, restrain, or enjoin any Liens, Claims, Interests, or Encumbrances of the United States (including its departments, agencies, corporations, officers, employees and/or agents) against the Debtor, the Purchased Centers, the Acquired Assets, the Buyer, or Gardner (including each of their affiliates, successors or assigns, assets or properties) and this Order does not limit, modify, or in any way affect the United States' ordinary course relationship with the Debtor, the Purchased Centers, the Acquired Assets, the Buyer, or Gardner, including the United States' ability to regulate enrollment or participation as a Medicare supplier or provider or its related authority to review, approve, deny, pay, recoup or set off Medicare claims in the ordinary course of business in accordance with the Medicare statute and regulations under 42 U.S.C. §§ 1395-1395lll, 42 C.F.R. Chapter IV, and the policies and procedures thereunder, and (b) the United States takes no position with respect to, and nothing herein shall be construed as the United States' consent to, or acceptance of, the Purchase Agreement, the TSA, or the underlying Transaction, or that by this Order any of the Debtor, the Purchased Centers, the Acquired Assets, the Buyer, or Gardner, is granted any right, privilege, consent, release, termination, discharge, bar, estoppel, restraint, or injunction of any Liens, Claims, Interests, or Encumbrances under any United States federal law except as authorized under the Bankruptcy Code.  For the avoidance of

31

doubt, except to the extent set forth in the Stipulation and Consent Orders [Dkt. Nos. 596 & 657], this Order does not otherwise resolve whether the United States of America has a right of setoff or recoupment under the DOJ Settlement Agreement.

42.    Notwithstanding anything to the contrary in the Purchase Agreement (including any ancillary documents executed in connection therewith), any pleading with respect to the Transaction, or this Order, (a) TIAA Commercial Finance, Inc.'s ("TIAA") rights under certain lease agreements between TIAA, on the one hand, and Debtor's non-debtor subsidiaries (including without limitation, the Purchased Centers), on the other hand (collectively, the "Non-Debtor Subsidiary TIAA Contracts") are fully preserved against all non-Debtor parties and nothing in the Purchase Agreement (including any ancillary documents executed in connection therewith), any pleading with respect to the Transaction, or this Order or the Transaction itself shall or be deemed to impair, release, infringe upon, limit, prejudice or otherwise adversely affect any such rights; and (b) none of the Non-Debtor Subsidiary TIAA Contracts shall be Assigned Agreements.  The foregoing preservation of rights includes, without limitation, TIAA's rights under applicable non-bankruptcy law against all non-Debtor parties on account of any present or future defaults under the Non-Debtor Subsidiary TIAA Contracts, including any defaults that may arise out of or relate to the Transaction.

43.    Notwithstanding anything to the contrary in the Purchase Agreement (including any ancillary documents executed in connection therewith), any pleading with respect to the Transaction, or this Order, any and all rights of Philips Medical Capital LLC ("Philips") in and to the Purchased Assets pursuant to the various leases (the "Philips Leases") between Philips and the Debtor are fully preserved, subject to any claims and/or defenses of the Debtor, and nothing in the Purchase Agreement (including any ancillary documents executed in connection therewith), any

BE:11705027.1/COH361-278238

pleading with respect to the Transaction, or this Order or the Transaction itself shall or be deemed to impair, release, infringe upon, limit, prejudice or otherwise adversely affect any such rights.

