## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| VASCULAR ACCESS CENTERS, L.P., | Case No. 19-17117-AMC |
| Debtor. | |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENTS BY AND BETWEEN STEPHEN V. FALANGA, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATE OF VASCULAR ACCESS CENTERS, L.P. AND PISCATAWAY ENDOVASCULAR CENTER LLC AND WEST ORANGE ENDOVASCULAR CENTER LLC, RESPECTIVELY; (B) AUTHORIZING AND APPROVING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF VASCULAR ACCESS CENTER OF WEST ORANGE, LLC AND VASCULAR ACCESS CENTER OF CENTRAL NEW JERSEY, LLC AND CERTAIN OTHER RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (C) AUTHORIZING AND APPROVING THE ASSUMPTION AND/OR ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) WAIVING THE FOURTEEN (14) DAY STAY; AND (E) GRANTING OTHER RELATED RELIEF**

This matter having been opened to the Court upon the motion of Stephen V. Falanga, in his capacity as chapter 11 trustee (the "Trustee") of the bankruptcy estate of Vascular Access Centers, L.P. (the "Debtor"), by and through his counsel, Walsh Pizzi O'Reilly Falanga LLP, pursuant to 11 U.S.C. §§ 105(a), 363, and 365, Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and Local Bankruptcy Rule 6004-1, for entry of an Order authorizing and approving, among other things: (a) entry into that certain Asset Purchase Agreement dated _____, 2021 (the "Central Jersey APA") with Piscataway Endovascular Center LLC ("Piscataway Endovascular") a copy of which is attached hereto as **Exhibit A**; (b) entry into that certain Asset Purchase Agreement dated _____, 2021 (the "West Orange APA" and, together with the Central Jersey APA, the "Asset Purchase Agreements" and the transactions contemplated thereby, the "Transaction"), a copy of which is attached hereto as **Exhibit B**, with West Orange

Endovascular Center LLC ("West Orange Endovascular" and, together with Piscataway Endovascular, (the "Purchasers"); (c) authorizing the proposed sale (the "Sale") of all or substantially all of the assets of non-debtor subsidiaries, Vascular Access Center of West Orange, LLC ("VAC West Orange") and Vascular Access Center of Central Jersey, LLC ("VAC Central Jersey") (collectively, the "New Jersey Centers" and, together with the Debtor, "Seller"), and certain related assets (collectively, the "Purchased Assets") free and clear of all Liens, Claims, Interests and Encumbrances (as defined below); (c) authorizing the assumption and/or assignment of certain related executory contacts and unexpired leases (the "Assigned Contracts") to the Purchaser; (d) waiving the fourteen day stay provided by Fed. R. Bank. P. 6004(h) and 6006(d); and (e) granting other related relief (the "Motion") [Dkt. No. ___ ];[1] and the Court having conducted a hearing on the Motion on _____, 2021 (the "Sale Hearing") and having heard and considered the statements of counsel, any testimony or offer of proof as to testimony on the record at the Sale Hearing at which time all creditors and other parties in interest of the Debtor were offered an opportunity to be heard with respect to the Motion and the Asset Purchase Agreements; and it appearing that good and sufficient notice of the Motion having been provided to all creditors and other parties-in-interest as evidenced by the Certification of Service filed with the Court; and all objections to the Motion having been withdrawn, resolved or overruled as provided in this Order; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor's estate, creditors and all other parties in interest; and other good cause having been shown, and for the reasons set forth on the record at the Sale Hearing;

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Asset Purchase Agreements.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.      The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  The relief requested in the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

C.      The statutory predicates for the relief sought in the Motion are Sections 105(a), 107(b)(1), 363, 365 and 1146(a) of the United States Bankruptcy Code (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, 6006, 9014 and 9018, and Local Rule 6004-1.

D.      On November 12, 2019, an involuntary petition was filed against the Debtor for relief under chapter 11 of the Bankruptcy Code.  The Debtor consented to the relief, and an Order for relief was entered on November 25, 2019.

E.      On November 22, 2019, the Debtor's majority limited partner, William Whitfield Gardner ("Gardner") filed a *Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or in the Alternative, Appointing a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code* [Dkt. No. 52].

F.      The Court granted Gardner's motion and on February 12, 2020, entered an Order approving the appointment of Stephen V. Falanga as Chapter 11 Trustee [Dkt. No. 245].

G.      On May 7, 2020, the Court approved the Trustee's application to employ SSG

Capital Advisors, LLC ("SSG") as investment banker to the Trustee to assist the Trustee with his

efforts on behalf of the Debtor to explore strategic alternatives, including a potential sale of the

Debtor's business and/or some or all of the Debtor's assets in furtherance of the Trustee's duties

under the Bankruptcy Code [Dkt. No. 367].

H.       The Debtor conducts its business through several limited liability company

subsidiaries throughout the United States (the "Centers"), including the New Jersey Centers.

