# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Vascular Access Centers, L.P.**,**<br><br>Debtor. | Involuntary Chapter 11<br><br>Case No. 19-17117 (AMC) |

## ORDER

**AND NOW**, this _____ day of _____, 2021, in consideration of Vascular Access Centers, LLC's and James F. McGuckin, M.D.'s Motion Seeking Recusal of Honorable Ashley M. Chan, and all papers in support thereof and in opposition thereto, it is hereby **ORDERED** that the Motion is **GRANTED** Judge Chan hereby is recused from all further proceedings in this matter directly involving the rights and interests of James F. McGuckin, M.D. or any of his solely and/or majority owned entities.

_____
Honorable Ashley M. Chan

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Vascular Access Centers, L.P.,<br><br>Debtor. | Involuntary Chapter 11<br><br>Case No. 19-17117 (AMC) |

## VASCULAR ACCESS CENTERS, LLC'S AND JAMES F. MCGUCKIN, M.D.'S MOTION SEEKING RECUSAL OF HONORABLE ASHLEY M. CHAN

For the reasons set forth below, Vascular Access Centers, L.P. and James F. McGuckin, M.D., by and through undersigned counsel, respectfully moves that Honorable Ashley M. Chan recuse herself from all proceedings in this matter which directly involve the rights and interests of James F. McGuckin, M.D. or any of his solely and majority owned entities.

### I.    Introduction

1. Upon the District Court's recent dismissal and remand for reconsideration of Vascular Access Centers, LLC's ("VAC, LLC") and James F. McGuckin, M.D.'s appeal of this Court's order appointing a trustee, the Honorable Ashley M. Chan should *sua sponte* recuse herself because her impartiality as to Dr. McGuckin is subject to reasonable question.

2. The questionable impartiality is evident from multiple prior rulings and inappropriate, false statements – highlighted in Dr. McGuckin's appeal – demonstrating anomalies in the record that rise to Constitutional proportions in violation of Dr. McGuckin's due process rights.

3. First, Judge Chan ruled at the hearing on William Whitfield Gardner's ("Gardner") Motion to Appoint a Trustee that she would not consider the allegations in Gardner's pleadings and expert report in the state court derivative litigation ("Derivative Litigation") for their truth.

4. Despite this ruling, Judge Chan ultimately accepted as fact the unsupported averments from Gardner's Derivative Litigation Complaint and Gardner's expert report, all of which was entirely hearsay, and liberally cited those hearsay documents as evidence in the Opinion. Judge Chan treated these baseless allegations as fact, even though during the hearing she represented that she would not do so.

5. Secondly, and perhaps most astonishingly, Judge Chan found Gardner "entirely credible" when he didn't even attend the hearing, let alone take the stand and testify before Judge Chan.

6. Thirdly, Judge Chan issued a 44-page opinion, replete with pernicious references concerning Dr. McGuckin's alleged conduct, only hours after she ended the hearing at 6 p.m., indicating that her conclusions were predetermined and her Opinion was pre-drafted well before the hearing.

7. Finally, exhibiting a clear personal animosity to Dr. McGuckin, Judge Chan twice referred to Dr. McGuckin as "delusional" – first in person during the hearing and again in a publicly filed Opinion. The "delusional" designation ascribes a mental disorder to Dr. McGuckin that has no bearing on any issue before this Court, and it was not supported by any facts or evidence presented at the hearing.

8. The questionable impartiality evident from that untrue and defamatory statement – unfairly and falsely diagnosing Dr. McGuckin as "delusional" – is buttressed by the other anomalies in the record summarized above and detailed further in this Motion.

9. For all of these reasons, Judge Chan's ability to be impartial in this matter when it comes to deciding issues directly involving Dr. McGuckin's rights and interest is objectively questionable, and therefore under the relevant standards articulated by the U.S. Supreme Court and the Third Circuit, Judge Chan should be recused.

## II. Factual Background

10. On April 15, 2021, the District Court issued an Amended Order, accompanied by an Amended Memorandum (filed under seal), dismissing VAC LLC's and Dr. McGuckin's appeal of this Court's order appointing a trustee.

11. The District Court's Amended Order called for reconsideration of this Court's order appointing a trustee in light of new evidence. Before proceeding, however, this Court should enter an order recusing the Honorable Ashley M. Chan because of questions about her impartiality that came to light in the context of Gardner's Motion to Appoint a Trustee.

12. The doubts about impartiality initially stem from the extreme anomalies in Judge Chan's decisions on Gardner's Motion.

13. For one, Judge Chan accepted Gardner's averments and expert reports in the Derivative Litigation for their truth when she represented at the hearing that she would not do so.

