**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VASCULAR ACCESS CENTERS, L.P., | ) Case No. 19-17117 (AMC) |
| | ) |
| Debtor. | ) |
| | ) |

**CHAPTER 11 PLAN OF LIQUIDATION FOR**
**VASCULAR ACCESS CENTERS, L.P.**

**WALSH PIZZI O'REILLY FALANGA LLP**
Christopher M. Hemrick (*pro hac vice*)
Peter J. Pizzi
Center Square, East Tower
1500 Market Street, 12th Floor
Tel: (973) 757-1100 | Fax: (973) 757-1090
*Counsel to the Chapter 11 Trustee*

Dated: June 23, 2021

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 5

ARTICLE I    DEFINED TERMS, RULES OF INTERPRETATION COMPUTATION OF
             TIME, AND GOVERNING LAW ..................................................... 5
    A.    Defined Terms. ............................................................................................ 5
    B.    Rules of Interpretation................................................................................ 17
    C.    Computation of Time. ................................................................................ 17
    D.    Governing Law........................................................................................... 18
    E.    Reference to Monetary Figures. ................................................................. 18
    F.    Controlling Document................................................................................ 18

ARTICLE II   ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, POST-
             PETITION LOAN CLAIMS, AND PRIORITY TAX CLAIMS........... 18
    A.    Administrative Claims. ............................................................................... 18
    B.    Professional Compensation. ...................................................................... 19
        1. Final Fee Applications and Payment of Professional Fee Claims. ....... 19
        2. Professional Fee Escrow Amount. ....................................................... 19
        3. Allocation and Estimation of Professional Fees and Expenses. .......... 20
        4. Post-Confirmation Date Fees and Expenses. ...................................... 20
        5. Substantial Contribution........................................................................ 20
    C.    Priority Tax Claims. .................................................................................. 20
    D.    Post-Petition Loan Claims......................................................................... 21
    E.    U.S. Trustee............................................................................................... 21

ARTICLE III  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 22
    A.    Summary of Classification. ........................................................................ 22
    B.    Treatment of Claims and Interests. ........................................................... 22
        1. Class 1—Other Secured Claims........................................................... 23
        2. Class 2—Other Priority Claims. .......................................................... 23
        3. Class 3—DOJ Settlement Claim. ........................................................ 24
        4. Class 4—General Unsecured Claims. .................................................. 24
        5. Class 5—Intercompany Claims. .......................................................... 24
        6. Class 6— Section 510 Claims. ............................................................. 25
        7. Class 7—Debtor Interests. .................................................................. 25
    C.    Special Provision Governing Unimpaired Claims. ..................................... 25
    D.    Elimination of Vacant Classes. ................................................................. 25
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes................ 26
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
        Code. .......................................................................................................... 26

G.      Subordinated Claims. ............................................................................... 26

ARTICLE IV      MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 26
        A.      General Settlement of Claims. ................................................................. 26
        B.      Sources of Plan Consideration. ............................................................... 27
        C.      Restructuring Transactions ...................................................................... 27
                1. Purchaser Assumed Claims. ................................................................ 27

                2. Payment of Cure Costs and Other Amounts. ...................................... 28

        D.      Vesting of Assets ....................................................................................... 28
        E.      Plan Administrator. ................................................................................... 28
                1. Appointment of the Plan Administrator. ............................................. 29

                2. Retention of Professionals .................................................................. 29

                3. Compensation of the Plan Administrator. ........................................... 29

        F.      Wind-Down. .............................................................................................. 29
        G.      Wind-Down Amount .................................................................................. 30
        H.      Plan Administrator Exculpation, Indemnification, Insurance, and Liability
                Limitation. ................................................................................................. 30
        I.      Tax Returns. ............................................................................................... 30
        J.      Cancellation of Notes, Instruments, Certificates, and Other Documents. ............... 30
        K.      Corporate Action. ...................................................................................... 31
        L.      Authority of Plan Administrator. .............................................................. 31
        M.      Release of Liens. ....................................................................................... 32
        N.      Effectuating Documents; Further Transactions. ....................................... 32
        O.      Exemption from Certain Taxes and Fees. ................................................. 32
        P.      Causes of Action. ...................................................................................... 33
        Q.      Closing the Chapter 11 Case. .................................................................... 33

ARTICLE V      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                LEASES ...................................................................................................... 33
        A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ............. 33
        B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. ............ 34
        C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. .......... 35
        D.      D&O Policies. ........................................................................................... 35
        E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. ... 35
        F.      Reservation of Rights. ............................................................................... 36
        G.      Nonoccurrence of Effective Date. ............................................................. 36

ARTICLE VI      PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 36
        A.      Timing and Calculation of Amounts to Be Distributed. ........................... 36
        B.      Rights and Powers of the Disbursing Agent. ............................................ 37
                1. Powers of the Debtor and the Disbursing Agent .................................. 37

                2. Fees of Disbursing Agent and Expenses Incurred On or After the Effective
                Date. ......................................................................................................... 37

        C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .............. 37
                1. Record Date for Distribution ............................................................... 37

        2. Delivery of Distributions in General. .................................................. 37

        3. Minimum; De Minimis Distributions. ................................................ 38

        4. Undeliverable Distributions and Unclaimed Property. ......................... 38

        5. Manner of Payment Pursuant to the Plan. ........................................ 38

    D.      Compliance with Tax Requirements/Allocations. .................................... 39
    E.      Allocation of Plan Distributions Between Principal and Interest. ............. 39
    F.      Setoffs and Recoupment. ............................................................... 39
    G.     Claims Paid or Payable by Third Parties. ............................................. 39
        1. Claims Paid by Third Parties. ...................................................... 39

        2. Claims Payable by Insurance, Third Parties. ................................... 40

        3. Applicability of Insurance Policies. ............................................... 40

    H.     Indefeasible Distributions. .............................................................. 40

ARTICLE VII     PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
             DISPUTED CLAIMS ........................................................................ 40
    A.      Allowance of Claims and Interests. ................................................... 40
    B.      Claims and Interests Administration Responsibilities. ........................... 41
    C.      Estimation of Claims and Interests. ................................................... 41
    D.      Adjustment to Claims or Interests with or without Objection. ................. 42
    E.      Disallowance of Claims. ................................................................. 43
    F.      Amendments to Claims. ................................................................. 43
    G.     No Distributions Pending Allowance ................................................. 43
    H.     Distributions After Allowance. ........................................................ 43
    I.      Single Satisfaction of Claims. .......................................................... 43

ARTICLE VIII    SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
             PROVISIONS ................................................................................ 44
    A.      Settlement, Compromise, and Release of Claims and Interests. ............... 44
    B.      Satisfaction of Claims and Termination of Interests. .............................. 44
    C.      Term of Injunctions or Stays. .......................................................... 45
    D.      Injunction. .................................................................................. 45
    E.      Release of Liens. ......................................................................... 45
    F.      Releases by the Debtor. ................................................................. 46
    G.     Releases by Holders of Claims and Interests. ...................................... 47
    H.     Exculpation. ............................................................................... 48
    I.      Protection Against Discriminatory Treatment. .................................... 48
    J.      Recoupment. .............................................................................. 49
    K.     Subordination Rights. .................................................................... 49
    L.      Reimbursement or Contribution. ...................................................... 49

ARTICLE IX     CONDITIONS PRECEDENT TO CONFIRMATION AND THE
             EFFECTIVE DATE ........................................................................ 49
    A.      Conditions Precedent to Confirmation. .............................................. 49
    B.      Conditions Precedent to the Effective Date. ........................................ 50
    C.      Waiver of Conditions. ................................................................... 51

D.    Substantial Consummation..........................................................................51
E.    Effect of Non-Occurrence of Conditions to the Effective Date. ...............51

ARTICLE X      MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .......52
A.    Modification and Amendments...................................................................52
B.    Effect of Confirmation on Modifications...................................................52
C.    Revocation or Withdrawal of the Plan. .....................................................52

ARTICLE XI      RETENTION OF JURISDICTION ......................................................53

ARTICLE XII      MISCELLANEOUS PROVISIONS .................................................55
A.    Immediate Binding Effect. .........................................................................55
B.    Additional Documents. ..............................................................................55
C.    Payment of Statutory Fees. ........................................................................55
D.    Discharge of Chapter 11 Trustee................................................................55
E.    Reservation of Rights.................................................................................56
F.    Successors and Assigns..............................................................................56
G.    Service of Documents. ...............................................................................56
H.    Enforcement of Confirmation Order..........................................................57
I.    Term of Injunctions or Stays......................................................................57
J.    Entire Agreement. ......................................................................................57
K.    Exhibits. .....................................................................................................57
L.    Nonseverability of Plan Provisions............................................................57
M.    Votes Solicited in Good Faith....................................................................58
N.    Waiver.........................................................................................................58

# INTRODUCTION

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan and certain related matters.

# ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

**A.  Defined Terms.**

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.      "*Acquired Entities*" means the Entities acquired by a Purchaser pursuant to the Restructuring Transactions.

2.      "*Administrative Claim*" means a Claim against the Debtor for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate; (b) Professional Fee Claims; (c) 4; and (d) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3.      "*Administrative Claims Bar Date*" means the date that is fixed by the Bankruptcy Court pursuant to a motion establishing a bar date for filing administrative expense claims arising after the Petition Date or, if no such motion is filed, the date that is thirty (30) days after the Effective Date, which is the deadline by which all requests for Administrative Claims (other than Professional Fee Claims) must be Filed and served on the Debtor.

4.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to  any Person that is not the Debtor, the term "Affiliate" shall apply to such Person as if the Person were the Debtor.

5.      "*Allowed*" means, with respect to any Claim against the Debtor, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or such other date as agreed by the Debtor pursuant to the Bar Date Order) or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, the Bar Date Order, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; *provided that* with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim has been Allowed by a Final Order. Notwithstanding anything to the contrary herein, no Claim of any Entity from  which property is  recoverable  under  sections 542, 543, 550, or 553 of the  Bankruptcy Code or that

5

is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "*Allow*" and "*Allowing*" shall have correlative meanings.

6.    "*Assumed Contracts and Leases List*" means the list of those Executory Contracts and Unexpired Leases not assumed by a Purchaser to be assumed by the Debtor or assumed and assigned by the Debtor to the Plan Administrator or any other Entity pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtor.

7.    "*Assumed Liabilities*" means a Purchaser Assumed Claim.

8.    "*Avoidance Actions*" means any and all causes of action to avoid a transfer of property or an obligation incurred by the Debtor arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related Law.

9.    "*Ballot*" means the form of ballot approved by the Bankruptcy Court and distributed to Holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

10.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

11.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or such other court having jurisdiction over the Chapter 11 Case, including to the extent of the withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the Eastern District of Pennsylvania.

12.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Case, and the general, local, and chambers rules of the Bankruptcy Court.

13.    "*Bar Date Order*" means the *Order Establishing Bar Dates for Filing Proofs of Pre-Petition Unsecured, Secured and Section 503(b)(9) Administrative Expense Claims and Interests* entered May 11, 2020 [Docket No. 371].

14.    "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

15.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

16.    "*Causes of Action*" means any and all actions, claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and

franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "*Causes of Action*" includes: (a) any rights of setoff, counterclaims, or recoupments and any claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all claims or defenses including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any and all state or foreign Law fraudulent transfer or similar claims; and (g) the Derivative Action.

17.    "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor in the Bankruptcy Court.

18.    *"Chapter 11 Trustee" or "Trustee"* means Stephen V. Falanga, the chapter 11 trustee appointed by the Bankruptcy Court by Order entered February 12, 2020 (Docket No. 245).

19.    *"Chapter 11 Trustee Commission"* means the compensation allowed by the Bankruptcy Court to the Chapter 11 Trustee pursuant to section 326 of the Bankruptcy Code for the Trustee's services in connection with the Bankruptcy Case.

20.    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

21.    "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan; *provided that* if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

22.    "*Claims Register*" means the official register of Claims against the Debtor maintained by the clerk of the Bankruptcy Court or the Notice and Claims Agent.

23.    "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

24.    "*Collateral*" means any property or interest in property of the Estate of the Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance under the Bankruptcy Code.

25.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

26.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtor shall seek entry of the Confirmation Order.

27.    "*Confirmation Objection Deadline*" has the meaning set forth in the Disclosure Statement Order.

28.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and otherwise in form and substance acceptable to the Debtor and a Purchaser.

29.    "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Case.

30.    "*Consummation*" means the occurrence of the Effective Date.

31.    "*Cure Costs*" means the amount necessary to cure all monetary defaults under the Assumed Contracts and Leases pursuant to section 365(b) of the Bankruptcy Code.

32.    "*Cure Notice*" means the notice provided to counter-parties to an Executory Contract that may be assumed by the Debtor in connection with the Plan.

33.    "*Debtor Interests*" means any Limited Partnership Interests in the Debtor.

34.    "*Debtor*" means Vascular Access Centers, L.P.

35.    "*Derivative Action*" means that certain action pending in the Court of Common Pleas of Delaware County, Pennsylvania, bearing case number 2016-000367 filed by plaintiffs, William Whitfield Gardner, Anish Shah, Rasesh Shah, Pravin Shah, Veena Shah and Warren Yu on behalf of Vascular Access Centers, L.P. against Vascular Access Centers, LLC and James F. McGuckin, Jr. M.D.

36.    "*Derivative Litigation Claims*" means any Claim arising from or relating to the Derivative Litigation.

37.    "*Description of Transaction Steps*" means, if applicable, the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan and as set forth in the Plan Supplement, as determined by the Chapter 11 Trustee on behalf of the Debtor, the Post-Petition Lender and a Purchaser.

38.    "*D&O Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to the Debtor as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

39.    "*Disbursing Agent*" means the Debtor or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtor or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

40.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and solicitation procedures with respect to the Plan entered by the Bankruptcy Court on _____, 2021 [Docket No. _____ (as amended, modified or supplemented from time to time as approved by the Bankruptcy Court).

41.    "*Disclosure Statement*" means the *Disclosure Statement for Chapter 11 Plan of Vascular Access Centers, L.P.* [Docket No._____], (as amended, modified or supplemented from time to time as approved by the Bankruptcy Court, including all exhibits and schedules thereto and references therein, and all related solicitation materials, that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law).

42.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest, or any portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely filed with the Bankruptcy Court, to the extent the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; *provided*, *however*, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

43.    "*Distributable Proceeds*" means all Cash of the Debtor on or after the Effective Date, after giving effect to the funding of the Professional Fee Escrow Account.

44.    "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtor are eligible to receive distributions under the Plan, which date shall be the Confirmation Date, or such other date as is agreed to by the Debtor or designated in a Final Order.

*45.*    *"DOJ Settlement Claim"* means those claims arising under that certain prepetition Stipulation and Order of Settlement and Dismissal, dated October 19, 2018 entered into by and among the Debtor, certain entities wholly or majority owned by the Debtor[1] defined collectively as the VAC Centers and the United States of America.

---

[1] The VAC Centers party to the DOJ Settlement include Vascular Access Center of Atlanta LLC; Vascular Access Center of Atlantic County LLC; Vascular Access Center of Bolivar County LLC; Vascular Access Center of Central Jersey LLC; Vascular Access Center of Durham LLC; Vascular Access Center of Eatontown LLC; Vascular Access Center of Georgia LLC; Vascular Access Center of Houston LLC; Vascular Access Center of Jacksonville LLC; Vascular Access Center of Jersey City LLC; Vascular Access Center of Memphis LLC; Vascular Access Center of New Orleans LLC; Vascular Access Center of North Shore Louisiana LLC; Vascular Access Center of Pittsburgh LLC; Vascular Access Center of Prince George County LLC; Vascular Access Center of Seattle LLC; Vascular Access Center of South Atlanta LLC; Vascular Access Center of South Los Angeles LLC; Vascular Access Center of Southern Maryland LLC; Vascular Access Center of Southwest Louisiana LLC; Vascular Access Center of Trenton LLC; Vascular Access Center of Washington DC LLC; and Vascular Access Center of West Orange LLC (collectively, the "VAC Centers").

46.     "*Effective Date*" means, with respect to the Plan, the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX of the Plan have been satisfied or waived in accordance with Article IX of the Plan.

47.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

48.     "*Estate*" means the estate created for the Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

49.     "*Exculpated Party*" means, collectively: (a) the Debtor; (b) the Chapter 11 Trustee; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), each Entity's current and former subsidiaries, officers, directors, managers, principals, members, partners, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their respective capacities, provided however, that an Exculpated Party shall not include Vascular Access Centers, LLC, James F. McGuckin, Jr. M.D or Philadelphia Vascular Institute, LLC.

