# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>VASCULAR ACCESS CENTERS, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-17117-AMC |

**OBJECTION OF STEPHEN V. FALANGA, CHAPTER 11 TRUSTEE OF THE DEBTOR, VASCULAR ACCESS CENTERS, L.P., TO THE MOTION OF PBH2, LLC FOR AN ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)**

Stephen V. Falanga, in his capacity as Chapter 11 Trustee (the "Trustee") for the bankruptcy estate of the above-captioned debtor Vascular Access Centers, L.P., (the "Debtor"), by and through his undersigned counsel, Walsh Pizzi O'Reilly Falanga LLP, hereby submits this objection (the "Objection") to the Motion of PBH2, LLC ("PBH2") for an Order Allowing Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1) (the "Motion"). In support of his Objection, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Predicated upon a number of unsworn factual allegations without supporting documents, which is insufficient to sustain *any claim* against the Debtor, PBH2 nonetheless attempts to assert a claim against the Debtor that is in direct contravention of the express terms of the Stipulation and Consent Order previously entered by the Court governing the rights and obligations of the Debtor, PBH2 and non-debtor, Vascular Access Center of Pittsburgh, LLC ("VAC Pittsburgh"). For the reasons set forth in greater detail below, PBH2's Motion should be denied.[1]

---

[1] Because PBH2's Motion was filed in contravention of the Stipulation and Consent Order after having expressly waived claims against the Debtor for Lease-related obligations, the Trustee

## BACKGROUND

2. Pursuant to that certain lease agreement dated December 30, 2014 (the "Lease") by and between VAC Pittsburgh and Dutilh Property Associates, L.P. ("Dutilh"), VAC Pittsburgh leased certain real property located in Butler County, Pennsylvania (the "Premises"), which Lease the Trustee understands was assigned from Dutilh to PBH2 on or about November 20, 2018. (*See* Declaration of Stephen V. Falanga, "Falanga Decl.," ¶ 3).

3. On November 12, 2019 (the "Petition Date") and involuntary petition for relief was filed against the Debtor for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor consented to the relief [Dkt. No. 3] and an Order for relief was entered on November 26, 2019 [Dkt. No. 46].

4. On November 22, 2019, the Debtor's majority limited partner, William Whitfield Gardner, filed a Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or, in the Alternative, Appointing a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code. [Dkt. No. 52].

5. On or about January 16, 2020, a Judgment for Possession of Real Property was entered in favor of PBH2 against VAC Pittsburgh in the Court of Common Pleas of Butler County, Pennsylvania (the "Judgment").

6. On February 7, 2020, the Court entered an Order for the appointment of a chapter 11 trustee in this case [Dkt. No. 235] and, on February 12, 2020, an Order was entered approving the Trustee's appointment. [Dkt. No. 245].

---

reserves all rights and remedies against PBH2 including, without limitation, the right to seek an award of counsel fees and costs in defending PBH2's Motion in accordance with Fed. R. Civ. P. 11, Fed. R. Bankr. P. 9011 and/or the Court's inherent power.

7. In early April 2020, counsel for PBH2 contacted counsel for the Trustee to inquire regarding the Debtor's bankruptcy case and the Trustee's appointment and in particular the relationship between the Debtor and VAC Pittsburgh, and the Trustee's intent with respect to VAC Pittsburgh and the Premises. (*See* Falanga Decl., ¶ 4).

8. On June 8, 2020, the Trustee filed a Motion for an Order Enforcing the Automatic Stay as to Actions Against the Debtor's Non-Debtor Subsidiary Limited Liability Companies and Philadelphia Vascular Institute Pursuant to 11 U.S.C. §§ 362(a) and 105(a) or, Alternatively, Extending the Stay Pursuant to 11 U.S.C. § 105(a) (the "Stay Enforcement Motion").

