## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>VASCULAR ACCESS CENTERS, L.P.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-17117 (AMC) |
| STEPHEN  V. FALANGA, AS CHAPTER 7 TRUSTEE FOR THE DEBTOR'S ESTATE,<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA VASCULAR INSTITUTE, LLC, and JAMES F. McGUCKIN, M.D.<br><br>Defendants. | Adv. Proc. No. 23-_____(AMC) |

## COMPLAINT

Stephen V. Falanga, in his capacity as chapter 7 trustee (the "**Trustee**" or "**Plaintiff**") for the bankruptcy estate of the above-captioned debtor, Vascular Access Centers, L.P. (the "**Debtor**"), by and through his undersigned counsel, files this complaint (the "**Complaint**") against Philadelphia Vascular Institute, LLC ("**PVI**") and James F. McGuckin, M.D. ("**McGuckin**" and, together with PVI, "**Defendants**") for (i) breach of contract; (ii) unjust enrichment/quantum meruit; (iii) conversion; (iv) fraud; (v) negligent misrepresentation; and (vi) constructive trust, and for related relief.  In support of the Complaint, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.     The Trustee brings this Complaint on behalf of the Debtor against PVI and McGuckin for breach of contract, unjust enrichment/quantum meruit, conversion, fraud, negligent misrepresentation, constructive trust, and for related relief.

2.     This action arises out of PVI's knowing and wrongful receipt and retention, at

McGuckin's direction, of monies funded by the Debtor to PVI on account of payroll for physicians and other personnel employed by PVI who performed services at the Debtor's various subsidiary vascular intervention centers (the "**VAC Centers**") from approximately May 2020 through August 2021.

3.    Upon information and belief, despite accepting and retaining the Debtor's money, which PVI and McGuckin at all times knew was funded by the Debtor solely for the purpose of PVI satisfying payroll obligations for the VAC Centers for the applicable time period pursuant to the parties' agreement and course of business performance, PVI, unbeknownst to the Debtor and without notifying or informing the Debtor, applied for and received payroll funding pursuant to the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**") including, without limitation, pursuant to the Paycheck Protection Program implemented through the CARES Act ("**PPP**" and, the related funding, the "**PPP Funds**"), applicable to the same payroll for which it knowingly accepted and retained the Debtor's funds.

4.    Thus, PVI, by and through McGuckin, wrongfully retained hundreds of thousands of dollars in Debtor funds transferred to PVI for the purpose of PVI satisfying payroll obligations for the VAC Centers when, in reality, PVI used PPP Funds issued pursuant to the CARES Act to satisfy those payroll obligations and misappropriated the Debtor's funds for some other unauthorized purpose.

5.    PVI failed to disclose to the Debtor that it sought, let alone received and utilized, PPP Funds to satisfy the same payroll obligations for which it also accepted and retained the Debtor's payroll funds.

6.    On the contrary, PVI intentionally concealed this material information from the Debtor for the purpose of inducing the Debtor to transfer money for payroll obligations PVI knew

it had, or would, satisfy with PPP Funds, and to wrongfully retain the Debtor's funds under false pretenses.

7.      In doing so, PVI unlawfully deprived the Debtor of its property without consent or justification during a period in which myriad challenges threatened the continued operations of the Debtor and the VAC Centers.

8.      PVI's conduct, including its concealment of the double-dipping in which it was engaged, caused the Debtor to fund substantial payroll expenses which PVI misappropriated and utilized for some other unauthorized purpose.

9.      As a direct and proximate result of PVI's actions, the Debtor and its creditors have been damaged in an amount approaching or in excess of approximately $560,000.00, exclusive of employee retention tax credits ("**ERTC**") issued pursuant to the CARES Act which, upon information and belief, PVI also received and wrongfully failed to remit to the Debtor relating to payroll the Debtor funded, to which the Debtor is also entitled.

