IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 7 |
| VASCULAR ACCESS CENTERS, L.P., | Case No. 19-17117-AMC |
| Debtor. | |

**APPLICATION OF CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. §§ 327 AND 328, FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-5 FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION OF PROFESSIONAL BAYARD, P.A. AS AVOIDANCE ACTION COUNSEL EFFECTIVE MARCH 8, 2023**

Stephen V. Falanga, in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate of the above-captioned debtor, Vascular Access Centers, L.P. (the "Debtor"), hereby makes this application to retain professional Bayard, P.A. ("Bayard") as special counsel pursuant to 11 U.S.C. §§ 327 and 328, Fed. R. Bankr. P. 2014, and Local Bankruptcy Rules 2014-1 and 2016-5 for the purpose of prosecuting and/or compromising and settling avoidance actions on behalf of the Debtor's estate effective March 8, 2023, the date of the order converting the Debtor's bankruptcy case to a case under chapter 7 [Dkt. No. 1257] (the "Conversion Order").  In support of this application, the Trustee respectfully represents as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 327 and 328, Fed. R. Bankr. P. 2014, and Local Bankruptcy Rule 2014-1.

**RELEVANT BACKGROUND**

4. On November 12, 2019 (the "Petition Date") an involuntary petition for relief was filed against the Debtor for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor consented to the relief [Dkt. No. 3] and an Order for relief was entered on November 26, 2019 [Dkt. No. 46].

5. On November 22, 2019, William Whitfield Gardner, the Debtor's majority limited partner, filed a Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or, in the Alternative, Appointing a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code [Dkt. No. 52].

6. On February 7, 2020, following a hearing on Gardner's motion, the Court issued an Opinion and entered an Order for the appointment of a chapter 11 trustee [Dkt. No. 235].

7. On February 12, 2020, an order was entered approving the Trustee's appointment as chapter 11 trustee in this case [Dkt. No. 245].

8. On September 8, 2021, the Trustee filed an application to employ Bayard as special litigation counsel to the Trustee in the Debtor's chapter 11 case [Dkt. No. 900].

9. On September 21, 2021, the Court entered an order granting the application to employ Bayard as special litigation counsel to the Trustee [Dkt. No. 919].

10. On March 8, 2023, the Court entered the Conversion Order, converting the Debtor's case from a chapter 11 case to a chapter 7 case.

11. On March 9, 2023, the Court issued a notice of appointment of Stephen V. Falanga as the Trustee in this chapter 7 case [Dkt. No. 1258].

**RELIEF REQUESTED**

12. Pursuant to Sections 547, 548 and 550 of the Bankruptcy Code, the Trustee is empowered to avoid certain transfers made by the Debtor as set forth therein. 11 U.S.C. §§ 547 and 548.

13. By this application, the Trustee seeks to retain Bayard effective as of March 8, 2023, to serve as special counsel for the purpose of prosecuting and/or compromising and settling certain avoidance action claims on behalf of the Debtor's estate that were delegated to Bayard at the Trustee's sole discretion prior to the conversion of this case (the "Avoidance Actions"), which actions are likely to inure to the benefit of the estate, creditors, and other parties in interest. Consistent with the foregoing, the Trustee requests that the Court preapprove the terms of Bayard's engagement (as set forth below).

14. Section 327 of the Bankruptcy Code provides, in relevant part, that a "trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent and interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

15. Section 328(a) of the Bankruptcy Code empowers a Chapter 7 trustee to employ, subject to court approval, an attorney to perform services for a Chapter 7 trustee under "any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). The Court is entitled to preapprove the terms of compensation in such circumstances.

16. Here, based upon the firm's reputation and qualifications, the Trustee is satisfied that Bayard, and in particular, Steven D. Adler, Esq., has the experience, knowledge, and capabilities required to serve as special counsel in connection with the Avoidance Actions and that

the retention of Bayard for the purpose of prosecuting, and/or compromising and settling the Avoidance Actions is necessary and in the best interests of creditors and the estate.

17. Bayard will prosecute or compromise the Avoidance Actions and will provide legal advice and guidance to the Trustee relating to matters that may arise in connection with the Avoidance Actions.

18. Bayard's engagement with respect to the Avoidance Actions is being undertaken on a contingency basis. As more fully set forth in Bayard's engagement agreement (the "Engagement Agreement"), Bayard will be compensated for its services only when a Recovery[1] from the Avoidance Actions is realized, whether through settlement, judgment, or otherwise. If there is a Recovery prior to the commencement of a trial, Bayard will receive thirty-three percent (33%) of such Recovery received after deducting expenses incurred in connection with the Avoidance Actions. If there is a Recovery after the commencement of a trial, Bayard will receive forty percent (40%) of such Recovery after deducting expenses incurred in connection with the Avoidance Actions (the "Contingency Fee"). For the avoidance of doubt, any Contingency Fee shall become due and owing when a Recovery from the Avoidance Actions is realized. In addition to the Contingency Fee, Bayard shall be entitled to reimbursement of its reasonable costs and expenses incurred in connection with the Avoidance Actions, as more fully set forth in the Engagement Agreement.

