## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**Vascular Access Centers, L.P.,**<br><br>Debtor. | Hon. Ashely M. Chan<br><br>Chapter 7<br><br>Case No. 19-17117 (AMC) |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS
### OF MAJORITY LIMITED PARTNER AND POST-PETITION
### LENDER TO TRUSTEE'S EXPEDITED MOTION FOR AN ORDER
### APPROVING ADVERSARY PROCEEDING SETTLEMENTS PURSUANT
### TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

William Whitfield Gardner, the majority-in-interest limited partner and post-petition lender to Vascular Access Centers, L.P. ("**VAC**" or "**Debtor**"), by and through his undersigned counsel, hereby files this limited objection and reservation of rights ("**Objection**") to the Trustee's Expedited Motion for an Order Approving Adversary Proceeding Settlements Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Motion**") [Docket No. 1335] in the above-captioned bankruptcy case ("**Bankruptcy Case**"), and respectfully states as follows:

### I. SUMMARY OF OBJECTION

1. By the Motion, Stephen V. Falanga, the chapter 7 trustee ("**Trustee**"), seeks authority to settle claims brought in two adversary proceedings that assert avoidance claims against James McGuckin and related entities ("**Avoidance Claims**"), and an adversary proceeding that asserts claims against McGuckin and his company's unlawful retention of funds allegedly received in 2020 under the Federal Payroll Protection Program ("**PPP Claims**").

2. Pursuant to orders entered by this Court, Gardner holds a first priority lien in the PPP Claims and their proceeds. Gardner does not hold a lien in the Avoidance Claims. The

proposed settlement does not allocate the proposed settlement payment between the Avoidance Claims and the PPP Claims.

3. Gardner does not object to the general terms of the settlement proposed by the Motion. However, the order approving the settlement should expressly provide that Gardner's lien attaches to the settlement proceeds pending allocation of the amount attributable to the PPP Claims.

4. Moreover, the order granting the Motion should make clear the scope of the claims being released. The Motion contains language in a footnote that the settlement does not include certain derivative claims. The settlement agreement and proposed order do not contain the same clarifying language. Finally, Gardner holds a superpriority claim in the Bankruptcy Case, and reserves all rights to object to any proposed distribution of any portion of the settlement proceeds to any other creditor.

## II. BACKGROUND FACTS

### A. Gardner Holds a Lien in the PPP Claims and an Allowed Superpriority Claim in this Bankruptcy Case

5. Gardner holds a claim of not less than $3.5 million pursuant to five Post-Petition Financing Orders entered by the Court ("**DIP Claim**").[1] The DIP Claim is secured by a valid,

---

[1] "**Post-Petition Financing Orders**" means, collectively, the following Orders of the Bankruptcy Court: (i) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 357]; (ii) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Second Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 461]; (iii) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Third Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 520]; (iv) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Fourth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 562]; and (v) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Fifth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 639]. The Post-Petition Financing Orders and the terms of corresponding loan agreements relevant to this Objection are largely identical.

binding, enforceable and perfected first-priority lien and security interest in all of the Debtor's existing and after acquired real and personal, tangible and intangible, assets, including commercial tort claims and the claims asserted in the action styled *Gardner v. Vascular Access Centers, LLC, et al.*, Case No. 16-cv-000367 currently pending in the Delaware County Court of Common Pleas ("**Derivative Litigation**"), and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but exclusive of avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or applicable state law. *See id.*, at 6-7.

6. Pursuant to the Final Post-Petition Financing Orders, subject only to the Professional Fee Carve Out (as defined therein): (1) the DIP Claim constitutes, in accordance with Section 364(b) of the Bankruptcy Code, a priority administrative expense claim in the Bankruptcy Case having priority over any and all unsecured claims against the Debtor and, except for the Professional Fee Carve-Out, all costs or expenses of administration which were incurred in the Bankruptcy Case, either before or after conversion; and (2) to the extent the DIP Claim is not satisfied in full as a result of any sale or disposition of Gardner's collateral, the DIP Claim is a superpriority administrative expense claim against the estate pursuant to section 364(c)(1) of the Bankruptcy Code having priority over any and all administrative expenses of and unsecured claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code. *Id*. at 8-9.

7. The Trustee has acknowledged that Gardner holds the superpriority DIP Claim. *See Chapter 11 Trustee's Motion Pursuant To 11 USC 105(A), 363, 364 and 1146(A), Bankruptcy Rules 2002, 4001, and 6004, and Local Bankruptcy Rules 4001-1 and 6004-1 for*

3

*Entry of an Order: (A) Approving Term Sheet and Related Purchase Agreement by and between Stephen V. Falanga, Chapter 11 Trustee of Vascular Access Centers, L.P., and William Whitfield Gardner; (B) Authorizing and Approving the Sale of the Debtor's Right, Title, and Interest in Certain Derivative Claims Free and Clear of Liens, Claims, Interests, and Encumbrances; (C) Waiving the Fourteen Day Stay; (D) Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Post-Petition Credit Agreement with William Whitfield Gardner, Obtain Post-Petition Financing, and Grant Liens and Security Interests and (E) Granting Other Related Relief* [Docket No. 1035] (Jan. 17, 2022) at 5 ("Gardner holds a superpriority administrative claim in the Bankruptcy Case and is secured by first priority liens in substantially all of the Debtor's assets including the Derivative Claims and the proceeds thereof (exclusive of avoidance actions.").

