UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>**Vascular Access Centers, L.P.,**<br><br>Debtor. | Hon. Ashely M. Chan<br><br>Involuntary Chapter 7<br><br>Case No. 19-17117 (AMC) |

### SUPPLEMENTAL APPLICATION FOR SANCTIONS AMOUNT

William Whitfield Gardner ("**Gardner**"), the majority-in-interest limited partner of Vascular Access Centers, L.P. ("**VAC**" or "**Debtor**"), the debtor in the above-captioned case, and movant of the *Motion of Majority Limited Partner for an Order Imposing Sanctions against Dr. James F. McGuckin and Philadelphia Vascular Institute, LLC* [Docket. No. 304] ("**Sanctions Motion**"), by and through his undersigned counsel, hereby submits this Supplemental Application for Sanctions Amount ("**Supplemental Application**"), and in support thereof submits the Declaration of Richard E. Coe ("**Coe Declaration**"), and the Declaration of Elizabeth Matthews ("**Mathews Declaration**") filed contemporaneously herewith, and respectfully states as follows:

**A. This Court Sanctioned McGuckin and PVI**

1.     After extensive litigation on the Sanctions Motion, this United States Bankruptcy Court for the Eastern District of Pennsylvania ("**Court**") entered an order on October 28, 2021 finding Dr. James F. McGuckin ("**McGuckin**") and Philadelphia Vascular Institute, LLC ("**PVI**") orchestrated the filing of a bad faith involuntary chapter 11 bankruptcy petition against VAC in order to delay derivative litigation prosecuted on behalf of the Debtor by Gardner and others against the Debtor's general partner and McGuckin, the general partner's sole member

1

and manager. *See* Order, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Oct. 28, 2021) [Docket No. 947] ("**2021 Sanctions Order**").

2. After further proceedings on the Sanctions Motion, the Court entered another Order directing Gardner to submit time entries limited to the following six categories (collectively, the "**Sanctions Categories**"):

(1) Fees and expenses incurred from the petition date through February 7, 2020;

Those incurred in connection with:

(2) McGuckin's resignation from his position as former CEO of the Debtor and withdrawal of Vascular Access Centers, LLC as the Debtor's general partner subsequent to the hearing on February 6, 2020;

(3) Gardner's motion for sanctions against McGuckin and PVI;

(4) The District Court appeal of the Court's order granting Gardner's motion to appoint a chapter 11 trustee ("**Trustee Order**");

(5) McGuckin's motion seeking the Court's recusal; and

(6) McGuckin's motion seeking reconsideration of the Trustee Order.

*See* Order, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Feb. 10, 2022) [Docket No. 1079] at 1.

3. On March 10, 2022, Gardner submitted a supplemental application seeking fees in the Sanctions Categories incurred through December 31, 2021. *See* Supplemental Application for Sanctions Amount, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Mar. 10, 2022) [Docket No. 1106] ("**Revised Application**"). After further proceedings, on December 2, 2022, the Court entered an Order and Judgment awarding Gardner sanctions in the total amount of $1,417,861.75 ("**Sanctions Award**"). *See* Order, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Dec. 2, 2022) [Docket No. 1190] (the "**2022 Sanctions Order**" and together with the 2021 Sanctions Order, the "**Sanctions Orders**"). The

2

Court entered a detailed opinion in support of the 2022 Sanctions Order filed simultaneously with the 2022 Sanctions Order. *See* Opinion, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Dec. 2, 2022) [Docket No. 1189] ("**Sanctions Opinion**"). In the Sanctions Opinion, the Court explained that fees incurred by Gardner in the Sanctions Categories were appropriate because they would not have been incurred "but for" McGuckin and PVI's sanctioned misconduct. *See, generally, id*. at 36-38.

4. The 2022 Sanctions Order expressly provided that Gardner was free to move the Court to increase the amount of the Sanctions Award by the amount of any reasonable additional attorneys' fees and costs incurred due to the misconduct described in the Sanctions Opinion. *See* 2022 Sanctions Order at 1 ("The entry of judgment is without prejudice to Gardner moving to have this Court increase this judgment by the amount of any reasonable additional attorneys' fees and costs incurred since the hearing on the Revised Application[1] which were incurred solely due to the misconduct described in the accompanying opinion").

**B. McGuckin's Appeal of the Sanctions Orders**

5. On December 12, 2022, McGuckin and PVI filed a notice of appeal of the Sanctions Orders (*See* Notice of Appeal to District Court, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Dec. 12, 2022) [Docket No. 1203]), initiating an appeal of the Sanctions Orders to the United States District Court for the Eastern District of Pennsylvania ("**District Court**") at Case No. 22-4981 (the "**Sanctions Appeal**").

