IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>VASCULAR ACCESS CENTERS, L.P.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-17117-AMC |

**CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND 11 U.S.C. §§ 105(a) FOR ENTRY OF AN ORDER (A) APPROVING SETTLEMENT AGREEMENT WITH WILLIAM WHITFIELD GARDNER AND ENDOVASCULAR HEALTH SERVICES, LLC; AND (B) GRANTING RELATED RELIEF**

Stephen V. Falanga, in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate of the above-captioned debtor (the "Debtor"), by and through his undersigned counsel, files this motion (the "Motion") pursuant to Federal Rule of Bankruptcy Procedure 9019 and 11 U.S.C. § 105(a), for entry of an Order: (A) approving the settlement agreement with William Whitfield Gardner and Endovascular Health Services, LLC attached hereto as **Exhibit A**; and (B) granting related relief. In support of the Motion, the Trustee respectfully represents as follows:

**JURISDICTION AND VENUE**

1. The Bankruptcy Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a).

**BACKGROUND**

4. On November 12, 2019, an involuntary petition was filed against the Debtor for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor

consented to the relief [Dkt. No. 3] and an Order for relief was entered on November 26, 2019 [Dkt. No. 46].

5. On November 22, 2019, Gardner, the Debtor's majority limited partner, filed a Motion of Majority Limited Partner for Entry of an Order Dismissing the Debtor's Involuntary Chapter 11 Case Pursuant to Section 1112(b) of the Bankruptcy Code, With Prejudice, or in the Alternative, Appointing a Chapter 11 Trustee pursuant to Section 1104(a) of the Bankruptcy Code [Dkt. No. 52] (the "Trustee Motion").

6. On February 7, 2020, the Bankruptcy Court issued an Opinion (the "Trustee Opinion") and entered an Order appointing a chapter 11 trustee [Dkt. No. 235].

7. On February 12, 2020, an Order was entered approving the Trustee's appointment as chapter 11 trustee in this case [Dkt. No. 245].

8. On March 8, 2023, the Bankruptcy Court entered an order converting the Debtor's bankruptcy from a chapter 11 case to a case under chapter 7 of the Bankruptcy Code [Dkt. No. 1257].

9. On March 9, 2023, the Court issued a notice of appointment of Stephen V. Falanga as the Trustee in the Debtor's chapter 7 case [Dkt. No. 1258].

10. As the Court is aware from prior filings and proceedings, this case has a lengthy and complex procedural history. *See, e.g.,* Dkt. Nos. 836 & 899. In the interest of brevity, the Trustee includes here a recitation of only those relevant events necessary to provide context for this Motion.

### *Gardner Post-Petition Financing*

11. During the pendency of the case, Gardner agreed to provide post-petition financing in an effort to sustain the Debtor's operations, as follows:

a. On March 12, 2020, the Trustee filed an Expedited Motion for Interim Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter Into Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests, and Other Relief [Dkt. No. 287] seeking post-petition financing an amount of Three Hundred and Fifty Thousand and 00/100 Dollars ($350,000.00), which motion was granted pursuant to the terms of the Court's Interim Order on March 18, 2020 [Dkt. No. 300] and Final Order on April 20, 2020 [Dkt. No. 357].

b. On June 8, 2020, the Trustee filed an Expedited Motion for Interim Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter Into Second-Post Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing and Granting Liens, Security Interests, and Other Relief [Dkt. No. 383] seeking post-petition financing in an amount of Five-Hundred Thousand and 00/100 Dollars ($500,000.00), which motion was granted pursuant to the terms of the Court's Interim Order dated June 17, 2020 [Dkt. No. 407] and Final Order on July 31, 2020 [Dkt. No. 461].

c. On August 12, 2020, the Trustee filed an Expedited Motion for Interim Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter Into Third Post-Petition Credit Agreement with William Whitfield Gardner, and to Obtain Post-Petition Financing, and Granting, Liens, Security Interests and Other Relief [Dkt. No. 477] seeking post-petition financing in an amount of up to Six Hundred and Fifty Thousand and 00/100 Dollars ($650,000.00), which motion was granted pursuant to the terms of the Court's Interim Order on August 17, 2020 [Dkt. No. 488] and Final Order on September 28, 2020 [Dkt. No. 523].

d. On October 1, 2020, the Trustee filed an Expedited Motion for Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter Into Fourth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief [Dkt. No. 527] seeking post-petition financing in a total amount of Five-Hundred Thousand and 00/100 Dollars ($500,000.00), which motion was granted pursuant to the terms of the Court's Interim Order on October 5, 2020 [Dkt. No. 537] and Final Order on October 27, 2020 [Dkt. No. 562].

e. On November 24, 2020 the Trustee filed an Expedited Motion for Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter Into Fifth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief [Dkt. No. 591] seeking post-petition financing in a total amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), which motion was granted pursuant to the terms of the Court's Interim Order on November 25, 2020 [Dkt. No. 598] and Final Order on January 5, 2021 [Dkt. No. 639].

