# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on May __, 2025 between William Whitfield Gardner ("**Gardner**"), Endovascular Health Services, LLC ("**EHS**"), and Stephen V. Falanga in his capacity as Chapter 7 Trustee ("**Trustee**") acting on behalf of Vascular Access Centers, L.P. ("**Debtor**", and together with Gardner, the "**Parties**").

## RECITALS

A.  On November 12, 2019, a chapter 11 involuntary bankruptcy petition was filed against the Debtor in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**"), initiating Case No. 19-17117 (the "**Bankruptcy Case**"). On March 8, 2023, the Bankruptcy Court converted the Bankruptcy Case to a chapter 7 case.

B.  As a result of post-petition loans ("**DIP Loans**") made by Gardner to the Debtor (and approved by the Bankruptcy Court in the Final Post-Petition Financing Orders),[1] the Debtor is currently indebted to Gardner in an amount of not less than $3,500,000 ("**DIP Claim**"). The DIP Claim is secured by a perfected, first priority lien ("**DIP Lien**") in all existing and after-acquired assets of the Debtor, including the Debtor's claims ("**Derivative Claims**") related to *Gardner v. Vascular Access Centers, LLC, et al.*, Case No. 16-cv-000367 ("**Derivative Litigation**"), but exclusive of avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or applicable state law ("**Avoidance Actions**") (collectively the "**Collateral**").

C.  Pursuant to the Final Post-Petition Financing Orders, subject only to the Carve-Outs (defined below): (1) the DIP Claim constitutes, in accordance with Section 364(b) of the Bankruptcy Code, a priority administrative expense claim in the Bankruptcy Case having priority over any and all unsecured claims against the Debtor and, except for the Carve-Outs (defined below), all costs or expenses of administration which were incurred in the Bankruptcy Case, either before or after conversion; and (2) to the extent the DIP Claim is not satisfied in full as a result of any sale or disposition of Collateral, a superpriority administrative expense claim against the estate pursuant to section 364(c)(1) of the Bankruptcy Code having priority over any and all administrative expenses of and unsecured claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 and 1114 of

---

[1] "**Final Post-Petition Financing Orders**" means, collectively, the following Orders of the Bankruptcy Court: (i) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 357]; (ii) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Second Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 461]; (iii) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Third Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 520]; (iv) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Fourth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 562]; and (v) *Final Order Authorizing Chapter 11 Trustee, on Behalf of the Debtor, to Enter into Fifth Post-Petition Credit Agreement with William Whitfield Gardner and to Obtain Post-Petition Financing, and Granting Liens, Security Interests and Other Relief* [Docket No. 639].

the Bankruptcy Code, subject to the Carve-Outs. The Debtor has sold or otherwise disposed of substantially all of the Collateral.

D. The DIP Claim and DIP Lien are subject to: (1) all fees required to be paid to the Clerk of the Bankruptcy Court; (b) all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) and 156(c); (c) the Trustee's commission and expenses as allowed by order of the Court; and (d) all fees, costs and expenses incurred by professionals retained by the Trustee pursuant to a retention application filed by the Trustee (the "**Professional Fee Carve Out**") and (2) $76,000 of the Debtor's cash ("**EHS Carve Out**", and together with the Professional Fee Carve Out, the "**Carve Outs**"). Pursuant to the order approving a sale (the "**EHS Sale**") of certain of the Debtor's subsidiaries to EHS,[2] the Professional Fee Carve Out was capped at $875,000, leaving a total amount of $951,000 in Carve Outs.

E. The Debtor's bankruptcy estate currently contains approximately $1,556,285 in cash. Of that amount, proceeds of Avoidance Actions ("**Avoidance Action Proceeds**") constitute approximately $343,782, and cash collateral ("**Cash Collateral**") constitutes approximately $261,502.[3]

F. Gardner asserts that in light of the completed sales and other dispositions of the Collateral, the DIP Claim is now a superpriority claim in the Bankruptcy Case and, subject to the Carve-Outs, must be paid in full before any estate assets, including the Avoidance Action Proceeds, can be distributed on account of any claims other than the DIP Claim. The Trustee disputes that position.

G. The Parties have decided to enter into this Settlement Agreement to resolve all remaining disputes, facilitate the completion of the Bankruptcy Case with a potential distribution on account of claims other than the DIP Claim, and for certain other benefits.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein and for other good and valuable consideration, the receipt of which and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1. **Incorporation of Recitals**. The Parties expressly acknowledge that the Recitals set forth above are true and accurate and hereby incorporated into this Settlement Agreement as if set forth below.