44.    Notwithstanding anything to the contrary in the Purchase Agreement (including any ancillary documents executed in connection therewith), any pleading with respect to the Transaction, or this Order, any and all rights of NextGen Healthcare, Inc. ("NextGen") against the Debtor's non-debtor subsidiaries, including the Purchased Centers, pursuant to the various agreements (the "NextGen Agreements") between NextGen and the Debtor and/or the Debtor's non-debtor subsidiaries are fully preserved against such parties and nothing in the Purchase Agreement (including any ancillary documents executed in connection therewith), any pleading with respect to the Transaction, or this Order or the Transaction itself shall or be deemed to impair, release, infringe upon, limit, prejudice or otherwise adversely affect any such rights.  Any and all NextGen's rights, claims, or causes against the Buyer for post-closing use of the intellectual property platform (the "NextGen IP Platform") are not affected or impacted by the Purchase Agreement (including any ancillary documents executed in connection therewith), any pleading with respect to the Transaction, or this Order, provided, however, Buyer is not liable for any amounts due and payable under the NextGen Agreements that arose or accrued prior to the closing of the sale of the Buyer.  The foregoing preservations of rights include, without limitation, NextGen's rights under applicable non-bankruptcy law against i) all the Debtor's non-debtor subsidiaries, including the Purchased Centers, on account of any present or future obligations under the NextGen Agreements, including any defaults that may arise out of or relate to the Transaction; and ii) the Buyer on account of any post-sale use by the Buyer or the Purchased Centers of the NextGen IP Platform.

45.    The sale of the Acquired Equity Interests and Acquired Assets shall be free and

BE:11705027.1/COH361-278238

clear of any stamp or similar taxes, as and to the extent provided by 11 U.S.C. § 1146(a).

46.     The Trustee is hereby granted, on behalf of the Debtor and the Purchased Centers, the authority (without obligation) to accept the tender of the minority Class A and/or the Class B Interests in the Purchased Centers from any holders of minority Class A and/or Class B interests wishing to tender their interests for no consideration.

47.     In the event that there is a direct conflict between the terms of this Order and the terms of (a) the Purchase Agreement (including all ancillary documents executed in connection therewith), (b) any prior order of this Court, or (c) any pleading with respect to the Transaction, the terms of this Order shall govern.

48.     Nothing contained in any chapter 11 plan hereinafter confirmed in this chapter 11 case, or any order confirming such plan, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order unless expressly consented to in writing by Buyer and Gardner.

49.     This Order and the Purchase Agreement shall be binding in all respects upon all creditors and interest holders of the Debtor, the Purchased Centers, their employees, all counterparties to the Assigned Agreements, any statutory committee appointed in this chapter 11 case, all successors and assigns of the Debtor, the Purchased Centers, and each of their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this chapter 11 case or upon a conversion of this case to chapter 7 under the Bankruptcy Code, and the Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

50.     The failure to specifically include or make reference to any particular provisions of the Purchase Agreement, or any agreement or document relating thereto in this Order, shall not

BE:11705027.1/COH361-278238

diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement, and any document or agreement to be executed in connection therewith, be authorized and approved in their entirety.

51.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) the terms of this Order shall be self-executing and immediately effective and enforceable upon its entry; (b) the Trustee, on behalf of the Debtor, is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Trustee, in his discretion and without further delay, may take any action and perform any act on behalf of the Debtor authorized under this Order.

52.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

53.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation the authority to: (a) interpret, implement, and enforce the terms and provisions of either this Order (including any of the injunctive relief provided herein) or of the Purchase Agreement, including any amendments thereto and any waivers and consents provided in respect thereof (and of each of the agreements executed in connection therewith); (b) protect Buyer, Gardner, and/or the Acquired Equity Interests and Acquired Assets from and against any Liens, Claims, Interests, and Encumbrances and any claims related to the Excluded Liabilities or any "successor liability" Claims of any kind or nature whatsoever, including, without limitation, through the issuance of injunctive relief; (c) compel the transfer and delivery of all of the Acquired Equity Interests and Acquired Assets to Buyer; (d)

35

adjudicate any disputes arising under or related to this Order, the Purchase Agreement, or related transactions; and (e) enforce the injunctions set forth herein.

54.    The provisions of this Order are final, non-severable and mutually dependent.

Dated:  April __8th__, 2021

_____
HONORABLE ASHELY M. CHAN
UNITED STATES BANKRUPTCY JUDGE

BE:11705027.1/COH361-278238