I.       Due to restrictions on the corporate practice of medicine in the State of New Jersey,

VAC West Orange operated under a State of New Jersey Surgical Practice Registration (the

"SPR") issued to James F. McGuckin, MD of NJ, PA ("McGuckin NJ"), an entity controlled by

Dr. James F. McGuckin ("McGuckin"), the former chief executive officer of the Debtor and

manager of the Debtor's former general partner, Vascular Access Centers, LLC ("VAC LLC"),

and, together with McGuckin NJ and any other entity owned or controlled by McGuckin with an

interest in the SPR, the "McGuckin Entities").  McGuckin NJ held the SPR for the beneficial

interest of the Debtor and VAC West Orange.

J.       Further due to restrictions on the corporate practice of medicine in the State of New

Jersey, VAC Central Jersey operated under a State of New Jersey Ambulatory Surgical License

(the "License") issued to James F. McGuckin, M.D., PA, which was held for the beneficial

interests of the Debtor and the VAC Central Jersey.

K.       To the extent McGuckin or the McGuckin Entities do not cooperate with the

Trustee, on behalf of the Debtor and the New Jersey Centers, and Purchasers in effectuating the

Transaction, the Trustee should be authorized to take all action necessary to effectuate the transfer

of the SPR and the License to Purchasers as contemplated by the Purchase Agreement.

L.       The Debtor holds a majority of the Class A membership interests in each of the

New Jersey Centers.

M.    As the holder of the majority of Class A membership interests in each of the New Jersey Centers, and pursuant to their respective corporate governance documents, the Debtor is entitled to take such actions as may require affirmance by a majority of the voting interests. Accordingly, the Trustee, having assumed control of the Debtor's affairs, is entitled to vote the Debtor's interest in the New Jersey Centers as may be required to consummate the Transaction on the terms set forth in the Purchase Agreement.

N.    In his capacity as chapter 11 trustee of the Debtor, the Trustee has the authority to sell the Purchased Assets on the terms set forth in the Asset Purchase Agreements.

O.    Notice of the Motion has been provided to: (i) the Debtor; (ii) the Office of the United States Trustee; (iii) the United States Attorney for the Eastern District of Pennsylvania; (iv) all secured creditors; (v) all known entities holding or asserting a security interest in or lien against any of the Purchased Assets; (vi) the parties to the Debtor's and the New Jersey Centers' material executory contracts and unexpired leases that the Trustee believes may be subject to assumption and/or assignment or rejection; (vii) all potential purchasers identified by the Trustee; (viii) the Debtor's 20 largest unsecured creditors; (ix) all interest holders of the Debtor and the New Jersey Centers; (x) the Internal Revenue Service; (xi) counsel for the Purchasers; (xii) all other creditors and persons required to be served pursuant to Bankruptcy Rules 2002, 6004 and 6006 including all parties on the Clerk's Service List, and applicable local bankruptcy rules; and (xiii) counsel for James F. McGuckin and the McGuckin Entities (as defined here); (b) such notice was good, adequate and sufficient under the circumstances of this chapter 11 case and this proceeding complied with the various applicable requirements of the Bankruptcy Code and the Bankruptcy Rules; (c) a reasonable opportunity to object and be heard with respect to the Motion, the Sale

5

Hearing and the transactions set forth in the Asset Purchase Agreements was afforded to all interested persons and entities; and (d) no other or further notice of the Motion, the Sale Hearing and the ransaction is or shall be required.

P.      The Trustee has demonstrated (i) good, sufficient and sound business purposes and justifications for, and (ii) compelling circumstances to consummate the Transaction as contemplated by the Asset Purchase Agreements other than in the ordinary course of business under Section 363(b) of the Bankruptcy Code and before and outside of a plan of reorganization, and such action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, its estate, creditors, stakeholders and all other parties-in-interest.  Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of loss of the value of Purchased Assets if the Transaction is not consummated quickly, which could result in significantly diminished creditor recoveries; (ii) the Asset Purchase Agreements present the best opportunity to maximize the value of the Purchased Assets and avoid decline and devaluation of the Purchased Assets, and (iii) the contemplated Transaction constitutes the highest or best offer received for Purchased Assets.

Q.      Due to restrictions on the corporate practice of medicine in the State of New Jersey, (a) the registration to operate the West Orange Center as a surgical practice in the State of New Jersey is held for the beneficial interest of the Debtor and the West Orange Center by James F McGuckin MD of NJ PA; and (b) the license to operate VAC Central Jersey as an ambulatory surgery facility is held for the beneficial interest of the Debtor and the VAC Central Jersey  by James F McGuckin, M.D., P.A. (James F McGuckin MD of NJ PA and James F McGuckin, M.D., P.A. collectively, the "McGuckin Entities"), which McGuckin Entities are controlled by Dr. James F. McGuckin ("McGuckin"), the former chief executive officer of the Debtor and manager of the

Debtor's general partner, Vascular Access Centers, LLC.

R.      To the extent McGuckin and the McGuckin Entities do not cooperate with the Trustee on behalf of the Debtor and the New Jersey Centers and the Purchasers in effectuating the transactions contemplated by the Asset Purchase Agreements, the Trustee should be authorized to take all action necessary to effectuate the transfer of the Licenses to the Purchasers as contemplated by the Asset Purchase Agreements.