14. Gardner filed the Complaint in the Derivative Litigation with the Bankruptcy Court literally at the 11th hour, at 11:28 PM before the February 6 hearing, in connection with a request that the Court "take judicial notice" of certain "facts." (Appx. at 1936-39, Maj. Ltd.

3

Partner Request to take Judicial Notice.) Attached to that filing, Gardner appended his state court Complaint and other documents from the Derivative Litigation.

15. On the morning of the hearing, Debtor's Counsel vociferously objected to taking judicial notice of "facts" in the Complaint, and Gardner's counsel assured the Court that the documents were "filed just to establish the procedural history . . . we're not asking the court to take judicial notice of the facts." (Appx. at 2314, N.T. 2/6/20 at p. 3, ln. 5-10.) The Court responded, "So you're not asking me to determine the truth," and Mr. Gardner's Counsel replied: "No. No. Absolutely." (*Id.* at p. 13, ln. 11-13.)

16. Nevertheless, Judge Chan's Opinion cited as evidence Gardner's allegations in his Complaint from the state court Derivative Litigation even though the allegations were never actually presented as facts or proven.

17. For example, the Opinion exclusively relied upon Gardner's Derivative Litigation Complaint in finding "McGuckin failed to devote efforts to saving [the Debtor] VAC's Philadelphia center, and instead, opened his own *competing* center in Philadelphia through an entity owned solely by him." (Appx. at 2254, Opinion at 5, citing Deriv. Litig. Am. Compl. ¶¶ 58, 61-63.) (This finding – that Dr. McGuckin was not permitted to own competing centers – has since been debunked by the recent deposition testimony from John Royer, Esquire, the author of the VAC partnership agreement, which was the basis upon which the District Court remanded Dr. McGuckin's appeal.)

18. Judge Chan also relied on Gardner's expert report from the Derivative Litigation. This was particularly surprising since the Court expressly told the parties during the hearing that it would not do so. (Appx. 2639, N.T. 2/6/20 at p. 338, ln. 19-23: "DEBTOR COUNSEL: Your Honor, I have one objection . . . And that is the reference to the expert report in the derivative

4

case. That is not evidence in this case and it should not be considered by the Court. THE COURT: Okay. ***Well, I'm not going to consider it as part of my opinion.***") (Emphasis added.))

19. Nevertheless, the Court, relying on the Expert Report and bald, unsupported averments in Gardner's Motion to Appoint a Trustee, proceeded to conclude that Dr. McGuckin had improperly used the Debtor's administrative services "for a reduced percentage of revenue that VAC typically charged for providing those services." (Appx. at 2255, Opinion at 6, citing MLP Mot. to Dismiss at ¶17; Gardner Decl. Ex. 9, Supplemental Expert Report of Joseph W. Lesovitz at 37.)

20. Judge Chan's questionable impartiality also surfaced in its reliance on mere averments in Gardner's Motion to Appoint a Trustee when averments themselves are not evidence.

21. For example, relying on the allegations of Gardner's Motion, as well as the non-admitted expert report, the Court concluded that Dr. McGuckin had improperly used the Debtor's administrative services "for a reduced percentage of revenue that VAC typically charged for providing those services." (Appx. at 2255, Opinion at 5, citing MLP Mot. to Dismiss at ¶17; Gardner Decl. Ex. 9, Supplemental Expert Report of Joseph W. Lesovitz at 37.)

22. Perhaps most surprising of all was the Court's finding Gardner to be "entirely credible" — in contrast to the "delusional" designation given to Dr. McGuckin — when he never appeared in court to testify, whether on direct or cross.

23. "I also find Mr. Gardner entirely credible," was Judge Chen's finding at the hearing that Gardner failed to attend. (Appx. at 2651, N.T. 2/6/20. at p. 350, ln. 14-15.)

24. Since Gardner wasn't even present in the courtroom, there wasn't even the possibility of drawing an inference about credibility from his absence.

5

25. The timing of the Court's 44-page opinion also raises questions about impartiality. A few hours after the hearing ended on February 6, 2020 at 6 pm, the Court issued its lengthy 44- page Opinion. It could not have been drafted in that time, indicating that the Court's findings and conclusions in large measure preceded the hearing.

26. Finally, Judge Chan twice purported to diagnose Dr. McGuckin as "delusional." Judge Chan used the term in reference to Dr. McGuckin during the February 6, 2020 hearing. (Appx. at 2640, Notes of Testimony ("N.T.") 2/6/20 at p. 339, ln. 3-13: "I think that possibly you're lying, but certainly, perhaps, you're delusional.")