50.     "*Executory Contract*" means a contract to which the Debtor  is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

51.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

52.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

53.     "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

*54.*     "*Final Utility Order*" means the *Final Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* (Docket No. 171).

55.     "*General Unsecured Claim*" means any unsecured Claim against the Debtor that is not:(a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Intercompany Claim; (d) an Other Priority Claim; (e) a Priority Tax Claim; (f) a Professional Fee Claim; (g) a Section 510 Claim; or (h) a Purchaser Assumed Claim.

56.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

57.    "*Holder*" means an Entity holding a Claim against or an Interest in the Debtor, as applicable.

58.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

59.    "*Initial Distribution Date*" means the date on which the Debtor or the Disbursing Agent, as applicable, makes initial distributions to Holders of Allowed Claims pursuant to the Plan.

60.    "*Intercompany Claim*" means any Claim against the Debtor held by a Non-Debtor Subsidiary.

61.    "*Intercompany Interest*" means any Interest held by the Debtor in a Non-Debtor Subsidiary.

62.    "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtor, and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (whether or not arising under or in connection with any employment agreement).

63.    "*Interim Compensation Order*" means collectively the Orders Granting Interim Applications for Compensation and Reimbursement of Expenses for the Chapter 11 Trustee Professionals entered by the Bankruptcy Court prior to Confirmation.

64.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

65.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

66.    "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

67.    "*Non-Debtor Subsidiary*" means any direct or indirect subsidiary of the Debtor that is not the Debtor in the Chapter 11 Case.

68.    "*Notice and Claims Agent*" means, Omni Management Group, solely in its capacity as notice, claims, and solicitation agent for the Debtor in the Chapter 11 Case.

69.    "*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtor in accordance with the Ordinary Course Professionals Order.

70.    "*Ordinary Course Professionals Order*" means the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* (Docket No. 258).

71.    "*Other Priority Claim*" means any Claim against the Debtor other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

72.    "*Other Secured Claim*" means any Secured Claim (including Secured Tax Claims) against the Debtor, other than a Post-Petition Senior Secured Credit Agreement Claim.

73.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

74.    "*Petition Date*" means collectively November 12, 2019, the date on which the Chapter 11 Case was involuntarily commenced and November 13, 2019 the date the Debtor voluntarily consented to be a debtor in the Bankruptcy Case.

*75.*    "*Philadelphia Vascular Institute, LLC*" means PVI.

*76.*    "*PVI Post-Petition Administrative Loan Claim*" means the Allowed Claim of PVI under that certain Debtor-in-Possession Credit Agreement by and between PVI and the Debtor dated as of January 15, 2020.

77.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Chapter 11 Trustee on behalf of the Debtor, who will be disclosed at or prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV of this Plan.

78.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least five (5) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, including the following, as applicable: (a) the Assumed Contracts and Leases List; (b) the identity of the Plan Administrator and the terms of compensation of the Plan Administrator; (c) Schedule of Retained Causes of Action; (d) any transition services agreement between a Purchaser and the Debtor; (e) the Description of Transactions Steps, if applicable; and (f) any other necessary documentation related to the Restructuring Transactions; *provided that*, through the Effective Date, the Plan Supplement, and the exhibits thereto may be amended or modified in accordance with this Plan.

79.    "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified or supplemented from time to time in accordance with the terms hereof).

80.    "*Post-Petition Senior Secured Credit Agreement*" means the, collectively the post-petition credit agreement loan facilities entered into by and between the Chapter 11 Trustee on behalf of the Debtor and William Whitfield Gardner, approved by the Bankruptcy Court, on March 18, 2020, April 20, 2020,  June 17, 2020, 2020, July 31, 2020, August 17, 2020, September 28,

2020, January 5, 2021 and such other post-petition credit loan facilities that may be entered into by and between the Chapter 11 Trustee and William Whitfield Gardner and approved by the Bankruptcy Court prior to Confirmation.

81.    "*Post-Petition Loan Claims*" means any Claim against the Debtor arising under the Post-Petition Senior Secured Credit Agreement, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges.

82.    "*Post-Petition Lender*" means William Whitfield Gardner, the lender party to the Post-Petition Senior Secured Credit Agreement.

83.    "*Post-Petition Senior Secured Credit Agreement Loan Documents*" means the Post-Petition Credit Agreement and any other documentation necessary to effectuate the incurrence of the Post-Petition Senior Secured Credit Agreement, which shall be in form and substance acceptable to the Debtor and the Post-Petition Lender.

84.    "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

85.    "*Priority Tax Claim*" means any Claim against the Debtor of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

86.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

87.    "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent  the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

88.    "*Professional Fee Escrow Account*" means an account funded by the Debtor with Cash as soon as practicable after Confirmation and not later than the Effective Date in an amount equal to the Professional Fee Escrow Amount and the Chapter 11 Trustee Commission.

89.    "*Professional Fee Escrow Amount*" means the reasonable estimate of the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services to the Debtor and the Trustee prior to and as of the Confirmation Date which estimates Professionals shall deliver to the Trustee as set forth in Article II.B of the Plan.

90.    "*Professional*" means an Entity (other than an Ordinary Course Professional): (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and

reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

91.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

92.    "*Purchased Assets*" means all of the assets of the Debtor that are or were purchased by a Purchaser pursuant to prior Orders of the Bankruptcy Court under 11 U.S.C. §363 or pursuant to the Plan; *provided that*, for the avoidance of doubt, the Distributable Proceeds and the Retained Assets shall not be Purchased Assets.

93.    "*Purchaser Assumed Claims*" means those Claims against the Debtor that were Assumed Liabilities under the Restructuring Transactions Documentation; *provided that* Purchaser Assumed Claims shall not include any claims resulting from the rejection of an Executory Contract or Unexpired Lease.

94.    "*Purchaser*" means  an Entity whose offer to purchase all, some or substantially all of the Debtor's assets was selected by the Debtor and approved by the Bankruptcy Court pursuant to prior Orders of the Bankruptcy Court under 11 U.S.C. §363 or pursuant to the Plan as the highest and otherwise best offer in connection with those respective Purchaser Assets or in connection with Confirmation of the Plan.

95.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

96.    "*Released Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Debtor; (b) all Releasing Parties; and (c) with respect to each Entity in clause (a) through (b), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, partners, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Released Party);  provided however, that a Released Party shall not include Vascular Access Centers, LLC, James F. McGuckin, Jr. M.D or Philadelphia Vascular Institute, LLC.

(a)    "*Releasing Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Debtor; (b) all Holders of Claims or Interests that are presumed to accept the Plan ***and*** who opt into the releases in the Plan; (c) all Holders of Claims or Interests who vote to accept the Plan; (d) all Holders of Claims or Interests that (x) abstain from voting on the Plan ***and*** who opt into the releases in the Plan, (y) vote to reject the Plan ***and*** who opt into the releases in the Plan, or (z) are deemed to reject the Plan ***and*** who opt into the releases in the Plan; and (e) with respect to each Entity in clause (a) through (d), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, partners, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided however, that a Releasing Party shall not include Vascular Access Centers, LLC, James F. McGuckin, Jr. M.D or Philadelphia Vascular Institute, LLC.

14

97.     "*Restructuring Transactions*" means the transactions described in Article IV.C. and includes the transfer of the Transferred Assets to a Purchaser and the assumption by a Purchaser of the Assumed Liabilities free and clear of all Liens, Claims, charges, and other encumbrances (other than the Assumed Liabilities) pursuant to sections 1123 and 1141 of the Bankruptcy Code on the terms and conditions set forth in the Plan.

98.     "*Retained Assets*" means: (a) any Distributable Proceeds not distributed on the Effective Date; the Wind-Down Amount; (c) the D&O Policies; (d) the Retained Causes of Action; and (e) the Excluded Assets (as defined in the Restructuring Transactions Documentation). For the avoidance of doubt, the Retained Assets shall not include:  (x) the Transferred Assets; (y) any Causes of Action waived, released or transferred pursuant to the Plan;  or (z) the Professional Fee Escrow Account.

99.     "*Retained Causes of Action*" means those Causes of Action that shall vest in the Debtor on the Effective Date and for the avoidance of doubt, Retained Causes of Action shall not include any of the Transferred Causes of Action, or any Causes of Action that are settled, released, or exculpated under the Plan.