9. Starting with the initial communications in April 2020 and continuing after the filing of the Stay Enforcement Motion, the Trustee and PBH2, through counsel, engaged in extensive, months-long negotiations in an effort to globally resolve disputed issues with PBH2 concerning the VAC Pittsburgh Lease. These negotiations culminated with the entry on July 21, 2020 of a Stipulation and Consent Order Resolving Chapter 11 Trustee's Motion to Enforce Automatic Stay with Respect to PBH2, LLC and Granting Related Relief (the "Stipulation and Consent Order") [Dkt. No. 447].[2] (*See* Falanga Decl., ¶ 5)

10. Pursuant to the Stipulation and Consent Order, the parties agreed, among other things, that the Judgment would be vacated and the VAC Pittsburgh Lease would be reinstated as if there were no default and certain timelines were agreed to that would have permitted the Trustee to assign the Lease to a potential purchaser if such a transaction would have materialized.

---

[2] A true and correct copy of the Stipulation and Consent Order is attached to the Falanga Declaration as **Exhibit A** for the Court's ease of reference.

11. Significantly for present purposes, PBH2 had sought language in the draft Stipulation that would reserve its rights to seek an administrative claim for amounts due under the Lease, but the Trustee would not agree to this request. Instead, in the Stipulation and Consent Order ultimately entered by the Court, PBH2 expressly acknowledged and agreed that "(a) ***the Debtor is not obligated to PBH2 under the Lease***; and (b) that PBH2 ***possesses no claims or causes of action against the Debtor under the Lease or otherwise related to the Lease***." (*See* Falanga Decl., ¶ 6; **Ex. A.**, ¶ 10) (emphasis added).

12. In reliance on PBH2's agreement, among other things, that the Debtor was not liable to PBH2 for Lease-related obligations and that PBH2 possessed no claims against the Debtor under or related to the Lease, the Trustee agreed to PBH2's request for a waiver of avoidance actions against PBH2 for rents and other Lease charges the Debtor paid to PBH2 on behalf of VAC Pittsburgh and agreed to pay to PBH2 $20,000.00 as a reimbursement of a portion of the attorneys' fees PBH2 incurred in connection with the Lease, for which PBH2 alleged VAC Pittsburgh was liable under the Lease. (*See* Falanga Decl., ¶ 7; **Ex. A.**, ¶ 14).

13. Ultimately, a transaction pursuant to which the VAC Pittsburgh Lease would be assigned in accordance with the Stipulation and Consent Order did not materialize and in early March 2021, VAC Pittsburgh ceased operations. (*See* Falanga Decl., ¶ 8).

14. Notwithstanding PBH2's express agreement in the Stipulation and Consent Order that the Debtor was not obligated to PBH2 under the Lease and that PBH2 possessed no claims against the Debtor relating to the Lease, PBH2 now seeks allowance and payment of a purported administrative expense from the Debtor in the amount of $65,176.43 for Lease-related obligations and PBH2 otherwise exercised its bargained-for rights pursuant to the Stipulation and Consent Order without interference from the Trustee.

# ARGUMENT

**I. PBH2 IS NOT ENTITLED TO AN ADMINISTRATIVE EXPENSE CLAIM AGAINST THE DEBTOR AND ITS MOTION SHOULD BE DENIED**

### a. The Motion Should Be Denied Because PBH2's Alleged Claim Against the Debtor Is Barred by the Stipulation and Consent Order

15. While the Stipulation and Consent Order is mentioned in passing in PBH2's Motion, it was the product of extensive, arms' length negotiations between counsel for the Trustee and PBH2 over a period of months, and significantly impacts the Debtor and PBH2's substantive rights.

16. The Stipulation and Consent Order makes clear that any liability or obligation arising out of or relating to the Lease is an obligation of the tenant, VAC Pittsburgh, ***not*** an obligation of the Debtor. In particular, the Stipulation and Consent Order provides that, except as otherwise expressly set forth therein, "PBH2 acknowledges and agrees that (a) the Debtor is not obligated to PBH2 under the Lease; and (b) that ***PBH2 possesses no claims or causes of action against the Debtor under the Lease or otherwise related to the Lease***." (*See* **Ex. A.**, ¶ 10 (emphasis added)).