## JURISDICTION AND VENUE

10.     This court has subject matter jurisdiction over this adversary proceeding (the "**Adversary Proceeding**") pursuant to 28 U.S.C. §§ 157 and 1334(b).  The Adversary Proceeding arises under title 11 of the United States Code (the "**Bankruptcy Code**") and arises in and relates to the Debtor's bankruptcy case.

11.     This Adversary Proceeding is a "core" proceeding which may be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).  To the extent any claim in this Adversary Proceeding is determined to be "non-core," or it is otherwise determined this Court lacks constitutional authority to issue final orders or judgment with respect to any claim absent consent of the parties, Plaintiff hereby consents to this Court issuing final orders or judgment with

respect to any such claim(s).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1409.

13.    The statutory and legal predicates for the relief sought herein include applicable state and federal common law, Sections 542, 543 and/or 549 of the Bankruptcy Code, and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PROCEDURAL BACKGROUND

14.    On November 12, 2019 (the "**Petition Date**"), an involuntary chapter 11 petition (the "**Involuntary Petition**") was filed against the Debtor. The Debtor consented to the relief [D.I. 3] and an order for relief was entered on November 25, 2019 [D.I. 46].

15.    On November 22, 2019, William Whitfield Gardner, the Debtor's majority limited partner, filed the *Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or, in the Alternative, Appointing a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code* [D.I. 52] (the "**Dismissal/Trustee Motion**").

16.    On February 7, 2020, following a hearing on Gardner's Dismissal/Trustee Motion, the Court issued an opinion (the "**Trustee Opinion**") and entered an order for the appointment of a chapter 11 trustee (the "**Trustee Order**") [D.I. 235].

17.    As more fully set forth in the Trustee Opinion, the Trustee Order was predicated upon, *inter alia*, the Court's findings that McGuckin had orchestrated the Debtor's involuntary petition in bad faith and utilized PVI as a petitioning creditor based upon an alleged secured loan that never occurred.  [D.I. 234].

18.    On February 12, 2020, an order was entered approving Plaintiff's appointment as chapter 11 trustee [D.I. 245].

## PARTIES

19.     Plaintiff is the chapter 7 trustee appointed in the Chapter 7 Case. As the chapter 7 trustee for the Debtor's estate, Plaintiff is vested with the authority to, *inter alia*, investigate the financial affairs of the Debtor, collect property of the Debtor's estate, and litigate affirmative claims of the Debtor pursuant to, among other provisions, 11 U.S.C. § 704.

20.     Upon information and belief, PVI is a Pennsylvania limited liability company having a principal place of business located at 585 County Line Road, Radnor, PA 19087.

21.     Prior to his resignation following the hearing on the Dismissal/Trustee Motion, McGuckin was the chief executive officer of the Debtor and the manager of the Debtor's former general partner.

22.     Upon information and belief, PVI is wholly owned and controlled, directly or indirectly, by McGuckin.

## FACTS COMMON TO ALL COUNTS

23.     The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

24.     Through its subsidiary VAC Centers, the Debtor operated and managed various outpatient vascular access centers, whereby physician interventionalists performed dialysis access procedures and certain other vascular access procedures on patients with end-stage renal disease and other vascular conditions or diseases.

25.     Due to regulations concerning the practice of medicine, many states prohibit a corporate entity with non-physician ownership from employing practicing physicians.

26.     To comply with applicable laws governing the employment of physicians and the practice of medicine in certain states in which the Debtor operated, PVI served as the vehicle

through which physicians and other personnel (collectively, the "**VAC Physicians**") performing services at the VAC Centers were lawfully employed.

27.     Pursuant to the Debtor's agreement with PVI, PVI employed the VAC Physicians and paid the VAC Physicians from a payroll account PVI maintained for that purpose.

28.     However, the money in PVI's payroll account used to compensate the VAC Physicians was at all relevant times funded by the Debtor.

29.     Specifically, prior to each pay period for the VAC Physicians, the Debtor would electronically transfer the funds necessary to satisfy payroll obligations to the VAC Physicians from an account maintained by the Debtor to PVI's payroll account.  The payroll would then be processed and paid out of PVI's payroll account using the Debtor's funds.