19. The Trustee believes, in his business judgment, that employing Bayard on a contingent fee basis constitutes the most practical and cost-effective means for pursuing the Avoidance Actions without further burdening the estate with additional administrative claims

---

[1] "Recovery" shall mean any and all monetary payments received by the Debtor's estate arising, pertaining to or resulting from the pursuit of the Avoidance Actions, which is deemed to have been received when the Trustee or Bayard takes physical possession of any such monetary recovery.

unless a recovery is achieved.

20. The Trustee believes that the services to be provided by Bayard will not duplicate the services provided by the Trustee's other retained professionals, and Bayard will use reasonable efforts to coordinate with the other professionals to avoid unnecessary duplication of services.

21. Bayard will render the necessary professional services as avoidance action counsel for the Trustee pursuant conditioned upon this application being granted by the Court.

22. To the best of the Trustee's knowledge, except as set forth in the Certification of Steven D. Adler, Esq. submitted herewith, Bayard has no connection with the Debtor, Trustee, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

23. To the best of the Trustee's knowledge, except as set forth in the Certification of Steven D. Adler, Esq. submitted herewith, Bayard: (i) does not hold an adverse interest to the estate; (ii) does not represent and adverse interest to the estate; (iii) is a "disinterested person" within the meaning of 11 U.S.C. § 101(14); and (iv) does not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which the firm will be retained.

## NOTICE

24. Notice of this application has been provided to: (i) the Clerk's Service List; (ii) the Office of the United States Trustee; and (iii) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee respectfully submits that this constitutes good and sufficient notice pursuant to Local Bankruptcy Rules 2014-1 and 9013-1 and that no further notice is required.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the entry of an order:

(i) authorizing the Trustee to employ Bayard to render services in accordance with this application effective March 8, 2023, pursuant to 11 U.S.C. §§ 327 and 328, Fed. R. Bankr. P. 2014, and Local Bankruptcy Rules 2014-1 and 2016-5; and (ii) granting such other relief as is just and proper.

Dated: December 14, 2023

_____
Stephen V. Falanga
Chapter 7 Trustee

# EXHIBIT A



600 N. King Street ● Suite 400  
P.O. Box 25130 ● Wilmington, DE 19899  
Zip Code For Deliveries 19801

Writer's Direct Access:  
(302) 429-4227  
Email: emiller@bayardlaw.com

November 14, 2023

**VIA ELECTRONIC MAIL** (sfalanga@walsh.law)

Vascular Access Centers, L.P.  
c/o Stephen V. Falanga, Chapter 7 Trustee  
Walsh Pizzi O'Reilly Falanga LLP  
100 Mulberry Street, 15th Floor  
Newark, New Jersey 07102

  Re: Vascular Access Centers, L.P., Case No. 19-17117 (AMC)

Dear Mr. Falanga:

  We are pleased that you have asked this firm ("**Bayard**" or the "**Firm**" or "**We**") to serve as special litigation counsel to Stephen V. Falanga, in his capacity as Chapter 7 Trustee to Vascular Access Centers, L.P. ("**You**", or the "**Debtor**", or the "**Trustee**" or the "**Client**") in its chapter 7 case (Case No. 19-17117 (AMC)) (the "**Bankruptcy Case**") effective as of March 8, 2023, for the purpose of commencing, prosecuting, and/or compromising and settling certain avoidance action claims, to be delegated to Bayard at the Trustee's sole discretion, on behalf of the Debtor's estate ("**Avoidance Action Counsel**"). This will confirm our discussions regarding the Debtor's engagement of the Firm and will describe the basis on which our firm will provide legal services to the Debtor.

  If you have any questions about these provisions, or if you would like to discuss possible modifications, do not hesitate to call. Again, we are pleased to have the opportunity to serve the Debtor in this matter.

  1. <u>Trust; Scope of Representation</u>.