**B.  The Proposed Settlement**

8.      By the Motion, the Trustee seeks to settle three pending adversary proceedings and release claims asserted therein. Specifically, in adversary proceeding 21-00128, the Trustee asserted Avoidance Claims against VAC, LLC and McGuckin (the "**VAC, LLC Adversary Proceeding**"). In adversary proceeding 21-00130, the Trustee asserted Avoidance Claims against Bochetto & Lentz, P.C. and McGuckin (the "**B&L Adversary Proceeding**"). In adversary proceeding 23-00050 the Trustee asserted PPP Claims against Philadelphia Vascular Institute, LLC ("**PVI**") and McGuckin (the "**PVI Adversary Proceeding**," together with the VAC, LLC Adversary Proceeding and the B&L Adversary Proceeding, the "**Adversary Proceedings**"), including claims for (i) breach of contract; (ii) unjust enrichment/quantum meruit; (iii) conversion; (iv) fraud; (v) negligent misrepresentation; and (v) constructive trust. *See* Motion at ¶¶ 10-12.

4

9. The Trustee requests the Court enter an order, substantially in the form attached as Exhibit A to the Motion ("**Proposed Order**"), approving the Settlement Agreement attached as Exhibit B to the Motion ("**Settlement Agreement**"). *Id*. at 1.

10. The Settlement Agreement provides that upon the Trustee's receipt of $125,000 ("**Settlement Payment**"), the Trustee shall: (1) dismiss the Adversary Proceedings with prejudice, and (2) release the claims asserted in the Adversary Proceedings. *See* Settlement Agreement at 1.

11. The Trustee, in a footnote contained in the Motion, asserts that nothing in the Settlement Agreement shall be construed to waive, release, or prejudice or in any way affect the claims asserted in the Derivative Litigation or any other action other than the "Adversary Proceeding Claims" [sic]. *See* Motion at 4 n.1. Neither the Settlement Agreement nor the Proposed Order contain any similar clarifying language.

**C. The Settlement Payment is Not Allocated Among the Claims Being Settled**

12. According to the Settlement Agreement, the Avoidance Claims asserted in the VAC, LLP Adversary Proceeding are in the total amount of $260,849. *See* Settlement Agreement at 1. The Avoidance Claims asserted in the B&L Adversary Proceeding are in the total amount of $348,078.68. *See id*. The PPP Claims asserted in the PPP Adversary Proceeding are in the total amount of "approximately $560,000." *See id*.

13. The $125,000 Settlement Payment is comprised of (1) payment by McGuckin, PVI and VAC, LLC, jointly and severally, of seventy-five thousand dollars ($75,000.00) and (2) payment by Bochetto & Lentz, P.C. of fifty thousand dollars ($50,000.00). *See Id*. at 2. Neither the Motion, Settlement Agreement, nor Proposed Order provide how the Settlement Payment is allocated among the claims asserted in the Adversary Proceedings.

**D. The Motion Implies that the Proceeds of the Settlement Will Be Available for Creditors Other than Gardner**

14. In the Motion, the Trustee asserts that the settlement "will result in a substantial cash payment to the Debtor's estate for the benefit of the Debtor's creditors." Motion at ¶ 23.

15. The Motion does not expressly propose to distribute any portion of the Settlement Payment to any creditor or otherwise.

### III. LIMITED OBJECTION

16. Gardner does not object to the general terms of the settlement proposed by the Motion. However, the order approving the settlement should expressly provide that Gardner's lien attaches to the proceeds of the settlement pending allocation of the amount attributable to the PPP Claims and further make clear exactly what claims are being released.

17. Pursuant to the Post-Petition Financing Orders, Gardner holds a lien in the PPP Claims and their proceeds. The Motion, Settlement Agreement, and Proposed Order do not propose how the Settlement Payment is allocated between the PPP Claims and the Avoidance Claims.

18. Allocation of the Settlement Payment is not necessary at this time and may never be necessary. While Gardner's lien attaches only to the proceeds of the PPP Claims, Gardner's superpriority claim may result in all of the settlement proceeds being paid to him. As a result, Gardner requests the order granting the Motion provide that Gardner's lien attaches to the entirety of the settlement payment pending further order of the Court.[2]

---

[2] If the Court decides that allocation of the Settlement Payment should occur at this time, Gardner's lien should attach to $60,000 of the settlement proceeds. That amount is 48% of the $125,000 Settlement Payment, mirroring the fact that 48% ($560,000) of the total amount of the Claims ($1,685,927) is asserted on account of the PPP Claims.

19. The order granting the Motion should also expressly provide that notwithstanding anything in the order, Motion, or Settlement Agreement, the settlement does not waive, release, or in any way affect the claims asserted in the Derivative Litigation or any other claim other than VAC's claims asserted in the Adversary Proceedings. While a footnote in the Motion brings some clarity to the Trustee's position, none of the settling defendants or other third parties potentially liable for claims signed an agreement stating as much.

## IV. RESERVATION OF RIGHTS

20. The Trustee, in the Motion, implied that the settlement should be approved because it will provide cash to the estate for the benefit of the Debtor's creditors. Gardner expressly reserves all rights with respect to his secured superpriority administrative claim in the Bankruptcy Case and any proposed distribution of estate assets, including the settlement proceeds, to other creditors.

Dated: June 19, 2024
Philadelphia, Pennsylvania

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Joseph N. Argentina, Jr.*
Joseph N. Argentina, Jr.
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone: (215) 988-2700
Fax: (215) 988-2757
Joseph.Argentina@faegredrinker.com

*Counsel for William Whitfield Gardner*