---

[1] While the Court expressly authorized seeking additional fees incurred after the hearing on the Revised Application that occurred on May 5, 2022, Gardner respectfully requests the Court consider fees incurred after those listed in the Revised Application, which only ran through December 21, 2021. Gardner incurred fees during the period after the fees listed in the Revised Application and leading up to the May 5, 2022 hearing, which are included in Exhibit 1 to the Coe Declaration and requested herein.

6.	The docketing of the notice that the Bankruptcy Court records had been fully transmitted in the Sanctions Appeal occurred on January 25, 2023. *See* Notice, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Jan. 25, 2023) [Docket No. 1242]. Therefore, pursuant to Bankruptcy Rule 8018(a)(1), the initial appellant brief was due on February 24, 2023. Similarly, pursuant to Bankruptcy Rule 8012, corporate ownership disclosures were due on February 24, 2023.

7.	McGuckin and PVI filed no brief or disclosure, and on March 9, 2023, Gardner filed a motion to dismiss the Sanctions Appeal. *See* Motion of Appellee William Whitfield Gardner to Dismiss Appeal, *Vascular Access Centers, L.P. v. Philadelphia Vascular Institute, LLC*, No. 22-4981 (E.D. Pa. Mar. 9, 2023) ("**Motion to Dismiss**").

8.	The District Court denied the Motion to Dismiss roughly 15 months later on September 30, 2024. In its opinion in support of denial, the District Court observed that "given the fact that McGuckin is already liable for Gardner's fees and expenses and those fees and expenses have necessarily increased because of the [Motion to Dismiss], the Court finds this continuing sanction sufficient at this time." *See* Memorandum, *Vascular Access Centers, L.P. v. Philadelphia Vascular Institute, LLC*, No. 22-4981 (E.D. Pa. Sept. 30, 2024) at 9.

9.	Following briefing, on March 18, 2025, the District Court affirmed the Sanctions Orders and Sanctions Opinion and remanded the matter back to this Court "to supplement the award of fees with those incurred by Gardner's counsel in defending this appeal." *See* Order, *Vascular Access Centers, L.P. v. Philadelphia Vascular Institute, LLC*, No. 22-4981 (E.D. Pa. Mar. 18, 2025).[2]

---

[2] On April 9, 2025, McGuckin appealed the District Court Order to the Third Circuit Court of Appeals. *See* Notice of Appeal, *Vascular Access Centers, L.P. v. Philadelphia Vascular Institute, LLC*, No. 22-4981 (E.D. Pa. Mar. 18, 2025). As a result, the Sanctions Appeal is ongoing.

10. On March 21, 2025, this Court entered an order authorizing Gardner to submit his fees incurred in the Sanctions Appeal. *See* Order, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Mar. 21, 2025) [Docket No. 1352]. This Supplemental Application seeks the Supplemental Award, which includes those fees and expenses plus the fees otherwise incurred in the Sanctions Categories after December 31, 2021, the last date of fees included in the Revised Application that were submitted to the Court and included in the Sanctions Award.

**C. Additional Fees Incurred in the Sanctions Categories**

11. Since incurring the fees and expenses listed in the Revised Application, Gardner has incurred significant fees in certain of the Sanctions Categories. First, Gardner incurred fees prosecuting the Sanctions Motion through the remainder of the proceedings before this Court prior to the 2022 Sanctions Order. Second, in addition to fees and expenses incurred in defending the Sanctions Orders on appeal (which is ongoing, forcing Gardner to incur more costs), Gardner also incurred significant fees forcing McGuckin to comply with them. Finally, McGuckin appealed the Trustee Order for a third time and Gardner incurred additional fees defending it.

*i. McGuckin had the ability to pay the Sanctions Award when it was entered*

12. The 2022 Sanctions Order that ordered McGuckin to pay the Sanctions Award was entered on December 2, 2022. McGuckin and PVI moved for a stay pending appeal. *See* Motion for Approval of a Bond for Stay of Judgment under B.R. 8007 of James F. McGuckin, M.D. and Philadelphia Vascular Institute, LLC, *In re Vascular Access Centers, L.P.*, No. 19-17117 (AMC) (Bankr. E.D. Pa. Dec. 15, 2022) [Docket No. 1213]) ("**Stay Motion**").