12. As a result of the post-petition loans ("DIP Loans") made by Gardner to the Debtor, as approved by the Bankruptcy Court in the above-referenced final post-petition financing orders (the "Final Post-Petition Financing Orders"), the Debtor is currently indebted to Gardner in an amount of not less than $3,500,000 ("DIP Claim"). The DIP Claim is secured by a perfected, first priority lien ("DIP Lien") in all existing and after-acquired assets of the Debtor, including the Debtor's claims ("Derivative Claims") related to *Gardner v. Vascular Access Centers, LLC, et al.*, Case No. 16-cv-000367 ("Derivative Litigation"), but exclusive of avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or applicable state law ("Avoidance Actions") (collectively the "Collateral"), as more fully set forth in the Final Post-Petition Financing Orders.

13. Pursuant to the Final Post-Petition Financing Orders, subject only to the Carve-Outs (defined below): (1) the DIP Claim constitutes, in accordance with Section 364(b) of the Bankruptcy Code, a priority administrative expense claim in the Bankruptcy Case having priority over any and all unsecured claims against the Debtor and, except for the Carve-Outs (defined below), all costs or expenses of administration which were incurred in the Bankruptcy Case, either before or after conversion; and (2) to the extent the DIP Claim is not satisfied in full as a result of any sale or disposition of Collateral, a superpriority administrative expense claim against the estate pursuant to section 364(c)(1) of the Bankruptcy Code having priority over any and all administrative expenses of and unsecured claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of the Bankruptcy Code, subject to the Carve-Outs.

14. The Trustee has now sold or otherwise disposed of substantially all of the Collateral

securing the DIP Loans.[1]

15. As set forth in the Final Post-Petition Financing Orders, the DIP Claim and DIP Lien are subject to: (1) all fees required to be paid to the Clerk of the Bankruptcy Court; (b) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) and 156(c); (c) the Trustee's commission and expenses as allowed by order of the Court; and (d) all fees, costs and expenses incurred by professionals retained by the Trustee pursuant to a retention application filed by the Trustee (the "Professional Fee Carve Out") and (2) $76,000 of the Debtor's cash that the Court restricted from any liens of Gardner when the Trustee's sale of certain of the Debtor's Centers was effectuated to Endovascular Health Services, LLC (the "EHS Carve Out", and together with the Professional Fee Carve Out, the "Carve Outs"). Pursuant to the order approving a sale (the "EHS Sale") of certain of the Debtor's subsidiaries to EHS,[2] the Professional Fee Carve Out was capped at $875,000, leaving a total amount of $951,000 in Carve Outs.

16. Net of the Carve Outs, the Debtor's bankruptcy estate currently contains approximately $605,284 in cash. Of that amount, proceeds of Avoidance Actions ("Avoidance Action Proceeds") constitute approximately $343,782, and available cash collateral ("Cash Collateral") constitutes approximately $261,502.[3]

---

[1] Effective as of January 24, 2025, the Trustee abandoned the estate's right, title, and interest in those derivative claims (any such claim a "Derivative Claim" and, collectively, the "Derivative Claims") asserted, or which could be asserted, in the Derivative Litigation.

[2] "EHS Order" means the *Order (A) Approving Equity and Asset Purchase Term Sheet and Related Purchase Agreement by and Between Stephen V. Falanga, Chapter 11 Trustee of Vascular Access Centers, L.P., Endovascular Health Services, LLC, and William Whitfield Gardner; (B) Authorizing and Approving the Sale of the Debtor's Interests in and/or the Assets of Certain of the Debtor's Non-Debtor Subsidiaries Free and Clear of Liens, Claims, Interests, and Encumbrances; (C) Authorizing and Approving the Assumption and/or Assignment of Certain Related Executory Contracts and Unexpired Leases; (D) Waiving the Fourteen-Day Stay; and (E) Granting Other Related Relief* [Docket No. 733] (Apr. 8, 2021).

[3] The $261,502 in approximate current cash collateral is calculated as follows: $1,556,285 Approximate Current Total Cash - $951,000 Carve Outs - $343,782 Approximate Current

17. Gardner asserts that, in light of the completed sales and other dispositions of the Collateral, the DIP Claim is now a superpriority administrative claim in the Bankruptcy Case and, subject to the Carve-Outs, must be paid in full before any estate assets, including the Avoidance Action Proceeds, can be distributed on account of any claims other than the DIP Claim.

18. As set forth below, the Trustee disputes Gardner's contention that Gardner possesses a superpriority administrative claim that attaches to the Avoidance Action Proceeds whether in chapter 11 or chapter 7, but recognizes Gardner has a supportable position.