---

[2] "**EHS Order**" means the *Order (A) Approving Equity and Asset Purchase Term Sheet and Related Purchase Agreement by and Between Stephen V. Falanga, Chapter 11 Trustee of Vascular Access Centers, L.P., Endovascular Health Services, LLC, and William Whitfield Gardner; (B) Authorizing and Approving the Sale of the Debtor's Interests in and/or the Assets of Certain of the Debtor's Non-Debtor Subsidiaries Free and Clear of Liens, Claims, Interests, and Encumbrances; (C) Authorizing and Approving the Assumption and/or Assignment of Certain Related Executory Contracts and Unexpired Leases; (D) Waiving the Fourteen-Day Stay; and (E) Granting Other Related Relief* [Docket No. 733] (Apr. 8, 2021).

[3] $1,556,285 Approximate Current Total Cash - $951,000 Carve Outs - $343,782 Approximate Current Avoidance Action Proceeds = $261,502 Approximate Current Cash Collateral.

2

2. **Approval Order.** This Settlement Agreement is subject to the Bankruptcy Court's approval upon notice to required parties in interest under the Bankruptcy Code and shall not be binding on or enforceable against any Party until entry of an order by the Bankruptcy Court approving this Settlement Agreement and the transactions contemplated herein ("**Approval Order**"). The Trustee shall file and serve a motion in the Bankruptcy Case requesting entry of an Approval Order. The proposed form of Approval Order filed with the motion shall be reasonably acceptable to the Parties.

3. **Effective Date**. This Settlement Agreement shall be effective (such date, the "**Effective Date**") upon the last to occur of: (a) entry by the Bankruptcy Court of the Approval Order and it is no longer subject to actual or potential appeal and (b) execution of this Settlement Agreement by each of the Parties. Until the occurrence of the Effective Date, either Party may terminate and cancel this Settlement Agreement without cause by giving the other Party written notice thereof (email is sufficient). Immediately upon the occurrence of such cancellation, this Settlement Agreement shall be considered null and void and of no effect and the Parties hereunder shall have no further or continuing obligations with respect to this Settlement Agreement or the transactions referenced herein.

4. **Distribution of Avoidance Action Proceeds**. Each of the Parties are entitled to fifty percent (50%) of the Avoidance Action Proceeds and except as set forth herein, each Party waives any claim, right or interest to the other fifty percent (50%) of the Avoidance Action Proceeds. Within seven (7) calendar days following the occurrence of the Effective Date, the Trustee shall deliver to Gardner in immediately available funds ("**Gardner Avoidance Payment**") an amount equal to fifty percent (50%) of the Avoidance Action Proceeds, less $50,000.00 (the "**Contingency Reserve**"), which the Trustee will hold in escrow until the earlier of (a) any final distribution in the Bankruptcy Case, (b) dismissal of the Bankruptcy Case or conversion of the Bankruptcy Case to a case under any other chapter of the Bankruptcy Code, and (c) 180 days after the Effective Date ("**Reserve Release Date**"). The Contingency Reserve may be released from escrow and used only with Gardner's consent (such consent may not be unreasonably withheld) to pay fifty percent (50%) of the amount of any obligation of the Debtor's chapter 7 bankruptcy estate that is not, as of the Effective Date, known to the Trustee or could have been known with the exercise of reasonable diligence. For the avoidance of doubt, the Contingency Reserve may not be used to pay any portion of any pre-petition obligation or any obligation of the Debtor's chapter 11 bankruptcy estate. The Trustee will deliver any unused portion of the Contingency Reserve to Gardner on the Reserve Release Date without further demand by Gardner. The remaining fifty percent (50%) of the Avoidance Action Proceeds shall remain in the Debtor's bankruptcy estate and any distribution shall be exclusive of Gardner.

5. **Distribution of Cash Collateral.** Within seven (7) calendar days after the occurrence of the Effective Date, the Trustee shall deliver the Cash Collateral, which currently constitutes approximately $261,502, to Gardner in immediately available funds.

6. **Application to DIP Claim.** The amounts of the Gardner Avoidance Payment and Cash Collateral actually received by Gardner shall be applied to the DIP Claim, first to reimburse Gardner's fees and expenses incurred in connection with the DIP Loans, second to accrued and unpaid interest on the DIP Loans, and third to outstanding principal on the DIP Loans. In the

3

event any amounts of the Gardner Avoidance Payment and Cash Collateral are avoided or returned for any reason, the DIP Claim shall be deemed increased by the same amount.

      7.  **Delivery of Certain Debtor Records to EHS.** Certain of the Debtor's records were transmitted to EHS in connection with the EHS Sale. To the extent such records included medical records of the Debtor's patients, then from and after the Release Date (defined below), EHS shall be deemed the custodian of such records. Except for any obligations EHS may have pursuant to applicable law, EHS shall not be responsible for any costs related in any way to any of the Debtor's records, including, without limitation, any records transmitted in the EHS Sale. The release set forth in in Section 9 below includes any and all claims with respect to any of the Debtor's records.