S.      Entry of an Order approving the Transaction is a necessary condition precedent to the consummation of the Transaction.

T.      Approval of the Motion and the Transaction on the terms of the Asset Purchase Agreements and this Order are in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest.  No alternative to the Transaction exists that would provide a greater value to the Debtor, its estate, creditors, stakeholders, or other parties-in-interest.

U.      The Purchase Price and other consideration to be paid and provided by the Purchasers for the Purchased Assets constitutes reasonably equivalent value and fair consideration for the Purchased Assets as the case may be under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, or possession thereof or the District of Columbia.  The Asset Purchase Agreements were not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtor under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any other applicable law.  Neither the Trustee nor the Purchasers have entered into the Asset Purchase Agreements with any fraudulent or otherwise improper purpose.  The Asset Purchase Agreements represent a fair and reasonable offer to purchase the Purchased Assets under the

7

circumstances of the Debtor's chapter 11 case and constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtor, its estate, creditors, stakeholders, and other parties-in-interest than would be provided by any other available alternative.  No other person or entity or group of entities, other than the Purchasers have offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtor and its estate.  The Trustee's determination that the Transaction constitute the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

V.      Subject to entry of this Order, the Trustee: (i) has full power and authority to execute the Asset Purchase Agreements and any ancillary agreements or other documents contemplated thereby; (ii) has all of the power and authority necessary to consummate the Transaction; and (iii) has taken all action necessary to authorize and approve the Asset Purchase Agreements, including the sale of the Purchased Assets.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreements or this Order, are required for the Trustee to consummate the Transaction.

W.      The Asset Purchase Agreements and the Transaction were negotiated, proposed, and entered into by the Trustee and the Purchasers without collusion or fraud, from arm's-length bargaining positions, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code.  The Purchasers are good faith purchasers of the Purchased Assets within the meaning of Bankruptcy Code Section 363(m) and are therefore entitled to all of the protections afforded by Bankruptcy Code Section 363(m).  The Purchasers are not "insiders" of the Debtor, the New Jersey Centers, or the Trustee, as that term is defined in Bankruptcy Code section 101(31).    The Purchasers have proceeded in good faith in all respects in connection with this proceeding in that:

(a) the Purchasers recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; and (b) all payments to be made by the Purchasers and other agreements or arrangements entered into by the Purchasers in connection with the Transaction have been adequately disclosed. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction. No stay pending appeal of this Order has been requested, or, if requested, has been denied, and the stay contained in Bankruptcy Rule 6004(h) and 6006(d) has been and hereby is expressly and irrevocably waived as set forth below.

X.    Neither the Debtor, the Trustee nor the Purchasers nor any of their respective affiliates, partners, principals, agents, members, or their representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreements or other documents and instruments related to or connected with the Transaction to be avoided, or costs or damages to be imposed under Section 363(n) of the Bankruptcy Code. Specifically, the Purchasers have not acted in a collusive manner with any person and the Purchase Price and other consideration was not controlled by any agreement among bidders. The terms and conditions of the Asset Purchase Agreements, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and the Transaction shall not be avoided under Section 363(n) of the Bankruptcy Code.

Y.    The Purchasers would not have entered into the Asset Purchase Agreements and would not consummate the Transaction, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Purchased Assets to the Purchasers was not free and clear of all Liens, Claims, Interests and Encumbrances (each as defined below) pursuant to Section 363 of the Bankruptcy Code, or if the Purchasers would, or in the future could, be liable for any of such

Liens, Claims, Interests or Encumbrances.  The total consideration to be provided under the Asset Purchase Agreements reflects the Purchasers' reliance on this Order to provide it, pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances (including, without limitation, any potential derivative, vicarious, transferee or successor liability claims).  A sale of the Purchased Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would yield substantially less value for the Debtor's estate, with less certainty, than the Transaction, and would adversely impact the Trustee's efforts to maximize the value of the Debtor's estate.  Therefore, the Transaction contemplated by the Asset Purchase Agreements is in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest.

Z.    The Trustee, on behalf of the Debtor, may sell the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances because, with respect to each creditor or interested party asserting a Lien, Claim, Interest or Encumbrance in any of the Purchased Assets, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims, Interests and Encumbrances who did not object or who withdrew their objections to the Transaction or the Motion are deemed to have consented to the Motion and the Transaction pursuant to Section 363(f)(2) of the Bankruptcy Code. All holders of Liens, Claims, Interests and Encumbrances are adequately protected by having their Liens, Claims, Interests and Encumbrances attach to the proceeds of the Transaction ultimately attributable to the Purchased Assets against or in which such Liens, Claims, Interests and Encumbrances are asserted, or otherwise satisfied in connection with the Closing, subject to the terms of such Liens, Claims, Interests and Encumbrances, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, Interests and Encumbrances now

have against the Purchased Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtor may possess with respect thereto.