27. She used it again in her Opinion, stating that "… McGuckin was either lying or …he is delusional." (Opinion at 27.)

28. "Delusional" refers to a diagnosable mental disorder identified in the *Diagnostic and Statistical Manual of Mental Disorders-V*.[1] There was no testimony, expert or otherwise, on Dr. McGuckin's mental health and it was not at issue.

29. Even if Dr. McGuckin's mental health were at issue, such an extreme conclusion was without factual foundation and beyond the province of the Court's expertise and role in adjudicating bankruptcy petitions.

30. Lacking a relevant context or legal purpose, the appellation was completely gratuitous, fallacious and insulting. As such, it could have only a pejorative effect, leading a reasonable person to question the Court's impartiality.

31. Indeed, falsely accusing Dr. McGuckin of having a mental disorder was particularly pernicious given the fact that Dr. McGuckin is a licensed and practicing surgeon in the Philadelphia region and the Opinion was publicly filed.

---

[1] *Diagnostic and Statistical Manual of Mental Disorders.* Fifth Edition. Washington, DC: American Psychiatric Association; 2013.

6

### III.     Argument

32.    Bankruptcy Rule 5004 provides that disqualification of a judge is governed by 28 U.S.C. § 455.  28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

33.    "The test for disqualification under 455(a) is an objective one: whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *In re Washington Lane Assocs.*, 42 B.R. 617 (Bankr. E.D. Pa. 1984) (citing *United States v. Nelson,* 718 F.2d 315, 321 (9th Cir. 1983); *United States v. Noble,* 696 F.2d 231 (3d Cir. 1982) *cert. den.,* 462 U.S. 1118 (1983); *Zimmerman v. Rosenthal* (*In Re Pasco Tobacco Co., Inc.*), 34 B.R. 295 (Bankr. E.D. Pa.1983)).

34.    In other words, section 455(a) requires disqualification if there is a reasonable factual basis for doubting the Judge's impartiality." *Venuto v. Witco Corp.,* 809 F.Supp. 3, 4 (D.N.J.1992) (Rodriguez, J.) (quoting *United States v. Nobel,* 696 F.2d 231, 235 (3d Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983). *See Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 162 (3d Cir. 1993) ("For purposes of § 455(a) disqualification, it does not matter whether the district court judge actually harbors any bias against a party or the party's counsel.")

35.    "'Under § 455(a), if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse.'" *In re Kensington Int'l Ltd.*, 368 F.3d 289 (3d Cir. 2004) (quoting *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155 (3d Cir. 2004)); (citing *In re Prudential Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283, 343 (3d Cir.1998); *see Massachusetts School*

7

*of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality.").

36. It is of no consequence that a judge is not *actually* biased because § 455(a) "concerns not only fairness to individual litigants, but, equally important, it concerns 'the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who *appears* to be tainted.'" *In re Kensington Int'l Ltd.*, 353 F.3d 211 (3d Cir. 2003) (quoting *Alexander v. Primerica Holdings, Inc.,* 10 F.3d 155, 162 (3d Cir.1993); *In re School Asbestos Litigation*, 977 F.2d 764, 776 (3d Cir. 1992)).

37. Whereas § 455(a) is a catchall disqualification provision, § 455(b)(1) is more narrow in that it requires judges to disqualify themselves only if they have "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1); *see also Liteky v. United States,* 510 U.S. 540, 548 (1994) (describing § 455(a) as a " 'catchall' recusal provision, covering both 'interest or relationship' and 'bias or prejudice' grounds").[2]

38. To disqualify a judge under this provision, the party must prove bias "by compelling evidence" and "[t]he bias or prejudice must be grounded in some personal animus or malice that the judge harbors ... of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002) (internal quotation marks omitted); *Paddick v. Butt*, No. CV 09-4285, 2018 WL 1991737 (E.D. Pa. Apr. 27, 2018) (internal citations omitted) ("evidence of a

---

[2] Unlike disqualification under § 455(a), which may be waived by the parties, the grounds for disqualification under § 455(b)(1) generally cannot be waived. *See* 28 U.S.C. § 455(e).

8

'negative bias or prejudice . . . must be grounded in some personal animus or malice that the judge harbors against [him].'"). 28 U.S.C. § 455(b)(1) recusal motions are also governed by an objective test. *In re Pulp Finish 1 Co.*, No. 12-13774 (SMB), 2013 WL 5487933 (Bankr. S.D.N.Y. Oct. 2, 2013).

39. The Supreme Court has explained that the "personal bias or prejudice" language of subsection (b)(1) "connot[es] a favorable or unfavorable disposition or opinion [towards an individual or his/her case] that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess ..., or because it is excessive in degree[.]" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 550 (1994)). *See Whitehurst v. Wright*, 592 F.2d 834, 837 (5th Cir. 1979) (noting that "the single fact that the judge's remarks were made in a judicial context does not prevent a finding of bias").