100.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs to be  Filed  by the  Debtor  pursuant  to section 521 of the Bankruptcy Code.

101.     "*Section 510 Claim*" means any Claim against the Debtor that is subordinated under section 510 of the Bankruptcy Code.

102.     "*Secured Tax Claim*" means any Secured Claim against the Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

103.     "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

104.     "*Securities Act*" means the U.S. Securities Act of 1933.

105.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

106.     "*Subsequent Distribution Date*" means a date following the Initial Distribution Date on which the Disbursing Agent in its reasonable discretion, elects to make distributions to Holders of certain Allowed Claims pursuant to the Plan.

107.     "*Transferred Assets*" means the Purchased Assets, the Transferred Causes of Action, and the Interests of the Debtor that are transferred to Purchaser as part of the Restructuring Transactions.

108.    "*Transferred Causes of Action*" means any and all Causes of Action held by the Debtor as of the Effective Date that are not expressly released or retained by the Debtor pursuant to the Plan; *provided that* Transferred Causes of Action does not include (i) Avoidance Actions not related to the Transferred Assets; (ii) certain Causes of Action to be mutually agreed upon by the Debtor and a Purchaser; or (iii) Causes of Action that are settled, released, or exculpated under the Plan.

109.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

110.    "*U.S. Trustee*" means the Office of the United States Trustee for Region Three.

111.    "*Undeliverable Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

112.    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

113.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

114.    "*Utility Orders*" means the Interim and Final Order Determining Adequate Assurance of Payment for Future Utility Services entered January 13, 2020 [Docket No. 178].

115.    "*Voting Deadline*" has the meaning set forth in the Disclosure Statement Order.

116.    "*Voting Report*" means the report certifying the methodology for the tabulation of votes and results of voting under the Plan, prepared and filed by the Notice and Claims Agent.

117.    "*Waterfall Recovery*" means the priority distribution of Distributable Proceeds, which shall be allocated and paid to the Holders of Claims or Interests, as applicable, until paid in full from time to time in the following priority (in each case on a Pro Rata basis):

    (a) *first,* on account of Allowed Administrative Priority Claims, Post-Petition Loan Claims, and Priority Tax Claims,
    (b) *second*, on account of Allowed Other Secured Claims;
    (c) *third,* on account of Allowed Other Priority Claims;
    (d) *fourth,* on account of any Allowed DOJ Settlement Claim and any Allowed General Unsecured Claims, *pari passu,* that are not assumed by a Purchaser;
    (e) *fifth,* on account of any Allowed Intercompany Claims that are not assumed by a Purchaser; and
    (g) *sixth,* on account of Allowed Section 510 Claims and Allowed Debtor Interests.

118.    "*William Whitfield Gardner*" means the majority owner of Debtor Interests and the Post-Petition Lender.

119.    "*Wind-Down Amount*" means Cash in an amount, to be determined by the Trustee on behalf of the Debtor, which amount shall be retained by the Debtor, including the wind-down budget attached as <u>Exhibit___</u> to the Plan Supplement and used by the Plan Administrator to fund the Wind Down.

120.    "*Wind-Down*" means the wind down and dissolution of the Debtor's Estate as set forth  in Article IV.F.

**B.  Rules of Interpretation.**

For purposes of the Plan: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (viii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (ix) references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (x) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (xi) any effectuating provisions may be interpreted by the Debtor or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; *provided that* no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party; (xii) except as otherwise provided in the Plan, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (xiii) on and after the Effective Date, all references to the Debtor in this Plan shall be deemed references to the Debtor or the Plan Administrator, as applicable.

**C.  Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a

transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D. Governing Law.**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with the Laws of the Commonwealth of Pennsylvania, without giving effect to conflict of laws principles.

**E. Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

**F. Controlling Document.**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order). In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, POST-PETITION LOAN CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Post-Petition Loan Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

**A. Administrative Claims.**

Except with respect to Professional Fee Claims and Post-Petition Loan Claims, or as otherwise set forth herein, subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, and except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Chapter 11 Trustee on behalf of the Debtor or the Plan Administrator, agree to less favorable treatment or such Holder has been paid by the Debtor prior to the Effective Date, the Chapter 11 Trustee on behalf of the Debtor or the Plan Administrator shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash, which payment shall be made (x) in the ordinary course of business, or (y) on the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) with a Cash distribution; *provided that* any Allowed Administrative Claim that has been expressly assumed by a Purchaser under the Restructuring Transactions Documentation shall not be an obligation of the

Debtor as of or after the Effective Date; provided however; that payment of the PVI Post-Petition Administrative Loan Claim shall not be made until all amounts due and owing to and from the Debtor, its Affiliates and its Non-Debtor Subsidiaries and PVI are reconciled and any other Claims filed by PVI are Allowed by the Bankruptcy Court.

Except as otherwise provided by Article II.A or by a Final Order entered by the Bankruptcy Court (including the Bar Date Order) on or prior to the Administrative Claims Bar Date, as applicable, unless previously Filed, requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims) must be Filed and served on the Chapter 11 Trustee on behalf of the Debtor by the Administrative Claims Bar Date. For the avoidance of doubt, solely to the extent Cure Costs are not paid on the Effective Date, the counterparty to such Executory Contract and Unexpired Lease must File its Administrative Claim on or prior to the Administrative Claims Bar Date, and such Administrative Claim shall be asserted only with respect to and in the amount of such unpaid Cure Costs. With respect to Professional Fee Claims, the deadline for all requests for payment of such claims shall be forty-five (45) days after the Effective Date.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor, its Estate, a Purchaser, or the Plan Administrator, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. For the avoidance of doubt, Holders of Post-Petition Loan Claims shall not be required to File or serve any request for payment of such Post-Petition Loan Claims.

## B. Professional Compensation.

### 1. Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date and the request by the Chapter 11 Trustee for compensation for the Trustee's services in connection with the Bankruptcy Case shall be Filed no later than forty-five (45) days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals or the Chapter 11 Trustee Commission owing the Chapter 11 Trustee, such Professionals and the Chapter 11 Trustee shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan.

### 2. Professional Fee Escrow Amount.

As soon as possible after Confirmation and not later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional

Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals and the Chapter 11 Trustee.  Such funds shall not be considered property of the Debtor's Estate. The amount of Professional Fee Claims owing to the Professionals and the Chapter 11 Trustee  shall be paid in Cash to such Professionals and the Chapter 11 Trustee from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals and the Chapter 11 Trustee have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Plan Administrator.

### 3.  Allocation and Estimation of Professional Fees and Expenses.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred before and as of the Confirmation Date, and shall deliver such estimate to Chapter 11 Trustee on behalf of the Debtor by the earlier of (a) five (5) Business Days after the Confirmation Date and (b) two (2) Business Days prior to the Effective Date; *provided that* such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and the Chapter 11 Trustee and such Professionals and the Chapter 11 Trustee are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional.

### 4.  Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Chapter 11 Trustee, the Debtor or the Plan Administrator. Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor and the Plan Administrator may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 5.  Substantial Contribution.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtor, the Chapter 11 Trustee and the Post-Petition Lender and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

## C.  Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Debtor or the Plan Administrator, agree to a less favorable treatment, in full and final satisfaction,

settlement, and release of and in exchange for each Allowed Priority Tax Claim, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive, at the option of the Debtor or the Plan Administrator, as applicable, either (i) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), or (ii) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date; *provided that* any Allowed Priority Tax Claim that has been expressly assumed by a Purchaser under the Restructuring Transactions Documentation shall not be an obligation of the Debtor. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

### D. Post-Petition Loan Claims.

All Post-Petition Loan Claims shall be deemed Allowed as of the Effective Date in an amount equal to the full amount due and owing under the Post-Petition Senior Secured Credit Agreement, including, for the avoidance of doubt, (i) the principal amount outstanding under the Post-Petition Senior Secured Credit Agreement on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued and unpaid fees and expenses payable under the Post-Petition Senior Secured Credit Agreement. On the Effective Date, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Post-Petition Senior Secured Credit Agreement Claim, unless the Holder of a Post-Petition Loan Claim agrees to less favorable treatment or such Holder has been paid by the Debtor prior to the Effective Date, the Post-Petition Senior Secured Credit Agreement Claim shall be paid in full in Cash, except to the extent such Post-Petition Loan Claims were credited to the Purchase Price pursuant to the terms of the Restructuring Transactions Documentation. All Liens and security interests granted by the Debtor to secure the obligations under the Post-Petition Senior Secured Credit Agreement shall be of no further force or effect. For the avoidance of doubt, the Post-Petition Loan Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