17. The Trustee did not agree, and the Stipulation and Consent Order does not allow, PBH2 to pursue the Debtor for VAC Pittsburgh's obligations under the Lease. (*See* Falanga Decl., ¶ 6). As noted, the exact opposite is provided in the Stipulation and Consent Order. Now, PBH2, despite having obtained the benefits under the Stipulation and Consent Order, including the waiver of avoidance actions against PBH2 for transfers made by the Debtor relating to VAC Pittsburgh's Lease obligations and payment of legal expenses, seeks to ignore the Stipulation and Consent Order to assert claims against the Debtor's estate for "allowance of a post-petition, administrative

5

priority claim in the amount of $65,176.4 . . . on account of post-petition Rent and other charges owed to PBH2 pursuant to the Lease[.]" (Motion, ¶ 26).

18. The amounts PBH2 now contends it is owed by the Debtor constitute precisely the type of claim against the Debtor related to the Lease PBH2 expressly acknowledged and agreed it does not possess and would not pursue. (*See* **Ex. A.**, ¶ 10).

19. Notably, PBH2's Motion is devoid of any reference to, or discussion of, Paragraph 10, nor does PBH2 seek to explain how its requested relief comports with Paragraph 10.

20. Further, even the reservation of rights at Paragraph 23 of the Stipulation and Consent Order makes clear PBH2's right to assert any claims relating to the Lease is limited to those available under applicable ***non-bankruptcy law*** against ***VAC Pittsburgh***:

> Except as otherwise expressly provided in this Stipulation and Consent Order, nothing herein will waive, prejudice, or otherwise affect the rights, claims, interests, defenses or remedies of the Parties under the Lease or applicable ***non-bankruptcy law*** including, but not limited to, PBH2's rights to assert any default or Event of Default, any claim for interest or attorneys' fees occurring or arising after the Effective Date ***against VAC Pittsburgh***, and the Trustee's rights and remedies to dispute any such claims or assertions. . . .

(*See* **Ex. A.**, ¶ 23) (emphasis added)).

21. In short, PBH2's remedies in the event of a default under the Lease or Stipulation and Consent Order were specifically bargained for and enumerated in the Stipulation and Consent Order, and those remedies were limited to PBH2's pursuit of rights against ***VAC Pittsburgh***.

22. Upon an event of default, the Stipulation and Consent Order restored PBH2's authority to confess judgment of possession for the Premises against VAC Pittsburgh pursuant to applicable state law and permitted PBH2 to take all action necessary under applicable state law to obtain possession of the Premises from VAC Pittsburgh. (*See* **Ex. A.**, ¶ 13). In addition, VAC Pittsburgh's option to extend the Lease would automatically terminate and extinguish upon an

6

event of default and PBH2 generally reserved its rights under the Stipulation and Consent Order to pursue any other remedies available under the Lease against VAC Pittsburgh. (*See* **Ex. A.**, ¶¶ 13-18).

23. Indeed, PBH2 availed itself of its bargained for remedies by declaring a default under the Lease and Stipulation and Consent Order and obtaining a judgment of possession against VAC Pittsburgh on March 30, 2021. (*See* Motion at p. 4). Upon information and belief, PBH2 is currently exercising its rights under applicable state law to perfect its judgment of possession against VAC Pittsburgh.

24. The Court should not permit PBH2 to assert a claim against the Debtor where (i) it is clearly barred from doing so under the terms of the Stipulation and Consent Order; and (ii) it has exercised the bargained for remedies available to it under the Stipulation and Consent Order. PBH2's Motion should be denied.

    **b. PBH2's Unsworn Allegations Are Insufficient to Support an Administrative Expense Claim Against the Debtor**

25. Even if PBH2's requested relief was not barred by the Stipulation and Consent Order, PBH2's unsworn factual allegations are insufficient as a matter of law to demonstrate it is entitled to an administrative claim against the Debtor.

26. On a motion for allowance of an administrative expense, "[t]he burden of establishing entitlement to [administrative] priority rests with the claimant." *In re Drexel Burnham Lambert Group*, 134 B.R 482, 489-90 (Bankr. S.D.N.Y. 1991). This burden is a "heavy one." *See e.g., In re Carco Electronics*, 346 B.R. 377, 383 (Bankr. W.D. Pa. 2006) (citing *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999)).