30.     Upon information and belief, the arrangement between the Debtor and PVI whereby PVI employed the VAC Physicians and the Debtor funded payroll for the VAC Physicians has been followed since the inception of the Debtor's business.

31.     At a minimum, however, the foregoing arrangement between the Debtor and PVI has been in effect and the course of business practice of the parties since prior to the Debtor's Chapter 11 Case when McGuckin controlled both PVI and the Debtor.

32.     The Debtor's funding of VAC Physician payroll to PVI pursuant to the parties' agreement and business practice continued post-petition through in or about May 2021 at which point the Debtor's operations at the remaining VAC Centers concluded.

33.     Thereafter, the Trustee learned that PVI may previously have sought and/or received PPP Funds, ERTC credits and/or other funding pursuant to the CARES Act relating to VAC Physician payroll the Debtor, not PVI, had, in fact, funded.

34.     In January 2022, after failed efforts to obtain information and address the matter

consensually with PVI, the Trustee served a subpoena (the "**PVI Subpoena**") on PVI seeking, among other things, documents and information relating to PVI's application(s) for, receipt and/or forgiveness of, PPP Funds or other CARES Act funding, including, without limitation, ERTC, relating to the VAC Physicians.

35.     Efforts to consensually resolve the PVI Subpoena continued for many months in light of PVI's delay and representations, through counsel, that responsive documents would be forthcoming.

36.     PVI's recalcitrance and delay was undertaken in an apparent effort to further conceal from the Trustee the nature of PVI's wrongdoing in unlawfully misappropriating the Debtor's payroll funds.

37.     Having failed to receive any response to the PVI Subpoena from PVI, the Trustee filed a motion to compel PVI to comply with the PVI Subpoena on July 14, 2022, which motion was subsequently granted on the terms of a consent order.

38.     Given the limited production of documents received from PVI in response to the PVI Subpoena, on September 29, 2022, the Trustee served a subpoena (the "**PNC Bank Subpoena**" and, together with the PVI Subpoena, the "**CARES Act Subpoenas**") on PNC Bank, National Association ("**PNC**").

39.     The documents produced by PVI and PNC in response to the Trustee's CARES Act Subpoenas show that PVI applied for and received PPP Funds pursuant to a loan disbursed on May 9, 2020 in the amount of $367,000.00, which represented a covered payroll period from May 9, 2020 through October 23, 2020, and which reflected a total of twenty-two (22) covered employees at the time of the loan application (the "**First PPP Loan**").

40.     The documents produced by PVI and PNC in response to the Trustee's CARES Act

Subpoenas also show that PVI received PPP Funds pursuant to a loan disbursed on February 22, 2021 in the amount of $194,365.00, which represented a covered payroll period from February 22, 2021 through August 1, 2021, and which reflected a total of twelve (12) covered employees at the time of the loan application (the "**Second PPP Loan**" and, together with the First PPP Loan, the "**PPP Loans**").

41.     The First PPP Loan was forgiven on December 15, 2021 pursuant to a notice to PVI from the United States Small Business Administration (the "**SBA**").

42.     PVI sought forgiveness of the Second PPP Loan by application to the SBA dated June 15, 2022.

43.     The current status of PVI's Second PPP Loan forgiveness application is unknown to the Trustee.

44.     All, or nearly all, of the PVI employee payroll on account of which PVI sought and received PPP Funds, were VAC Physicians whose payroll was funded by the Debtor.

45.     Thus, PVI, by and through and at the direction of McGuckin, wrongfully retained and misused hundreds of thousands of dollars in Debtor funds transferred to PVI for the purpose of PVI satisfying payroll obligations for the VAC Physicians pursuant to the parties' longstanding agreement and business practice when, in reality, PVI used PPP Funds issued pursuant to the CARES Act to satisfy those payroll obligations and knowingly misappropriated the Debtor's funds for some other unauthorized and unlawful purpose.