  We understand that the Debtor has determined to retain Bayard as Avoidance Action Counsel in connection with the Debtor's efforts to review, enforce, commence, prosecute, and/or compromise and settle certain causes of action under 11 U.S.C. §§ 544, 547, and 548 of the Bankruptcy Code (the "**Avoidance Actions**"). We have not been asked to represent the You in any other capacity or in any other legal matters at this time. Bayard shall be responsible for handling only those Avoidance Actions the Trustee elects, in his sole discretion, to delegate to Bayard from time to time. Bayard understands the Trustee may also elect to delegate the handling



of certain Avoidance Actions to legal counsel other than Bayard, and that Bayard will not be entitled to the payment of any fee or the reimbursement of any expense in connection with any Avoidance Action handled by counsel other than Bayard, except to the extent Bayard handled any portion of the Avoidance Action prior to other counsel handling it, Bayard will be entitled to a pro rata share of any recoveries calculated based on fees and expenses incurred.  With the consent of Bayard and the Trustee, the Debtor can expand the scope of our representation from time to time, but any such expansion or modification of terms shall be subject in all respects to a new engagement agreement approved by the Court setting forth the terms and conditions of the new or expanded engagement.

Our agreement to represent the Debtor as Avoidance Action Counsel is not an agreement to represent any related entities or affiliates, or any of its officers, directors, partners, members, stockholders or employees, unless we have specifically agreed to do so elsewhere in this letter or by separate written agreement.

2. <u>Fees and Expenses</u>.

**a. General**

The attorneys' fees to which Bayard will be entitled pursuant to this Agreement shall be based on a contingency fee structure as set forth in Section 2.b, *infra*. Except as set forth in Section 2.b, *infra*, Bayard shall not be entitled to the payment of any fees in connection with this engagement.

**b. Contingency Fee Structure**

We are undertaking this representation on a contingency basis with respect to any Avoidance Actions delegated to Bayard for handling by the Trustee, subject to the terms and conditions specified herein.  The Firm will be compensated for its services only when the Debtor obtains a Recovery (as defined herein) either through settlement, judgment, or otherwise.  A "Recovery" means any and all monetary payments received by the Debtor arising, pertaining to or resulting from the pursuit of an Avoidance Action claim.  A Recovery is received when the Debtor or Bayard takes physical possession of any monetary Recovery.

In the event You receive a Recovery pursuant to a settlement, judgment, or otherwise at any time prior to the commencement of trial, Bayard shall be entitled to **thirty-three percent (33%)** of all Recoveries received after deducting expenses incurred in connection with the Avoidance Action for which a Recovery is obtained.  For purposes of this paragraph, "commencement of trial" shall mean the first day of any bench or jury trial set by the Court after the close of fact discovery in any Avoidance Action lawsuits filed by us on Your behalf.  As long as fact discovery has closed, "commencement of trial" shall mean the first trial day set by the Court even if continuances of that trial date are later granted.

In the event You receive a Recovery pursuant to a settlement, judgment, or otherwise at any time after the commencement of the trial of any and all lawsuits prosecuted by us on Your



Mr. Stephen V. Falanga, as Chapter 7 Trustee
November 14, 2023
Page 3

behalf against Avoidance Action Defendants, Bayard shall be entitled to **forty percent (40%)** of all Recoveries received after deducting expenses incurred in connection with the Avoidance Action for which a Recovery is obtained. For purposes of this paragraph, Bayard agrees to prosecute any and all lawsuits through a final judgment after exhaustion of any and all appeals.

For the avoidance of doubt, this section shall not apply to Bayard's <u>expenses</u> incurred in connection with Bayard's Avoidance Action representation. We will include on our statements separate charges for disbursements such as travel and lodging, court costs, messenger and delivery service, and search and filing fees. Items such as telephone calls, computerized research, photocopying, printing and document imaging shall not be billed by Bayard and shall not be subject to reimbursement by the Debtor. The engagement of, and fees and expenses paid to, experts, consultants, appraisers, and/or other professionals shall be subject in all respects to the Trustee's prior written approval.

In addition, Bayard will seek your approval prior to incurring any expenses greater than $5,000 in the aggregate and reserves the right to bill any such expenses directly to the Debtor rather than through the Firm. In connection with the Debtor's engagement of any and all experts, we will discuss each potential retention with You and Your representatives and obtain approval prior to any such retention. Bayard agrees to apply for reimbursement of its Expenses from the Bankruptcy Court on a quarterly basis.

3. <u>Terms of Engagement</u>.

Either We or the Client may terminate the engagement under this agreement at any time for any reason upon reasonable written notice, subject on our part to applicable rules of professional conduct. Upon termination of this engagement, the Client shall remain liable to Bayard for all amounts due for the professional services rendered by Bayard prior to the termination date, as provided herein.

Bayard also has the right to withdraw from representing the Client for any reason at any time upon (a) giving reasonable notice to secure other counsel, (b) obtaining the approval of a court or tribunal to the extent required, and (c) otherwise attempting to take reasonable steps to minimize any prejudice which the Client may suffer by Bayard's withdrawal. If Bayard elects to withdraw, the Client shall (a) take all steps necessary to assist in our withdrawal and (b) pay the outstanding and other fees, disbursements and out-of-pocket expenses due to Bayard pursuant to the terms of this Agreement.