13. In the Stay Motion, McGuckin argued, among other things, that Gardner's interest in the Sanctions Orders would be protected during the Sanctions Appeal by an irrevocable letter

5

of credit for the full, face amount of the Sanctions Award. *See id*. at 3-4. No letter of credit existed at the time of the filing of the Stay Motion. Rather, McGuckin alleged that he had "made arrangements with his banking institution, PNC Bank, to issue the Irrevocable Standby Letter of Credit in the full amount of the judgment." *Id*. Further, "[b]efore filing this Motion, McGuckin transferred $1,420,000 in funds—in excess of the full amount of the judgment—to his PNC Bank account for purposes of obtaining the Irrevocable Standby Letter of Credit." *Id*. at 4. An email from UBS Financial Services, Inc. to PNC Bank confirming the transfer was attached as an exhibit to the Stay Motion. *See id.*

14. At the hearing on the Stay Motion on February 8, 2023, McGuckin's counsel confirmed the funds were still in the PNC account. *See* Hr'g Tr. 3:13-4:6 (Feb. 8, 2023), a copy of which is attached as Exhibit 2 to the Coe Declaration. McGuckin's counsel also announced that McGuckin was willing to deposit the funds with Gardner's law firm to be held in escrow, pending the outcome of the Sanctions Appeal. *Id*.[3] The Court denied the Stay Motion.

15. Rather than pay the Sanctions Award as ordered by the Court with funds he admittedly possessed in February 2023, McGuckin forced Gardner to expend enormous amounts in protracted collection proceedings in multiple state courts until July 2024 when, faced with imminent Sheriff sale on a portion of his Radnor estate, McGuckin paid the Sanctions Award in full in immediately available funds. Consistent with his conduct before this Court, McGuckin sought to delay Gardner's collection proceedings—including by engaging in conduct separately sanctioned by one of those courts, as detailed below. McGuckin's efforts forced Gardner to incur

---

[3] Gardner reasonably rejected that offer because the Court ordered payment of the Sanctions Award, not for the Sanctions Award to be placed in escrow pending the outcome of McGuckin's endless appeals. Indeed, as of this filing, the Sanctions Appeal has already dragged on for more than two and a half years, and McGuckin has appealed the District Court order affirming the Sanctions Orders to the Third Circuit. Moreover, the amount offered was insufficient because it did not account for interest or fees, as required by Pennsylvania and Federal Rules for supersedes bonds posted in connection with appeals of non-bankruptcy orders.

an outrageous amount of additional and unnecessary fees. The following is a summary of just a few examples.

> ii. *McGuckin unlawfully avoided discovery and garnishments in Montgomery County while selling his assets and dissipating the proceeds*

16. Following denial of the Stay Motion, Gardner transferred the 2022 Sanctions Order to the Montgomery County Court of Common Pleas ("**Montgomery County Court**"), initiating Civil Case No. 2023-02518 ("**Montgomery County Action**").[4] Gardner garnished PNC Bank, which McGuckin referred to in the Stay Motion as "his" bank and where he claimed the full amount of the Sanctions Award was deposited.

17. McGuckin's wife intervened in the Montgomery County Action. *See* Emergency Petition to Intervene, Stay and Set Aside Writ of Execution as to Non-Judgment Debtor Property, Montgomery County Action (Mar. 14, 2023) ("**Petition to Intervene**"). The Petition to Intervene demanded Gardner release bank accounts at PNC Bank because they were titled in the names of McGuckin and his wife jointly, and, therefore, the funds in those accounts were allegedly owned by the McGuckins as tenants by the entireties. *See id.* at 2–3. Following briefing and a hearing, Gardner agreed to release the jointly titled PNC accounts.[5]

18. Gardner also garnished UBS Financial Services and learned an account there contained over $1.4 million in funds. That account was also titled in the names of McGuckin and his wife. Gardner again agreed to release it from garnishment. Gardner garnished Goldman Sachs and learned that McGuckin and his wife had accounts there worth several million dollars.

---

[4] The Sanctions Order, pursuant to its terms, is also a judgment. *See* Sanctions Order at 1 ("Judgment is entered in favor of Gardner and against McGuckin and PVI, jointly and severally, for attorneys' fees and costs in the amount of $1,417,861.75.").

[5] Pennsylvania law provides that property owned by a husband and wife as tenants by the entireties is presumed to be immune from execution by creditors of either individual spouse.

Again, these accounts were titled in the names of McGuckin and his wife and Gardner consented to release them from garnishment.