19. Given the foregoing, and after negotiations with Gardner, the Trustee has reached an agreement with Gardner and EHS that would resolve all remaining disputes among the Trustee, Gardner and EHS and facilitate the completion of this Bankruptcy Case, on the terms more fully set forth in the Settlement Agreement attached hereto as **Exhibit A** (the "Settlement Agreement" and, the terms contemplated thereby, the "Proposed Settlement").

### *The Proposed Settlement*

20. On or about April 28, 2025, Gardner, EHS and the Trustee, on behalf of himself and the Debtor's estate (collectively, the "Parties"), reached agreement on the terms of the Settlement Agreement that would resolve all remaining disputes among the Parties as of the date the Settlement Agreement is approved by the Bankruptcy Court, and facilitate the completion of this Bankruptcy Case and a distribution on account of administrative expenses other than the DIP Claim.

### *Key Terms*

21. The Settlement Agreement contains the following key terms, each as more fully set forth therein:

---

Avoidance Action Proceeds = $261,502 Approximate Current Cash Collateral.

a. **Distribution of Avoidance Action Proceeds**. Each of the Parties are entitled to fifty percent (50%) of the Avoidance Action Proceeds and except as set forth herein, each Party waives any claim, right or interest to the other fifty percent (50%) of the Avoidance Action Proceeds. Within seven (7) calendar days following the occurrence of the Effective Date, the Trustee shall deliver to Gardner in immediately available funds ("Gardner Avoidance Payment") an amount equal to fifty percent (50%) of the Avoidance Action Proceeds, less $50,000.00 (the "Contingency Reserve"), which the Trustee will hold in escrow until the earlier of (a) any final distribution in the Bankruptcy Case, (b) dismissal of the Bankruptcy Case or conversion of the Bankruptcy Case to a case under any other chapter of the Bankruptcy Code, and (c) 180 days after the Effective Date ("Reserve Release Date"). The Contingency Reserve may be released from escrow and used only with Gardner's consent (such consent may not be unreasonably withheld) to pay fifty percent (50%) of the amount of any obligation of the Debtor's chapter 7 bankruptcy estate that is not, as of the Effective Date, known to the Trustee or could have been known with the exercise of reasonable diligence. For the avoidance of doubt, the Contingency Reserve may not be used to pay any portion of any pre-petition obligation or any obligation of the Debtor's chapter 11 bankruptcy estate. The Trustee will deliver any unused portion of the Contingency Reserve to Gardner on the Reserve Release Date without further demand by Gardner. The remaining fifty percent (50%) of the Avoidance Action Proceeds shall remain in the Debtor's bankruptcy estate and any distribution shall be exclusive of Gardner.

b. **Distribution of Cash Collateral.** Within seven (7) calendar days after the occurrence of the Effective Date, the Trustee shall deliver the Cash Collateral, which currently constitutes approximately $261,502, to Gardner in immediately available funds.

c. **Application to DIP Claim.** The amounts of the Gardner Avoidance Payment and Cash Collateral actually received by Gardner shall be applied to the DIP Claim, first to reimburse Gardner's fees and expenses incurred in connection with the DIP Loans, second to accrued and unpaid interest on the DIP Loans, and third to outstanding principal on the DIP Loans. In the event any amounts of the Gardner Avoidance Payment and Cash Collateral are avoided or returned for any reason, the DIP Claim shall be deemed increased by the same amount.

d. **Delivery of Certain Debtor Records to EHS.** Certain of the Debtor's records were transmitted to EHS in connection with the EHS Sale. To the extent such records included medical records of the Debtor's patients, then from and after the Release Date (defined below), EHS shall be deemed the custodian of such records. Except for any obligations EHS may have pursuant to applicable law, EHS shall not be responsible for any costs related in any way to any of the Debtor's records, including, without limitation, any records transmitted in the EHS Sale. The Release by the Trustee set forth below includes any and all claims with respect to any of the Debtor's records.

    e. **Release by Gardner/EHS**. Effective upon the date Gardner receives the Gardner Avoidance Payment and Cash Collateral ("Release Date"), Gardner and EHS, for themselves and their respective successors and assigns, and those claiming by, through or under them, unconditionally release and forever discharge the Trustee and all of his professionals retained in the Bankruptcy Case pursuant to Section 327 of the Bankruptcy Code and through an order entered by the Bankruptcy Court, and each of their respective officers, directors, stockholders, managers, employees, predecessors, subsidiaries, divisions, affiliates, successors, heirs, assigns and insurance carriers (the "Trustee Released Parties"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted; <u>provided, however</u>, the release set forth above does not release any of the Trustee Released Parties from their obligations under the Settlement Agreement.

    f. **Release by the Trustee**. Effective upon the Release Date, the Trustee, on behalf of himself and the Debtor's bankruptcy estate, their respective successors and assigns, and those claiming by, through or under any of them, unconditionally release and forever discharge Gardner, EHS, and all of their respective officers, directors, stockholders, managers, employees, agents, representatives, attorneys, predecessors, subsidiaries, divisions, affiliates, successors, heirs, assigns and insurance carriers (the "Gardner Released Parties"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted. For the avoidance of doubt, the release contained herein applies to all present and future claims by the Debtor related to any of its records delivered to EHS; <u>provided, however</u>, the release set forth above does not release any of the Gardner Released Parties from their obligations under the Settlement Agreement.