      8.  **Release by Gardner/EHS**. Effective upon the date Gardner receives the Gardner Avoidance Payment and Cash Collateral ("**Release Date**"), Gardner and EHS, for themselves and their respective successors and assigns, and those claiming by, through or under them, unconditionally release and forever discharge the Trustee and all of his professionals retained in the Bankruptcy Case pursuant to Section 327 of the Bankruptcy Code and through an order entered by the Bankruptcy Court, and each of their respective officers, directors, stockholders, managers, employees, predecessors, subsidiaries, divisions, affiliates, successors, heirs, assigns and insurance carriers (the "**Trustee Released Parties**"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted; <u>provided, however</u>, the release set forth above does not release any of the Trustee Released Parties from their obligations under this Settlement Agreement.

      9.  **Release by the Trustee**. Effective upon the Release Date, the Trustee, on behalf of himself and the Debtor's bankruptcy estate, their respective successors and assigns, and those claiming by, through or under any of them, unconditionally release and forever discharge Gardner, EHS, and all of their respective officers, directors, stockholders, managers, employees, agents, representatives, attorneys, predecessors, subsidiaries, divisions, affiliates, successors, heirs, assigns and insurance carriers (the "**Gardner Released Parties**"), of and from all manner of actions, causes of action, suits, losses, damages, controversies, costs, interest, attorney's fees, penalties, rights, liabilities, debts, dues, bills, accounts, covenants, duties, contracts, agreements, promises, obligations, judgments, claims, rights of contribution or indemnification, demands and compensation, whether arising at law or equity, in tort or contract, or imposed by statute or common law, whether or not heretofore known, suspected or asserted. For the avoidance of doubt, the release contained herein applies to all present and future claims by the Debtor related to any of its records delivered to EHS; <u>provided, however</u>, the release set forth above does not release any of the Gardner Released Parties from their obligations under this Settlement Agreement.

**10. Miscellaneous.**

(a) This Settlement Agreement constitutes the complete understanding between the Parties with respect to the subject matter hereof, all prior understandings between the Parties relating to the subject matter hereof have been merged into this Settlement Agreement, and no other promises or agreements with respect to the subject matter hereof shall be binding upon the Parties unless in writing and signed by the Parties.

(b) If any provision of this Settlement Agreement shall be held to be invalid, void or unenforceable, the remaining provisions shall in no way be affected or impaired and such remaining provisions shall remain in full force and effect.

(c) This Settlement Agreement is in compromise and settlement of disputed claims, and neither the Settlement Agreement nor any of its terms constitutes an admission of liability by any Party.  Each of the Parties have had the opportunity to be fully and completely represented by counsel of their own choosing in the negotiation and drafting of this Settlement Agreement.  Accordingly, the Parties agree that any rule of construction of contracts resolving any ambiguities against the drafting party shall be inapplicable to this Settlement Agreement.

(d) Each of the Parties represents and warrants that the person who executed this Settlement Agreement on behalf of such party has full authority to bind such entity to the terms and conditions of this Settlement Agreement, subject to approval of the Bankruptcy Court.

(e) Each party shall bear its own costs, fees and expenses relating to this matter.

(f) This Settlement Agreement contains the entire agreement between the Parties and can only be modified by a writing signed by the Parties.

(g) This Settlement Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered (including by facsimile or email transmission) shall be, and have the force and effect of an original, and all of which together shall constitute one and the same agreement.

(h) This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns including any trustee appointed in the Debtor's Bankruptcy Case. Gardner and EHS may assign this Settlement Agreement or any of their respective rights, interests or obligations hereunder without the prior written approval of the Debtor or Trustee and without any approval by the Bankruptcy Court and without any notice to any parties to the Bankruptcy Case.

**11. Governing Law; Jurisdiction**. This Settlement Agreement shall in all aspects be governed by and construed in accordance with the internal laws of the Commonwealth of Pennsylvania without giving effect to any choice or conflict of law provision or rule whether of the Commonwealth of Pennsylvania or any other jurisdiction. The Parties agree that any litigation one Party commences against any other Party pursuant to this Settlement Agreement shall be brought exclusively in the Bankruptcy Court and each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts

therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court or that any such suit, action or proceeding which is brought in the Bankruptcy Court has been brought in an inconvenient forum; provided that if the Bankruptcy Court is unwilling or unable to hear any such litigation, then the courts of the Commonwealth of Pennsylvania and the federal courts of the United States of America sitting in Pennsylvania, shall have exclusive jurisdiction over such litigation.

  **12. No Third-Party Beneficiaries.** This Settlement Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

  **13. Time is of the Essence.** Time is of the essence in the performance of each and every obligation under this Settlement Agreement.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the undersigned Parties have duly executed this Settlement Agreement as of the date first above written.

**ENDOVASCULAR HEALTH SERVICES, LLC**

By:_____
Name:
Title:

**VASCULAR ACCESS CENTERS, L.P.**

By:_____
Name: Stephen V. Falanga
Title: Chapter 7 Trustee

**WILLIAM WHITFIELD GARDNER**

By:_____
Name: William Whitfield Gardner
Title: Individual