AA.    The Purchasers are not holding themselves out to the public as a continuation of the Debtor or the New Jersey Centers.  The sale of the Purchased Assets and consummation of the Transaction is not, and does not amount to, a consolidation, merger or *de facto* merger of the Purchasers and the Debtor and/or the Debtor's estate, or the New Jersey Centers, there is not substantial continuity between the Purchasers and the Debtor or the Debtor's estate, or the New Jersey Centers, there is no continuity of enterprise between the Purchasers and the Debtor or the Debtor's estate, or the New Jersey Centers, the Purchasers are not a mere continuation of the Debtor or the Debtor's estate, and the Purchasers do not constitute a successor to the Debtor or the Debtor's estate, or the New Jersey Centers.  Upon the Closing, the Purchasers shall be deemed to have assumed only the Assumed Liabilities and shall not be liable in any manner whatsoever for the Excluded Liabilities. The (i) transfer of the Purchased Assets to the Purchasers, and (ii) assumption and/or assignment to the Purchasers of any assumed and or Assigned Contracts, do not and will not subject the Purchasers to any liability whatsoever with respect to the operation of the Debtor's business before the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability. Except for the Assumed Liabilities, the Purchasers' acquisition of the Purchased Assets shall be free and clear of any and all Excluded Liabilities and any "successor liability" claims of any kind or nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Court finds that the Purchasers would not have

entered into the Asset Purchase Agreements but for the foregoing protections against claims related to Liens, Claims, Interests and Encumbrances, the Excluded Liabilities and/or potential claims based upon "successor liability" theories.

BB.    The Trustee has demonstrated that it is an exercise of his sound business judgment to assume and/or assign the Assigned Contracts to the Purchasers in connection with consummation of the Transaction, and the assumption, assignment, and sale of the Assigned Contracts to the Purchasers is in the best interests of the Debtor, its estate, creditors, stakeholders, and all other parties-in-interest.  The Assigned Contracts being assigned to the Purchasers are an integral part of the Purchased Assets being purchased by the Purchasers, are in the best interests of the Debtor and its estate and represent the reasonable exercise of the Trustee's sound business judgment. Specifically, the assumption and/or assignment of the Assigned Contracts (i) is necessary to sell the Purchased Assets to the Purchasers, (ii) limit the losses suffered by counterparties to the Assigned Contracts, and (iii) maximize the recoveries to other creditors of the Debtor by limiting the amount of claims against the Debtor's estate by avoiding the rejection of the Assigned Contracts.

CC.    As evidenced by the certificates of service filed with the Court, the Trustee has served, prior to the Sale Hearing, notice (the "Cure Notice") of the intent to assume and/or assign the Assigned Contracts and of the related proposed cure amount (the "Cure Amount") upon each non-Debtor counterparty to the Assigned Contracts.  The service of the Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the Cure Amounts for the assumption and/or assignment of the Assigned Contracts.  All non-Debtor parties to the Assigned Contracts have had a reasonable opportunity to object both to the Cure Amounts listed on the applicable Cure Notice and to the assumption and/or assignment

of the Assigned Contracts to the Purchasers.

DD.    Except as otherwise set forth in the Asset Purchase Agreements or this Order, all Cure Amounts shall be determined and paid by the Trustee, on behalf of the Debtor, in accordance with the terms thereof.   Payment of the Cure Amounts shall be in full satisfaction and cure of any and all defaults under the Assigned Contracts, whether monetary or nonmonetary.  Each non-Debtor party to an Assigned Contract is forever barred, estopped, and permanently enjoined from asserting against the Trustee, Debtor, Debtor's estate, the New Jersey Centers, the Purchasers, their successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing. A Cure Objection may be resolved after the Closing; provided that the Trustee maintains the alleged Cure Amount in escrow pending resolution.

EE.    Upon the Trustee's assignment of Assigned Contracts to the Purchasers under the provisions of this Order, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted to declare a default by the Trustee, the Debtor, the Debtor's estate, the New Jersey Centers, or the Purchasers, or otherwise take action against the Trustee, the Debtor, the Debtor's estate, the New Jersey Centers or the Purchasers as a result of the Debtor's or the New Jersey Centers' financial condition, bankruptcy or failure to perform any of the obligations under the relevant Assigned Contract.    Any provision in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contracts (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect.  The failure of the Trustee, the Debtor, the New Jersey Centers,

or the Purchasers to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Trustee's, Debtor's, the New Jersey Centers', and the Purchasers' rights to enforce every term and condition of the Assigned Contract.

FF.    With respect to each of the Assigned Contracts, the Trustee, on behalf of the Debtor, has met all requirements of Section 365(b) of the Bankruptcy Code to the extent applicable. Further, based on the arguments and representations of counsel made, and the evidence proffered and adduced at, the Sale Hearing, the Purchasers have provided adequate assurance of future performance under the Assigned Contracts in satisfaction of Sections 365(b) and 365(f) of the Bankruptcy Code to the extent applicable and to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Accordingly, the Assigned Contracts may be assumed and/or assigned by the Trustee to the Purchasers as provided for in the Asset Purchase Agreements.