40. A judge should exercise discretion in favor of disqualification if the judge has any question about the propriety of sitting in a particular case. *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1112 (5th Cir.) *cert. denied* 449 U.S. 820 (1980).

41. Similarly, the Third Circuit has construed recusal as mandatory under § 455 only "where a reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." *In re Three Mile Island Alert, Inc.,* 771 F.2d 720, 739 (3d Cir. 1985) *cert. denied, Aamodt v. United States Regulatory Commission,* 472 U.S. 1082, rehearing denied 476 U.S. 1179 (1986) citing *United States v. Dalfonso,* 707 F.2d 757, 760 (3d Cir. 1983).

42. Under the objective standard, gratuitous commentary that is insulting, critical, excessive, or otherwise negative and is directed at a party or its case is a ground for disqualification. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358 (10th Cir. 1977)(recusal warranted where trial court commented on party's legal position as being "stuck" before

9

permitting counsel to even address the court); *United States v. Holland*, 655 F.2d 44, 45 (5th Cir. 1981)(trial judge recused after commenting on his belief that party had "broken faith" with the court during first trial by consenting to the judge visiting the jury room but then raising the issue on appeal); *Nicodemus v. Chrysler Corp*, 596 F.2d 152 (6th Cir.) (judge's comment during oral ruling from bench that preliminary injunction was "the most transparent and the most blatant attempt to intimidate witnesses and parties that I have seen in a long time" suggested judge could not guarantee impartiality in future proceedings and should be recused); *United States v. Nixon*, 480 F.Supp. 3d 859, 884 (C.D. Ill 2020)(trial judge referring to defendant's testimony as "bullshit" part of grounds supporting recusal under Section 455); *In re: the Judicial Commitment of M.M.*, 303 S.3d 1095, 1103 (La. App. 2d Cir. 2020) (judge stating on the record that he was "aggravated," "upset," slighted," and "offended" as a result of counsel's actions, warranted recusal). *Wargo v. Wargo*, 669 So. 2d 1123 (Fla. Dist. Ct. App. 1996) (finding grounds for recusal where judge disparaged litigant's position and the remarks may have signaled predisposition. The Judge also reversed a previous decision against this same litigant which deprived him of due process.); *Roy v. Roy*, 687 So. 2d 956 (Fla. Dist. Ct. App. 1997) (finding that disqualification was proper when the judge insulted a litigant during a hearing by inappropriately commenting on his character).

43. The Court's "delusional" label, articulated on two separate occasions, alone certainly meets this standard. It is more personal and pejorative than the statement in *Webb* that the party's legal position was "stuck" or the statement in *Holland* that the party had "broken faith" with the court. It is more *ad hominem* in character than the commentary in *Judicial Commitment of M.M.* that the court was "aggravated," "upset," slighted," and "offended" as a result of counsel's actions. As in *Roy*, it is an inappropriate commentary on a litigant's character.

10

And although it doesn't sink to the depths of a scatological curse word, it is of the same critical nature as the comment in *Nixon*.

44. Added to the repeated labeling of Dr. McGuckin as "delusional" are the Court's indiscriminately crediting unsupported averments and hearsay expert reports as undisputed facts despite the Court's ruling and assurances that it would not do so, the finding that Gardner was "entirely credible" despite his not appearing in the courtroom much less testifying, and the Court's issuing an Opinion whose findings and conclusions appear to have been determined well before the hearing even started. These factors serve as further indicia leading a reasonable person to question the Court's impartiality.

45. Accordingly, Judge Chan should be disqualified from all proceedings where Dr. McGuckin's interests are directly at issue under both the catchall provision of § 455(a) and the narrower provision of § 455(b)(1).

## IV.    Conclusion

**WHEREFORE,** for the foregoing reasons, VAC, LLC's and Dr. McGuckin's Motion Seeking Recusal should be granted.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

By:    */s/ David P. Heim*
George Bochetto, Esquire
David P. Heim, Esquire

*Attorneys for Vascular Access Centers, L.P.
And James F. McGuckin, M.D.*

Dated: <u>April 23, 2021</u>

## CERTIFICATE OF SERVICE

I, David P. Heim, Esquire, hereby certify that a true and correct copy of the within *Vascular Access Centers, LLC's and James F. McGuckin, M.D.'s Motion Seeking Recusal Of Honorable Ashley M. Chan* was forwarded to all interest parties on this 23rd day of April, 2021 via ECF notification.

**BOCHETTO & LENTZ, P.C.**

By: */s/ David P. Heim*
David P. Heim, Esquire