### E. U.S. Trustee.

The Debtor or the Plan Administrator, as applicable, shall timely pay all U.S. Trustee Fees for each quarter under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's businesses, until the entry of a Final Order dismissing or closing the Chapter 11 Case, or converting the Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code. Following Confirmation, the Debtor or the Plan Administrator, as applicable, shall file with the Bankruptcy Court quarterly operating reports in a form reasonably acceptable to the U.S. Trustee.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.  Summary of Classification.**

Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in the Debtor are placed in Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims, Priority Tax Claims, Post-Petition Loan Claims, and Professional Fee Claims as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | DOJ Settlement Claim | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Section 510 Claims | Impaired | Entitled to Vote |
| Class 7 | Debtor Interests | Impaired | Entitled to Vote |

**B.  Treatment of Claims and Interests.**

Except to the extent that the Debtor or the Plan Administrator, as applicable, and a Holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim or Interest. Unless otherwise indicated, each Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes allowed.

1. **Class 1—Other Secured Claims.**

    (a)    *Classification*: Class 2 consists of all Other Secured Claims.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtor, in consultation with a Purchaser, and in each case, on the Effective Date:

        (i)    payment in full in Cash of such Allowed Other Secured Claim;

        (ii)    the Collateral securing such Allowed Other Secured Claim;

        (iii)    Reinstatement of such Allowed Other Secured Claim, notwithstanding any contractual provision or applicable non-bankruptcy Law that entitles the holder of such claim to demand or to receive payment prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of default; or

        (iv)    such other treatment rendering such Allowed Other Secured Claim Unimpaired.

    (c)    *Voting*: Class 2 is Unimpaired under the Plan. Each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 2 Other Secured Claim is not entitled to vote to accept or reject the Plan.

2. **Class 2—Other Priority Claims.**

    (d)    *Classification*: Class 1 consists of all Other Priority Claims.

    (e)    *Treatment*: Except to the extent that a Holder of an Allowed Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired, in each case on the Effective Date.

    (f)    *Voting*: Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 1 Other Priority Claim is not entitled to vote to accept or reject the Plan.

**3.  Class 3—DOJ Settlement Claim.**

(g)   *Classification*: Class 3 consists of the DOJ Settlement Claim.

(h)   *Treatment*: In full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed DOJ Settlement Claim that is not assumed by a Purchaser shall receive the payments from those Purchased Assets approved by the Bankruptcy Court pursuant to prior Orders of the Bankruptcy Court under 11 U.S.C. §363 and its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery.

(i)   *Voting*: Class 3 is Impaired under the Plan. Each Holder of a Class 3 Allowed DOJ Settlement Claim is entitled to vote to accept or reject the Plan.

**4.  Class 4—General Unsecured Claims.**

(j)   *Classification*: Class 4 consists of all General Unsecured Claims.

(k)   *Treatment*: In full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed General Unsecured Claim that is not assumed by a Purchaser shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

For the avoidance of doubt, all General Unsecured Claims that are assumed by a Purchaser pursuant to the Restructuring Transactions Documentation shall be satisfied by a Purchaser in full in Cash following the Effective Date in the ordinary course of business; *provided that* any Allowed General Unsecured Claim that has been expressly assumed by a Purchaser under the Restructuring Transactions shall not be an obligation of the Debtor as of or after the Effective Date.

(l)   *Voting*: Class 4 is Impaired. Each Holder of a Class 4 Allowed  General Unsecured  Claim is entitled to vote to accept or reject the Plan.

**5.  Class 5—Intercompany Claims.**

(m)   *Classification*: Class 5 consists of all purported Intercompany Claims.

(n)   *Treatment*: In full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed Intercompany Claim, will either be Reinstated if the Allowed Intercompany Claim is assumed by a Purchaser pursuant to the Restructuring Transactions Documentation or each Holder of Allowed Intercompany Claim that is not assumed by a Purchaser shall

24

receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

(o)  *Voting*: Class 5 is either Unimpaired, and the Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired and the Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

**6.  Class 6— Section 510 Claims.**

(p)  *Classification*:  Class 6 consists of all Section 510 Claims.

(q)  *Treatment*: In full and final satisfaction, compromise, settlement, and release of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed Section 510 Claim shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

(r)  *Voting*: Class 6 is Impaired. Each Holder of a Class 6 Allowed  Section 510 Claim is entitled to vote to accept or reject the Plan.

**7.  Class 7—Debtor Interests.**

(s)  *Classification:* Class 7 consists of all Debtor Interests.

(t)  *Treatment*: On the Effective Date, in full and final satisfaction, compromise, settlement, and release of its Interest, each Holder of Allowed Class 8 Debtor Interests shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

(u)  *Voting:* Class 8 is Impaired. Each Holder of Class 8 Allowed Debtor Interests is entitled to vote to accept or reject the Plan.

**C.  Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtor or a Purchaser, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**D.  Elimination of Vacant Classes.**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.  Voting Classes; Presumed Acceptance by Non-Voting Classes.**

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

**F.  Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.**

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims or Interests. The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Trustee on behalf of the Debtor reserves the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**G.  Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the  respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether  arising  under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Trustee on behalf of the Debtor reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.  General Settlement of Claims.**

Except as otherwise expressly provided herein, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion, proposed by the Debtor, to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123  of the Bankruptcy Code, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate and its Non-Debtor Subsidiaries. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

**B.  Sources of Plan Consideration.**

Cash on hand, borrowings under the Post-Petition Senior Secured Credit Agreement, the Distributable Proceeds, if any, proceeds from the Retained Assets, the Wind-Down Amount, the Debtor's rights under the Restructuring Transactions Documentation, payments made directly by a Purchaser on account of any Assumed Liabilities under the Restructuring Transactions Documentation, payments of Cure Costs made by a Purchaser pursuant to sections 365 or 1123 of the Bankruptcy Code, the return of any utility deposits as set forth in the Utility Orders, and all Causes of Action not previously settled, released, or exculpated under the Plan, if any, shall be used to fund the distributions to Holders of Allowed Claims against the Debtor in accordance with the treatment of such Claims and subject to the terms provided herein. Unless otherwise agreed in writing by the Chapter 11 Trustee on behalf of the Debtor and a Purchaser, distributions required by this Plan on account of Allowed Claims that are Assumed Liabilities shall be the sole responsibility of a Purchaser to the extent such Claim is Allowed against the Debtor.

**C.  Restructuring Transactions.**

Upon the entry of the Confirmation Order, the Chapter 11 Trustee on behalf of the Debtor, the Plan Administrator, and a Purchaser are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under or in connection with the Plan that are consistent with and pursuant to the terms and conditions of the Plan, including: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; and (e) any transaction described in the Description of Transactions Steps, if applicable.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

**1.  Purchaser Assumed Claims.**

The Restructuring Transactions Documentation provides that as part of the Restructuring Transactions, a Purchaser may assume certain obligations owed by the Debtor and/or  its Non-Debtor Subsidiaries to their customers and trade vendors. Following such assumption by a Purchaser, a Purchaser shall satisfy such obligations in Cash, and for the avoidance of doubt, any obligations that were assumed by a Purchaser shall cease to be Claims against the Debtor and/or and its Non-Debtor Subsidiaries, as the case may be, following such assumption.

**2.  Payment of Cure Costs and Other Amounts.**

On the Effective Date, the Debtor shall pay all Cure Costs that are required to be paid (if any) pursuant to and in accordance with sections 365 or 1123 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases that are assumed by the Debtor pursuant to the Plan. For the avoidance of doubt, the Debtor shall have no obligations to pay any Cure Costs for any contract or lease that is assumed by a Purchaser pursuant to the Plan.

**D.  Vesting of Assets.**

Except as otherwise provided in the Plan, the Restructuring Transactions Documentation, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date the Retained Assets shall vest in the Debtor for the purpose of liquidating the Estate, free and clear of all Liens, Claims, charges, and other encumbrances. For the avoidance of doubt, all Transferred Causes of Action shall be transferred to a Purchaser in the Restructuring Transactions, and the Retained Causes of Action shall vest in the Debtor on the Effective Date for prosecution, settlement, or other action as determined by the Plan Administrator.