27. A party asserting entitlement to an administrative expense must demonstrate that "its claim is an actual, necessary expense of preserving the debtor's estate." *In re DBSI, Inc.*, 407 B.R. 159, 165 (Bankr. D. Del. 2009).

28. PBH2's Motion is predicated upon a series of unsworn factual allegations without supporting documents, which is insufficient to sustain any claim against the Debtor, and the Trustee respectfully submits the Court should disregard them. (*See* Motion, ¶¶ 19-24, 40, and 42). *See Davis v. Solid Waste Services, Inc.*, 20 F. Supp. 3d 519, 530 (E.D. Pa. 2014) ("[T]he Third Circuit has upheld district court decisions to disregard statements that are unsworn and unsubscribed to.").

29. PBH2 appears to seek payment from the Debtor of VAC Pittsburgh's Lease-related charges through April 2021 despite conceding that VAC Pittsburgh ceased operations at the Premises no later than early March 2021. (*See* Motion at ¶19). While unclear from the Motion, PBH2's request for payment through April 2021 appears to be based on uncited allegations that (a) the Trustee was "demanding" to maintain possession of the Premises into April 2021; and (b) "*VAC Pittsburgh* failed to fulfill" its Lease obligations by not properly vacating possession of the Premises under the terms of the Lease. (*See* Motion at ¶¶ 20-24).

30. With no declaration and documents provided attesting and supporting PBH2's factual allegations, the Trustee is unable to appropriately respond to them. However, the Trustee is unaware of any demands being made on PBH2 to maintain possession of the Premises after PBH2 declared an Event of Default under the Lease and Stipulation and Consent Order. (*See* Falanga Decl., ¶ 9). Moreover, at no time did the Trustee or the Debtor interfere with any of PBH2's rights and remedies as negotiated under the Stipulation and Consent Order. (*See* Falanga Decl., ¶ 10).

31. PBH2 was free to take any action required to obtain and perfect possession of the Premises and freely did so. Except as modified by the Stipulation and Consent Order, PBH2's rights and remedies against VAC Pittsburgh under the Lease and applicable non-bankruptcy law were fully preserved.

32. At the request of PBH2's counsel, the Trustee's counsel did inform PBH2 in April 2021 that any remaining *de minimis* personal property at the Premises could be deemed abandoned by PBH2 to the extent necessary or helpful to PBH2 in exercising its remedies under the Stipulation and Consent Order. But PBH2 does not explain how the confirmation of *de minimis* property abandonment by the Trustee at PBH2's request would justify granting PBH2 an administrative expense claim against the Debtor's estate for VAC Pittsburgh's Lease-related obligations in the amount of $65,176.43, particularly where PBH2 waived its right to pursue such claims against the Debtor under the Stipulation and Consent Order as set forth above. (*See* Motion at ¶ 25).

33. The Trustee respectfully submits that PBH2 has failed to carry its burden of demonstrating entitlement to an administrative expense claim against the Debtor. Accordingly, PBH2's Motion should be denied.

34. The Trustee reserves all rights and remedies with respect to the Motion including, without limitation, the right to (a) supplement this Objection in the event PBH2 submits a declaration and/or other documents supporting its alleged claim against the Debtor; (b) seek discovery from PBH2 with respect to this contested matter; and/or (c) request an evidentiary hearing.

## CONCLUSION

35. For the foregoing reasons, the Trustee respectfully requests entry of an Order: (1) denying the Motion in its entirety; and (2) granting such other and further relief as the Court deems just and proper.

Dated: July 13, 2021

WALSH PIZZI O'REILLY FALANGA LLP
*Counsel to the Chapter 11 Trustee*

By: _____
Christopher M. Hemrick (*pro hac vice*)
Peter J. Pizzi
One Liberty Place
1650 Market Street
Tel: (973) 757-1100 | Fax: (973) 757-1090
chemrick@walsh.law
ppizzi@walsh.law