46.     PVI never disclosed to the Trustee that it had sought and received PPP Funds on account of the same VAC Physician payroll for which it also accepted and retained the Debtor's funds.

47.     On the contrary, PVI intentionally concealed this material information from the

Debtor for the purpose of inducing the Debtor to transfer money to PVI for payroll obligations PVI knew it had, or would, satisfy with PPP Funds, and to wrongfully retain the Debtor's funds under false pretenses.

48.    In doing so, PVI unlawfully deprived the Debtor of its property without consent or justification during a period in which myriad operational and liquidity challenges threatened the continued operations of the Debtor and the VAC Centers.

49.    PVI's unlawful conduct, including its concealment of the double-dipping in which it was engaged, caused the Debtor to fund substantial "phantom" payroll expenses, which PVI did not use to fund VAC Physician payroll, but rather misappropriated and converted for some other purpose.

50.    As a direct and proximate result of PVI's actions, the Debtor and its creditors have been damaged in an amount approaching or in excess of approximately $560,000.00, exclusive of ERTC issued pursuant to the CARES Act which, upon information and belief, PVI also received and wrongfully failed to remit to the Debtor relating to payroll the Debtor funded.

51.    PVI and/or McGuckin remain in unlawful possession of the Debtor's funds.

52.    Upon information and belief, PVI acted at all relevant times by and through and at the direction of McGuckin.

<u>**COUNT I**</u>
**(BREACH OF CONTRACT – PVI)**

53.    The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

54.    Since the inception of the Debtor's business, the Debtor and PVI agreed given the nature of the Debtor's business structure and the need for compliance with applicable law governing the practice of medicine in various jurisdictions that PVI would employ physicians to

perform services at the VAC Centers and the Debtor would fund the payroll expenses to PVI for the VAC Physicians.

55.    At all relevant times, the Debtor funded the payroll for the VAC Physicians in accordance with the Debtor's agreement with PVI and past practices between the parties.

56.    Notwithstanding the Debtor's performance, PVI breached the agreement by seeking and receiving PPP Funding for the VAC Physician payroll the Debtor, in fact, funded without disclosing said PPP Funding to the Debtor and in failing to meet its obligation to utilize the Debtor's funding for the purposes of satisfying VAC Physician payroll obligations.

57.    PVI's receipt and retention of monies transferred to it by the Debtor pursuant to the parties' agreement for purposes of funding VAC Physician payroll obligations while using such funds for purposes other than satisfying VAC Physician payroll obligations constitutes a breach of the agreement between the Debtor and PVI.

58.    Having satisfied the VAC Physician payroll with PPP Funding, not the Debtor's funds transferred by the Debtor to PVI for that purpose pursuant to the agreement between the Debtor and PVI, PVI is obligated to return to the Debtor the funds the Debtor transferred to PVI for the payroll periods at issue in this Complaint.

59.    There is a covenant of good faith and fair dealing implied in every contract.  By engaging in the foregoing conduct, PVI has not acted in good faith with respect to PVI's agreement with the Debtor and has breached the implied covenant of good faith and fair dealing.

60.    As a direct and proximate result of PVI's breach, the Debtor has been damaged in an amount approaching or in excess of approximately $560,000.00, exclusive of ERTC relating to payroll the Debtor funded, which PVI is likewise obligated to turn over to the Debtor.

## COUNT II
### (UNJUST ENRICHMENT/QUANTUM MERUIT – PVI and McGuckin)

61.    The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

62.    The Debtor conferred a benefit upon PVI by providing funding for payroll expenses for the VAC Physicians and the Debtor reasonably expected that such funding would be used for that intended purpose.

63.    PVI, by and through McGuckin, knew the Debtor intended its funds to be used by PVI for the purpose of satisfying VAC Physician payroll and PVI received and fully appreciated the benefit conferred by the Debtor.

64.    PVI did not use the Debtor's funds as intended and PVI and/or McGuckin wrongfully retained the benefit of the Debtor's funds and it would be inequitable to permit PVI and/or McGuckin to retain such benefit.