For the avoidance of doubt, if this Agreement or Bayard's services are terminated for any reason by either party, such termination shall be effective only with respect to Bayard's services provided prospectively and all the other terms of this Agreement shall survive any such termination. Upon termination, We will have no further duty to inform the Client of future developments or changes in law as may be relevant to this engagement. Further, unless the Client and We agree in writing to the contrary, We will have no obligation to monitor or comply with deadlines that may arise from the matters for which We have been retained.



Mr. Stephen V. Falanga, as Chapter 7 Trustee
November 14, 2023
Page 4

The provisions of this agreement may not be modified except in a subsequent writing executed by the parties hereto. This letter may be executed in counterparts, which counterparts, when fully executed and considered together, shall constitute one agreement.

The Client is engaging the firm to provide legal services in connection with a specific matter. After completion of this matter, changes may occur in the applicable laws or regulations that could have an impact upon the Client's future rights and liabilities. Unless the Client actually engages us after the completion of this matter to provide additional advice on issues arising therefrom, the firm has no continuing obligation to advise it with respect to future legal developments.

4. <u>Debtor Responsibilities</u>.

The Debtor agrees to cooperate fully with us and to provide all information known or available to it that is relevant to our representation. The Debtor further agrees to pay our statements in accordance with the terms and conditions of this Agreement, subject to Court approval.

5. <u>Disposition of Files</u>.

As part of our administrative operations, we periodically review client files after the completion of matters in order to determine whether they should be destroyed. We will notify the Debtor in writing at least 30 days before the destruction of any of its files. The Debtor will then have the option to take possession of the files. It will be the Debtor's obligation to maintain a current address with us in order to communicate with the Debtor concerning such matters.

6. <u>Use of E-mail</u>.

Due to its inherent nature, e-mail may be vulnerable to interception by unauthorized parties during transmission. We cannot guarantee the confidentiality of any information sent by e-mail or that it will be considered attorney-client privileged. If you do not wish us to communicate by e-mail on your matters, please notify us at your earliest convenience. In the absence of such notification, your consent will be assumed and we will not take any additional security measures, including but not limited to encryption. Although we subscribe to and use virus protection software we believe to be reliable, we cannot warrant that any e-mails or attachments are free from any virus. We recommend that you independently take steps to ensure they are actually virus-free.

7. <u>Binding Arbitration of Fee and Other Disputes</u>.

If the Client disagrees with any of our bills or has any other concern about our services or the results achieved, the Client should notify the undersigned attorney immediately. We will attempt to resolve any such disagreements in a fair and amicable manner. If any controversy or dispute arising from or relating to this agreement or our services to the Client, even if arising after the termination of this agreement, cannot be resolved through mutual agreement, the sole means of resolving the controversy will be binding arbitration under the auspices of the American Arbitration Association ("AAA"). Any such arbitration shall be conducted in Wilmington,



Mr. Stephen V. Falanga, as Chapter 7 Trustee
November 14, 2023
Page 5

Delaware, in accordance with the AAA's then-existing Commercial Arbitration Rules. The arbitration award may be enforced as a judgment by a court of competent jurisdiction. Each party will pay its own costs, including attorneys' fees, in the arbitration. This arbitration provision will apply to all disputes between us relating to our services, fees, costs or conduct (including any claim that our services were not necessary, were inappropriate or were inadequately rendered), and will survive termination of our relationship and this agreement. The Client also acknowledges that it understands the consequences of agreeing to binding arbitration, including that the Client is giving up any and all constitutional and statutory rights to have disputes between us determined by a court of law or equity or by a jury; that discovery of information in arbitration may be limited; and that the arbitration decision will be final and binding, except to the limited extent that the law provides for judicial review of arbitration proceedings and decisions.

8. <u>Meritas</u>.

Our firm is a member of Meritas, a network of over 170 independent commercial law firms, located in the most relevant legal and business markets throughout the world. While Meritas members are not engaged in the joint practice of law and do not share fees among themselves, a membership in Meritas gives us, and our clients, important access to competent, legal resources in other jurisdictions and specialty areas of practice so that our clients' needs for legal services can be handled efficiently virtually anywhere. While We will only work alongside and utilize the services of another Meritas firm in this matter with the Client's express knowledge and consent, We want the Client to be aware of Meritas and its possible benefits. Further information about Meritas can be obtained at the organization's website at www.meritas.org.

If the foregoing terms are acceptable, please have an appropriate representative of the Debtor sign and date this letter and return it to me. Once again, we are pleased to have this opportunity to work with the Debtor.

Very truly yours,

*/s/ Steven D. Adler*

Steven D. Adler
On Behalf of the Firm

**ACCEPTED AND AGREED:**

VASCULAR ACCESS CENTERS, L.P.

By:_____
    Name: Stephen V. Falanga
    Title: Chapter 7 Trustee