19. Separate from the garnishment actions, on March 15, 2023, Gardner, through undersigned counsel, served McGuckin and PVI with written discovery requests in the Montgomery County Action. Specifically, Gardner served fifty-five (55) post-judgment interrogatories and fourteen (14) post-judgment requests for the production of documents that sought details of McGuckin and PVI's assets, including information regarding any real properties owned or sold by McGuckin ("**Discovery Requests**").

20. McGuckin and PVI did not respond to the Discovery Requests, forcing Gardner to file a motion to compel responses. Rather than provide responses, McGuckin opposed the motion to compel, which then required additional briefing and a hearing. Following these proceedings, the Montgomery County Court granted the motion to compel in July 2023 and ordered McGuckin and PVI to provide verified responses by September 11, 2023. *See* Order, Montgomery County Action (July 18, 2023) ("**Discovery Order**").

21. McGuckin and PVI provided no responses by September 11, 2023. Instead, following Gardner's threat to move for sanctions, McGuckin provided a small fraction of the requested documents on October 20, 2023 but no responses to interrogatories at all.

22. The few documents McGuckin provided in October 2023 revealed that he owned several parcels of real property in Maine. Public records revealed that these properties were titled in McGuckin's name only and—while he had been stonewalling Gardner's discovery efforts— he sold them for more than $1.148 million in proceeds. Had McGuckin complied with his discovery obligations and disclosed these properties to Gardner, they would have been available for execution.

23. Gardner filed a motion requesting the Montgomery County Court hold McGuckin in contempt of court and sanction him for failing to comply with his discovery obligations and the Discovery Order. *See* Motion for Sanctions and Contempt for Defendants' Failure to Make Discovery and Failure to Obey Court Order, Montgomery County Action (Nov. 20, 2023) ("**Contempt Motion**"). McGuckin opposed the Contempt Motion, which required further briefing and a hearing. On April 18, 2024, the Montgomery County Court granted the Contempt Motion, held McGuckin in contempt, ordered him to provide full and verified discovery responses to Gardner, and to deliver the proceeds of the real property sales to Gardner within ten days. *See* Order, Montgomery County Action (Apr. 18, 2024). The Order also directed Gardner to file with the Montgomery County Court the details of his fees and expenses incurred in discovery and the motion for sanctions, which was filed on April 26, 2024.

24. On April 29, 2024, McGuckin produced documents that confirmed the real property sales, disclosed sales of his collection of classic and luxury cars for more than $789,000, and that the UBS account no longer contained the $1.4 million. Rather than pay anything to Gardner as ordered by this Court and the Montgomery County Court, McGuckin claimed through a letter from counsel that he had spent all the money—over $4 million between February 2023 and April 2024—on himself and his family. He therefore claimed he could not pay a single dollar to Gardner. Gardner requested the Montgomery County Court enter a further order compelling payment or imprison McGuckin to force compliance. Gardner also filed a fraudulent transfer complaint against McGuckin and his wife in the Montgomery County Action.[6]

---

[6] Further orders on the Contempt Motion forcing payment and further proceedings on the fraudulent transfer action were both ultimately rendered unnecessary when McGuckin paid the Sanctions Award in July 2024 in order to avoid a foreclosure sale of certain of his real property by the Delaware County Sheriff, as detailed below.

9

25. In sum, McGuckin in the Montgomery County Action repeatedly demanded Gardner release millions in funds from garnishment writs because the accounts were jointly titled with his wife, unlawfully avoided Gardner's discovery for roughly a year while he sold assets that would have been available for execution had he disclosed them to Gardner, and spent the cash and sale proceeds to avoid payment to Gardner as ordered by this Court in the 2022 Sanctions Order.

### iii. Lengthy and Costly litigation in Delaware County finally forced McGuckin to pay the Sanctions Award

26. In addition to the Montgomery County litigation, Gardner transferred the 2022 Sanctions Order in February 2023 to the Delaware County Court of Common Pleas ("**Delaware County Court**"), initiating Civil Case No. 2023-001370 ("**Delaware County Action**"), where McGuckin and his wife own a multi-parcel estate in Radnor, PA. Most of the parcels there were titled in the names of both spouses. One, however, was titled in McGuckin's name only. Gardner initiated foreclosure proceedings on that parcel. On August 31, 2023, McGuckin's wife again intervened and filed a petition to stay the foreclosure sale and set aside the related writ of execution, claiming the parcel was allegedly owned by the couple as tenants by the entireties notwithstanding that it was titled in McGuckin's name only. *See* Emergency Petition to Stay and Set Aside Sheriff's Sale of Non-Debtor Marital Property and Associated Writ of Execution, Delaware County Action (Aug. 31, 2023) ("**Petition to Set Aside**").[7]