## RELIEF REQUESTED AND BASIS THEREFOR

22.     By this Motion, the Trustee requests entry of an Order approving the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019.

23.     Bankruptcy Rule 9019 provides:

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States

trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

See Fed. R. Bankr. P. 9019.

24. In determining whether to approve a settlement, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

25. The Third Circuit has set forth four factors that bankruptcy courts should consider when analyzing a proposed compromise: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors" (the "Martin Factors"). *Id.*

26. When reviewing settlements under Bankruptcy Rule 9019, the court generally defers to the Trustee's business judgment. "[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification [for the settlement]." *In re Martin*, 91 F.3d at 395.

27. The court "should avoid second-guessing the Trustee in the exercise of his or her business judgment." *In re Still*, 444 B.R. 520, 523 (Bankr. E.D. Pa. 2010). Rather, the court need only "ascertain whether the terms of the Trustee's proposed settlement fall below the lowest range of reasonableness." *Id.*; *see also In re Capmark Financial Group, Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010) (courts "should canvas the issues to determine whether the settlement falls above the lowest point in the range of reasonableness").

28. Here, the Trustee, in an exercise of his business judgment, believes the Proposed Settlement, negotiated in good faith and at arms' length, is reasonable, in the best interests of the estate and should be approved.

29. As outlined above, the Settlement Agreement provides several important benefits to the estate. First, the Proposed Settlement would, among other things, resolve the dispute between Gardner and the Trustee concerning the extent of Gardner's superpriority administrative expense claim, thus avoiding potentially protracted and expensive litigation that would delay the conclusion of this Bankruptcy Case and the distribution of estate assets.

30. While the Trustee disputes that any superpriority administrative expense claim Gardner possesses was intended to apply to the Avoidance Action Proceeds, which were carved out from the scope of Gardner's DIP Lien during the chapter 11 case, Gardner disagrees with the Trustee's position and the Trustee recognizes the language in the Final Post-Petition Financing Orders and applicable bankruptcy law could be interpreted to support's Gardner's position. If the Trustee were to litigate the issue with Gardner, including through any appeals, the expense of litigation would likely subsume a significant portion of the Avoidance Action Proceeds, even if the Trustee were to ultimately prevail. If, on the other hand, Gardner were to prevail after litigation, Gardner would be entitled to 100% of the Avoidance Action Proceeds. Litigation with Gardner would also delay the conclusion of the Debtor's bankruptcy case and the distribution of estate assets without any benefit to the estate beyond what the Proposed Settlement already provides. In the Trustee's business judgment considering the expense and risk of litigation, an agreement with Gardner that will result in no less than 50% of the Avoidance Action Proceeds being paid for the benefit of claimholders other than Gardner is reasonable and in the best interests of the estate.

31. Pursuant to the Settlement Agreement, EHS will also agree to serve as the custodian of the Debtor's patient medical records transmitted to EHS in connection with the EHS Sale, thereby alleviating the need for the Trustee to undertake any further action for the disposition of such records in accordance with 11 U.S.C. § 351.

32. For these reasons, the Trustee respectfully submits that the Proposed Settlement is in the best interest of the estate, "falls above the lowest point in the range of reasonableness" and should be approved. *See Capmark Financial Group, Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010)

33. The Trustee respectfully submits that the Proposed Settlement satisfies the Martin Factors and that the Settlement Agreement should be approved in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Trustee respectfully requests that the Court enter the proposed form of Order approving the Settlement Agreement attached hereto as **Exhibit A**; and grant such other and further relief as the Court deems just and proper.

Dated: May 16, 2025

WALSH PIZZI O'REILLY FALANGA LLP
*Counsel for the Chapter 7 Trustee*

By: _____
Christopher M. Hemrick (*pro hac vice*)
Eric S. Padilla (*pro hac vice*)
Peter J. Pizzi
One Liberty Place
1650 Market Street
Philadelphia, PA 19102
Tel: (973) 757-1100 | Fax: (973) 757-1090
chemrick@walsh.law
epadilla@walsh.law
ppizzi@walsh.law

11