GG.    Each and every provision of the Assigned Contracts that purport to prohibit, restrict, or condition or could be construed as prohibiting, restricting, or conditioning assignment of any of the Assigned Contracts have been satisfied or are otherwise unenforceable under Section 365 of the Bankruptcy Code.

HH.    Upon the consummation of the Transaction at Closing, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms and subject to the provisions of this Order.

II.    Good and sufficient reasons for approval of the Asset Purchase Agreements and the Transaction have been articulated to the Court in the Motion and on the record at the Sale Hearing, and the relief requested in the Motion and set forth in this Order is in the best interests of the Debtor, its estate, creditors, stakeholders, and other parties-in-interest.

JJ.     The transfer of the Purchased Assets to the Purchasers at Closing will be a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchasers with all of the Debtor's and the New Jersey Centers' right, title and interest of, in and to the Purchased Assets, free and clear of (i) all Liens, Claims, Interests and Encumbrances of any kind or nature whatsoever (other than Assumed Liabilities), and (ii) all Excluded Liabilities.

KK.     The Transaction does not constitute a *sub rosa* chapter 11 plan.

LL.     Time is of the essence in consummating the Transaction.  In order to maximize the value of the Debtor's estate, it is essential that the Closing of the Transaction occur within the time constraints set forth in the Asset Purchase Agreements.  Accordingly, there is cause to waive the stay as contemplated by Bankruptcy Rules 6004(h) and 6006(d).

**IT IS HEREBY ORDERED THAT:**

1.     The Motion and the relief requested therein is granted and approved as set forth herein.  All objections (except for objections to Cure Amounts, if any, solely to the extent such objections relate to any asserted cure obligations pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code), if any, to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation  filed with the Court, and all reservations of rights included therein, are  hereby overruled on the merits.

2.     Pursuant to Sections 105, 363, 365 and 1146(a) of the Bankruptcy Code and Bankruptcy Rules 6004, 6006, 9014, 9018, and Local Bankruptcy Rule 6004-1, the Asset Purchase Agreements and all of the terms and conditions therein, the sale of the Purchased Assets and consummation of the Transaction are hereby approved and authorized.

3.      The Trustee has demonstrated sound business judgment and is authorized and empowered pursuant to Section 363 of the Bankruptcy Code to sell the Purchased Assets to the Purchasers on the terms and conditions as set forth in the Asset Purchase Agreements.

4.      The Trustee, on behalf of the Debtor, is authorized to execute and deliver such assignments, conveyances, and other documents and instruments of transfer that may be reasonably necessary or desirable to implement the Asset Purchase Agreements and to take all further actions as may be (a) reasonably requested by the Purchasers for the purpose of assigning, transferring, granting, conveying and conferring to the Purchasers, or reducing to possession, the Purchased Assets or (b) necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreements, all without further order of the Court.

5.      Pursuant to Section 365 of the Bankruptcy Code and applicable non-bankruptcy law, notwithstanding any provision of any Assigned Contracts or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assigned Contracts to the Purchaser, the Trustee is authorized to assume and/or assign the Assigned Contracts to the Purchaser.

6.      Payment of the Cure Amounts shall be in full satisfaction and cure of any and all defaults under the Assigned Contracts, whether monetary or nonmonetary.  Each non-Debtor party to an Assigned Contract is forever barred, estopped, and permanently enjoined from asserting against the Trustee, the Debtor, the Debtor's estate, the New Jersey Centers, the Purchasers, their successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing. A Cure Objection may be resolved after the Closing; provided that the Trustee maintains the alleged Cure Amount in escrow pending resolution.

7.      Upon  the  assignment  of  Assigned Contracts  to  the Purchasers under  the provisions of this Order, no default shall exist under any Assigned Contract. Except as set forth in herein with respect to assertion of a Claim for the Cure Amount, any and  all  counterparties  to any  Assigned Contract  shall  be  forever  barred  and  estopped  from asserting a Claim against the Trustee, the Debtor, the Debtor's estate, the New Jersey Centers or the Purchasers that any additional amounts are due or defaults exist under the Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing.

8.      No counterparty to any Assigned Contract shall be permitted to declare a default by the Trustee, the Debtor, the Debtor's estate, the New Jersey Centers, or the Purchasers, or otherwise act against the Trustee, the Debtor, the Debtor's estate, the New Jersey Centers, or the Purchasers as a result of Debtor's or the New Jersey Centers' financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract.  Any provision in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contract (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect.  The failure of the Trustee, the Debtor, the New Jersey Centers, or the Purchasers to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Trustee's, Debtor's, the New Jersey Centers', and the Purchasers' rights to enforce every term and condition of the Assigned Contract.