On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator may operate the Debtor's businesses and use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**E.  Plan Administrator.**

The Plan Administrator shall act for the Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Debtor and shall succeed to the powers of the Debtor's managers and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtor. For the avoidance of doubt, the foregoing shall not limit the authority of the Debtor or the Plan Administrator, as applicable, to continue the employment any former manager or officer.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtor, including:  (i) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Debtor remaining after consummation of the Restructuring Transactions; (ii) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (iii) making distributions as contemplated under the Plan; (iv) establishing and maintaining bank accounts in the name of the Debtor; (v) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (vi) paying all reasonable fees, expenses, debts, charges, and liabilities  of  the  Debtor;  (vii)

28

administering and paying taxes of the Debtor, including filing tax returns; representing the interests of the Debtor before any taxing authority in all matters, including any action, suit, proceeding or audit; and (ix) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtor shall be terminated.

**1. Appointment of the Plan Administrator.**

The Plan Administrator shall be appointed by the Chapter 11 Trustee on behalf of the Debtor. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

**2. Retention of Professionals.**

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Debtor, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**3. Compensation of the Plan Administrator.**

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement.

**F. Wind-Down.**

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtor's Estate.

As soon as practicable after the Effective Date, the Plan Administrator shall: (i) cause the Debtor to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (ii) take any actions necessary to wind down the Debtor's Estate; and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, except as set forth herein, the Debtor (x) for all purposes shall be deemed to have withdrawn their business operations from any state in

which the Debtor were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, and (y) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports shall be the responsibility of the Plan Administrator.

## G. Wind-Down Amount.

On or prior to the Effective Date, the Debtor shall retain the Wind-Down Amount in accordance with the terms of the Restructuring Transactions Documentation. The Wind-Down Amount shall be used by the Plan Administrator solely to satisfy the distributions set forth herein, the expenses of the Debtor and the Plan Administrator as set forth in the Plan; *provided that* all costs and expenses associated with the winding down of the Debtor and the storage of records and documents shall constitute expenses of the Debtor and shall be paid from the Wind-Down Amount. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.

## H. Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation.

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for actual fraud, willful misconduct, or gross negligence, in all respects by the Debtor and its Non-Debtor Subsidiaries. The Plan Administrator may obtain, at the expense of the Debtor and its Non-Debtor Subsidiaries, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtor and its Non-Debtor Subsidiaries. The Plan Administrator may rely upon written information previously generated by the Debtor and its Non-Debtor Subsidiaries.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor and its Non-Debtor Subsidiaries.

## I. Tax Returns.

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtor or its Estate and/or its Affiliates and Non-Debtor Subsidiaries  for any tax incurred during the administration of the Debtor's Chapter 11 Case, as determined under applicable tax laws.

## J. Cancellation of Notes, Instruments, Certificates, and Other Documents.

On the Effective Date, except as otherwise specifically provided for in the Plan or to the extent otherwise assumed by a Purchaser: (i) the obligations of the Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of giving rise to any Claim shall be cancelled and deemed surrendered as to the Debtor, and the Debtor shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be fully released, settled, and compromised; *provided*, *however*, that notwithstanding anything to the contrary contained herein, any indenture or agreement that governs the rights of the Post-Petition Lender shall continue in effect to allow the Post-Petition Lender, to (A) enforce its rights, Claims, and interests vis-à-vis any parties other than the Debtor, (B) receive distributions under the Plan and to distribute them to Holders of Allowed Post-Petition Loan Claims, (C) enforce its rights to payment of fees and expenses as against any money or property distributable to Holders of Allowed Post-Petition Loan Claims, and (D) appear and be heard in the Chapter 11 Case or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to the Post-Petition Lender.

## K.  Corporate Action.

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Debtor or the Plan Administrator, as applicable) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtor, the Plan Administrator, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtor shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Debtor's Estate.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions provided for under the Plan, the Debtor shall be deemed to have been dissolved and terminated, except as necessary to satisfy their obligations under the Plan. The directors, managers, and officers of the Debtor shall be authorized  to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate to implement the provisions of this Article IV.K.

The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under applicable nonbankruptcy Law.

## L.  Authority of Plan Administrator.

As of the Effective Date, any existing boards of directors or managers, as applicable, of the Debtor and its Non-Debtor Subsidiaries which are not Acquired Entities shall be dissolved without any further action required on the part of the Debtor or the Debtor's officers, directors, managers, shareholders, members, or partners and any remaining officers, directors, managers, or managing members of the Debtor and its Non-Debtor Subsidiaries shall be dismissed without any further action required on the part of the Debtor and its Non-Debtor Subsidiaries, the equity holders of the

Debtor, the officers, directors, or managers, as applicable, of the Debtor, or the partners of the Debtor.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtor with respect to its affairs other than matters substantially related to the transactions described in Article IV.C.1 of the Plan. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtor and its Non-Debtor Subsidiaries that are not Acquired Entities. The Plan Administrator may but shall not be required to : (i) file a certificate of dissolution for the Debtor and its Non-Debtor Subsidiaries that are not Acquired Entities, together with all other necessary corporate and company documents, to effect the dissolution of the Debtor and its Non-Debtor Subsidiaries that are not Acquired Entities under the applicable Laws of the applicable state(s) of formation; and (ii) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for the Debtor and its Non-Debtor Subsidiaries that are not Acquired Entities, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate and its Non-Debtor Subsidiaries that are not Acquired Entities for any tax incurred during the administration of the Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of the Debtor's and any and its Non-Debtor Subsidiaries' that are not Acquired Entities certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, partners, board of directors, or board of managers of the Debtor and/or its Affiliates and Non-Debtor Subsidiaries that are not Acquired Entities as the case may be.

## M. Release of Liens.

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of the Debtor shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of the Debtor shall automatically be released.

## N. Effectuating Documents; Further Transactions.

The Debtor and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

## O. Exemption from Certain Taxes and Fees.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, the Restructuring Transactions, or the Restructuring Transactions Documentation or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor and/or its Affiliates and Non-Debtor Subsidiaries ; or (ii) the making, delivery, or

recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**P. Causes of Action.**

Pursuant to the Restructuring Transactions Documentation, the Debtor and/or its Affiliates and Non-Debtor Subsidiaries, as the case may be, assigned and transferred to a Purchaser all of the Transferred Causes of Action pursuant to the Restructuring Transactions Documentation in connection with the Restructuring Transactions. For the avoidance of doubt, the Debtor or the Plan Administrator, as applicable, will retain the right to enforce the terms of the Restructuring Transactions Documentation. Any Retained Causes of Action shall remain with the Debtor and/or its Affiliates and Non-Debtor Subsidiaries, as the case may be and shall vest with the Plan Administrator as of the Effective Date.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any such Cause of Action against them as any indication that the Debtor and/or its Affiliates and Non-Debtor Subsidiaries, as the case may be, will not pursue any and all available Causes of Actions against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

**Q. Closing the Chapter 11 Case.**

For the avoidance of doubt, upon the occurrence of the Effective Date, the Debtor or Plan Administrator, as applicable, shall be permitted to file a motion for entry of an order closing the Chapter 11 Case of the Debtor, and all contested matters relating to the Debtor, including objections to Claims, shall be administered and heard in the Chapter 11 Case of the Debtor in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A. Assumption and Rejection of Executory Contracts and Unexpired Leases.**

Except as otherwise provided herein or provided in the Restructuring Transactions Documentation, each Executory Contract and Unexpired Lease (other than any Executory Contract or Unexpired Lease previously rejected, assumed, or assumed and assigned), any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise,

shall be deemed automatically rejected on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed and assigned to the Plan Administrator, or other Entity, in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned to the Plan Administrator, or other Entity, pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtor or assumed by the Debtor and assigned to a Purchaser or another third party, as applicable, in connection with the Restructuring Transactions following the consummation thereof; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; or (6) is the Restructuring Transactions Documentation.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Restructuring Transactions Documentation and the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to its Executory Contracts and/or Unexpired Leases must file a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

## B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtor or, after the Effective Date, the Plan Administrator, as applicable, no later than thirty (30) days after the effective date of the rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtor or, after the Effective Date, the Plan Administrator, as applicable, no later than fourteen (14) days after service of the Debtor's proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were required to be but were not timely Filed shall not (i) be treated as a creditor with respect to such Claim, (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (iii) participate in any distribution in the Chapter 11 Case on account of such Claim. Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the**

34

**Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Debtor's Estate, or the property of any of the foregoing without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtor's prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court.