65.    The Debtor had a reasonable expectation that its funds would be used by PVI for their intended purposes or returned to the Debtor.

66.    As a direct and proximate result of PVI's wrongdoing, the Debtor has been damaged and PVI and McGuckin have been unjustly enriched at the expense of and detriment to the Debtor.

## COUNT III
### (CONVERSION – PVI and McGuckin)

67.    The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

68.    The Debtor transferred funds to PVI for the purpose of funding payroll expenses for the VAC Physicians; however, PVI did not utilize the Debtor's funds for that purpose.

69.    PVI, by and through and at the direction of McGuckin, wrongfully retained and misused the Debtor's funds transferred to PVI for the purpose of PVI satisfying payroll obligations for the VAC Physicians when, in reality, PVI used PPP Funds issued pursuant to the CARES Act to satisfy those payroll obligations and knowingly misappropriated and converted the Debtor's funds for some other unauthorized and unlawful purpose.

70.    As a result, PVI, by and through and at the direction of McGuckin, deprived the Debtor of its rights, use and possession in and to the Debtor's property without (i) the Debtor's consent; or (ii) any lawful or legal justification for doing so.

71.    PVI wrongfully exercised dominion and control over the Debtor's property inconsistent with the Debtor's rights.

72.    The Debtor's funds are identifiable and quantifiable.

73.    PVI and/or McGuckin wrongfully converted the Debtor's funds and remain in unlawful possession of the Debtor's funds despite the Debtor's demands that the funds be returned to the Debtor for the benefit of the Debtor's estate and creditors.

74.    PVI and McGuckin are liable for conversion.

75.    As a direct and proximate result of PVI and McGuckin's wrongful conduct, the Debtor has been damaged.

## <u>COUNT IV</u>
### (FRAUD – PVI and McGuckin)

76.    The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

77.    PVI, by and through and at the direction of McGuckin, intentionally concealed from the Debtor its application for, and receipt of, the PPP Funds, which were sought, received, and forgiven for the purpose of satisfying the same payroll obligations for which PVI also knowingly

accepted and retained the Debtor's funds under false pretenses.

78.    PVI, by and through and at the direction of McGuckin, intentionally concealed this material information from the Debtor for the purpose of inducing the Debtor to transfer money for payroll obligations PVI knew it had, or would, satisfy with PPP Funds, and to wrongfully retain the Debtor's funds.

79.    The funds PVI wrongfully retained under false pretenses include the "covered period" from May 9, 2020 through October 23, 2020 applicable to PVI's First PPP Loan, and the "covered period" from February 22, 2021 through August 1, 2021 applicable to PVI's Second PPP Loan.

80.    PVI, by and through and at the direction of McGuckin, similarly intentionally and knowingly concealed that, for purposes of securing the PPP Loans, PVI relied on the payroll expenses for VAC Physicians that PVI and McGuckin knew the Debtor, not PVI, in fact funded.

81.    PVI's concealment of its application for, and receipt of, PPP Funds that covered the same payroll expenses on account of which PVI also accepted and retained the Debtor's funds was an omission of material fact.

82.    As a direct and proximate result of PVI's intentional omission of material facts, by and through McGuckin, the Debtor transferred hundreds of thousands of dollars to PVI under false pretenses to fund payroll obligations PVI and McGuckin knew it had, or would, satisfy with PPP Funds, which resulted in PVI and/or McGuckin wrongfully retaining and misappropriating the Debtor's funds to the Debtor's substantial harm.

83.    Absent the material omissions of PVI, by and through and at the direction of McGuckin, the Debtor would not have funded the Physician Payroll for the relevant time periods covered by the PPP Funds.

84.    PVI's campaign to conceal the PPP Loans from the Debtor began not later than May 2020, shortly after the commencement of the Chapter 11 Case and the appointment of the Trustee, and continued through the resolution of the Trustee's motion to enforce the PVI Subpoena, with PVI all the while knowingly and wrongfully accepting and retaining the Debtor's funds.