---

[7] The sole basis for avoiding the foreclosure in the Petition to Set Aside was the frivolous argument that the property at issue was not subject to execution by Gardner because it was "marital property." *See Id*. at 5. Conflating "marital property" (which can be executed upon by creditors of an individual spouse) with property owned by the couple as tenants by the entireties (which cannot) has been uniformly and soundly rejected by Pennsylvania state and federal courts. *See, e.g., Jones v. McGreevy*, 270 A.3d 1, 15 (Pa. Super 2022), appeal denied, *Jones v. McGreevey*, 280 A.3d 867 (Pa. 2022) (property titled in the name of one spouse subject to execution by creditors of that spouse); *In re Roberts*, 81 B.R. 354, 364 (Bankr. W.D. Pa. 1987) (holding that any property titled to either spouse individually, or to both spouses as joint tenants is not entireties property and not exempt from process under Pennsylvania law). Yet McGuckin and his wife continued to advance that position. *See* Petitioner/Intervenor's Proposed Findings of Fact and Conclusions of Law, Delaware County Action (March 20, 2024) at 10 ("Under Pennsylvania law, it is well

10

27. After many months of extensive briefing and multiple hearings, including an evidentiary hearing at which McGuckin and his wife testified, the Delaware County Court denied the Petition to Set Aside on April 2, 2024. *See* Order Denying Intervenor's Emergency Petition to Stay and Set Aside Sheriff Sale of Non-Debtor Marital Property, Delaware County Action (Apr. 2, 2024) ("**Delco Denial Order**"). McGuckin and his wife appealed the Delco Denial Order to the Pennsylvania Superior Court, which required further briefing.

28. McGuckin and his wife also moved the Delaware County Court for a stay pending appeal of the Delco Denial Order, which required further briefing and a hearing. *See* Emergency Motion for Stay of Sheriff's Sale and Execution Pending Appeal Pursuant to Pa. R.A.P. 1732 and 1733, Delaware County Action (May 20, 2024) ("**Delco Stay Motion**"). The Delaware County Court denied the Delco Stay Motion.

29. Finally, faced with the impending Sheriff sale of the parcel, McGuckin paid the Sanctions Award on or about July 30, 2024 in immediately available funds.

### iv. *McGuckin's further efforts to delay and avoid payment of the discovery sanctions imposed by the Montgomery County Court*

30. Following McGuckin's payment of the Sanctions Award to avoid foreclosure in the Delaware County Court, Gardner pressed for reimbursement of his fees and expenses in the Montgomery County Action awarded as a result of McGuckin's unlawful conduct there. Gardner submitted an affidavit detailing his fees and expenses incurred in discovery and the Contempt Motion on April 26, 2024, as ordered by the Montgomery County Court. In August 2024, the Montgomery County Court indicated that it had reviewed Gardner's affidavit and was prepared to enter an award in a reduced amount. McGuckin, through counsel, requested an opportunity to

---

settled that **marital property** cannot be attached by creditors of one spouse and such property is immune from process, petition, levy, execution, or sale.") (emphasis added).

review the affidavit despite having not done so in the four months since its filing. McGuckin, of course, then filed an objection to most of the fees, which required additional proceedings before the Montgomery County Court.

31. Before the Montgomery County Court could issue an order in response to these proceedings, the Montgomery County Court Administrator closed the case docket,[8] and refused to reopen it without an order from the Montgomery County Court. Gardner requested McGuckin consent to a motion to reopen the case for the limited purpose of permitting the Court to enter an order on the sanctions amount. McGuckin of course refused, requiring additional further briefing. Finally, after months of McGuckin's delays, the Montgomery County Court ordered the Court Administrator to reopen the docket and entered the award in the amount of $122,624.95. *See* Order and Judgment, Montgomery County Action (Oct. 16, 2024). The sanction amount was the same as detailed in the Montgomery County Court's August correspondence. McGuckin's demands for further opportunity to review the fee affidavit, objections to specific fees, and refusal to consent to reopen the case docket, had all been entirely futile except to delay payment and further multiply Gardner's expenses.