9.      As of the Closing Date, subject to the provisions of this Order, the Purchasers shall be fully and irrevocably vested with all right, title and interest of the Trustee and the Debtor, and the New Jersey Centers under the Assigned Contracts and shall assume only those obligations of

the Debtor and the New Jersey Centers under the Assigned Contracts first arising and attributable to the time period occurring on or after the Closing Date. Upon assumption of the Assigned Contracts and assignment to the Purchasers at Closing, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

10.     Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code and in accordance with the terms of the Asset Purchase Agreements, the Trustee, on behalf of the Debtor, is authorized and directed to transfer the Purchased Assets to the Purchasers and upon the Closing, such transfer shall: (a) be valid, legal, binding and effective, (b) vest the Purchasers with all right, title and interest of the Debtor and the New Jersey Centers in the Purchased Assets, and (c) be free and clear of all liens, including without limitation any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of first refusal, hypothecation, encumbrance, easement, encroachment, right of way, restrictive covenant on real property, real property license, lease or conditional sale arrangement, and claims, rights, causes of action, debts, liabilities and obligations of any kind or nature, whether arising prior to or subsequent to the commencement of the Debtor's chapter 11 case, whether known or unknown, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured, determined or undeterminable, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to McGuckin, the McGuckin Entities, the Debtor, the New Jersey Centers or their interests in the Purchased Assets, the operation of the Debtor's, McGuckin's and the New Jersey Centers' businesses before the Closing, or the transfer of the Debtor's and the New Jersey Centers' interests in the Purchased Assets to the Purchaser, including any tax or environmental liability (collectively, excluding the Assumed

Liabilities, the "<u>Claims, Interests and Encumbrances</u>")[2], with all such Liens, Claims, Interests and

Encumbrances to attach to the net proceeds of the Transaction, in the same amount and order of

their priority, with the same validity, force and effect which they have against the Purchased

Assets, and subject to any claims and defenses the Trustee, Debtor, the New Jersey Centers and

other parties-in-interest may possess with respect thereto in each case immediately before the

Closing; and (d) except as otherwise expressly provided in the Asset Purchase Agreements, all

such Liens, Claims, Interests and Encumbrances shall be and hereby are released, terminated and

discharged as to the Purchasers and the Purchased Assets. As used in this Order, the term "Claims"

shall be given its broadest possible meaning, with reference to the definition of claim in section

101(5) of the Bankruptcy Code, but not by way of limitation.

11.    To the extent necessary, McGuckin and the McGuckin Entities are hereby

authorized to transfer the SPR and the License to the Purchasers as contemplated by the Asset

---

[2] Without limiting the generality of the foregoing, the term "Claims, Interests, and Encumbrances" shall include, without limitation, claims or causes of action arising under, without limitation: (a) any employment or labor agreements or the termination thereof; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to the Debtor or any of Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtor's business operations or the cessation thereof; (d) any litigation involving the Debtor; and (e) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967  and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws or (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with the Debtor or any predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state or federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xx) any common to merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability.

Purchase Agreements and, upon the Closing, such transfer shall: (a) be valid, legal, binding and effective, (b) vest the Purchasers with all right, title and interest of McGuckin, the McGuckin Entities, the Debtor and the New Jersey Centers in the SPR and the License, and (c) be free and clear of all Liens, Claims, Interests and Encumbrances, with all such Liens, Claims, Interests and Encumbrances to attach to the net proceeds of the Transaction, in the same amount and order of their priority, with the same validity, force and effect which they have against the Licenses, or otherwise be satisfied in connection with the Closing, and subject to any claims and defenses McGuckin, the McGuckin Entities, the Debtor, the New Jersey Centers and other parties-in-interest may possess with respect thereto in each case immediately before the Closing; and (d) all such Liens, Claims, Interests and Encumbrances shall be and hereby are released, terminated and discharged as to the Purchasers and the Purchased Assets.

12.     To the extent necessary or applicable, if McGuckin and/or the McGuckin Entities do not cooperate with the Trustee on behalf of the Debtor, the New Jersey Centers, and Purchasers in effectuating the transactions contemplated by the Asset Purchase Agreements, the Trustee and/or Purchasers are hereby authorized to take all action necessary to effectuate the transfer of the SPR and the License to the Purchasers, and take all other action on behalf of McGuckin and/or the McGuckin Entities that may be required to consummate the Transaction as contemplated by the Asset Purchase Agreements. Such actions shall include, but not be limited to: i) requesting entry of an Order compelling McGuckin and the McGuckin Entities' cooperation in the required maintenance of the SPR and in the steps required to obtain the License; ii)  requesting entry of an Order compelling McGuckin and the McGuckin Entities' cooperation in the subsequent transfer of the License to Purchasers once obtained by the McGuckin Entities; iii) requesting entry of an Order prohibiting McGuckin and the McGuckin Entities' from transferring, selling, or conveying

the SPR or License to any person or entity other than Purchasers pursuant to the Asset Purchase

Agreements and this Order; iv) requesting entry of an Order prohibiting McGuckin and the

McGuckin Entities from transferring ownership within the McGuckin Entities at any time prior to

the transfer of the Licenses to Purchasers.

13.     The Closing is without prejudice to the Debtor's right, at the Trustee's option, to

reject and terminate any executory contract or unexpired lease of the Debtor or the New Jersey

Centers (other than the Assigned Contracts) upon the filing and service of a notice of rejection

upon the counterparty to any such rejected executory contract or unexpired lease.