### C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed by the Debtor as set forth in Article V.A, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of such Cure Costs in Cash on or about the Effective Date, subject to the limitations described below and set forth in Article IV.C herein, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (i) the Cure Costs, (ii) the ability of any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time before the date that the Debtor assume such Executory Contract or Unexpired Lease. **All liabilities reflected in the Schedules and any Proof of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court**.

### D. D&O Policies.

The D&O Policies shall be assumed by the Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Policies including the coverage for defense and indemnity under any of the D&O Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies.

### E. Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other

agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

**F.  Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Contracts and Leases List, nor anything contained in the Plan, shall constitute an admission by the Debtor or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either the Debtor or any other Entity, as applicable, has any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Plan Administrator, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**G.  Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.  Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against or Allowed Interest in, as applicable, the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtor or the Disbursing Agent on behalf of the Debtor, as applicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such

Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

## B. Rights and Powers of the Disbursing Agent.

### 1. Powers of the Debtor and the Disbursing Agent.

Except as otherwise set forth herein, all distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter by the Debtor or the Disbursing Agent (or its designee(s)), the timing of which shall be subject to the reasonable discretion of the Debtor or the Disbursing Agent, as applicable. On and after the Effective Date, the Disbursing Agent and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Claim, subject to the terms hereof. The Debtor and the Disbursing Agent, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Disbursing Agent is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtor.

### 2. Fees of Disbursing Agent and Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Disbursing Agent in connection with such person's duties shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court in Cash from the Wind-Down Amount.

## C. Delivery of Distributions and Undeliverable or Unclaimed Distributions.

### 1. Record Date for Distribution.

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed and the Debtor and the Disbursing Agent, or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

### 2. Delivery of Distributions in General.

(a)    Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims or Disputed Interests that are not Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims, or Allowed Interests, as applicable, shall, in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim agree otherwise.

(b)      Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtor or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Disputed Interest, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim or Disputed Interest have become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

(c)      Distributions.

On and after the Effective Date, the Debtor shall make the distributions required to be made on account of Allowed Claims or Allowed Interests under the Plan. Any distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim or Interest that would have been entitled to receive that distribution is not an Allowed Claim or Allowed Interest on such date, shall be held by the Debtor or the Disbursing Agent in reserve in accordance with the Plan, as applicable, and distributed on the next Subsequent Distribution Date that occurs after such Claim or Interest is Allowed. Subject to Article VI.E, no interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to the Plan.

**3.   Minimum; De Minimis Distributions.**

No Cash payment of less than $100, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest, and each Claim or Interest to which this limitation applies shall be satisfied pursuant to Article VIII of the Plan, and its Holder shall be forever barred pursuant to Article VIII of the Plan from asserting that Claim against or Interest in the Debtor and/or its Affiliates and Non-Debtor Subsidiaries , as the case may be or their property.

**4.   Undeliverable Distributions and Unclaimed Property.**

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent, as applicable, has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Debtor or the Disbursing Agent, as applicable, automatically and without need for a further order by the Bankruptcy Court and the Claim or Interest of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

**5.   Manner of Payment Pursuant to the Plan.**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, Automated Clearing House, credit card, or wire transfer, or as

otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

## D.  Compliance with Tax Requirements/Allocations.

In connection with the Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. All Persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

## E.  Allocation of Plan Distributions Between Principal and Interest.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

## F.  Setoffs and Recoupment.

Except as otherwise expressly provided herein, the Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim it may have against the Holder of such Claim. Notwithstanding anything to the contrary in the Plan, nothing in the Plan or the Plan Supplement shall discharge, release, impair, or otherwise preclude any valid right of setoff or recoupment of the Debtor's customers under applicable Law or an applicable contract that is assigned to  a Purchaser, which valid right of setoff or recoupment shall continue against a Purchaser following the Effective Date.

## G.  Claims Paid or Payable by Third Parties.

### 1.  Claims Paid by Third Parties.

The Debtor shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

### 2. Claims Payable by Insurance, Third Parties.

No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtor's insurance policies, including the D&O Policies, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such insurance policy, other non-Debtor payment agreement, or collateral, as applicable. To the extent that the Debtor's insurers or non-Debtor-payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3. Applicability of Insurance Policies.

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of the Debtor's insurance policies with respect to such policies (including the D&O Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

## H. Indefeasible Distributions.

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

## A. Allowance of Claims and Interests.

On and after the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim or Interest immediately before the Effective Date, and, with respect to any Claims or Interests that constitute Assumed Liabilities, a Purchaser shall have and retain any and all rights, defenses, and other Transferred Causes of Action that the Debtor had with respect to such Claims or Interests immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

Unless otherwise set forth herein, all objections to Claims must be filed with the Bankruptcy Court, and served upon the Holders of such Claims on or before the twenty-eighth (28th) day after the Confirmation Date, except as extended by an agreement between the claimant and the Trustee, or by order of the Bankruptcy Court upon a motion filed by the Trustee. If an objection has not been filed to a Claim within this 28-day period, the Claim shall be treated as an Allowed Claim for purposes of distribution under this Plan; provided, however, that if the Holder of the Claim is a debtor under any chapter of the Bankruptcy Code, the deadline shall be twenty-eight (28) days after the Trustee obtains relief from stay or other relief that will permit the filing of an objection to such Claim.

## B. Claims and Interests Administration Responsibilities.

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtor or the Plan Administrator, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims and Interests: (i) to File, withdraw, or litigate to judgment objections to Claims and Interests; (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

## C. Estimation of Claims and Interests.

As of the Effective Date, the Debtor or the Plan Administrator, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been

41

expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim or Interest is estimated.  Each of the foregoing Claims or Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D.  Adjustment to Claims or Interests with or without Objection.**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor, without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. The Debtor shall provide any Holder of such a Claim or Interest with fourteen (14) days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result as the result of a Claim or Interest being paid, satisfied, amended or superseded.

If the Holder of a Disputed Claim and the Trustee agree to a settlement of such Holder's Disputed Claim where the amount in dispute does not exceed $100,000, the Trustee shall be authorized to enter into and effectuate such settlement without any further notice or approval of the Bankruptcy Court, and the settled Claim shall be deemed an Allowed Claim.  If the Holder of a Disputed Claim and the Trustee agree to a settlement of such Holder's Disputed Claim where the amount in dispute exceeds $100,000, the Trustee shall provide notice of the proposed settlement (with a 10-day period to object) to all interested parties entitled to notice pursuant to the Bankruptcy Code and Rules.  If no objection is received within the 10-day objection period, the settled Claim shall be deemed to be an Allowed Claim without the need for further review or approval of the Bankruptcy Court or any other party.  If an objection to a proposed settlement is received within the 10-day objection period, and such objection cannot otherwise be resolved, then the Trustee shall schedule a hearing in the Bankruptcy Court to resolve the objection.

Until such time as a contingent Claim or a contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The Holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim or Interest.  Additional details regarding Claims resolution are set forth more fully in the Plan.

**E.  Disallowance of Claims.**

Other than with respect to Claims Allowed under the Plan, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**F.  Amendments to Claims.**

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtor and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided that* a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late filing.

**G.  No Distributions Pending Allowance.**

If an objection to a Claim or Interest or any portion thereof is Filed as set forth in Article VII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

**H.  Distributions After Allowance.**

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.B of the Plan.

**I.  Single Satisfaction of Claims.**

Holders of Allowed Claims may assert such Claims against the Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtor based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A. Settlement, Compromise, and Release of Claims and Interests.**

Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with  the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against, and Interests in, the Debtor and its Estate and Causes of Action against other Entities.

**B. Satisfaction of Claims and Termination of Interests.**

Except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Plan Administrator), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan.  Any default or "event of default" by the Debtor and/or its Affiliates and Non-Debtor Subsidiaries with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.