85.    PVI acted at all relevant times by and through, and at the direction of, McGuckin.

86.    For the foregoing reasons, PVI and McGuckin: (a) misrepresented and/or omitted; (b) material facts; (c) knowingly and intentionally calculated to deceive the Debtor; (d) with the intent of inducing the Debtor to rely; (e) the Debtor justifiably relied on PVI's misrepresentation and/or omission to its detriment.

87.    As a direct and proximate result of PVI and McGuckin's wrongful conduct, the Debtor has been damaged.

**COUNT V**
**(NEGLIGENT MISREPRESENTATION – PVI and McGuckin)**

88.    The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

89.    Based on the foregoing, PVI, by and through and at the direction of McGuckin, (1) misrepresented and/or concealed material facts from the Debtor; (2) under circumstances in which PVI knew or should have known of its falsity and/or that PVI had a duty to disclose, the failure of which would result in harm to the Debtor; (3) with an intent to deceive the Debtor and induce the Debtor to act and/or rely; and (4) which resulted in injury to the Debtor acting in justifiable reliance on the misrepresentation and/or omission.

90.    As a direct and proximate result of PVI and McGuckin's wrongful conduct, the Debtor has been damaged.

## <u>COUNT VI</u>
## (CONSTRUCTIVE TRUST – PVI and McGuckin)

91.     The Trustee incorporates the foregoing Paragraphs as if fully set forth at length herein.

92.     As set forth herein, PVI and/or McGuckin is holding, or has held, the Debtor's funds subject to an equitable duty to convey the same back to the Debtor because PVI and/or McGuckin would be unjustly enriched were they permitted to retain the Debtor's funds.

93.     PVI and/or McGuckin obtained and retained the Debtor's funds through a wrongful act; namely, breach of contract, conversion and/or fraud.

94.     PVI and/or McGuckin will be unjustly enriched, and the Debtor will be damaged, if PVI and McGuckin are permitted to retain the Debtor's funds in contravention of the Debtor's rights.

95.     Equity, justice and fairness compels that the Court impose a constructive trust over the Debtor's funds and convert PVI and McGuckin into trustees of the Debtor's funds and constructive trust for the Debtor's benefit and to immediately turnover the Debtor's funds to the Trustee, on behalf of the Debtor.

96.     A constructive trust should arise under these circumstances to prevent PVI and McGuckin's further unjust enrichment to the detriment of the Debtor.

### PRAYER FOR RELIEF

WHEREFORE, the Trustee, on behalf of the Debtor, demands judgment against defendants, Philadelphia Vascular Institute, LLC and James F. McGuckin, M.D., jointly and severally, for the following relief:

a.   All damages sustained by the Debtor including, but not limited to, compensatory damages, consequential and incidental damages, punitive damages, plus interest, attorneys' fees and costs as permitted by law; and

b.   An Order pursuant to 11 U.S.C. §§ 542, 543 and/or 549 directing the immediate turnover

of the Debtor' funds by Defendants to the Trustee, on behalf of the Debtor; and

c.  An Order imposing a constructive trust in favor of the Trustee, on behalf of the Debtor, with respect to the Debtor's funds paid to PVI in connection with payroll obligations for the VAC Physicians as aforesaid; and

d.  For such other and further relief as this Court deems just and proper.

Dated: June 30, 2023

WALSH PIZZI O'REILLY FALANGA LLP
*Proposed Counsel for Stephen V. Falanga,*
*Chapter 7 Trustee for the Estate of Debtor,*
*Vascular Access Centers, L.P.*

By:  _____
Christopher M. Hemrick (*pro hac vice*)
Eric S. Padilla (*pro hac vice*)
Peter J. Pizzi
One Liberty Place
1650 Market Street
P: 973.757.1100 | F: 973.757.1090
chemrick@walsh.law
epadilla@walsh.law
ppizzi@walsh.law