32. Next, McGuckin filed a motion in the Montgomery County Action seeking a payment plan, claiming he lacked the funds to pay the $122,624.95 sanction. McGuckin's motion required further briefing and a hearing. The motion for payment plan was resolved by entry of a consent order that required a note and mortgage on property owned by McGuckin and his wife. The settlement required Gardner's counsel draft all of those documents.

---

[8] Following payment of the Sanctions Award in July 2024, Gardner had filed a Satisfaction of Judgment in Montgomery County (and all counties to which the 2022 Sanctions Order had been transferred) as required by Pennsylvania statute.

33. In addition to the contested matters described above, Gardner incurred significant fees in other efforts to force McGuckin's compliance with this Court's 2022 Sanctions Order. For example, Gardner transferred the 2022 Sanctions Order to several other Pennsylvania counties where McGuckin owns medical centers and caused garnishment writs and interrogatories to be served on those centers. This required review and compliance with the rules and protocols of many Pennsylvania county courts, prothonotaries, and sheriffs' offices. Gardner caused additional garnishment writs and interrogatories to be served on third parties Gardner reasonably believed owed funds to McGuckin. McGuckin opposed or ignored these efforts, causing Gardner to incur yet more fees and expenses.

> v. *Gardner's fees in the Supplemental Application would not have been incurred but-for McGuckin's sanctioned conduct*

34. To be clear, Gardner is not asking this Court to find any of McGuckin's conduct described above, before the District Court in the Sanctions Appeal, or in his most recent appeal of the Trustee Order, was itself sanctionable. Rather, Gardner describes them here to give the Court insight regarding the large amount of additional fees Gardner was forced to incur in this matter. McGuckin forced Gardner to engage in endless and expensive litigation in multiple jurisdictions—going so far as to be held in contempt by the Montgomery County Court—to delay and avoid payment of the Sanctions Award he was perfectly capable of paying the day this Court ordered him to do so in December 2022.

35. As detailed in the Coe Declaration, following December 31, 2021 (the last date of the fees included in the Revised Application) and through December 31, 2024,[9] Gardner incurred fees in connection with the Sanctions Motion (including fees and expenses enforcing the

---

[9] Gardner has not been billed for fees and expenses incurred in 2025. Gardner reserves all rights to seek additional fees and expenses for amounts not yet billed.

DMS_US.370307558.3

Sanctions Award and in the Sanctions Appeal), and in defending McGuckin's latest appeal of the Trustee Order, in the total amount of $1,530,211.66 ("**Supplemental Award**"). The Coe Declaration breaks down the fees into each of the above categories, summarized as follows:

| | |
|---|---|
| Fees incurred in connection with the Sanctions Motion, including the Sanctions Appeal: | $1,440,660.31[10] |
| Fees incurred in defending McGuckin's Appeal of the Trustee Order: | $89,551.35 |
| **Total:** | **$1,530,211.66** |

36. None of these fees in the Supplemental Award would have been incurred but-for McGuckin and PVI's sanctionable conduct before this Court described in the Sanctions Opinion.

37. This Court sanctioned McGuckin for his misconduct. If Gardner had not incurred the costs enforcing this Court's Sanctions Orders, its efforts to punish McGuckin would have been ineffective.

38. For the reasons set forth in the Coe Declaration and Mathews Declaration, the fees incurred in this matter are reasonable when considering the complex and myriad tasks required in this matter, which required the level of skill possessed by Faegre Drinker's attorneys and professionals, and Faegre Drinker's rates compare favorably to other firms of similar size and skill in this market. The fees requested in this Supplemental Award are therefore reasonable.

39. Pursuant to this Court's 2022 Sanctions Order and the authority cited in the Sanctions Opinion, Gardner requests this Court enter a supplemental order and judgment directing McGuckin and PVI to pay the Supplemental Award, substantially in the form attached as "Exhibit C" hereto, and grant Gardner such other relief the Court deems just and proper.

---

[10] Of this amount $167,736.96 is attributable to the Sanctions Appeal, which are highlighted in blue on Exhibit 1 to the Coe Declaration and separately listed beginning on page 84 of the Coe Declaration. The fees and expenses set forth in the Coe Declaration do not include fees or expenses awarded by the Montgomery County Court in granting the Contempt Motion.

Dated: April 18, 2025            **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Joseph N. Argentina, Jr.*
Joseph N. Argentina, Jr.
Richard E. Coe (admitted *pro hac vice*)
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone:  (215) 988-2700
Fax:  (215) 988-2757
Joseph.Argentina@faegredrinker.com
Richard.Coe@faegredrinker.com

*Counsel for William Whitfield Gardner*