14.     The Transaction is not and does not amount to a consolidation, merger or de facto

merger of the Purchasers and the Debtor, the Debtor's estate, or the New Jersey Centers.  There is

not substantial continuity between the Purchasers and the Debtor, the Debtor's estate, or the New

Jersey Centers. There is no continuity of enterprise between the Purchasers and the Debtor or the

Debtor's estate, or the New Jersey Centers. The Purchasers are not, and will not be, a mere

continuation of the Debtor or the Debtor's estate, or the New Jersey Centers.  The Purchasers do

not constitute a successor to the Debtor or the Debtor's estate, or the New Jersey Centers.

15.     Upon the Closing, the Purchasers shall be deemed to have assumed only the

Assumed Liabilities and shall not be liable in any manner or under any legal or equitable theory

whatsoever for the Excluded Liabilities. Except for the Assumed Liabilities, the Purchasers'

acquisition of the Purchased Assets shall be free and clear of any and all Excluded Liabilities and

any "successor liability" Claims of any kind or nature whatsoever, whether known or unknown

and whether asserted or unasserted as of the time of the Closing. The (i) transfer of the Purchased

Assets to the Purchaser, and (ii) assumption and assignment to the Purchasers of the Assigned

Contracts, do not and will not subject the Purchasers to any liability whatsoever with respect to

the operation of the Debtor's or the New Jersey Centers' business before the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

16. The Asset Purchase Agreements, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not materially change the terms of the Asset Purchase Agreements or any related agreements, documents or other instruments.

17. The Trustee, on behalf of the Debtor, is authorized to utilize the proceeds of the Transaction to satisfy any liens that are required to be satisfied under Section 363(f) of the Bankruptcy Code.

18. Upon the Closing, and except as otherwise expressly provided in the Asset Purchase Agreements, the Purchasers shall not be liable for any Liens, Claims, Interests and Encumbrances against or relating to the Debtor or the New Jersey Centers or their operations prior to Closing.

19. The Trustee and the Purchasers, and their respective affiliates, members, principals, and their respective advisors have proceeded in good faith and without collusion in all respects. The Asset Purchase Agreements and each of the transactions contemplated therein were negotiated, proposed, and entered into by the Trustee, on behalf of the Debtor, and the Purchasers in good faith, without collusion and from arm's-length bargaining positions. The Purchasers are

"good faith purchasers" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, are entitled to all the benefits and protections afforded thereby. The reversal or modification on appeal of the authorization provided herein of the Transaction shall neither affect the validity of the Transaction nor the transfer of the Purchased Assets to the Purchasers, free and clear of Liens, Claims, Interests and Encumbrances, unless such authorization is duly stayed before the Closing pending such appeal.

20.     Pursuant to Sections 105 and 363 of the Bankruptcy Code, the Trustee, on behalf of the Debtor, and the Purchasers are each hereby authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the Transaction on the terms and subject to the conditions set forth in the Asset Purchase Agreements and the other transactions contemplated thereby; (b) assume and/or assign the Assigned Contracts to the Purchasers; and (c) perform, consummate, implement and fully close the transactions contemplated by the Asset Purchase Agreements and execute and deliver any additional instruments and documents that reasonably may be necessary or desirable to implement the Asset Purchase Agreements or any transactions relating thereto.

21.     Except as set forth in the Asset Purchase Agreements, the terms and provisions of the Asset Purchase Agreements and this Order shall be specifically enforceable and binding in all respects upon, or shall inure to the benefit of the Debtor, the Debtor's estate, the New Jersey Centers, the Debtor's creditors, the Purchasers, and their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall

likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors or any trustee, examiner or receiver.

22.    Neither the provisions of New Jersey's Uniform Commercial Code, nor any other bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the Transaction on the terms set forth in this Order and in the Asset Purchase Agreements.

23.    Upon the consummation of the Transaction and the payment by Purchasers of the Purchase Price, SSG shall be entitled to a fee at closing of such Transaction, equal to seven (7%) of the Total Consideration for the Transaction, which has been previously approved by the Court. Other than SSG, no brokers were involved in consummation of the Transaction and no broker's commissions are due to any person or entity in connection with the Transaction.

24.    The consideration provided by the Purchasers for the Purchased Assets under the Asset Purchase Agreements shall be deemed for all purposes to constitute value and fair consideration under the Bankruptcy Code and any other applicable law, and the Transaction may not be avoided, or costs or damages imposed or awarded under Section 363(n) or any other provision of the Bankruptcy Code.

25.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchasers on the Closing Date pursuant to the terms of the Asset Purchase Agreements, free and clear of all Liens, Claims, Interests and Encumbrances.

26.    This Order is and shall be binding upon and shall authorize and direct all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental

departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, and/or report or insure any title or state of title in or to the Purchased Assets. All such persons and entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens, Claims, Interests and Encumbrances against the Purchased Assets from their records, official and otherwise, and to accept and honor any documents or instruments relating to the Purchased Assets as contemplated by the Asset Purchase Agreements and this Order.