**C.  Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**D.  Injunction.**

**Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan or are subject to Exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Released Parties, or the Exculpated Parties (to the extent of the Exculpation provided pursuant to the Plan with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtor until the closing of these Chapter 11 Case.**

**E.  Release of Liens.**

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor and their successors and assigns without any further approval or order**

of the Bankruptcy Court and without any action or Filing being required to be made by the Debtor.  In addition, the Post-Petition Lender shall be authorized to execute and deliver all documents reasonably requested by the Debtor or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtor to file UCC-3 termination statements (to the extent applicable) with respect thereto.

F.    **Releases by the Debtor.**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, its Estate, the Plan Administrator, and the Acquired Entities from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtor, that the Debtor, or its Estate, or the Plan Administrator, or the Acquired Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in the Debtor, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's capital structure, the assertion or enforcement of rights and remedies against the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtor and/or its Affiliates and Non-Debtor Subsidiaries, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the Post-Petition Senior Secured Credit Agreement Loan Documents, the Disclosure Statement, the Plan, the Restructuring Transactions, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Case, the Post-Petition Senior Secured Credit Agreement Loan Documents, the Restructuring Transactions Documentation, the Restructuring Transactions, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between and Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence. Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action or Retained Causes of Action, such parties shall remain Released Parties.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and

Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases herein, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases herein are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the releases herein; (iii) in the best interests of the Debtor and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtor and after notice and opportunity for hearing; and (vi) a bar to any of the  Debtor asserting any claim released by the releases herein against any of the Released Parties.

G.  Releases by Holders of Claims and Interests.

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have released and discharged the Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtor and/or its Affiliates and Non-Debtor Subsidiaries, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the Post-Petition Senior Secured Credit Agreement Loan Documents, the Disclosure Statement, the Plan, the Restructuring Transactions, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, or the Plan, the Chapter 11 Case, the Post-Petition Senior Secured Credit Agreement Loan Documents, the Restructuring Transactions, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between the Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and

Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is:  (i)  in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the Releasing Parties; (iii) in the best interests of the Debtor and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after notice and opportunity for hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

## H. Exculpation.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, the Disclosure Statement, the Plan, the Post-Petition Senior Secured Credit Agreement Loan Documents, the Restructuring Transactions, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Post-Petition Senior Secured Credit Agreement Loan Documents, the Disclosure Statement or the Plan, the Restructuring Transactions, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that constitutes willful misconduct, actual fraud, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary herein, nothing in this Article VIII.G shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date or after the Effective Date.

## I. Protection Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtor or Acquired Entities or deny, revoke, suspend, or refuse to renew a license, permit, charter,

franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtor, the Acquired Entities, or another Entity with whom the Debtor or Acquired Entities have been associated, solely because the Debtor has been Debtor under chapter 11 of the Bankruptcy Code may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case), or have not paid a debt that is dischargeable in the Chapter 11 Case.

## J.  Recoupment.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtor, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## K.  Subordination Rights.

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## L.  Reimbursement or Contribution.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND THE EFFECTIVE
## DATE

## A.  Conditions Precedent to Confirmation.

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan: (i) the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and (ii) the Restructuring Transactions Documentation shall not have been terminated in accordance with its terms.

**B.  Conditions Precedent to the Effective Date.**

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

1.      the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

2.      the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtor and a Purchaser, and which shall have become a Final Order that has not been stayed or modified or vacated and shall:

      (a)      authorize the Debtor to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan;

      (b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

      (c)      authorize the implementation of the Plan in accordance with its terms; and

      (d)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

3.      the occurrence of the Closing (as such term is defined and described in the Restructuring Transactions Documentation);

4.      there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other governmental unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan;

5.      all governmental and material third party approvals and consents, including Bankruptcy Court approval, that are necessary to implement the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

6.      the Debtor shall have implemented the Restructuring Transactions, and all transactions contemplated by the Plan, in a manner consistent in all respects with the Plan;

7.        each document or agreement constituting the Definitive Documents (as defined in the Restructuring Transactions Documentation) shall have been execute and/or effectuated and shall be in form and substance consistent with the Restructuring Transactions Documentation, including, without limitation, any consent rights included therein;

8.        with respect to all actions, documents and agreements necessary to implement the Plan:

(a) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (b) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (c) such documents and agreements shall have been effected or executed, and in each case all such actions, documents and agreements shall be consistent with the Restructuring Transactions;

9.        all material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained;

10.        the establishment of a Professional Fee Escrow Account funded in the amount of estimated accrued but unpaid Professional fees incurred by the legal counsel and other advisors to the Debtor and the Chapter 11 Trustee and during the Chapter 11 Case; and

11.        the Wind-Down Amount has been funded.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## C.  Waiver of Conditions.

The conditions to Consummation set forth in Article IX.B may be waived by the Chapter 11 Trustee on behalf of the Debtor at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

## D.  Substantial Consummation.

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## E.  Effect of Non-Occurrence of Conditions to the Effective Date.

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (ii) prejudice in any manner the rights of the Debtor, the Debtor's Estate, any Holders, or any other Entity; or (iii) constitute an

51

admission, acknowledgment, offer, or undertaking by the Debtor, the Debtor's Estate, any Holders, or any other Entity in any respect.

# ARTICLE X
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.  Modification and Amendments.**

Subject to the limitations contained in the Plan, the Chapter 11 Trustee on behalf of the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Chapter 11 Trustee on behalf of the Debtor, expressly reserves the rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.

**B.  Effect of Confirmation on Modifications.**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.  Revocation or Withdrawal of the Plan.**

Subject to the terms of the Restructuring Transactions Documentation, the Chapter 11 Trustee on behalf of the Debtor, reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Chapter 11 Trustee on behalf of the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur with respect to the Debtor, then: (i) the Plan shall be null and void in all respects; (ii) any settlement  or compromise embodied in the Plan with respect to the Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to the Debtor, and any document or agreement executed pursuant to the Plan with respect to the Debtor, shall be deemed null and void; and (iii) nothing contained in the Plan with respect to the Debtor shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor, its Estate, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor, the Debtor's Estate, or any other Entity.

# ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals and the Chapter 11 Trustee authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of  any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Assumed Contracts and Leases List or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

53

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.G;

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     Hear and determine matters concerning state, local, and federal taxes  in accordance  with  sections 346, 505, and 1146 of the Bankruptcy Code;

21.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

22.     Hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

23.     Enforce all orders previously entered by the Bankruptcy Court;

24.     Hear any other matter not inconsistent with the Bankruptcy Code; and

25.     Enter an order concluding or closing the Chapter 11 Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**A.  Immediate Binding Effect.**

Subject to Article VIII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**B.  Additional Documents.**

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Transactions. The Debtor, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.  Payment of Statutory Fees.**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtor for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

**D.  Discharge of Chapter 11 Trustee.**

On the Effective Date, the Trustee shall be discharged of his duties pursuant to the Notice of Appointment of Trustee in the Chapter 11 Case. Following the Effective Date, the Chapter 11 Trustee shall remain in place with respect to the Debtor solely for the limited purpose of addressing (i) all final fee applications for all Professionals, and (ii) the resolution of any appeals of the Confirmation Order.

**E.  Reservation of Rights.**

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**F.  Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**G.  Service of Documents.**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

**If to the Debtor:**

Vascular Access Centers, L.P.
c/o Stephen V. Falanga, Esq., Chapter 11 Trustee
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102

and

**If to the Chapter 11 Trustee:**

Christopher M. Hemrick, Esq.
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102

After the Effective Date, the Debtor shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H. Enforcement of Confirmation Order.**

On and after the Effective Date, the Debtor and the Plan Administrator, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

**I. Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order (including the injunction set forth in Article VIII.H shall remain in full force and effect in accordance with their terms).

**J. Entire Agreement.**

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**K. Exhibits.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Chapter 11 Trustee's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website https://cases.omniagentsolutions.com or Bankruptcy Court's website at www.paeb.uscourts.gov.

**L. Nonseverability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided that* at the request of the Chapter 11 Trustee on behalf of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Chapter 11 Trustee on behalf of the Debtor. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Chapter 11 Trustee on behalf of the Debtor, a Purchaser, the Post-Petition Lender; and (iii) nonseverable and mutually dependent.

**M. Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor, the Chapter 11 Trustee and their respective, agents, representatives, members, partners, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**N. Waiver.**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully submitted, as of the date first set forth above,

VASCULAR ACCESS CENTERS, L.P.

By:_____
　　　Name: Stephen V. Falanga
　　　Title: Chapter 11 Trustee