27.    If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or Interests in, the Purchased Assets shall not have delivered to the Trustee, on behalf of the Debtor, before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purposes of documenting the release of all Liens that the person or entity has or may assert with respect to any of the Purchased Assets, (a) the Trustee, on behalf of the Debtor, and the Purchasers are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets, and (b) the Purchasers are hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Interests and Encumbrances against the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

28.    All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchasers, and shall not charge the Purchasers for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transaction.

29.    Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transaction and other transactions contemplated by the Asset Purchase Agreements.

30.    Except only to the extent otherwise expressly agreed to by the Debtor  and the Purchasers in the Asset Purchase Agreements, no governmental unit or regulatory authority may revoke or suspend any right, license, trademark, or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to the Purchasers on account of the filing or pendency of the chapter 11 case or the consummation of the Transaction.

31.    Except as otherwise provided in the Asset Purchase Agreements, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier, or employee of the Debtor shall be transferred to the Purchasers free and clear of all Liens, Claims, Interests and Encumbrances (other than the Assumed Liabilities) and shall be delivered at the time of Closing to the Purchasers.  All persons that are currently in possession of some or all of the Purchased Assets are hereby directed to surrender possession of such Purchased Assets to the Purchasers as of the Closing.

32.     Upon the Closing, all persons and entities, including but not limited to the Debtor's and the New Jersey Centers' employees, former employees, all debt security holders, equity security holders, administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, lessors, trade creditors and all other creditors holding Liens, Claims, Interests or Encumbrances of any kind or nature whatsoever against the Debtor, the New Jersey Centers or any of their respective interests in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in  connection with, or in any way relating to the Debtor's or the New Jersey Centers' business operations or the Purchased Assets, or with respect to any Liens, Claims, Interests and Encumbrances arising out of or related to the Transaction, shall be and hereby are permanently and forever barred, estopped, restrained and enjoined from (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its affiliates, successors or assigns, assets or properties, (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Purchaser, their affiliates, successors or assigns, assets, or properties, (c) creating, perfecting, or enforcing any Claims against the Purchaser, their successors or assigns, assets or properties, (d) asserting  a  Claim  as  a  setoff, right  of  subrogation  or  recoupment  of  any  kind  against  any obligation due the Purchasers or their successors or assigns, or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.

33.     The sale of the Purchased Assets shall be free and clear of any stamp or similar taxes, as and to the extent provided by 11 U.S.C. § 1146(a).

34.    The Trustee is hereby granted, on behalf of the Debtor and the New Jersey Centers, the authority (without obligation) to accept the tender of the Class B Interests in the New Jersey Centers from any holder of Class B interests wishing to tender such interests for no consideration.

35.    In the event that there is a direct conflict between the terms of this Order and the terms of (a) the Asset Purchase Agreements (including all ancillary documents executed in connection therewith), (b) any prior order of this Court, or (c) any pleading with respect to the Transaction, the terms of this Order shall govern.

36.    Nothing contained in any chapter 11 plan hereinafter confirmed in this chapter 11 case, or any order confirming such plan, shall conflict with or derogate from the provisions of the Asset Purchase Agreements or the terms of this Order unless expressly consented to in writing by the Purchaser.

37.    This Order and the Asset Purchase Agreements shall be binding in all respects upon all creditors and interest holders of the Debtor and the New Jersey Centers, their employees, all counterparties to the Assigned Contracts, any statutory committee appointed in this chapter 11 case, all successors and assigns of the Debtor or the New Jersey Centers and each of their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in this chapter 11 case or upon a conversion of this case to chapter 7 under the Bankruptcy Code, and the Asset Purchase Agreements shall not be subject to rejection or avoidance under any circumstances.

38.    The failure specifically to include or make reference to any particular provisions of the Asset Purchase Agreements or any agreement or document relating thereto in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the

Court that the Asset Purchase Agreements and any document or agreement to be executed in connection therewith be authorized and approved in their entirety.

39.    Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) the terms of this Order shall be self-executing and immediately effective and enforceable upon its entry; (b) the Trustee, on behalf of the Debtor, is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Trustee, in his discretion and without further delay, may take any action and perform any act on behalf of the Debtor authorized under this Order.

40.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

41.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (a) interpret, implement and enforce the terms and provisions of either this Order (including any of the injunctive relief provided herein) or of the Asset Purchase Agreements including any amendments thereto and any waivers and consents provided in respect thereof (and of each of the agreements executed in connection therewith); (b) protect the Purchasers and/or the Purchased Assets from and against any Liens, Claims, Interests and Encumbrances and any claims related to the Excluded Liabilities or any "successor liability" Claims of any kind or nature whatsoever, including, without limitation, through the issuance of injunctive relief; (c) compel the transfer and delivery of all of the Purchased Assets to the Purchasers; (d) adjudicate any

disputes arising under or related to this Order, the Asset Purchase Agreements or related transactions; and (e) enforce the injunctions set forth herein.

      42.    The provisions of this Order are final, non-severable and mutually dependent.


Dated: _____, 2021

                                     _____
                                       HONORABLE ASHELY M. CHAN
                                       UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**
**(VAC Central Jersey APA)**

**EXHIBIT B**
**(VAC West Orange APA)**